`Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTOR
STUDIO MOVIE GRILL HOLDINGS, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-32633-11 |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, *et al.,*[1] | § | Chapter 11 |
| | § | |
| DEBTOR. | § | Joint Administration Requested |
| | § | |

## DEBTORS' EMERGENCY MOTION FOR AN ORDER UNDER SECTIONS 105, 345, 363, 364, 503, 1107 AND 1108 OF THE BANKRUPTCY CODE AUTHORIZING (I)

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

**MAINTENANCE OF EXISTING BANK ACCOUNTS; (II) CONTINUANCE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, CHECKS AND RELATED FORMS; (III) CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (IV) LIMITED WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS; AND (V) GRANTING RELATED RELIEF**

Studio Movie Grill Holdings, LLC and its debtor affiliates (the "Debtors") hereby file this *Debtors' Emergency Motion Pursuant to Sections 105, 345, 364, 363, 503, 1107 and 1108, Authorizing (i) Maintenance of Existing Bank Accounts; (ii) Continuance of Existing Cash Management System, Bank Accounts and Checks and Related Forms; (iii) Continued Performance of Intercompany Transactions; (iv) Limited Waiver of Section 345(b) Deposit and Investment Requirements; and (v) Granting Related Relief* (the "Motion"). In support of this Motion, the Debtors would respectfully show the Court as follows:

## I.
## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief requested herein are sections 105(a), 345(b), 363, 364, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

## II.
## BACKGROUND

2.     On October 23, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), thereby initiating the above-captioned bankruptcy cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.     An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases. Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4.     A detailed description of the Debtors and their businesses, and the facts and

circumstances supporting the Motion and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of William Snyder, CRO of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motion (the "Snyder Declaration")*, which was filed on the Petition Date and is incorporated by reference in this Motion.

## III.
## THE CASH MANAGEMENT SYSTEM & BANK ACCOUNTS

5.       The Debtors' Cash Management System (defined below) facilitates the timely and efficient collection, management and disbursement of funds used in the Debtors' business. The Cash Management System consists of forty-six (46) accounts that are booked at Capital One, seven (7) accounts that are booked at JP Morgan Chase, and one (1) account that is booked at Regions Bank (collectively, "Bank Accounts"). The Bank Accounts are FDIC-insured up to applicable limits.

6.       A list of the Bank Accounts is set forth on **Exhibit "A"**, attached hereto. Diagrams of the Cash Management System are attached as **Exhibit "B"** hereto. The Debtors believe that each of the Bank Accounts is generally in a financially stable banking institution with the Federal Deposit Insurance Corporation or other appropriate government guaranteed deposit protection insurance program.

7.       The Debtors manage their cash receipts, transfers, and disbursements through routine deposits, withdrawals, and fund transfers to, from, and between the Bank Accounts by various methods including check, wire transfer, automated clearing house transfer, and electronic funds transfer (the "Cash Management System"). The current Cash Management System has been in place for over eight (8) years, without only minor adjustments since establishment.

8.       All location level depository accounts are with Capital One. The Debtors' main concentration, payroll, controlled disbursement, credit card escrow, liquor license, and marketing accounts are also with Capital One The debtors established concentration, payroll, controlled disbursement, and credit card escrow & depository accounts at JP Morgan Chase but are not used for

transacting daily business. One account was set up with Regions Bank to apply and hold the PPP

CARES Act funds. The Cash Management System is more fully described as follows:

> Theater level cash collections from ticket sales, food & beverage, and gift cards, including credit card purchases, are deposited into the theater depository account. Credit card settlements are deposited in their Capital One depository and swept daily. Cash is deposited to their Capital One OR Chase depository account dependent on location. (Pearland and Lincoln deposit to Capital One and swept daily. All other locations deposit to Chase and swept weekly.)
> If consumers pay by check at the theater those funds are deposited in the Capital One Concentration Account.
> Purchase of gift cards from the Corporate office, rebates, special events booked with corporate are deposited into the Capital One Concentration Account.
> All checks and wires are made from the Accounts Payable Controlled Disbursement Account via funds from the Concentration Account. ACHs are drafted from the Concentration account because there must be a balance in the funding account prior to the ACH value date.
> All payroll payments are made from the Payroll Controlled Disbursement Account via funds from the Concentration Account
> Payments to Fintech for liquor purchases are made out of controlled disbursement accounts. The two liquor accounts for the Epicentre theater are no longer in use since shutting down the location.

9.      The Debtors process large numbers of transactions daily through the Cash

Management System. The Debtors maintain current and accurate records of all transactions processed

through the Cash Management System. The Debtors' Cash Management System is similar to those

commonly employed by other corporate enterprises of comparable size and complexity. Among other

benefits, the Cash Management System permits the Debtors to accurately monitor cash availability at

all times. The Cash Management System also permits the Debtors to centrally manage and track the

collection and transfer of funds, which reduces administrative burden and expense and minimizes

interest expense.

10.      The Debtors' revenues are generated by sales at the Debtors' movie theater locations

throughout the United States. The majority of the Debtors' sales are conducted through credit and

debit card transactions through the Debtors' card processing system. (the "Card Processing System").

The Debtors also conduct a significant number of sales through cash and, to a lesser extent, checks.

11.     Credit and debit card sales are processed pursuant to an agreement with Vantiv, who operates as Worldpay, and directly for American Express transactions (the "Card Processors"). The Debtors' card processing system is critical to its operations and cash flows. The Card Processors deduct their fees from settlement. Visa, Master Card, and Discover ("Card Companies") fees are also deducted from the Vantiv settlement. The Debtors estimate that there are no accrued unpaid prepetition fees to the Card Processor and the Card Companies outstanding due to the fees being deducted at settlement. Because credit and debit card sales account for a significant percentage of the Debtors' total sales (greater than 85% of all sales), it is critical to the Cash Management System that there be no disruptions in these payments. The Debtors seek authority, but not direction, to pay any prepetition unpaid fees due to Card Processors and the Card Companies and to continue such payments to Card Processors and the Card Companies in the ordinary course of business on a post-petition basis.

