Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

PROPOSED COUNSEL TO DEBTOR
STUDIO MOVIE GRILL HOLDINGS, LLC

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-32633-11 |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, | § | Chapter 11 |
| et al.,[1] | § | |
| DEBTOR. | § | Joint Administration Requested |

## DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

**DEBTORS TO PAY CERTAIN PRE-PETITION TAXES AND ASSESSMENTS; AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS PURSUANT TO SECTIONS 105(a), 363(b), 365, 507(a)(8), AND 541(d) OF THE BANKRUPTCY CODE**

Studio Movie Grill Holdings, LLC and its debtor affiliates (the "Debtors" or "SMG"), by and through their proposed undersigned counsel, file this *Emergency Motion for Entry of an Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Assessments; and (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers Pursuant to Sections 105(a), 363(b), 365, 507(a)(8) and 541(d) of the Bankruptcy Code* (the "Motion"). In support of this Motion, the Debtors would respectfully show the Court as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief requested herein are Sections 105(a), 363(b), 365 507(a)(8) and 541(d) of Title 11 of the United States Code (the "Bankruptcy Code").

## II.
## BACKGROUND

2. On October 23, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), thereby initiating the above-captioned bankruptcy cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases. Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4. SMG is engaged in the dine-in movie theater business. In addition to its movie offerings, SMG's theaters include a bar and lounge area, with direct to seat service for guests before

and during their movies. Specifically, SMG operates 34 movies theaters in 9 states, including Arizona, California, Florida, Georgia, Illinois, North Carolina, Pennsylvania, Texas, and Virginia. All theaters operate under the brand name "Studio Movie Grill."

5. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Motion and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of William Snyder, CRO of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motion* (the "Snyder Declaration"), which was filed on the Petition Date and is incorporated by reference in this Motion.

## III.
## SUMMARY OF PRE-PETITION TAXES

6. In the ordinary course of business, the Debtors collect, remit, withhold, and pay certain sales and use taxes (the "Sales and Use Taxes"), property taxes (the "Property Taxes"), franchise and/or income taxes (the "Franchise and Income Taxes"), import and customs duties ("Import and Customs Duties"), and other taxes, including, without limitation, gross receipts, commercial activities taxes, business and operations taxes (the "Miscellaneous Taxes" and together with the Sales and Use Taxes, Property Taxes, Franchise/Income Taxes, and Import/Customs Duties the "Taxes") and/or fees ("Fees") owed or accrued prior to the Petition Date to the various taxing authorities and governmental regulatory bodies (collectively, the "Taxing Authorities"). The Taxes and Fees typically, but not exclusively, are remitted and paid through the Debtors or one of their authorized agents by check, credit card, and electronic transfers that are processed through their banks and other financial institutions or service providers. From time to time, the Debtors also receive tax credits for overpayments or refunds in respect of Taxes or Fees. The Debtors use these credits in the ordinary course of business to offset against future Taxes or Fees, or have such amounts refunded to the Debtors.

7. Certain Taxing Authorities require the Debtors to collect Sales and Use Taxes from

their customers. Additionally, the Debtors are required to pay, as a customer, Sales and Use Taxes based on a percentage of sales prices. Use Taxes typically arise if a supplier does not have business operations in the state in which it is supplying goods and, therefore, does not charge Sales Tax on goods that are otherwise taxable to the purchaser. The Debtors are required to remit Sales and Use Taxes to the applicable Taxing Authorities.

8. Property Taxes are assessed and become payable in the ordinary course of business and are calculated based on a statutorily-mandated percentage of property value (for both real and personal property). Generally, Property Taxes are due annually, and the timing of payment of Property Taxes varies from jurisdiction to jurisdiction.

9. The Debtors have Franchise and Income Tax obligations they must pay to various state authorities in jurisdictions where the Debtors operate or are authorized to do business. These taxes are assessed annually and are necessary to remain in good standing. In some jurisdictions, the Debtors remit estimated amounts in respect of Income Taxes, resulting in tax credits or overpayments that may be offset against future Income Taxes, or in certain circumstances may be refunded to the Debtors.

