Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

PROPOSED COUNSEL TO DEBTOR
STUDIO MOVIE GRILL HOLDINGS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-32633-11 |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, | § | Chapter 11 |
| *et al.*,[1] | § | |
| DEBTOR. | § | Joint Administration Requested |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING POST-PETITION REDEMPTION AND HONOR OF PRE-PETITION (I) GIFT CARDS; (II) CUSTOMER LOYALTY PROGRAM; (III) MEMBERSHIP PROGRAM; (IV) GROUPON SALES; (V) GOLD TICKET COUPONS; AND (VI) ADVANCED TICKET SALES**

Studio Movie Grill Holdings, LLC and its debtor affiliates (the "Debtors" or "SMG"), by and through their proposed undersigned counsel, file this *Emergency Motion for Order Authorizing Post-Petition Redemption and Honor of Pre-Petition (I) Gift Cards; (II) Customer Loyalty Program; (III) Membership Program; (IV) Groupon Sales; (V) Gold Ticket Coupons; and (VI) Advanced Ticket Sales* (the "Motion"), seeking the entry of an order authorizing and enabling the Debtors' to continue to honor the redemption of existing gift cards, advanced sales, and other customer loyalty programs. In support of this Motion, the Debtors would respectfully show the Court as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief requested herein are Sections 105(a) and 507(a)(7) of Title 11 of the United States Code (the "Bankruptcy Code").

## II.
## BACKGROUND

2. On October 23, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), thereby initiating the above-captioned bankruptcy cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases. Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4. SMG is engaged in the dine-in movie theater business. In addition to its movie offerings, SMG's theaters include a bar and lounge area, with direct to seat service for guests before and during their movies. Specifically, SMG operates 33 movies theaters in 10 states, including Arizona, California, Florida, Georgia, Illinois, Indiana, North Carolina, Pennsylvania, Texas, and Virginia. All theaters operate under the brand name "Studio Movie Grill."

5. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Motion and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of William Snyder, CRO of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motion* (the "Snyder Declaration"), which was filed on the Petition Date and is incorporated by reference in this Motion.

### III.
### SUMMARY OF ADVANCED SALES & CUSTOMER PROGRAMS

6. In the ordinary course of their business, the Debtors obtain ticket sales and revenue through a variety of sources that are common to the movie theater and other customer-facing industries, including (a) gift cards; (b) the SMG Access Loyalty Program; (c) the SMG Access Subscription; (d) Groupon; (e) Gold Tickets; and (f) advanced ticket sales.

**A.    Gift Cards**

7. Like most major American businesses, SMG sells "Studio Movie Grill" branded gift cards that are redeemable at any SMG location across the nation. Gift cards are sold directly to customers at the theaters, online, and at third-party retailers, such as Sam's Club. Gift card balances may be used for ticket purchases as well as food and beverage purchases.

8. Through August 2020, there are approximately 696,189 gift cards outstanding with

an approximate total balance of $6,680,664.34 thereon. This estimate does not include SMG's estimated gift card breakage of approximately $3.8 million.

**B.    The SMG Access Loyalty Program**

9.    The SMG Access Loyalty Program (the "Loyalty Program") is a two-level loyalty program that aims to reward customers for their repeat business and incentive continuation of such behavior. The Loyalty Program is not movie theater specific, but instead operates across all locations. The Debtors' believe that the Loyalty Program aids its operations by through net-positive revenue effects.

10.    Through August 2020, there is approximately -$38,000 of net deferred revenue resulting from outstanding Loyalty Program collections. In addition, there are approximately 99,264,756 customer loyalty points outstanding, which may be redeemed by customers but do not have a fixed dollar value per point; different redemption selections yield different valuations, but it is untenable to estimate a true outstanding exposure on these points. A summary of the Loyalty Program is attached as **Exhibit "A"** hereto.

