Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTOR**
**STUDIO MOVIE GRILL HOLDINGS, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. <u>20-32633-11</u>** |
| | § | |
| **STUDIO MOVIE GRILL HOLDINGS, LLC,** | § | **Chapter 11** |
| *et al.*,[1] | § | |
| **DEBTOR.** | § | **Joint Administration Requested** |
| | § | |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

---

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) SUSPENDING AND EXTENDING TIME FOR PERFORMANCE OF OBLIGATIONS ARISING UNDER UNEXPIRED REAL PROPERTY LEASES; (II) ESTABLISHING TEMPORARY CASE ADMINISTRATION PROCEDURES; AND (III) GRANTING RELATED RELIEF**

Studio Movie Grill Holdings, LLC and its debtor affiliates (the "Debtors" or "SMG"), by and through their proposed undersigned counsel, file this *Emergency Motion for Entry of an Order (I) Suspending and Extending Time for Performance of Obligations Arising Under Unexpired Real Property Leases; (II) Establishing Temporary Case Administration Procedures; and (III) Granting Related Relief* (the "Motion"). In support of this Motion, the Debtors would respectfully show the Court as follows:

## I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief requested herein are Sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code").

## II.
## BACKGROUND

2.      On October 23, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), thereby initiating the above-captioned bankruptcy cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.      An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases. Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4.      SMG is engaged in the dine-in movie theater business. In addition to its movie

offerings, SMG's theaters include a bar and lounge area, with direct to seat service for guests before and during their movies. Specifically, SMG operates 33 movies theaters in 10 states, including Arizona, California, Florida, Georgia, Illinois, North Carolina, Pennsylvania, Texas, Indiana, and Virginia. All theaters operate under the brand name "Studio Movie Grill."

5.     A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Motion and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of William Snyder, CRO of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motion* (the "Snyder Declaration"), which was filed on the Petition Date and is incorporated by reference in this Motion.

## III.
## RELIEF REQUESTED & BASIS FOR RELIEF

6.     By this Motion, the Debtors request the entry of an order substantially in the form attached hereto as **Exhibit "A"** that, pursuant to Sections 102(1), 105(a), 105(d), and 365(d)(3) of the Bankruptcy Code and Rules 1015(c), 2002(m), 9007, 9014, and 9036 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE (the "Bankruptcy Rules"):

    a.   Suspends the Debtors' obligations to landlords on account of obligations that accrue under unexpired commercial real property leases ("Leases"), within sixty (60) days of the Petition Date, pursuant to Section 365(d)(3) of the Bankruptcy Code; and

    b.   Establishes the temporary case administration procedures set forth herein governing: (i) stay relief and other applications and motions filing procedures; (ii) the Debtors' entry into Stipulations (defined herein); and (iii) hearings to be held in these Chapter 11 Cases for the next forty-five (45) days subject to further extension (collectively, and as further described below, the "Temporary Procedures").

## A.     COVID-19 & Post-Petition Financing

7.     As a result of the novel coronavirus pandemic, known as COVID-19, local and state governments imposed regulations and restrictions on the movie theater and dining business. As a corollary thereto, customer demand dropped precipitously. Given such, the Debtors anticipate that

numerous locations will remain closed indefinitely and all others will continue to suffer sizable reductions in revenue during the restriction periods, which limit occupancy, and the ongoing public health concern that diminishes demand.

8. Furthermore, the Debtors are, contemporaneously with the filing of this Motion, seeking court approval to obtain post-petition financing that is necessary to operate their business during these bankruptcy proceedings. Such post-petition financing will certainly provide enhanced liquidity; but even with the approval of such financing, liquidity risks will remain, given the ongoing uncertainty with respect to the duration of pandemic-induced restrictions. Moreover, the Debtors are engaging in negotiations with their landlords that may result in adjustments to post-petition obligations. Prior to the filing of these Chapter 11 Cases, some landlords have worked with the Debtors on rent concessions and modifications. The Debtors are optimistic with the assistance of their proposed real estate advisor that such efforts will continue to yield successful negotiations.