12.     Under the Card Processing Agreement, upon the cancellation of service purchased from the Debtors using a credit card, the Debtors are obligated to refund to Card Processor the purchase price of the cancelled services plus certain adjustments (collectively, the "Chargebacks") against periodic settlement amounts. It is possible that certain Chargebacks incurred by the Debtors immediately prior to the Petition Date may not have been fully netted out prior to the Petition Date. Moreover, although the Debtors believe that any Chargebacks arising after the Petition Date would be post-petition obligations of the Debtors, it may be argued that Chargebacks arising after the Petition Date nevertheless should be considered pre-petition obligations where the returned merchandise was purchased from the Debtors prior to the Petition Date. In such circumstances, to the extent that the netting of the parties' obligations would not constitute recoupment, the setoff of Chargebacks arguably may be foreclosed by the automatic stay imposed by Bankruptcy Code § 362(a) of the Bankruptcy Code. The Debtors seek authority, but not direction, to pay all Chargebacks,

including prepetition chargebacks, and to continue to pay Chargebacks in the ordinary course of business on a post-petition basis.

13.     As described above, any disruption caused by requiring the Debtors to close their existing bank accounts, open new bank accounts and establish a new cash management system would jeopardize their ability to satisfy post-petition obligations and maintain their relationships with vendors, landlords and all other parties in interest.

## IV.
## US TRUSTEE GUIDELINES

14.     The U.S. Trustee has established its *Guidelines for Chapter 11 Cases for Region VI* ("Trustee Guidelines") in order to supervise the administration of Chapter 11 cases. The Guidelines generally require debtors-in-possession to, among other things, (i) close all existing bank accounts and open new accounts, including an operating account, a tax account, a payroll account, and, if required by the Court, a cash collateral account; (ii) obtain checks for all debtor-in-possession accounts that have the designation "debtor-in-possession," and the bankruptcy case number; (iii) deposit all receipts into and make all disbursements only from the approved debtor-in-possession account(s); (iv) deposit to the tax account sufficient funds to pay all tax liabilities; (v) deposit all funds into an account with a depository approved by the U.S. Trustee; (vi) open a new set of books and records as of the commencement date of the case; (vii) use new business forms indicating the debtor-in-possession status of the debtor; and (viii) provide consent to the U.S. Trustee to request copies of bank statements and/or supporting documentation directly from the Debtors' designated banks and other financial institutions. The U.S. Trustee has enacted these requirements to provide, among other things, a clear demarcation between pre-petition and post-petition transactions and operations, which would, in theory, prevent the inadvertent post-petition payment of a pre-petition claim. As explained in further detail below, the Debtors seek a waiver of certain of these requirements in this Motion.

## V.

## RELIEF REQUESTED & BASIS FOR RELIEF

15.     By this Motion, the Debtors seek authority to (i) maintain their existing bank accounts and to pay any pre-petition routine banking fees imposed by the financial institution maintaining the Bank Accounts and to continue to use their existing business forms and check stock; (ii) continue to use their existing Cash Management System, as provided herein; (iii) continue to execute Intercompany Transactions (defined below); and (iv) obtain a limited waiver of the requirements pursuant to Section 345(b) of the Bankruptcy Code to the extent required; as well as seek the related relief set forth herein.

**A.    The Court Should Authorize the Debtors to Maintain Existing Bank Accounts and Use Existing Checks and Related Forms**

16.     The Debtors seek a waiver of the U.S. Trustee's requirement for the closure of the Bank Accounts and opening of new post-petition bank accounts at depositories authorized by the U.S. Trustee.

17.     Capital One, JP Morgan Chase, and Regions Bank are authorized depositories in the Northern District of Texas.

18.     Strict enforcement of the account closure requirements would cause a severe disruption to the Debtors' activities and would impair the Debtors' ability to functionally operate under Chapter 11. Maintenance of the same Bank Accounts and the Cash Management System will greatly facilitate a continuation of Debtors' operations in Chapter 11. Such continued maintenance is of the utmost importance because the Bank Accounts and Cash Management System are necessary to efficiently collect revenues and disburse expense payments.

19.     All of the Bank Accounts are maintained by Capital One, JP Morgan Chase, and Regions Bank. If the Bank Accounts were closed, the Debtors would have to open new accounts and then attempt to arrange alternative electronic and manual payment procedures for payments into and out of the Debtors' accounts, which would disrupt the flow of post-petition receipts and

disbursements. In addition, closing the Bank Accounts would require the Debtors to cancel and reinstitute wire transfer instructions, which would be difficult to modify under exigent circumstances. This disruption would severely impact and could irreparably harm the Debtors' ability to operate at this critical juncture. The Debtors should be permitted to maintain their existing Bank Accounts and, if necessary, open new accounts as debtors-in-possession accounts and/or close any unnecessary Bank Accounts.

20.    To guard against improper transfers resulting from the post-petition honoring of pre-petition checks, the Debtors will agree to promptly notify Capital One and JP Morgan Chase not to honor checks drawn on the Debtors' accounts before the Petition Date, except upon limited Court-approved exceptions. Subject to a prohibition against honoring pre-petition checks or offsets without specific authorization from this Court, the Debtors request that they be authorized to maintain and continue the use of their Bank Accounts in the same manner and with the same account numbers, styles and document forms as those employed pre-petition.

21.    If the relief requested herein is granted, the Debtors will not pay – and Capital One, JP Morgan Chase, and Regions Bank (which maintain the Bank Accounts) will be required not to pay – any debts incurred before the Petition Date, other than as specifically authorized through this Motion or otherwise ordered by the Court.