10. The Debtors have also in the ordinary course of their business entered into approximately thirty (30) sale tax agreements (the "Tax Agreements") with taxing authorities for the purpose of arranging payment of taxes due and owing. The Tax Agreement allow the Debtors to catch up on sales tax payments over periods ranging from 10 months to 36 months. The Tax Agreements benefit the estates and all parties-in-interest by increasing the Debtors' liquidity. The Debtors seek authority, but not direction, to continue payments under these Tax Agreements.

11. In the ordinary course of business, the Debtors are required to obtain certain licensing and permits from various jurisdictions in which they operate, which in include critical liquor licensure (the "Licensing and Permit Fees").

12. The Debtors use Baker Tilly Virchow Krause, LLP as its tax accountants and advisors

in the regular course of its business and incur certain scheduled fees for the work they perform.

13. The Debtors estimate that as of the Petition Date there are accrued and unpaid Taxes, Fees, and Tax Administrative Fees totaling $3,560,386.[2]

14. The amounts of the Taxes, Fees, and Tax Administrative Fees listed above are good faith estimates based on the Debtors' books and records and remain subject to potential audits and other adjustments. As such, the Debtors also seek authorization to pay any prepetition Taxes due and owing following audit and review.

## IV.
## RELIEF REQUESTED & BASIS FOR RELIEF

15. The Debtors request, pursuant to Sections 105(a), 363(b), 365, 507(a)(8), and 541(d) of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) the authority, but not direction, to pay certain pre-petition Taxes (as defined below) due and owing to the Taxing Authorities, including any Taxes determined owing post-petition for the period prior to the Petition Date, and authority, but not direction, to pay all accrued unpaid pre-petition administrative fees related thereto, and (ii) that the Court authorize applicable banks and financial institutions (collectively, the "Banks") to receive, honor, process, and pay all checks issued or to be issued and credit card or electronic funds transfers requested or to be requested relating to the above.

16. The Debtors request the entry of an order, substantially in the form attached to the motion as **Exhibit "A"**, (the "Order"). A non-exclusive list of the Taxing Authorities is annexed as **Exhibit "B"** (the "Taxing Authorities List") to the Order.

17. Ample cause exists to authorize the payment of the prepetition Taxes, including, among other things, that (i) the failure to pay the prepetition Taxes may interfere with the Debtors' continued

---

[2] Note., the Debtors have 2020 property taxes for which they have not received bills that are not included in this figure.

operations and successful reorganization; (ii) funds representing certain of the unremitted pre-petition Taxes may not be property of the Debtors' estates; (iii) the failure to pay pre-petition Property Taxes may increase the scope of secured and priority claims held by the applicable Taxing Authorities against the Debtors' estates; (iv) the payment of pre-petition Taxes affects only the timing of payments as most, if not all, of the Taxes are afforded priority or secured status under the Bankruptcy Code; and (v) the Court has authority to grant the requested relief under Sections 105(a) and 363(b) of the Bankruptcy Code, and payment of the prepetition Taxes is a valid exercise of the Debtors' fiduciary duties pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

### A. Failure to Pay the Prepetition Taxes May Interfere with the Debtors' Continued Operations and Successful Reorganization Effort

18. The Debtors seek authorization, but not direction, to pay the pre-petition Taxes to ensure continued, uninterrupted operation of their business. Nonpayment of these obligations may cause Taxing Authorities to take precipitous action, including, but not limited to, asserting liens, preventing the Debtors from conducting business in the applicable jurisdictions, or seeking to lift the automatic stay, which would disrupt the Debtors' day-to-day operations and could potentially impose significant costs on the Debtors' estates. Failure to satisfy the prepetition Taxes may jeopardize the Debtors' maintenance of good standing to operate in the jurisdictions in which they do business.

19. To the extent that any prepetition Taxes remain unpaid by the Debtors, certain of the Debtors' officers and directors may be subject to lawsuits or criminal prosecution during the pendency of these Chapter 11 Cases. The dedicated and active participation of the Debtors' directors, officers and other employees is not only integral to the Debtors' continued, uninterrupted operations, but also essential to the orderly administration of these Chapter 11 Cases. The threat of a lawsuit or criminal prosecution, and any ensuing liability, would distract the Debtors and their personnel from important tasks, to the detriment of all parties in interest.