**C.    The SMG Access Subscription**

11.    The SMG Access Subscription (the "Subscription") is a two-level membership program that aims to increase attendance by customers. At the Select Access level of the Subscription, customers may access one (1) movie ticket per month for a recurring fee of $8.99 per month. Such tickets do not accrue and cannot be banked if unused in the specific Subscription month. At the Premier Access level of the Subscription, customers may access unlimited movies per month for a recurring fee of $18.99 per month. The Subscription currently has 722,585 overall subscribers with 324,062 of those being active in the last twelve (12) months.

12.    Billing on the Subscription was paused during the pandemic and has seen limited use thereafter. In August only 118 tickets were redeemed by subscribers; in September only 126 tickets were redeemed by subscribers. Based on the format of the Subscription, there is no accrued

exposure on the books of SMG.

13. A summary of the Subscription is attached as **Exhibit "B"** hereto.

**D. Groupon**

14. The Debtors also sell movie tickets at a discounted rate through Groupon. These "Groupons" are note associated to a specific location and, depending on the offering, may be redeemable at all SMG locations or in a particular region (*e.g.*, Dallas-Fort Worth or Houston Area). All SMG Groupon promotion values have expired, as the last programs were implemented in December 2019 and January 2020; however, the original purchase price of the Groupon (*e.g.*, $5.00, $7.00, $10.00) never expires. Customers who purchase a Groupon may still present it at the box office and get the purchase price amount deducted from their ticket price. Groupons are only valid for ticket purchases.

15. As of August 2020, there is approximately -$372,493.46 of deferred revenue resulting from outstanding Groupons.

**E. Gold Tickets**

16. Gold Tickets are offered by the Debtors to charitable organizations to sell in fundraising campaigns. The Gold Tickets are issued as discounted rate coupons that may be redeemed for movie tickets. Gold Tickets do not expire.

17. As of August 2020, there is approximately -$187,932.20 of deferred revenue resulting from outstanding Gold Tickets.

**F. Advanced Ticket Sales**

18. Advanced Ticket Sales are the most common and ongoing ticket offering from the Debtors. Advanced Ticket Sales occur whenever a customer buys a ticket in advance for a future showtime. This may be accomplished directly through the SMG website or third-party ticket servicers such as Atom and Fandango. SMG's Advanced Ticket Sales include tickets sold for special events and entire auditorium bookings that were offered as a means to generate additional revenue

within the imposed pandemic restrictions.

## IV.
## RELIEF REQUESTED & BASIS FOR RELIEF

19. The Debtors seek authority, in their sound business judgment, to (i) continue to honor the redemption of existing gift cards, advanced sales, and other customer loyalty programs. The Debtors are engaged in a highly competitive industry that depends, in whole or in part, on a market-participant's ability to not only retain existing customers but to attract new ones. If the Debtors are not allowed to honor their outstanding gift cards, advanced sales, and other customer loyalty programs, then there will likely be irreparable damage to the Debtors' customer relations and reputation. Such irreparably damage is further likely to significantly hinder the Debtors' ability to successfully reorganize. Accordingly, the Debtors believe that it is essential that they be allowed to honor all such pre-petition obligations as identified herein after the Petition Date when necessary and consistent with their ordinary business practices.

20. The relief requested herein is justified because holders of the gift cards, Groupons, Gold Tickets, and advanced tickets, and the participants in the Loyalty Program and Subscription (collectively hereinafter the "<u>Customer Programs</u>") are each entitled to a priority claim under Section 507(a)(7) of the Bankruptcy Code. Section 507(a)(7) allows a seventh priority "to the extent of $3,025.00 for each such individual, arising from a deposit, before the commencement of a case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided." 11 U.S.C. § 507(a)(7). The legislative history of Section 507(a)(7)[2] states that this section was added to the Bankruptcy Code to deal with the "problems faced by consumers who have deposited money with retail businesses for the purchase of goods and services." *In re Glass*, 203 B.R. 61, 63 (Bankr.