9. The Debtors, their estates, and the other creditors would be best served by the Debtors' being afforded a brief respite from paying such lease obligations to maximize liquidity and provide time to continue to negotiate terms on these Leases. In light of these facts, pending the expiration of the 60-day period commencing on the Petition Date, the Debtors are seeking relief under Section 365(d)(3) of the Bankruptcy Code, as described further below.

**B.    Temporary Procedures**

10. The Debtors believe that establishing alternative procedures for the filing of pleadings for an interim period of at least forty-five (45) days following the date of entry of the order granting this Motion (the "Proposed Order"), subject to further extensions, will: (1) assist the Debtors and their estates by limiting professional expenses; and (2) reduce litigation that places added stress on a court system still operating remotely in the interests of public and personnel safety. The Temporary Procedures proposed herein will be less burdensome and costly than those typically

followed under normal circumstances, which, in turn, will maximize the efficiency and orderly administration of these Chapter 11 Cases, while at the same time ensuring that appropriate notice and due process are provided.

11. The Debtors submit that the following Temporary Procedures should govern the filing of pleadings and the scheduling of hearings in these Chapter 11 Cases for an initial period of forty-five (45) days from the date on which the Proposed Order is entered ("Initial Period"), subject to (1) an extension of an additional 30 days beyond the Initial Period with the consent of the DIP Lenders (as defined below) by filing a statement on the docket with notice to the U.S. Trustee and counsel for any official committee; and (2) further extensions upon the filing of a motion by the Debtors. The proposed Temporary Procedures are as follows:

a. Stay Relief and Other Application and Motion Filing Procedures ("Stay Relief and Other Procedures"). With respect to any motion filed seeking relief under Section 362 of the Bankruptcy Code with respect to the leases involved herein ("Stay Relief Motion") or any motion or application filed seeking payment of an administrative claim, compelling rejection, assumption or assumption and assignment of contracts or leases, or enforcing or pursuing any other rights pursuant to Section 365(d)(3) or (d)(5) of the Bankruptcy Code ("Other Motions and Applications"):

    i. Any party wishing to obtain relief from the automatic stay or seeking the payment of an administrative expense claim or to have the Debtors reject, assume, or assume and assign contracts or leases or enforcing or pursing any other rights pursuant to Section 365(d)(3) or (d)(5) of the Bankruptcy Code is encouraged, but not required, to contact the Debtors in an effort to reach an agreement so that relief can be achieved by entering into a Stipulation in accordance with subpart (b) below.

    ii. Absent a finding by the Court that a matter is time sensitive, no Stay Relief Motion or Other Motions and Applications will be set for a hearing during the Initial Period, or such later date as determined by the Court in light of prevailing circumstances. Notwithstanding the foregoing, any party who files a Stay Relief Motion or Other Motion or Application can seek to resolve such motion using the procedures set forth in subparagraph (b)(ii) below. Furthermore, any party wishing to have a status conference on any such Stay Relief Motion or Other Motion or

Application may contact Chambers to set up a telephonic status conference, at which conference the Court may decide to continue the Stay Relief and Other Procedures as to the Stay Relief Motion or Other Motion or Application, as the case may be, or to modify such procedures, as is appropriate under the circumstances.

b. <u>Stipulations</u>. With respect to the Debtors' entry into Stipulations (as defined below):

i. Parties are encouraged to contact counsel for the Debtors in order to resolve any objections that they may have or relief they may seek and to try to reach a consensual resolution, which resolution may be submitted to the Court with the consent of the Consultation Parties (as defined below) in accordance with sub-paragraph (iii) below.

ii. Subject to the notice and consent of the Consultation Parties, requests of the Debtors for approval of stipulations regarding (1) turnover of estate property in accordance with Sections 542 and 543 of the Bankruptcy Code; (2) rejection of contracts or leases outside of rejection procedures; (3) settlement and compromise of prepetition and post-petition claims, cross-claims, litigation and causes of action, including pre-petition claims threatened or actions brought by various parties against one or more of the Debtors or their estates in judicial, administrative or other actions or proceedings; or (4) any such other and further agreements as may be reached between the parties may be granted by stipulation filed under certification of counsel of the Debtors (each a "<u>Stipulation</u>") in lieu of proceeding by motion.