22.    In addition, to minimize expense to their estates, the Debtors request authority to continue using their respective existing pre-printed check stock, deposit slips and related forms without reference to their "debtors-in-possession" status until the existing stock has been exhausted, provided that the Debtors shall add, stamp, or affix the "debtor-in-possession" designation onto any new checks ordered after the depletion of the existing stock. The Debtors' business forms are primarily electronically generated, but certain forms used by the Debtors' accounts payable department may be preprinted. Parties doing business with the Debtors undoubtedly will be aware,

as a result of the notice that will be sent regarding the filing of the Debtors' Chapter 11 Cases and the likely publicity of the filing, of the Debtors' status as debtors-in-possession. For this reason, the Debtors request that they be authorized to use existing checks and deposit slips without placing the label "debtor-in-possession" on each such form until such a time as their existing stocks are depleted.

## B. The Court Should Authorize the Payment of Outstanding Routine Prepetition Expenses Relating to the Operation of the Cash Management System

23. In the ordinary course of the operation and maintenance of the Cash Management System, the Debtors incur routine bank charges and fees relating to the administration of the Cash Management System. It is difficult to readily determine the aggregate amount of unpaid banking fees as of the Petition Date, due to the inherent varying timing of charging or deducting such fees from a given account; the Debtors estimate that some such monthly banking fees and charges and merchant fees may exist. The Debtors seek authority, in their discretion, to pay any such routine and ordinary course pre-petition banking fees and charges owed to Capital One, JP Morgan Chase, and Regions Bank and to continue the post-petition payment of such fees and charges in the ordinary course of business, subject to the terms of any order authorizing the Debtors to use debtor-in-possession financing or cash collateral ("Financing Order").

## C. The Debtors Should Be Allowed to Satisfy Prepetition Credit Card Processing Fees and Related Charges

24. As mentioned previously, the majority of the Debtors' revenue is generated from credit and debit card sales through their card processing system. The Debtors therefore believe that they can only meet their fiduciary duties as debtors in possession under Bankruptcy Code §§ 1107(a) and 1108 by having the authority, but not the direction, of this Court to maintain their Card Processing System, including authority, but not direction, to satisfy any outstanding pre-petition obligations on account of credit card processing fees, Chargebacks, and other related obligations.

## D. The Debtors Should Be Allowed to Continue the Intercompany Transactions

25.     As noted above, Debtors routinely engage in intercompany cash transactions between themselves, as described above in Paragraph 8 and as necessary to fund all operational expenses (collectively, "Intercompany Transactions").

26.     To ensure each entity will not, at the expense of its creditors, fund the operations of another entity, the Debtors respectfully request that, pursuant to Sections 503(b)(1) and 364(b) of the Bankruptcy Code, all intercompany claims between the Debtors and their affiliates arising after the Petition Date as a result of Intercompany Transactions (collectively, "Intercompany Claims"), be accorded administrative priority expense status junior in priority to any superpriority administrative claims that may arise or are granted under the Financing Order, regardless of when such superpriority administrative expense claims may arise. If Intercompany Claims are accorded administrative priority expense status, each entity utilizing funds flowing through the Cash Management System should continue to bear ultimate repayment responsibility for such ordinary course transactions. Accordingly, the Debtors believe that the continuation of the Intercompany Transactions is beneficial to their estates, their creditors and other parties in interest and, therefore, should be authorized by the Court.

**E.      Court Should Grant a Limited Waiver Pursuant to Section 345(b) of the Bankruptcy Code, to the Extent Necessary**

27.     The Debtors seek a waiver of Section 345(b) of the Bankruptcy Code to the extent required. The waiver would permit the Debtors to maintain the Bank Accounts without posting a bond or other security, as would otherwise be required pursuant to Section 345(b) whenever the funds on deposit exceed the amount permitted under Section 345(b).

28.     All of the Bank Accounts are maintained at Capital One, JP Morgan Chase, and Regions Bank, which are federally-insured institutions. All of the funds in the Bank Accounts are held in the form of cash and in the currency of U.S. Dollars. Therefore, the Debtors submit that the Bank

Accounts are in compliance with the security or bonding requirements prescribed by Section 345(b) of the Bankruptcy Code and no security or bonds are necessary to secure the funds in such accounts.

## V.
## AUTHORITY SUPPORTING GRANT OF RELIEF

**A.  Maintenance of the Debtors' Cash Management System will Benefit the Estates and is an Appropriate Exercise of the Court's Authority under Sections 105 and 363 of the Bankruptcy Code**

29.     Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts have long recognized that the power granted by § 105(a) was expressly meant to be exercised to effectuate the rehabilitation of the debtor. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 16 (1977)). Where cash management systems exist, bankruptcy courts routinely grant Chapter 11 debtors authority to continue to utilize such systems, treating these requests as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). The relief sought by the Debtors is critical to a successful reorganization and is commonly permissible under Section 105(a).

30.     Extensive authority supports the relief sought in this Motion. In other Chapter 11 cases, courts have recognized that strict enforcement of the U.S. Trustee Guidelines does not always serve the purposes of Chapter 11. Accordingly, courts have often waived such requirements and replaced them with alternative procedures. *See, e.g., In re TPP Acquisition, Inc. d/b/a The Picture People*, Case No. 16-33437-hdh (Bankr. N.D. Tex.); *In re Erickson Incorporated*, Case No. 16-34393-hdh (Bankr. N.D. Tex.); *In re Spectrum Jungle Labs Corp.*, Case No. 09-50455 (RBK) (Bankr. W.D. Tex.); *In re Cornerstone E&P Company, L.P.*, Case No. 09-35228-bjh (Bankr. N.D. Tex.); *In re Manchester, Inc.*, Case No. 08-30703-bjh (Bankr. N.D. Tex.); *In re Bombay Co.*, Case No. 07-44084-dml (Bankr. N.D. Tex.); *In re Lothian Oil Inc.*, Case No. 07-70121 (Bankr. W.D. Tex.); *In re The Nat'l Benevolent Ass'n of the Christian*

*Church (Disciples of Christ)*, Case No. 04-50948 (Bankr. W.D. Tex.); *In re Kitty Hawk, Inc.*, Case No. 00-42141-BJH (Bankr. N.D. Tex.).