### B. Certain of the Prepetition Taxes May Not Be Property of the Debtors' Estates

20. The Debtors submit that funds representing some of the prepetition Taxes, including the Sales Taxes and certain value-added, goods and services, and withholding taxes, may constitute "trust fund" taxes, which the Debtors are required to collect and/or hold in trust for payment to the Taxing Authorities. Section 541(d) of the Bankruptcy Code provides, in relevant part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

21. To the extent the Debtors have collected or hold taxes in trust for payment to the Taxing Authorities, such funds may not constitute property of the Debtors' estates. *See, e.g., Begier v. IRS*, 496 U.S. 53, 60–62 (1990) (holding that excise and withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate); *Al Copeland Enters., Inc. v. Texas*, 991 F.2d 233, 235 (5th Cir. 1993) (stating that a debtor holds state sales tax revenues in trust for the state); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."); *Tex. Comptroller of Pub. Accts. v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.)*, 163 F.3d 1063, 1067–68 (9th Cir. 1988) (under Texas law, state sales taxes collected created statutory trust fund, if traceable, and were not property of the estate). The Debtors, therefore, generally do not have an equitable interest in such funds and should be permitted to pay those funds to the Taxing Authorities as they become due.

## C. Failure to Pay Prepetition Taxes May Increase the Scope of Secured and Priority Claims Held by the Taxing Authorities

22. The Debtors' failure to pay certain Taxes may increase the total amount of secured claims held by Taxing Authorities against the Debtors' estates, as Taxing Authorities may assert liens against real and personal property for which these Taxes are due and owing. Furthermore, the postpetition creation and perfection of certain of these liens may not be subject to the automatic stay. *See*

§§ 362(b)(3), (18). Thus, nonpayment of certain Taxes may inadvertently allow the creation and perfection of additional liens on the Debtors' assets during these Chapter 11 Cases.

23. Moreover, to the extent the Taxing Authorities hold over-secured claims, if the prepetition Taxes are not paid, post-petition interest, fees, penalties and other charges may accrue. *See* 11 U.S.C. § 506(b); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–43 (1989) (holding that nonconsensual lienholders may receive interest on their claims under § 506(b)). Even if these Taxes are not treated as secured claims, they may still, as discussed below, be entitled to priority treatment pursuant to the Bankruptcy Code – as may any penalties assessed by the applicable Taxing Authorities on delinquent taxes owed by the Debtors. *See* § 507(a)(8). The Debtors' failure to pay the prepetition Taxes may increase the amount of the secured or priority claims held by the Taxing Authorities against the Debtors' estates.

24. Paying the prepetition Taxes will avoid the imposition of liens and the accrual of interest charges and unnecessary fees and penalties on such claims, thereby preserving the value of the Debtors' estates and maximizing the distribution available for other creditors. Therefore, the Court should authorize the Debtors to pay prepetition Taxes because payment will benefit the estates' creditors and other parties-in-interest.

D. **Paying the Prepetition Taxes Will Affect Only the Timing of Payments**

24. Most, if not all, of the Taxes described herein are afforded priority status pursuant to Section 507(a)(8) of the Bankruptcy Code. Courts have authorized early payment of priority claims when such early payment is intended to prevent some harm or to procure some benefit for the estate. *See, e.g., In re CEI Roofing, Inc.*, 315 B.R. 50, 60–61 (Bankr. N.D. Tex. 2004) (finding that authorization of early payment of priority claims does not trigger concerns of either upsetting priority scheme of Bankruptcy Code or of unfair discrimination); *In re CoServ, L.L.C.*, 273 B.R. 487, 493 (Bankr. N.D. Tex. 2002) (implying the bankruptcy court may authorize early payment of prepetition priority claims

in instances where nonpayment could impair debtor's ability to operate); *Equalnet Commc'ns Corp.*, 258 B.R. at 370 (stating that the court may authorize pre-plan payment of priority claims, because "the need to pay these claims in an ordinary course of business time frame is simple common sense").