---

[2] The 2005 amendments to the Bankruptcy Code changed, among other things, the numbering in section 507(a). Before the amendments, deposits were treated under section 507(a)(6). After the amendments, deposits are treated under section 507(a)(7). There were no other changes to section 507(a)(6) by the amendments.

W.D. Va. 1996) (citing H.R. Rep. No. 595, at 188 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6148. Furthermore, according to this legislative history, money paid "on a lay-away plan or as a deposit on merchandise, or [for] . . . a service contract or a contract for lessons or a gym membership" is covered by section 507(a)(7). *Id.*

21. The following cases support the classification of each of the Customer Programs as "deposits" under Section 507(a)(7) of the Bankruptcy Code. First, money paid in advance by consumers to a furniture retailer for the purchase of an extended warranty contract was held to be a "deposit" when the furniture store later went bankrupt. *In re Tart's T.V., Furniture and Appliance Co.*, 165 B.R. 171, 172-73 (Bankr. E.D. N.C. 1994). The *Tart* court held that both partial and full payments for the purchase of services to be delivered in the future were "deposits." *Id.* Second, advance-tuition payments to a vocational school were "deposits" because the students made the payments before all services were rendered. *In re Longo*, 144 B.R. 305, 312 (Bankr. D. Md. 1992). Third, money paid to a manufacturer for the purchase of chocolate-making equipment was a "deposit" because the equipment was never delivered to the consumer. *In re Elsinghorst Bros. Co., Inc.*, 180 B.R. 52, 53 (Bankr. W.D. N.Y. 1995). Finally, money paid by a consumer-tenant as security for the leasehold interest was a "deposit" even though some tenants had already vacated the property. *Guarracino v. Hoffman*, 246 B.R. 130, 134 (D. Mass. 2000); *In re River Village Assoc.*, 161 B.R. 127, 134 (Bankr. E.D. Pa. 1993).

22. The Customer Programs are expressly covered by Section 507(a)(7). Gift cards, Groupons, Gold Tickets, and advanced tickets are similar to those deposits because they were all paid to secure the future delivery of goods or services. The Loyalty Program and Subscription are also similar to those deposits because they were used to secure the future delivery of goods or services. Like those other types of deposits noted above, the Customer Programs are entitled to priority treatment under section 507(a)(7). Most, if not all, of the persons involved in the Customer

Programs do not exceed the priority cap of $3,025 in Section 507(a)(7) of the Bankruptcy Code. To the extent any such holder or participant in the Customer Programs does exceed the statutory cap, the continued honoring of their respective pre-petition obligation is justified under the "doctrine of necessity."

23. Section 105 of the Bankruptcy Code has been used to authorize the satisfaction of pre-petition obligations where such satisfaction is necessary to affect a successful reorganization. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D. N.Y. 1989); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[A] court can permit pre-plan payment of prepetition obligations when essential to the continued operation of the debtor."). Most courts utilize the "doctrine of necessity" to determine whether an order to satisfy pre-petition claims pursuant to section 105(a) may be issued. *See Ionosphere Clubs*, 98 B.R. at 176; *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987). Under the doctrine of necessity, the satisfaction of prepetition claims may be authorized where such satisfaction would be essential to the continued operation of the debtor. *Ionosphere Clubs*, 98 B.R. at 176.3

24. Several bankruptcy courts have used Section 105(a) to authorize post-petition payment of pre-petition obligations such as the ones addressed herein. *See In re Daisytek, Incorporated*, Case 03-34762, Docket No. 51 (Bankr. N.D. Tex. May 13, 2003); *In re Brandlees Stores, Inc.*, Case 00-16035, Docket No. 29 (Bankr. S.D.N.Y. Dec. 26, 2000); *In re Loehmann's Inc.*, Case No. 99-1138, Docket No. 41 (Bankr. D. Del. May 19, 1999).