iii. The Debtors may enter into Stipulations with any parties provided that (1) the Debtors determine, in the exercise of their reasonable business judgment, that such Stipulation and the actions to be taken and/or resolutions set forth therein are in the best interests of the Debtors' estates; (2) the Debtors (a) obtain the prior written consent of the DIP Lenders; and (b) provide notice to the U.S. Trustee and any official committee appointed and U.S. Trustee such parties have not raised an objection (the parties in this clause (2), the "<u>Consultation Parties</u>"); *provided* that such Stipulations shall not provide for any cash payments by the Debtors in excess of $25,000 ("<u>Threshold Amount</u>"); *provided, further* that the Threshold Amount shall not apply if the Debtors are seeking to resolve any claim that would require payment on the effective date of a plan in accordance with Section 1129 of the Bankruptcy Code. Each Stipulation shall provide a statement of the action proposed to be taken, including any claim settlement with respect thereto and a concise statement of the

terms and conditions of, and the reasons for, the proposed action.

iv. To obtain Court approval of a Stipulation, the Debtors shall (1) file a certification of counsel (each a "<u>Certification of Counsel</u>") that (a) explains that the Consultation Parties have each received a copy of the Stipulation in advance of the filing of the Certification of Counsel and they each consent or have not objected, as applicable, to the Debtors' entry into the Stipulation; and (b) attaches a proposed form of order approving the Stipulation and the proposed actions set forth therein (each a "<u>Proposed Stipulation Approval Order</u>"); and (2) serve the Certification of Counsel by e-mail upon (a) any party(ies) directly affected by the Stipulation (if any); and (b) all parties that have requested notice pursuant to Bankruptcy Rule 2002. If after the Debtors submit the Certification of Counsel, no objections are received within five (5) business days thereof, the Court may enter the Proposed Stipulation Approval Order without the need for a hearing. To the extent that an objection is filed on the docket or any of the Consultation Parties do not consent, the Court may, among other things, schedule a hearing on the objection and the Debtors' and any other parties' deadline to submit a response or reply thereto.

## C. Cause Exists to Suspend the Debtors' Obligations Under the Leases for 60 Days Pursuant to Section 365(d)(3) of the Bankruptcy Code

12.     Section 365(d)(3) of the Bankruptcy Code authorizes the Court to extend the Debtors' obligations under the Leases during the first sixty (60) days of these Chapter 11 Cases for cause. *See* 11 U.S.C. § 365(d)(3). The Bankruptcy Code does not define "cause," and determining whether to extend these obligations is within the Court's discretion. *See In re Beltway Medical, Inc.*, 358 B.R. 448 (Bankr. S.D. Fla. 2006) (noting that "while the language of section 365(d)(3) directs 'timely performance,' what is 'timely performance' is dictated by the Bankruptcy Code, the underlying lease, and this Court's discretion based on the facts and circumstances of a particular case" (citing *Collier on Bankruptcy* ¶ 503.03 (15th ed. rev. 2006)); *In re Graphic Trade Bindery, Inc.*, No. 12–13189–TJC, 2012 WL 1232089, at *6 n.8 (Bankr. D. Md. Apr. 12, 2012) (stating that "immediate payment of administrative expenses ... is left to the discretion of the bankruptcy court" (quoting *In re Midway Airlines Corp.*, 406 F.3d 229, 242 (4th Cir. 2005)); *see also In re Pac-West Telecomm, Inc.*, 377 B.R. 119,

126 (Bankr. D. Del. 2007) (noting that "simply being in bankruptcy cannot constitute 'cause'" on grounds that an extension would be automatic rather than discretionary). A court may look to a "specific cause" articulated by a debtor or "applicable legal precedent." *Pac-West Telecomm*, 377 B.R. at 126.[2]

13.     The Debtors submit that the impacts of COVID-19, including multiple state or local mandated restrictions on operations, constitute "cause" under Section 365(d)(3). The Debtors are impaired from operating their theaters in the normal course of their business operations due to the existing restrictions. Suspension of the Debtors' rent obligations for "cause" under Section 365(d)(3) is not only appropriate, but also critical to the Debtors' successful reorganization.