31.     Additionally, Bankruptcy Code § 363(c)(1) authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of Bankruptcy Code § 363(c)(1) is to provide a debtor-in-possession with the flexibility to engage in the ordinary course transactions required to operate its business without unneeded oversight by its creditors or the Court. *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Git-N-Go, Inc.*, 322 B.R. 164, 171 (Bankr. N.D. Okla 2004); *In re Enron Corp.*, No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); *In re Atlanta Retail, Inc.*, 287 B.R. 849, 856 (Bankr. N.D. Ga. 2002); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of § 363(c)(1) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

32.     A centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticability of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 114 S. Ct. 1050 (1994); *see also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir. 1995) (cash management system allows debtors "to administer more efficiently and effectively their financial operations and assets").

33.     Accordingly, the Debtors seek authority to continue the collection, concentration, and disbursement of cash pursuant to their Cash Management System described above.

**B.      The Debtors' Ability to Satisfy Prepetition Credit Card Processing Fees and Related Expenses is Necessary to the Preservation of the Estates and Permissible Under**

### Sections 105, 363, 1107, and 1108 of the Bankruptcy Code

34.    Under certain circumstances it has been well-established that a debtor may pay certain prepetition claims in the performance of the debtor's fiduciary duty to preserve the estate and the business's going-concern value. *See, e.g., Miltenberger v. Logansport Ry.,* 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *In re CoServ,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (noting that "it is only logical that the bankruptcy court be able to use section 105(a) of the Code to authorize satisfaction of a prepetition claim in aid of preservation or enhancement of the estate").

35.    Bankruptcy Code § 1107(a) provides that a debtor-in-possession shall perform all the functions and duties as a trustee under the Bankruptcy Code. "Implicit in the duties of a Chapter 11 trustee or a debtor in possession as set out in Sections 1106 and 704 of the Bankruptcy Code is the duty to protect and preserve the estate, including an operating business's going-concern value." *In re CoServ,* 273 B.R. at 497. Courts have developed the "Doctrine of Necessity" (also known as the "Necessity of Payment Rule") for use in determining whether such payment of prepetition obligations is permissible. *See In re Just for Feet, Inc.,* 242 B.R. 821, 825-26 (D. Del. 1999) (developing and discussing the doctrine); *In re CoServ,* 273 B.R. at 491-93 (discussing the doctrine). The "fundamental purpose of reorganization is to prevent the debtor from going into liquidation, with an attendant loss of jobs." *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528 (1984).

36.    In *CoServ,* the Bankruptcy Court for the Northern District of Texas held that a debtor must demonstrate the following three elements in order to meet the "necessity" requirement: (1) it must be critical that the debtor deal with the claimant; (2) unless the debtor deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's

prepetition claim; (3) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.* at 498.

37. Maintenance of the Card Processing System, including by satisfying the credit card processing fees and related charges, including any pre-petition obligations on account thereof, meets each element of the *CoServ* court's standard. A majority of the Debtors' revenues are generated from credit and debit card sales and the Debtors cannot survive without the ability to process credit and debit card transactions. The Debtors therefore believe that they can only comply with their fiduciary duties as debtors in possession under Bankruptcy Code §§1107(a) and 1108 by having the authority, but not the direction, of this Court to maintain their Card Processing System, including by satisfying any outstanding pre-petition obligations on account of credit card processing fees and related charges.

38. Bankruptcy Code § 363(b), in conjunction with Bankruptcy Code §§ 1107 and 1108 is an alternative legal basis upon which courts have relied in authorizing the payment of prepetition obligations where a sound business purpose exists for doing so. Bankruptcy Code § 363(b) provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source of authority to make critical vendor payments, and section 105 is used to fill in the blanks."); *see also In re Ionoshpere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of pre-petition claims where the debtors "articulate some business justification, other than the mere appeasement of major creditors").

39. In light of the Debtors' need to maximize value for the benefit of all creditors, the relief requested herein is proper and should be granted. The success of the Debtors' Chapter 11 efforts is dependent upon – among other things – the ability to process customer credit and debit card transactions. In the Debtors' business judgment, the ability to pay fees relating to their Card Processing

System, including any related pre-petition amounts, is critical to the Debtors' successful prosecution of the Chapter 11 Cases. Any inability on the Debtors' part to continue to satisfy pre-petition obligations with respect to their Card Processing System would threaten the Debtors' ability to continue to accept credit cards, thereby disrupting customers' experience and potentially depriving the Debtors and their estates of significant revenue. Accordingly, the Debtors believe that the relief requested herein is warranted and a sound exercise of business judgment.

**C.    The Debtors' Bank Accounts are in Compliance With Section 345(b) of the Bankruptcy Code**

40.     Finally, Section 345(a) authorizes deposits or investments of money "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." Section 345(b) provides:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested –
>
> (1)    a bond –
>
>     (A)   in favor of the United States;
>
>     (B)   secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
>     (C)   conditioned on –
>
>         (i)     a proper accounting of all money so deposited or invested and for any return on such money;
>
>         (ii)    prompt repayment of such money and return; and
>
>         (iii)   faithful performance of duties as a depository; or
>
> (2)    the deposit of securities of the kind specified in section 9303 of title 31 unless the court for cause orders otherwise.

41.     As noted above, all of the Bank Accounts are with Capital One and JP Morgan Chase

and hold cash. Therefore, the Bank Accounts are in compliance with the security or bonding requirements prescribed by Section 345(b) of the Bankruptcy Code and no security or bonds are necessary to secure the funds in such accounts.