25. To the extent the prepetition Taxes are priority claims, they must be paid in full before any general unsecured obligations of the Debtors may be satisfied. The Debtors submit that sufficient assets exist to pay certain of the prepetition Taxes. Accordingly, the proposed relief will affect only the timing of payment of the prepetition Taxes and will not prejudice the rights of any general unsecured creditor or other party-in-interest. The Court, therefore, should grant the Debtors the authority to pay prepetition Taxes in the ordinary course.

E. **The Court has Authority to Grant the Requested Relief Under Sections 363(b) and 105(a) of the Bankruptcy Code, and Payment of Prepetition Taxes is a Valid Exercise of the Debtors' Fiduciary Duties Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code**

26. The Court may grant the relief requested herein pursuant to 363(b), which provides, in pertinent part, that "[t]he [debtor-in-possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." § 363(b)(1). Courts have long recognized that, where a sound business justification can be articulated, payment of prepetition claims under Section 363(b) is permitted. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (holding that § 363(b) gives a bankruptcy court "broad flexibility" to authorize a debtor to expend funds on account of prepetition claims if there is "some business justification" to justify payment).

27. The Court may also grant the requested relief pursuant to its equitable powers under Section 105(a), which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Courts generally recognize that payments to prepetition creditors are appropriate pursuant Section 105 under the "doctrine of necessity" or the "necessity of payment" rule, where such payments are necessary to the continued

operation of the debtor's business. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."); *see also In re Matter of Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to the continued operation of the debtor). Indeed, a bankruptcy court's use of its equitable powers under the "doctrine of necessity" to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 130 years ago in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Courts today continue to recognize that the rationale for the "doctrine of necessity" is consistent with the "paramount goal" of Chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176.

28. In addition, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, debtors-in-possession are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of creditors. . . ." *In re CoServ*, 273 B.R. at 497. Implicit in the duties of a Chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.* Courts have noted that there are instances in which a debtor-in-possession may fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*; *see also In re Mirant Corp.*, 296 B.R. 427, 429–30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the *CoServ* test or whose payment was necessary "in the exercise of their business judgment . . . in order for [the d]ebtors to continue their respective businesses"). This Court in *CoServ* noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial

enhancement of the estate." *In re CoServ*, 273 B.R. at 497. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.* at 498.

29. Payment of the prepetition Taxes in this instance meets each element of the *CoServ* test. Accordingly, pursuant to Sections 105(a), 363(b), 1107(a), and 1108, this Court is empowered to grant the relief requested herein and such relief is necessary, in the Debtors' discretion and business judgment, in order to prevent damage to the Debtors' businesses.

30. The Debtors submit that payment of the prepetition Taxes is an exercise of sound business judgment and necessary to permit a successful reorganization, as the Debtors' satisfaction of the prepetition Taxes is necessary to avoid the obstacles to a smooth transition through these Chapter 11 Cases and additional expenses such as interest, fees, and penalties. Significant disruptions of the Debtors' operations of the types described above threaten to irreparably impair the Debtors' ability to conduct a successful reorganization process and thereby maximize the value of the Debtors' estates for the benefit of creditors.

31. In fact, bankruptcy courts in this jurisdiction have entered orders granting relief similar to the relief requested herein. *See, e.g., In re The LaSalle Grp., Inc.*, Case No. 19-31484 (SGJ) (Bankr. N.D. Tex. May 21, 2019) (Docket No. 89); *In re PHI, Inc.*, Case No. 19-30923 (HDH) (Bankr. N.D. Tex. April 17, 2019) (Docket No. 275); *In re Erickson Inc.*, Case No. 1634393 (HDH) (Bankr. N.D. Tex. Dec. 2, 2016) (Docket No. 126); *In re Forest Park Med. Ctr. at Southlake, LLC*, Case No. 16-40273 (RFN) (Bankr. N.D. Tex. Feb. 2, 2016) (Docket No. 74). The present circumstances warrant similar relief in these Chapter 11 Cases.