25. For those reasons, relief requested herein does not harm the general unsecured

---

[3] Although the "necessity-of-payment" doctrine has been widely accepted, the Court in *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) used an alternative test to determine whether payment of certain pre-petition unsecured claims prior to confirmation of a plan of reorganization would be appropriate. Under the *CoServ* test, a debtor must show (a) it is critical that the debtor deal with the claimant; (b) unless the debtor deals with the claimant, the debtor risks the probability of harm or, alternatively, loss of economic advantage to the estate of the debtor's going-concern value, which is disproportionate to the amount of the claimant's pre-petition claim; and (c) that there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.*

creditors of the Debtors' estates. Instead, while avoiding the certain damage to Debtors' reputation and the concomitant reduction in revenue, the relief requested herein only affects the timing of payment for the claims related to the Customer Programs. Accordingly, this Court should grant the Motion.

## V.
## NOTICE

26. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed DIP Agent;[4] (vi) counsel for any official committees appointed by this Court; (vii) the consolidated list of the 30 largest unsecured creditors of the Debtors; and (viii) all governmental agencies having a regulatory or statutory interest in these cases (collectively, the "Notice Parties"). Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit "C"** (i) granting the relief requested in this Motion authorizing and enabling the Debtors' to continue to honor the redemption of existing gift cards, advanced sales, and other customer loyalty programs; and (ii) granting such other relief as the Court deems just and proper.

---

[4] "DIP Agent" means Goldman Sachs Special Lending Group, L.P., in its capacity as administrative agent under that certain [*Senior Secured Superpriority Debtor-in-Possession Financing Amendment*] dated as of [October __], 2020, by and among, among others, the Debtors, the DIP Agent, and the lenders party thereto.

DATED: October 23, 2020            Respectfully submitted,

**LAW OFFICES OF FRANK J. WRIGHT, PLLC**

By:    */s/ Frank J. Wright*
       Frank J. Wright
       Texas Bar No. 22028800
       Jeffery M. Veteto
       Texas Bar No. 24098548
       Jay A. Ferguson
       Texas Bar No. 24094648

2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100
**PROPOSED COUNSEL TO DEBTOR
AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the parties listed below, on all parties consenting to electronic service of this case *via* the Court's *ECF system* for the Northern District of Texas and *via* United States Mail, first class postage prepaid, on October 24, 2020 on the Debtor's Top Thirty (30) Largest Unsecured Creditors.

U.S. Trustee
1100 Commerce St.
Room 976
Dallas, Texas 75242

                                                 */s/ Frank J. Wright*
                                                   Frank J. Wright

**STUDIO MOVIE GRILL** — Join SMG Access®

|  | CAST | DIRECTOR |
|---|---|---|
| GET | $10 eBonus Card for every 1,000 points<br>50 points upon sign-up<br>50 points on your birthday<br>50 points on your Access anniversary<br>4 points for every $1 spent on movie tickets and menu items | No online booking fees<br>$10 eBonus Card for every 1,000 points<br>$5 eBonus Card upon sign-up<br>1,000 points on your birthday<br>100 points on your Access anniversary<br>8 points for every $1 spent on movie tickets and menu items |
| GIVE | 1 movie and meal for every 1,000 points | 1 movie and meal for every 1,000 points |
| BONUS | Advance promotional screenings<br>Special discounts | Priority advance promotional screenings<br>Special discounts<br>SMG Early Access tickets<br>Exclusive SMG events<br>SMG fan experiences |
| JOIN | Free membership<br>[Sign Up Now] | $10 annual fee<br>[Buy Now] |



EXHIBIT A

## INDIVIDUAL PLANS

| | |
|---|---|
| **Premier Access** | Any Movie, Any Location, Any Format |
| | Any Showtime, Any Day |
| | Unlimited Movies per Month |
| | No Blackout Days |
| | $18.99 per Month |
| **Select Access** | Any Movie, Any Location, Any Format |
| | Any Showtime, Any Day |
| | 1 Movie Ticket per Month |
| | No Blackout Days |
| | $8.99 per Month |