14.     On such basis, the Debtors request to suspend rent payments for a period of sixty (60) days for all of the following locations, which are closed or under development without a likelihood of completion:

## Rent Suspension Locations

---

[2]     In addition, Section 105 authorizes the Court to "toll" certain time periods if such tolling is "consistent with the underlying philosophy of the Bankruptcy Code." *In re Richards*, 994 F.2d 763, 765 (10th Cir. 1993). While the Debtors do not presently seek to extend the Debtors' obligations under their unexpired real property leases beyond the 60 days provided for in Section 365(d)(3) of the Bankruptcy Code, such extension may become necessary in furtherance of their efforts to preserve and maximize value for stakeholders. The Debtors reserve all rights to seek such further extensions to the extent necessary.

Waterview                                          Epicentre

15.    Also on such basis, the Debtors request to defer all rent payments for a period of sixty (60) days for all of the following locations, which are open or under development:

**Rent Deferral Locations**

| | |
|---|---|
| Rocklin | Dallas Royal |
| Pearland | Wheaton |
| Tyler | Lincoln Square |
| Bakersfield | Plano |
| City Centre | NW Hwy |
| The Colony | Tampa |
| Arlington | Sunset Walk |
| Simi Valley | Northpoint |
| Seminole | |

16.    Recent cases support this result. *See In re Cinemex USA Real Estate Holdings, Inc.*, Case No. 20-14695-LMI (Bank. S.D. Fl. May 2020), *Corrected Order Granting in Part Debtors' Emergency Motion for Entry of Order Extending Time for Performance of Obligations Arising Under Unexpired Real Property Leases and Establishing Temporary Procedures* (Dkt. No. 157) (granting extension of time on unexpired real property lease obligations); *In re Modell's Sporting Goods, Inc.*, Case No. 20-14179 (Bankr. D. N.J. Mar. 27, 2020), *Order Temporarily Suspending the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105 and 305* (Dkt. No. 166) (granting "[o]perational [s]uspension" and permitting debtors to accrue obligations under leases); *In re Pier 1 Imports, Inc.*, Case No. 2030805 (Bankr. E.D. Va. May 10, 2020), *Memorandum Opinion* at 6-7 (Dkt. No. 637) (granting debtors' request to "delay the payment of certain accrued but unpaid rent obligations during the Limited Operations Period").

## D.    The Temporary Procedures Are Reasonable and Appropriate Under the Circumstances

17.    The Bankruptcy Code, the Bankruptcy Rules and the Local Rules provide the Court with authority to approve notice, case management and administrative procedures. In particular, Bankruptcy Rule 2002(m) provides that "[t]he court may from time to time enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall

be sent except as otherwise provided by these rules." FED. R. BANKR. P. 2002(m); *see also* FED. R. BANKR. P. 9007 ("When notice is to be given under these rules, the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given."). In addition, Bankruptcy Rule 9036 authorizes a "person as the court or these rules may direct, [to] send [a] notice to – or serve [a] paper on – a registered user by filing it with the court's electronic-filing system." FED. R. BANKR. P. 9036.

18.     Section 102(1) of the Bankruptcy Code provides that, where the Bankruptcy Code provides for an action to occur "after notice and a hearing," such action may occur "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Therefore, the Debtors submit that electronic notice of proposed motions or pleadings prior to filing should be required to alleviate the burden on the Debtors, the Court, the Clerk of the Court and other parties-in-interest. The relief requested is supported by Bankruptcy Rule 1015(c), which provides that when two or more cases are being jointly administered, as these Chapter 11 Cases are, the Court may enter orders "as may tend to avoid unnecessary costs and delay." FED. R. BANKR. P. 1015(c).

19.     Section 105(a) of the Bankruptcy Code provides in relevant part that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Debtors submit that implementation of the Temporary Procedures is necessary and proper to carry out the provisions of the Bankruptcy Code and well within the equitable powers of the Court under Section 105(a), given the extraordinary nature of the current circumstances brought about by the national pandemic.