## D. Request for Waiver of Stay

42.     To the extent that the relief sought in the Motion constitutes a use of property under Bankruptcy Code § 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their business and preserve the value of the estates.

## VI.
## NOTICE

43.     Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed DIP Agent[2]; (vi) counsel for any official committees appointed by this Court; (vii) the consolidated list of the 30 largest unsecured creditors of the Debtors; and (viii) all governmental agencies having a regulatory or statutory interest in these cases (collectively, the "Notice Parties"). Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

**WHEREFORE,** the Debtors respectfully request that this Court enter an Order, substantially in the form attached as **Exhibit "C"** hereto (a) granting the Motion; and (b) awarding

---

[2]     "DIP Agent" means Goldman Sachs Special Lending Group, L.P., in its capacity as administrative agent under that certain [*Senior Secured Superpriority Debtor-in-Possession Financing Amendment*] dated as of [October __], 2020, by and among, among others, the Debtors, the DIP Agent, and the lenders party thereto.

the Debtors such other and further relief as this Court may deem just and proper.

DATED:  October 23, 2020              Respectfully submitted,

**LAW OFFICES OF FRANK J. WRIGHT, PLLC**


By:   */s/ Frank J. Wright*
           Frank J. Wright
           Texas Bar No. 22028800
           Jeffery M. Veteto
           Texas Bar No. 24098548
           Jay A. Ferguson
           Texas Bar No. 24094648

2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone:    (214) 935-9100
Emails:        frank@fjwright.law
               jeff@fjwright.law
               jay@fjwright.law

**PROPOSED COUNSEL TO DEBTORS
AND DEBTORS-IN-POSSESSION**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the parties listed below, on all parties consenting to electronic service of this case *via* the Court's *ECF system* for the Northern District of Texas and *via* United States Mail, first class postage prepaid, on October 24, 2020 on the Debtor's Top Thirty (30) Largest Unsecured Creditors.

U.S. Trustee
1100 Commerce St.
Room 976
Dallas, Texas 75242

               */s/ Frank J. Wright*
               Frank J. Wright

**EXHIBIT A**

Studio Movie Grill
List of All Bank Account by Debtor

| Number | Debtor Entity | Last Four Digits of Account Number | Bank Name | Account Types |
|---|---|---|---|---|
| 1 | Studio Movie Grill Holdings, LLC | 8769 | Capital One | Concentration |
| 2 | Studio Movie Grill Holdings, LLC | 7073 | Capital One | Controlled Disbursement |
| 3 | Studio Movie Grill Holdings, LLC | 0311 | Capital One | Payroll Disbursment |
| 4 | Studio Movie Grill Holdings, LLC | 4152 | Capital One | Credit Card Escrow |
| 5 | Studio Movie Grill Holdings, LLC | 7103 | Capital One | Marketing |
| 6 | Studio Movie Grill Holdings, LLC | 4069 | Capital One | Liquor License Account |
| 7 | Studio Movie Grill Holdings, LLC | 8205 | Capital One | Collateral Account |
| 8 | Studio Movie Grill Holdings, LLC | 9667 | JP Morgan Chase | Cash Depository |
| 9 | Studio Movie Grill Holdings, LLC | 2273 | JP Morgan Chase | Credit Card Escrow |
| 10 | Studio Movie Grill Holdings, LLC | 5698 | JP Morgan Chase | Credit Card Depository |
| 11 | Studio Movie Grill Holdings, LLC | 6787 | JP Morgan Chase | Concentration |
| 12 | Studio Movie Grill Holdings, LLC | 6969 | JP Morgan Chase | Trademark Depository |
| 13 | Studio Movie Grill Holdings, LLC | 7132 | JP Morgan Chase | Payroll Disbursment |
| 14 | Studio Movie Grill Holdings. LLC | 7561 | JP Morgan Chase | AP Disbursement |
| 15 | Studio Movie Grill Holdings, LLC | 3675 | Regions Bank | PPP Funds Depository |
| 16 | Movie Grill Concepts Trademark Holdings, LLC | 7763 | Capital One | Trademark Depository |
| 17 | OHAM Holdings, LLC | 8124 | Capital One | OHAM Depository |
| 18 | Movie Grill Concepts I, Ltd | 7081 | Capital One | Store Depository |
| 19 | Movie Grill Concepts III, Ltd | 7898 | Capital One | Store Depository |
| 20 | Movie Grill Concepts IV, Ltd | 7847 | Capital One | Store Depository |
| 21 | Movie Grill Concepts VI, Ltd | 7804 | Capital One | Store Depository |
| 22 | Movie Grill Concepts IX, LLC | 7006 | Capital One | Store Depository |
| 23 | Movie Grill Concepts VII, LLC | 6999 | Capital One | Store Depository |
| 24 | Movie Grill Concepts X, LLC | 8882 | Capital One | Store Depository |
| 25 | Movie Grill Concepts XII, LLC | 7973 | Capital One | Store Depository |
| 26 | Movie Grill Concepts XIII, LLC | 7887 | Capital One | Store Depository |
| 27 | Movie Grill Concepts XIV, LLC | 8549 | Capital One | Store Depository |
| 28 | Movie Grill Concepts XIX, LLC | 2672 | Capital One | Store Depository |
| 29 | Movie Grill Concepts XL, LLC | 8136 | Capital One | Store Depository |
| 30 | Movie Grill Concepts XLIV, LLC | 8945 | Capital One | Store Depository |
| 31 | Movie Grill Concepts XLV, LLC | 8154 | Capital One | Store Depository |
| 32 | Movie Grill Concepts XV, LLC | 2524 | Capital One | Store Depository |
| 33 | Movie Grill Concepts XV, LLC | 2605 | Capital One | Liquor License Account |
| 34 | Movie Grill Concepts XVI, LLC | 8557 | Capital One | Store Depository |
| 35 | Movie Grill Concepts XVII, LLC | 8948 | Capital One | Store Depository |
| 36 | Movie Grill Concepts XVIII, LLC | 4298 | Capital One | Store Depository |
| 37 | Movie Grill Concepts XX, LLC | 9984 | Capital One | Store Depository |
| 38 | Movie Grill Concepts XX, LLC | 4098 | Capital One | Store Depository |
| 39 | Movie Grill Concepts XXI, LLC | 4271 | Capital One | Store Depository |
| 40 | Movie Grill Concepts XXII, LLC | 3520 | Capital One | Store Depository |
| 41 | Movie Grill Concepts XXIII, LLC | 3350 | Capital One | Store Depository |
| 42 | Movie Grill Concepts XXIV, LLC | 9976 | Capital One | Store Depository |
| 43 | Movie Grill Concepts XXV, LLC | 3512 | Capital One | Store Depository |
| 44 | Movie Grill Concepts XXVI, LLC | 4077 | Capital One | Store Depository |
| 45 | Movie Grill Concepts XXVII, LLC | 2664 | Capital One | Store Depository |
| 46 | Movie Grill Concepts XXVIII, LLC | 0338 | Capital One | Store Depository |
| 47 | Movie Grill Concepts, XXX LLC | 4101 | Capital One | Store Depository |
| 48 | Movie Grill Concepts XXXI, LLC | 2983 | Capital One | Store Depository |
| 49 | Movie Grill Concepts XXXII, LLC | 8864 | Capital One | Store Depository |
| 50 | Movie Grill Concepts XXXVI, LLC | 4071 | Capital One | Store Depository |
| 51 | Movie Grill Concepts XXXVII, LLC | 2974 | Capital One | Store Depository |
| 52 | Movie Grill Concepts XXXVII, LLC | 2982 | Capital One | Store Depository |
| 53 | Movie Grill Concepts XXXVII, LLC | 4063 | Capital One | Store Depository |
| 54 | Movie Grill Concepts XXXVIII, LLC | 4055 | Capital One | Store Depository |