### F. Banks Should be Authorized to Receive, Process, Honor, and Pay all Payments Issued and Transfers Requested to Pay the Prepetition Taxes

32. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, anticipated access to cash collateral, and post-petition DIP financing. Also, under the Debtors' existing cash management system, the Debtors can readily identify checks, credit card payments, wire transfer requests, and electronic funds transfers relating to an authorized payment made with respect to the Taxes.

33. Accordingly, the Debtors believe that checks, credit card payments, and/or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that this Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all payment requests in respect of the relief requested herein.

### H. Request for Waiver of Bankruptcy Rules 6004(a) and 6004(h)

34. Given the nature of the relief requested, the Debtors respectfully request a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a); and (ii) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable hereto.

### I. Reservation of Rights

35. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code Section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## V.
## NOTICE

36. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed DIP Agent;[3] (vi) counsel for any official committees appointed by this Court; (vii) the consolidated list of the 30 largest unsecured creditors of the Debtors; and (viii) all governmental agencies having a regulatory or statutory interest in these cases (collectively, the "Notice Parties"). Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) granting the relief requested in this Motion authorizing Debtors to pay the described Prepetition Taxes and Assessments and authorizing Banks to honor and process related checks and transfers; and (ii) granting such other relief as the Court deems just and proper.

DATED: October 23, 2020

Respectfully submitted,

**LAW OFFICES OF FRANK J. WRIGHT, PLLC**

By: _/s/ Frank J. Wright_
Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648

2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100
**PROPOSED COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION**

---

[3] DIP Agent" means Goldman Sachs Special Lending Group, L.P., in its capacity as administrative agent under that certain [*Senior Secured Superpriority Debtor-in-Possession Financing Amendment*] dated as of [October __], 2020, by and among, among others, the Debtors, the DIP Agent, and the lenders party thereto.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the parties listed below, on all parties consenting to electronic service of this case *via* the Court's *ECF system* for the Northern District of Texas and *via* United States Mail, first class postage prepaid, on October 24, 2020 on the Debtor's Top Thirty (30) Largest Unsecured Creditors.

U.S. Trustee
1100 Commerce St.
Room 976
Dallas, Texas 75242

                                                                      */s/ Frank J. Wright*
                                                                      Frank J. Wright

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-32633-11 |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, | § | Chapter 11 |
| et al.,1 | § | |
| DEBTOR. | § | Joint Administration Requested |

---

1    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); and Studio Club IV, LLC (9440).

EXHIBIT "A"

## ORDER GRANTING MOTION (I) AUTHORIZING DEBTORS TO PAY CERTAIN PRE-PETITION TAXES AND ASSESSMENTS; AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS PURSUANT TO SECTIONS 105(a), 363(b), 365, 507(a)(8), AND 541(d) OF THE BANKRUPTCY CODE

Came on to be considered the Debtors' *Emergency Motion for Entry of an Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Assessments; and (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers Pursuant to Sections 105(a), 363(b), 365, 507(a)(8) and 541(d) of the Bankruptcy Code* (the "Motion"[2]). Based on the specific facts and circumstances of this case and for the reasons stated on the record, which are incorporated herein, the Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the hearing, and after due deliberation thereon, there being found good and sufficient cause exists it is hereby

**ORDERED** that:

1. The Motion is granted;

2. The Debtors are authorized but not directed, in the Debtors' sole discretion, to (i) pay the Pre-Petition Tax Obligations as described in the Motion; and (ii) pay Taxes and Fees that arise or accrue in the ordinary course of business on

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

a post-petition basis and that are due to taxing authorities listed in **Exhibit "A"** to the Motion consistent with prepetition practices;

3. To the extent that the Debtors have overpaid any Taxes and Fees, the Debtors are authorized to seek a refund or credit thereof.;

4. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute: (i) an admission as to the validity or priority of any claim or lien against the Debtors; (ii) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds; (iii) a promise or requirement to pay any pre-petition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in the Motion or this Order; (v) a request or authorization to assume any prepetition agreement, contract or lease pursuant to Section 365 of the Bankruptcy Code, except as set forth in the Motion; or (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