EXHIBIT "B"

# GROUP PLANS

No Group Plans Available

No Group Plans Available

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-32633-11 |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, | § | Chapter 11 |
| *et al.*,1 | § | |
| DEBTOR. | § | Joint Administration Requested |

---

1  The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

---

ORDER GRANTING MOTION TO CONTINUE CUSTOMER PROGRAMS                                Page 1 of 4

EXHIBIT "C"

## ORDER GRANTING MOTION FOR ORDER AUTHORIZING POST-PETITION REDEMPTION AND HONOR OF PRE-PETITION (I) GIFT CARDS; (II) CUSTOMER LOYALTY PROGRAM; (III) MEMBERSHIP PROGRAM; (IV) GROUPON SALES; (V) GOLD TICKET COUPONS; AND (VI) ADVANCED TICKET SALES

Came on to be considered the Debtors' *Emergency Motion for Order Authorizing Post-Petition Redemption and Honor of Pre-Petition (I) Gift Cards; (II) Customer Loyalty Program; (III) Membership Program; (IV) Groupon Sales; (V) Gold Ticket Coupons; and (VI) Advanced Ticket Sales* (the "Motion"[2]). Based on the specific facts and circumstances of this case and for the reasons stated on the record, which are incorporated herein, the Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the hearing, and after due deliberation thereon, there being found good and sufficient cause exists it is hereby

**ORDERED** that:

1. The Motion is granted;

2. the Debtors are authorized, in their discretion, to continue, honor, and permit redemption after the Petition Date of all their prepetition customer programs and advanced sales, including the gift cards, Loyalty Program, Subscription, Groupon, Gold Tickets, and general advanced ticket sales;

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

3. This Order is without prejudice to the Debtor's rights to contest the honor and redemption of any specific prepetition gift card, loyalty program points, subscription, Groupon, Gold Ticket, or other advanced sale.

4. This Order shall in no respect be deemed an admission, finding, or ruling that any customer program or advanced sale constitutes an executory contracts or unexpired leases subject to assumption or rejection under 11 U.S.C. § 365 or that any such customer program or advanced sale has been assumed as executory contract pursuant to this Order.

5. Notwithstanding anything to the contrary herein, nothing in this Order authorizes the use of cash collateral or debtor-in-possession financing. Any payments authorized to be made pursuant to the Motion shall be made only to the extent authorized under the cash collateral and debtor-in-possession financing order approved by the Court in effect as of the time such payment is to be made (together with any approved budgets in connection therewith, the "DIP Order"), and such payments shall be subject to the terms, conditions, limitations, and requirements of the DIP Order in all respects. Any Agent Consent (as defined in the DIP Order) or other consent or approval of the DIP Agent given or requested in respect of any matters relating to this Order shall require approval of the Requisite Lenders (as defined in the DIP Order);

6. Notwithstanding anything else in this Order to the contrary, any payments authorized to be made by this Order shall be subject to the terms, conditions, limitations, and restrictions set forth in that certain *Order Granting Debtors' Emergency Motion Pursuant to Sections 105, 345, 364, 363, 503, 1107 and 1108, Authorizing (i) Maintenance of Existing Bank Accounts; (ii) Continuance of Existing Cash Management System, Bank Accounts and Checks and Related Forms; (iii) Continued Performance of Intercompany Transactions; (iv) Limited Waiver of Section 345(b) Deposit and Investment Requirements; and (v) Granting Related Relief*;

7. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived;

8. The Debtors are authorized to take all actions necessary to affect the relief granted pursuant to this Order in accordance with the Motion;

9. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof;

10. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

**IT IS SO ORDERED.**

# # # End of Order # # #

SUBMITTED BY:

Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTORS
AND DEBTORS-IN-POSSESSION**