20.     The Debtors submit that approval of the Temporary Procedures is in the best interests of the Debtors and their estates and creditors. The closures and restrictions on operations of the Debtors' theater locations caused by COVID-19 has placed an unprecedented strain on the

entire movie theater industry and on the Debtors' financial condition. In order to preserve their chances of reopening additional theaters in the future, the Debtors must reduce operational costs in the interim and avoid unnecessary expenses incurred in connection with the Chapter 11 Cases.

21.     The Temporary Procedures should eliminate unnecessary motion practice and thereby reduce the cost of administration of the Chapter 11 Cases because they require parties to first, confer in good faith and, second, participate in a telephonic conference with the Court, prior to the filing of a motion or pleading. Similar procedures have been successfully followed by numerous courts and judges to manage discovery disputes and curtail the filing of unproductive disposition motions in civil litigation.[3] Given the enormous burdens on the Debtors' business and the increased case load before the Court system occasioned by COVID-19, the Debtors submit the circumstances warrant such procedures here for a limited interim period of at least forty-five (45) days.

22.     The Debtors submit that establishing the foregoing Temporary Procedures will significantly aid the efficient administration of these Chapter 11 Cases and lower the costs of case administration during this period of extraordinary crisis. Accordingly, the relief requested is in the best interests of the Debtors' estates and creditors and parties in interest.

### E.     Cause Exists to Suspend Lease Payments Pursuant to the Terms of the Leases, the Takings Doctrine, the Doctrine of Intervening Impossibility, and the Frustration of Purpose Doctrine

23.     The governmental responses to COVID-19 constituted an execution of police powers for the improvement of the public condition by limiting the spread of a pandemic. The general rule as to whether an exercise of such police powers constitutes a taking is that "while property may be

---

[3]     *See Modell's Sporting Goods, Inc.,* No. 20-14179 (Bankr. D. N.J., Mar. 23, 2020), *Debtors' Verified Application in Support of Emergency Motion for Entry of an Order Temporarily Suspending Their Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105 and 305* (Dkt. No. 115); *CraftWorks Parent, LLC,* No. 20-10475 (Bankr. D. Del. Mar. 20, 2020), *Motion of Debtors for Entry of an Order (I) Establishing Temporary Procedures and (II) Granting Related Relief* (Dkt. No. 174); *Pier 1 Imports, Inc.,* No. 20-30805 (Bankr. E.D. Va. Mar. 31, 2020), *Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporary Adjourning Certain Motions and Applications for Payments, and (III) Granting Relief* (Dkt. No. 438).

regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). In *Pennsylvania Coal*, the Supreme Court held that a regulation rendering an activity commercially impracticable has very nearly the same effect for constitutional purposes as appropriating or destroying it. 260 U.S. at 414. As in *Pennsylvania Coal*, the regulatory orders imposed on the Debtors' theaters has rendered the Debtors' operations impracticable. In fact, the Debtors are being deprived of their rights to generally operate.

24.     Further cause exists to find that the Debtors are entitled, alternatively, to an abatement of rent commensurate with the reduced utility of their leased premises based on the terms of the Leases. As is common in commercial leases, the Leases provide, in relevant part, that in the event any part of the leased premises or a substantial portion of the shopping center in which the leased premises is located is taken by any competent authority, Debtors shall have the right to continue the lease in full force and effect with a reduced fixed rent commensurate with the reduced area and/or reduced utility of the leased space – which reduced rental will become effective upon the date of such taking. Accordingly, because the governmental regulation in question amounts to a taking of the leased premises, the Debtors are entitled under the terms of the Leases to an abatement of rent commensurate with the reduced utility of the leased premises. Such abatement should continue in effect during the pendency of all applicable COVID-19 operating restrictions.