**Studio Movie Grill**
Credit Card Settlements Flowchart

KEY:

| 3rd Party | Bank transaction |
|---|---|
| **Output from 3rd party** | |

---

**Credit Card Settlement Data sent to Vantiv/Worldpay**
Worlpay processes the credit card transactions

**American Express Settlement Data**

**Discover/MC/Diner's Club Settlement Data**

**Sent to American Express**
3 days

**Processed through Worldpay**
1 day

**American Express Deposit**

**Vantiv Deposit**

**Credit Card settlement deposit to theater depositories at Capital One**

**Daily ZBA Sweeps to Concentration**

EXHIBIT
12

**Studio Movie Grill**
**Overview of Cash/Bank Flow**
**KEY:**

| Capital One and Chase Banks |
| Capital One Bank only |



| Bank Activity | | |
|---|---|---|
| Theater | Daily deposits → | **Depository Accounts** | Sweeps funds from this account → | **Concentration Account** |
| Payments to Outside Vendors and Employees | ← AP check, wires, and ACHs | **Controlled Disbursement** | ← Account funded for positive pay checks, wires and ACHs | |
| | ← Two bi-weekly cycles | **Payroll Disbursement** | ← Funds this account for positive pay checks and ACHs | |

| Depository Accounts | | Depository Accounts | |
|---|---|---|---|
| **Capital One*** | | **Capital One & Chase Bank**** | |
| 001 | Plano | 035 | Bakersfield |
| 003 | Arlington | 036 | Seminole |
| 004 | Copperfield | 038 | Marietta |
| 006 | City Centre | 137 | Downey |
| 007 | Lewisville | 237 | Monrovia |
| 009 | Royal | 337 | Redlands |
| 010 | Scottsdale | 998 | Depository |
| 012 | Holcomb Bridge | ** Chase Depository account; all store's deposits made | |
| 013 | Wheaton | into Chase account and swept to Capital One | |
| 014 | Duluth | Concentration each week. | |
| 015 | Epicentre | **Other Capital One Accounts** | |
| 016 | Spring Valley | Controlled Disbursement | |
| 017 | College Park | Payroll Disbursement | |
| 019 | Simi Valley | Concentration | |
| 020 | Rocklin | Vantiv Escrow | |
| 021 | NW Hwy | Liquor Account 1 | |
| 022 | Tyler | Liquor Account 2 | |
| 023 | Pearland | | |
| 024 | Tampa | | |
| 025 | Upper Darby | | |
| 026 | Chatham | | |
| 027 | The Colony | | |
| 028 | Colleyville | | |
| 031 | Lincoln Square | | |
| 999 | Trademark | | |

*Individual ZBA accounts; each store's deposits made into appropriate account and swept to concentration daily.

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. <u>20-32633-11</u> |
| | § | |
| **STUDIO MOVIE GRILL HOLDINGS, LLC,** | § | **Chapter 11** |
| *et al.*,1 | § | |
| DEBTOR. | § | **Joint Administration Requested** |

1    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("<u>SMG Holdings</u>"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); and Studio Club IV, LLC (9440).