5. Notwithstanding anything to the contrary herein, nothing in this Order authorizes the use of cash collateral or debtor-in-possession financing. Any payments authorized to be made pursuant to the Motion shall be made only to the extent authorized under the cash collateral and debtor-in-possession financing order approved by the Court in effect as of the time such payment is to be made (together with any approved budgets in connection therewith, the "DIP Order"), and such payments shall be subject to the terms, conditions, limitations, and requirements of the DIP Order in all respects. Any Agent Consent (as defined in the DIP Order) or other consent or approval of the DIP Agent given or requested in respect of any matters relating to this Order shall require approval of the Requisite Lenders (as defined in the DIP Order);

6. Notwithstanding anything else in this Order to the contrary, any payments authorized to be made by this Order shall be subject to the terms, conditions, limitations, and restrictions set forth in that certain *Order Granting Debtors' Emergency Motion Pursuant to Sections 105, 345, 364, 363, 503, 1107 and 1108, Authorizing (i) Maintenance of Existing Bank Accounts; (ii) Continuance of Existing Cash Management System, Bank Accounts and Checks and Related Forms; (iii) Continued Performance of Intercompany Transactions; (iv) Limited Waiver of Section 345(b) Deposit and Investment Requirements; and (v) Granting Related Relief;*

7. The banks and financial institutions on which checks were drawn in payment of prepetition amounts to the Taxing Authorities are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, or after, the Petition Dates, provided that the Debtors have sufficient funds on deposit to cover such payments.

8. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**IT IS SO ORDERED.**

# # # End of Order # # #

SUBMITTED BY:

Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTORS
AND DEBTORS-IN-POSSESSION**

| |
|---|
| ARIZONA DEPT OF REVENUE |
| CALIFORNIA DEPT OF REVENUE |
| CITY OF CHICAGO DEPT OF REVENUE |
| CITY OF HAMPTON |
| CITY OF HAMPTON |
| CITY OF MARIETTA |
| CITY OF ROSWELL |
| COBB COUNTY TAX COMMISSIONER |
| COLLIN COUNTY TAX AND COLLECTOR |
| COOK COUNTY DEPT OF REVENUE |
| CYPRESS-FAIRBANKS ISD |
| DENTON COUNTY ASSESSOR COLLECTOR |
| FLORIDA DEPT OF REVENUE |
| FULTON COUNTY TAX COMMISSIONER |
| GEORGIA DEPT OF REVENUE/TAXPAYER SVC DIV |
| GRAPEVINE COLLEYVILLE AREA TAX OFFICE |
| GWINNETT COUNTY TAX COMMISSIONER |
| HARRIS CO MUD #381 |
| HARRIS COUNTY MUD 179 |
| HARRIS COUNTY MUD 179 |
| HARRIS COUNTY TAX ASSESSOR COLLECTOR |
| HARRIS COUNTY WCID #145 |
| HILLSBOROUGH COUNTY TAX COLLECTOR |
| ILLINOIS DEPT OF REVENUE |
| INDIANA DEPT OF REVENUE |
| IRS COMBINED ANNUAL WAGES |
| JOHN R AMES, CTA |
| KERN COUNTY TAX COLLECTOR |
| LOS ANGELES COUNTY TAX COLLECTOR |
| MARICOPA COUNTY TREASURER |
| MARION COUNTY TREASURER |
| MECKLENBURG CNTY TAX COLLECTOR |
| NC DEPT OF REVENUE |
| PENN TOWN CENTER |
| PENNSYLVANIA DEPT OF REVENUE |
| PINELLAS COUNTY TAX COLLECTOR |
| PLACER COUNTY TAX COLLECTOR |
| RICHARDSON ISD TAX OFFICE |
| SAN BERNARDINO COUNTY |
| SAN BERNARDINO TAX COLLECTOR |
| SMITH CO TAX OFFICE |
| SPRING BRANCH ISD |
| STATE COMPTROLLER-TEXAS |
| STATE OF VIRGINIA |
| VENTURA CO TAX COLLECTOR |
| WENDY BURGESS, TAX ASSESSORCOLLECTOR |



EXHIBIT "B"