25.     Further cause exists to find that the Debtors are entitled to an abatement of rent and to suspend their obligations under the Leases on the equitable grounds of supervening impossibility and frustration of purpose. The doctrine of supervening impossibility excuses performance by a party under a contract when such "performance is made impracticable without his fault by the occurrence of an event the nonoccurrence of which was a basis assumption on which the contract was made," unless the language of the contract indicates the contrary. *See* Restatement (Second) of

Contracts § 261 (1981). This defense is available when a party can establish three factors: "(1) the unexpected occurrence of an intervening act, (2) such occurrence was of such a character that its nonoccurrence was a basic assumption of the agreement of the parties, and (3) that occurrence made performance impracticable." *Opera Co. of Boston, Inc. v. Wolf Trap Foundation of Performing Arts*, 817 F.2d 1094, 1102 (4th Cir. 1987). One such intervening act is a governmental regulation or law. Restatement (Second) of Contracts § 264 ("If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made."); *see also United States v. Johnson*, 420 F. Supp. 3d 462, 473 (E.D. Va. 2019) (Excusing government's performance where "a subsequent change in the law . . . undermine[d] the basis of the agreement"); *Texas Co. v. Hogarth Shipping Corp.*, 256 U.S. 619, 629-30 (1921) (excusing ship owner's performance where its ships were requisitioned for use in the British navy); *Unihealth v. US. Healthcare, Inc.*, 14 F. Supp. 2d 623, 635 (D.N.J. 1998) (excusing performance where the government ended its hospital billing system and where the parties should have assumed that the billing rates under the system would fluctuate but not that the system would end); *Sch. Dist. N0. 16 of Sherman Cty. v. Howard*, 98 NW. 666, 666-67 (Neb. 1904) (where school was shut down by Board of Health due to smallpox outbreak, school district was released from paying teacher's wages).

26.     The Debtors' request to suspend their rental payments is also an applicable defense to breach of contract under the doctrine of frustration of purpose. First, the principal purpose of the Debtors in entering into the Leases was the full-capacity operation of the movie theaters. There could be no other understanding between the parties as to the Debtors' principal purpose. Second, the frustration of purpose associated with government-ordered business restrictions brought about by an unprecedented pandemic with global reach could neither have been anticipated in contracting

nor regarded as an assumed risk by either party to the Leases. Third, the non-occurrence of a government-ordered halt or restriction to nonessential business operation was necessarily a basic assumption of the Leases in that the purpose of such contracts is the operation of movie theaters.

27.     Accordingly, the Debtors satisfy the factors of both doctrines: the governmental response to COVID-19 (1) is a supervening impossibility; and (2) has frustrated the purpose of the Leases in that the Debtors are not able to fully operate their theaters. The Debtors are entitled to rent abatement during the period the restrictive orders render full-performance of their leases impossible and frustrated the underlying purpose of those very contracts.

28.     For all those reasons, taken together, the Debtors respectfully request entry of an order granting the suspension and deferral of rent as requested. The Debtors assert that such relief is critical to the Debtors' efforts to successfully reorganize and provides the best opportunity to maintain a going-concern business at the conclusion of these Chapter 11 Cases.

## F.     Request for Waiver of Bankruptcy Rules 6004(a) and 6004(h)

29.     Given the nature of the relief requested, the Debtors respectfully request a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a); and (ii) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable hereto.

## G.     Reservation of Rights

30.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code Section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## IV.
## NOTICE

Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed DIP Agent[4]; (vi) counsel for any official committees appointed by this Court; (vii) the consolidated list of the 30 largest unsecured creditors of the Debtors; and (viii) all governmental agencies having a regulatory or statutory interest in these cases (collectively, the "Notice Parties"). Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

**WHEREFORE,** the Debtors respectfully request that this Court enter an Order (a) granting the Motion; and (b) awarding the Debtors such other and further relief as this Court may deem just and proper.

DATED: October 23, 2020

Respectfully submitted,

**LAW OFFICES OF FRANK J. WRIGHT, PLLC**

By:   /s/ Frank J. Wright
       Frank J. Wright
       Texas Bar No. 22028800
       Jeffery M. Veteto
       Texas Bar No. 24098548
       Jay A. Ferguson
       Texas Bar No. 24094648

       2323 Ross Avenue, Suite 730
       Dallas, Texas 75201
       Telephone:     (214) 935-9100

---

[4]   "DIP Agent" means Goldman Sachs Special Lending Group, L.P., in its capacity as administrative agent under that certain [*Senior Secured Superpriority Debtor-in-Possession Financing Amendment*] dated as of [October __], 2020, by and among, among others, the Debtors, the DIP Agent, and the lenders party thereto (the "DIP Lenders"). Holdings, Inc., in its capacity under the existing Term Sheet.