EXHIBIT

tabbies®

C

**ORDER GRANTING MOTION FOR AUTHORIZATION ON (I) MAINTENANCE OF EXISTING BANK ACCOUNTS; (II) CONTINUANCE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, CHECKS AND RELATED FORMS; (III) CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (IV) LIMITED WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS; AND (V) GRANTING RELATED RELIEF**

Came on to be considered the Debtors' *Debtors' Emergency Motion Pursuant to Sections 105, 345, 364, 363, 503, 1107 and 1108, Authorizing (i) Maintenance of Existing Bank Accounts; (ii) Continuance of Existing Cash Management System, Bank Accounts and Checks and Related Forms; (iii) Continued Performance of Intercompany Transactions; (iv) Limited Waiver of Section 345(b) Deposit and Investment Requirements; and (v) Granting Related Relief* (the "Motion"). (the "Motion")[2]. Based on the specific facts and circumstances of this case and for the reasons stated on the record, which are incorporated herein, the Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the hearing, and after due deliberation thereon, there being found good and sufficient cause exists it is hereby

**ORDERED** that:

1.      The Motion is granted;

---

[2]      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

2.　　　The Debtors are authorized to (i) use the Cash Management System, (ii) maintain and continue using the Bank Accounts with the same account numbers, in existence on the Petition Date, including, without limitation, those accounts identified on Exhibits A and B of the Motion;

3.　　　The Debtors shall maintain records of all transfers within the Cash Management System, so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtors' books and records, to the same extent as maintained prior to the commencement of the Chapter 11 Cases;

## Cash Management System and Bank Accounts

4.　　　The Debtors, subject to the terms of the DIP Order (defined below) are authorized but not directed to (a) maintain and continue to use the Bank Accounts in the same manner and with the same account numbers, styles, and document forms as are currently employed, (b) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, automated clearinghouse ("ACH") transfers, drafts, electronic fund transfers, or other items presented, issued or drawn on the Bank Accounts, (c) pay and/or reimburse the Banks in the ordinary course of business for any claims arising prepetition or postpetition including ordinary-course bank fees, checks deposited which have been dishonored or re-turned for insufficient funds, and any reimbursement or other payment obligations such as overdrafts arising in connection with the Bank Accounts, (d) perform their obligations under the documents and agreements governing the Bank Accounts, and (e) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors-in-possession;

5.　　　The Debtors shall: (i) instruct their banks to add the designation, "Debtor-in-Possession" to their current and any future Accounts; (ii) treat the Accounts for all purposes as Accounts of the Debtors as Debtors-in-Possession; and (iii) maintain records that recognize the distinction between prepetition and postpetition transfers;

6.　　　Each of the Debtors' Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition

amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System;

7.      All banks provided with notice of this Order maintaining any of the Bank Accounts shall not honor any debit presented, issued, or drawn on any Bank Account on account of a claim arising prior to the Petition Date (a "Prepetition Debit") unless the payment of such claim (a) has been represented by the Debtors to have been authorized by an order of this Court, (b) has been directed by the Debtors and not otherwise prohibited by a "stop payment" request received by the relevant Bank from the Debtors, and (c) is supported by sufficient funds in the relevant Bank Account;

8.      Subject to the provisions of this Order, the Banks are authorized to rely on the representations of the Debtors as to which Debits are authorized to be honored or dishonored, whether or not such Debits are dated prior to, on, or subsequent to the Petition Date, and whether or not such bank believes the payment is authorized by an order of the Court. Any Banks are further authorized to (a) honor the Debtors' directions with respect to the opening, re-opening, and closing of any Bank Account, and (b) accept and hold the Debtors' funds in accordance with the Debtors' instructions; provided, in each case, that the Debtors' Banks shall not have any liability to any party for relying on such representations. To the extent that the Debtors direct that any Debit be dishonored, the Debtors may issue replacement Debits consistent with the orders of this Court. Such Banks shall not have any liability to any party for relying on such representations by the Debtors are provided herein;

9.      Notwithstanding any other provision of this Order to the contrary, no Bank that honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Order (a) at the direction or instruction of the Debtors or based on any representation of the Debtors as to any check or other item that may be honored, (b) in a good faith belief that the Court has authorized such prepetition or postpetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of reasonable item handling procedures, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order;

10.     Any existing Deposit Account Control Agreements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks. All of the provisions of such Deposit Account Control Agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect. Either the Debtors or the Banks may, without further Order of this Court, implement changes to the Cash Management System and procedures in the ordinary course of business pursuant to the terms of those certain existing Deposit Account Control Agreements, including, without limitation, the opening and closing of bank accounts (with notice of any such opening or closing of bank accounts to be provided by the Debtors to (a) the DIP Agent, seven (7)

calendar days prior to such opening or closing and (b) the Office of the U.S. Trustee within seven (7) days of such opening or closing); provided, however, that nothing contained herein shall constitute an assumption of the Deposit Account Control Agreements pursuant to section 365 of the Bankruptcy Code;

11. For accounts not subject to a Deposit Account Control Agreement, those certain existing deposit agreements between the Debtors and their existing depository and disbursement Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect. Either the Debtors or the Banks may, without further Order of this Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to terms of those certain existing deposit agreements, including, without limitation, the opening and closing of bank accounts (with notice of any such opening or closing of bank accounts to be provided by the Debtors to (a) the DIP Agent, seven (7) calendar days prior to such opening or closing and (b) the Office of the U.S. Trustee within seven (7) days of such opening or closing);

12. The Bank Accounts of each of the Debtors shall be only with the Debtor's existing banks (or such other bank acceptable to the DIP Agent);

13. In addition to the relief otherwise ordered or permitted by this Order, the Debtors are authorized, subject to the prior written consent of the DIP Agent, to implement such changes to the Cash Management System, as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional bank accounts wherever the Debtors deem that such accounts are needed or appropriate (the "New Accounts"), and whether or not the banks in which such New Accounts are opened are designated depositories on the United States Trustee approved list in the Northern District of Texas and all such New Accounts shall be deemed to be Bank Accounts; provided that (a) any New Account shall be (i) with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the Federal Deposit Insurance Corporation and (ii) designated a "Debtor in Possession" account by the relevant bank, and (b) the Debtors shall provide the U.S. Trustee with notice of any New Accounts or the closing of an existing Bank Account within seven (7) days. The Banks are authorized, subject to the prior written consent of the DIP Agent, to honor the Debtors' requests to open or close (as the case may be) such Bank Account(s) in the ordinary course of business and under the terms and in accordance with such Banks' contractual arrangements with the Debtors. The Debtors shall provide notice to the office of the U.S. Trustee within seven (7) days of any such opening or closing of a Bank Account. If upon receipt of notice of such New Accounts the U.S. Trustee advises the Debtors that such New Accounts are not Approved Depositories in the Northern District of Texas and/or the parties are not able to reasonably

resolve disputes, if any, regarding such New Accounts, the Debtors shall seek approval of the Court, subject to the prior written consent of the DIP Agent, pursuant to 11 U.S.C. § 345. To the extent the Debtors' Bank Accounts, including New Accounts, are not with designated depositories on the United States Trustee approved list in the Northern District of Texas, such accounts shall not hold more than $250,000 and shall be swept on a daily basis (other than an amount up to $5,000 that may be kept in each such Bank Account for overdraft protection) to a Bank Account that is with a designated depository on the United States Trustee approved list in the Northern District of Texas;