Emails: frank@fjwright.law
jeff@fjwright.law
jay@fjwright.law

**PROPOSED COUNSEL TO DEBTORS
AND DEBTORS-IN-POSSESION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the parties listed below, on all parties consenting to electronic service of this case *via* the Court's *ECF system* for the Northern District of Texas and *via* United States Mail, first class postage prepaid, on October 24, 2020 on the Debtor's Top Thirty (30) Largest Unsecured Creditors.

U.S. Trustee
1100 Commerce St.
Room 976
Dallas, Texas 75242

_/s/ Frank J. Wright_
Frank J. Wright

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. <u>20-32633-11</u> |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, | § | Chapter 11 |
| *et al.*,1 | § | |
| DEBTOR. | § | Joint Administration Requested |

---

1    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

---

EXHIBIT
"A"
tabbies®

**ORDER GRANTING EMERGENCY MOTION FOR ENTRY OF AN
ORDER (I) SUSPENDING AND EXTENDING TIME FOR PERFORMANCE
OF OBLIGATIONS ARISING UNDER UNEXPIRED REAL PROPERTY
LEASES; (II) ESTABLISHING TEMPORARY CASE ADMINISTRATION
PROCEDURES; AND (III) GRANTING RELATED RELIEF**

Came on to be considered the Debtors' *Emergency Motion for Entry of an Order (I) Suspending and Extending Time for Performance of Obligations Arising Under Unexpired Real Property Leases; (II) Establishing Temporary Case Administration Procedures; and (III) Granting Related Relief* (the "Motion"[2]). Based on the specific facts and circumstances of this case and for the reasons stated on the record, which are incorporated herein, the Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the hearing, and after due deliberation thereon, there being found good and sufficient cause exists it is hereby

**ORDERED** that:

1.  The Motion is granted;

2.  The performance obligations arising under the following locations' Leases are hereby suspended until _____, 2020:[3]

    Waterview                                    Epicentre;

---

[2]   Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

[3] [NTD – some of these are included in the rejection motion]

3.      The performance obligations arising under the following locations' Leases are hereby deferred until _____, 2020:

| | |
|---|---|
| Rocklin | Dallas Royal |
| Pearland | Wheaton |
| Tyler | Lincoln Square |
| Bakersfield | Plano |
| City Centre | NW Hwy |
| The Colony | Tampa |
| Arlington | Sunset Walk |
| Simi Valley | Northpoint; |
| Seminole | |

4.      The Temporary Procedures, as set forth on Schedule I to this Order, are hereby approved;

5.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived;

6.      The Debtors are authorized to take all actions necessary to affect the relief granted pursuant to this Order in accordance with the Motion;

7.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof; and

8.      This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

9.      Notwithstanding anything contained in the Motion or this Order, any payment authorized to be made by the Debtors herein (including pursuant to any Stipulation) shall be subject to the terms and conditions contained in any interim or final orders authorizing the debtor in possession financing facility and/or the use of cash collateral (a "DIP Order"), including, without limitation, any budgets in connection therewith, and to the extent there is any inconsistency between the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

**IT IS SO ORDERED.**

**# # # End of Order # # #**

SUBMITTED BY:

Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTOR
AND DEBTOR-IN-POSSESION**

**SCHEDULE I**

a.  <u>Stay Relief and Other Application and Motion Filing Procedures ("Stay Relief and Other Procedures")</u>. With respect to any motion filed seeking relief under Section 362 of the Bankruptcy Code with respect to the leases involved herein ("<u>Stay Relief Motion</u>") or any motion or application filed seeking payment of an administrative claim, compelling rejection, assumption or assumption and assignment of contracts or leases, or enforcing or pursuing any other rights pursuant to Section 365(d)(3) or (d)(5) of the Bankruptcy Code ("<u>Other Motions and Applications</u>"):

      i.  Any party wishing to obtain relief from the automatic stay or seeking the payment of an administrative expense claim or to have the Debtors reject, assume, or assume and assign contracts or leases or enforcing or pursing any other rights pursuant to Section 365(d)(3) or (d)(5) of the Bankruptcy Code is encouraged, but not required, to contact the Debtors in an effort to reach an agreement so that relief can be achieved by entering into a Stipulation in accordance with subpart (b) below.