14. In the course of providing cash management services to the Debtors, any Bank, without further order of this Court, is authorized to (i) charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or after the Petition Date, in the ordinary course of business during the pendency of this Case;

15. The Debtors are authorized, but not required, to continue entering into, and performing under, the Intercompany Transactions, *provided*, that, for the avoidance of doubt, the Debtors shall not be authorized by this Order to (a) directly or indirectly, make any distribution on account of an equity interest in the Debtors held by such non-debtor affiliate or its beneficial owner, (b) directly or indirectly, undertake any other Intercompany Transaction that is not materially consistent with the Debtors' operation of the business in the ordinary course prior to the Petition Date, (c) pay amounts in respect of prepetition Intercompany Transactions, and (d) make any intercompany loans. The Debtors shall (a) continue to track Intercompany Transactions electronically through their accounting system in accordance with their prepetition practices and (b) provide access to such records and procedures to (i) counsel to the DIP Agent, (ii) counsel to any statutory committee that may be appointed in these chapter 11 cases, and (iii) upon request, to the U.S. Trustee.

16. Pursuant to section 364(b) of the Bankruptcy Code, any amounts in respect of any Intercompany Transactions owed by a Debtor to another Debtor arising after the Petition Date shall be accorded administrative expense priority status of the kind specified in sections 503(b) and 507(a) of the Bankruptcy Code junior, in all respects, to (a) the superpriority administrative expense claims granted under the DIP Order and (b) the adequate protection superpriority administrative expense claims granted under the DIP Order.

**Card Processing System**

17. The Debtors are authorized (but not directed) to continue their card processing system. The Debtors are accordingly authorized (but not directed)

to satisfy any outstanding pre-petition obligations on account of credit card processing fees, Chargebacks, and other related obligations;

## Waiver of U.S. Trustee Guidelines

18. The U.S. Trustee Guideline requiring that the Debtors close all existing Bank Accounts and open new debtor-in-possession accounts is waived to the extent provided herein;

19. The U.S. Trustee Guideline requiring that the Debtors open separate debtor-in-possession accounts for payroll is waived to the extent provided herein;

20. The U.S. Trustee Guidelines requiring that the Debtors open separate debtor-in-possession accounts for the payment of taxes and deposit to such specific tax accounts sufficient funds to pay any tax liability (when incurred) associated with the Debtors' payroll are waived to the extent provided herein;

21. The Debtors are authorized to continue using check stock in the forms existing immediately prior to the Petition Date. Any new checks generated during the pendency of the Chapter 11 Case other than from the Debtors' existing stock of checks, shall include a legend referring to the Debtors as "Debtors in Possession" and shall include the main bankruptcy case number;

22. The Debtors are authorized to use all correspondence and other business forms (including, without limitation, letterhead, purchase orders, and invoices) substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors-in-possession;

23. To the extent that the U.S. Trustee Guidelines otherwise conflict with any action taken by the Debtors in accordance with this Order or any other order entered in the Debtors' Chapter 11 Cases, including the DIP Order, such Guidelines are waived;

24. The Debtors' time to comply with Bankruptcy Code § 345(b) is hereby extended for a period of thirty days from the date of entry of this Interim Order (the "Extension Period"); provided, however, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period of the waiver requirements of Bankruptcy Code § 345(b) and the U.S. Trustee's right to seek relief with this Court to the extent that the Debtors do not comply with section 345(b) of the Bankruptcy Code within thirty days from the date of entry of this Interim Order;

25. For banks at which the Debtors hold bank accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtor's employer identification numbers, (c) identify each of its bank accounts held at such banks as being held by a debtor

in possession in a bankruptcy case, and (d) provide the main bankruptcy case number;

26.    For banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use its good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.;

## Other Orders

27.    To the extent necessary, the Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm;

28.    To the extent applicable, the requirements of Bankruptcy Rule 6004(a) are waived;

29.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof;

30.    Any objection to this Order must be filed within twenty-one (21) days after the date of the entry of this Order. If an objection is timely received from the U.S. Trustee, any creditor or party-in-interest, the Debtors shall request a hearing before the Court. If no objection is filed, the Order automatically becomes final;

31.    Nothing in this Order, nor as a result of any payment made pursuant to this Order, (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to Bankruptcy Code § 365 or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim;

32.    Notwithstanding anything to the contrary herein, nothing in this Order authorizes the use of cash collateral or debtor-in-possession financing. Any payments authorized to be made pursuant to the Motion shall be made only to the extent authorized under the cash collateral and debtor-in-possession financing order approved by the Court in effect as of the time such payment is to be made (together with any approved budgets in connection therewith, the "DIP Order"), and such payments shall be subject to the terms, conditions, limitations, and requirements of the DIP Order in all respects. Any Agent Consent (as defined in the DIP Order) or other consent or approval of the

DIP Agent given or requested in respect of any matters relating to this Order shall require approval of the Requisite Lenders (as defined in the DIP Order);

33. This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

**IT IS SO ORDERED**.

# # # End of Order # # #

**SUBMITTED BY:**

Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTORS
AND DEBTORS-IN-POSSESSION**