      ii.  Absent a finding by the Court that a matter is time sensitive, no Stay Relief Motion or Other Motions and Applications will be set for a hearing during the Initial Period, or such later date as determined by the Court in light of prevailing circumstances. Notwithstanding the foregoing, any party who files a Stay Relief Motion or Other Motion or Application can seek to resolve such motion using the procedures set forth in subparagraph (b)(ii) below. Furthermore, any party wishing to have a status conference on any such Stay Relief Motion or Other Motion or Application may contact Chambers to set up a telephonic status conference, at which conference the Court may decide to continue the Stay Relief and Other Procedures as to the Stay Relief Motion or Other Motion or Application, as the case may be, or to modify such procedures, as is appropriate under the circumstances.

b.  <u>Stipulations</u>. With respect to the Debtors' entry into Stipulations (as defined below):

      i.  Parties are encouraged to contact counsel for the Debtors in order to resolve any objections that they may have or relief they may seek and to try to reach a consensual resolution, which resolution may be submitted to the Court with the consent of the Consultation Parties (as defined below) in accordance with sub-paragraph (iii) below.

ii.    Subject to the notice and consent of the Consultation Parties, requests of the Debtors for approval of stipulations regarding (1) turnover of estate property in accordance with Sections 542 and 543 of the Bankruptcy Code; (2) rejection of contracts or leases outside of rejection procedures; (3) settlement and compromise of prepetition and post-petition claims, cross-claims, litigation and causes of action, including pre-petition claims threatened or actions brought by various parties against one or more of the Debtors or their estates in judicial, administrative or other actions or proceedings; or (4) any such other and further agreements as may be reached between the parties may be granted by stipulation filed under certification of counsel of the Debtors (each a "Stipulation") in lieu of proceeding by motion.

iii.    The Debtors may enter into Stipulations with any parties provided that (1) the Debtors determine, in the exercise of their reasonable business judgment, that such Stipulation and the actions to be taken and/or resolutions set forth therein are in the best interests of the Debtors' estates; (2) the Debtors (a) obtain the prior written consent of the DIP Lenders; and (b) provide notice to the U.S. Trustee and any official committee appointed and U.S. Trustee such parties have not raised an objection (the parties in this clause (2), the "Consultation Parties"); *provided* that such Stipulations shall not provide for any cash payments by the Debtors in excess of $25,000 ("Threshold Amount"); *provided, further* that the Threshold Amount shall not apply if the Debtors are seeking to resolve any claim that would require payment on the effective date of a plan in accordance with Section 1129 of the Bankruptcy Code. Each Stipulation shall provide a statement of the action proposed to be taken, including any claim settlement with respect thereto and a concise statement of the terms and conditions of, and the reasons for, the proposed action.

iv.    To obtain Court approval of a Stipulation, the Debtors shall (1) file a certification of counsel (each a "Certification of Counsel") that (a) explains that the Consultation Parties have each received a copy of the Stipulation in advance of the filing of the Certification of Counsel and they each consent or have not objected, as applicable, to the Debtors' entry into the Stipulation; and (b) attaches a proposed form of order approving the Stipulation and the proposed actions set forth therein (each a "Proposed Stipulation Approval Order"); and (2) serve the Certification of Counsel by e-mail upon (a) any party(ies) directly affected by the Stipulation (if any); and (b) all parties that have requested notice pursuant to Bankruptcy Rule 2002. If after the Debtors submit the Certification of Counsel, no objections are received within five (5)

business days thereof, the Court may enter the Proposed Stipulation Approval Order without the need for a hearing. To the extent that an objection is filed on the docket or any of the Consultation Parties do not consent, the Court may, among other things, schedule a hearing on the objection and the Debtors' and any other parties' deadline to submit a response or reply thereto.