Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTOR**
**STUDIO MOVIE GRILL HOLDINGS, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 20-32633-SGJ-11** |
| | § | |
| **STUDIO MOVIE GRILL HOLDINGS, LLC,** | § | **Chapter 11** |
| *et al.,*[1] | § | |
| **DEBTOR.** | § | **Joint Administration Requested** |

---

[1]  The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

---

### DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING DEBTORS TO (A) PAY CERTAIN PREPETITION EMPLOYEE WAGES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES; (B) PAY CERTAIN PREPETITION INDEPENDENT CONTRACTORS; AND (C) CONTINUE EMPLOYEE BENEFIT PROGRAMS

Studio Movie Grill Holdings, LLC and its debtor affiliates (the "Debtors" or "SMG"), by and through their proposed undersigned counsel, file this *Emergency Motion for an Order (I) Authorizing the Debtors to (A) Pay Certain Prepetition Employee Wages, Other Compensation, and Reimbursable Employee Expenses; (B) Pay Certain Prepetition Independent Contractor and Temporary Staff Obligations, and (C) Continue Employee Benefits Programs* (the "Motion"). In support of this Motion, the Debtors would respectfully show the Court as follows:

### I.
### JURISDICTION AND VENUE

1.        This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief requested herein are Sections 105(a), 363, 507(a)(4) and 507(a)(5) of Title 11 of the United States Code (the "Bankruptcy Code").

### II.
### BACKGROUND

2.        On October 23, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, thereby initiating the above-captioned bankruptcy cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.        An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases. Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4.        SMG is engaged in the dine-in movie theater business. In addition to its movie

offerings, SMG's theaters include a bar and lounge area, with direct to seat service for guests before and during their movies. Specifically, SMG operates 33 movies theaters in 10 states, including Arizona, California, Florida, Georgia, Illinois, Indiana, North Carolina, Pennsylvania, Texas, and Virginia. All theaters operate under the brand name "Studio Movie Grill."

5.       A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Motion and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of William Snyder, CRO of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motion* (the "Snyder Declaration"), which was filed on the Petition Date and is incorporated by reference in this Motion.

## III.
## SUMMARY EMPLOYEES AND INDEPENDENT CONTRACTORS

6.       As of the Petition Date, the Debtors employed approximately 1,152 individuals, including 1,011 individuals at Debtors' movie theater locations, 94 individuals operating in the field, and 47 individuals at the corporate office (collectively the "Employees"). The large majority of the Debtors' employees are paid hourly on a bi-weekly pay period. The Employees' training, knowledge, and established understanding of the Debtors' operations are essential to uninterrupted continuation of the Debtors' operations and to a successful reorganization of the Debtors' financial affairs.

7.       In addition to Employees, the Debtors have also retained certain specialized individuals as independent contractors (the "Independent Contractors"). The Debtors currently have 6 independent contractors[2] working for them pursuant to consulting agreements. The Independent Contractors are critical to the overall operation of the Debtors' business.

8.       The Debtors' Employees and Independent Contractors perform a variety of functions critical to the Debtors' operations at the Debtors' movie theaters and the corporate office.

---

Certain of these individuals are highly trained and/or have an essential working knowledge of the Debtors' business and cannot be easily or quickly replaced. Without the continued, uninterrupted services of their Employees and Independent Contractors, the Debtors' reorganization efforts will be severely hampered.

## IV.
## RELIEF REQUESTED & BASIS FOR RELIEF

9.      The Debtors request the entry of an order, substantially in the form attached to the motion as **Exhibit "A"** hereto. Specifically, the Debtors seek authority under Bankruptcy Code §§ 105(a), 363, 507(a)(4) and 507(a)(5) and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to pay certain prepetition obligations owed to either its Employees and Independent Contractors or to employee benefits providers, to honor and continue certain employee benefits (collectively, and as described herein, the "Employee Obligations"), and to authorize financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to prepetition Employee Obligations.

10.     As more fully described below, the Debtors seek authority, but not direction, to pay accrued and unpaid prepetition costs and expenses relating to the Employee Obligations (the "Prepetition Employee Obligations"). The following table identifies the general categories of Prepetition Employee Obligations and includes an estimate of the total amounts the Debtors are seeking authorization to pay.

| Pre-petition Employee Obligations | Estimated Amount |
|---|---|
| Prepetition Wage Obligations | $293,000 |
| Independent Contractor Compensation | $8,880.00 |
| Unremitted Payroll Taxes and Deductions | $57,000.00 |

| Prepetition Payroll Processing Fees | $4,500.00 |
|---|---|
| Prepetition Reimbursable Expenses | $5,000.00 |
| Prepetition PTO to Former Employees | $28,000.00 |
| Prepetition Employee Benefits Programs Expenses | $422,189 |

11. The Debtors do not believe that the Prepetition Wage Obligations or Prepetition Independent Contractor Compensation, together with the payment of any Prepetition Employee Benefits Programs Obligations owed to any individual, will exceed the statutory cap of $13,650 imposed pursuant to Section 507(a)(4) and (5).

**A.      Wage Obligations**

12. In the ordinary course of business, the Debtors pay their Employees' wages, salaries, and other compensation (excluding compensation under the Benefits Programs) (collectively, the "Wage Obligations"). Wages accrue for Employee over a two-week pay period, with remittal of such Wage Obligations coming one week following the end of the pay period. The Debtors' use two alternating pay cycles with the last complete pay periods ending respectively for each on September 30, 2020 and October 7, 2020, with Wage Obligations for each having been paid out one week after each date. Based upon these most recent pay periods, the Debtors estimate that accrued and unpaid Wage Obligations owed to Employees as of the Petition Date total $269,000 (the "Prepetition Wage Obligations"). Based on previous pay cycles and other general knowledge, the Debtors do not believe that the Prepetition Wage Obligations owed to any one employee exceed $13,650.

13. Presently, location managers and corporate office employees are being paid seventy-five (75%) percent of their regular salaries. Location managers will return to one-hundred (100%) percent once their particular location achieves at least fifty (50%) percent of its comparable 2019

sales volume for two (2) consecutive weeks. Corporate office employee salary reinstatement has been and will continue to be handled on a case by case basis.

14. The Debtors seek authority to fund the Prepetition Wage Obligations subject to a cap of $13,650 per Employee, in the ordinary course of business and consistent with past practice, and to continue to pay Wage Obligations in the ordinary course of business on a post-petition basis.

### i. Independent Contractor Compensation

15. The Debtors pay certain Independent Contractors for the services rendered by the Independent Contractors in accordance with the terms of their applicable agreements (the "Independent Contractor Compensation"). The pay period for the Independent Contractors runs for one week prior to the date compensation is paid. As such the Debtors believe that they may owe approximately $8,880 on account of services rendered prior to the Petition Date. The Debtors do not owe any single Independent Contractor amounts in excess of $13,650 on account of any prepetition work performed by any Independent Contractor.

16. The Debtors request authority, but not direction, to pay all accrued and unpaid prepetition Independent Contractor Compensation (the "Prepetition Independent Contractor Compensation"), subject to a cap of $13,650 per Independent Contractor, in the ordinary course of business and consistent with past practice, and to continue to pay Independent Contractor Compensation in the ordinary course of business on a post-petition basis.

### ii. Withholding Obligations and Payroll Taxes and Deductions

16. In various jurisdictions the Debtors are required by law to withhold amounts from the Employees' earned pay related to income taxes, healthcare taxes, and other social welfare benefits, including social security, Medicare taxes, and unemployment insurance (collectively, the "Withholding Taxes") for remittance to the appropriate taxing authorities (collectively, the "Taxing Authorities").

17.     In certain circumstances, the Debtors are also required to make additional payments from their own funds in connection with the Withholding Taxes (the "Employer Taxes", and collectively with the Withholding Taxes, the "Payroll Taxes"). In the aggregate, the accrued and unremitted prepetition Payroll Taxes total approximately $293,000.00

18.     During each applicable pay period, the Debtors also routinely withhold other amounts from certain Employees' gross earnings, including garnishments, child support, and deductions related to various Employee Benefits Programs (defined below) (collectively, the "Deductions" and, together with the Payroll Taxes, the "Payroll Taxes and Deductions"). In the aggregate, the accrued and unremitted prepetition Deductions total approximately $57,000.00

19.     The Debtors seek authority to remit and/or fund all unpaid or unremitted prepetition Payroll Taxes and Deductions (the "Unremitted Payroll Taxes and Deductions"), and to continue to forward Payroll Taxes and Deductions to the applicable third-party recipients in the ordinary course of business on a post-petition basis.

iii.    **Payroll Processing**

20.     The Debtors process payroll internally but retain iSolved HCM ("iSolved") to disburse payroll payments to Employees. The Debtors provide pay directions to iSolved to process their payroll. iSolved disburses the wages and salary to Employees either by direct deposit to an Employee's bank account or check. On average, the Debtors pay iSolved approximately $2,700.00 per week for this service (the "iSolved Administration Fees"). As of the Petition Date, the Debtors do not believe they owe iSolved any accrued unpaid prepetition iSolved Administration Fees, as such fees are collected when payroll is processed.

22.     In an abundance of caution, the Debtors seek authority, but not direction, to pay all accrued unpaid prepetition Payroll Processing Fees (the "Prepetition Payroll Processing Fees") in

the ordinary course of business and consistent with past practice, and to continue to pay the Payroll Processing Fees in the ordinary course of business on a post-petition basis.

## B. Non-Insider Employee Incentive Plans

23. To motivate, reward, and retain certain of the Debtors' non-insider Employees and to ensure their optimal performance, the Debtors have implemented their Field Management Bonus Plan and provide a bonus plan for all corporate office Employees and Independent Contractors. (each as defined below, and collectively, the "Non-Insider Employee Incentive Plans").

### i. Field Management Bonus Plan

24. The Debtors maintain a bonus incentive program for general managers, unit managers, and kitchen managers at the Debtors' movie theater locations (the "Field Management Bonus Plan"). The Field Management Bonus Plan is an annual bonus structure based on performance measured against specified key financial and operational metrics during the year. The Field Management Bonus Plan creates a bonus pool at each location, which is then split on a percentage basis amongst that location's managers. The Field Management Bonus Program is currently suspended. There are no accrued obligations as of the Petition Date. It is unclear when such incentive plan might be reinstated or replaced with an similar incentive structure.

25. That said, the Debtors rely upon the location managers to maintain quality service and guide overall performance. If the Debtors become able, Field Management Bonus Plan is critical to encouraging maximum performance and retention of trained managers. The Debtors seek authority, but not direction, to pay all amounts earned under the Field Management Bonus Plan, if reestablished, in the ordinary course of business on a postpetition basis and consistent with past practice.

### ii. Corporate Office Bonus Structure

26. The Debtors also offer bonuses to corporate office Employees. These corporate bonuses are historically based on business-wide performance and are paid as a function of

percentage of annual wages. Theses bonuses are tied to employment agreements which include restrictive covenants, including confidentiality provisions, that protect the Debtors' business. The Debtors have further agreed to pay two (2) employees commission for group sales. The Debtors have further agreed to pay certain additional bonuses under this structure to retain Employees (the "Stay Bonuses"). Bonuses are typically paid on an annual basis. The Debtors do not believe there to be any accrued and unpaid prepetition corporate office bonuses.

27.     The standard corporate office bonus program is currently suspended and without a clear trigger for its reconstitution.

28.     The Stay Bonuses were agreed to, by written agreement, on August 21, 2020, to be payable to certain employees on March 31, 2021 and September 30, 2021. In order to be eligible, the employee must still be employed by SMG on the respective payment date. The Stay Bonuses were based on salary and range from $21,028.88 to $79,522.40. Because of eligibility requirements, there are not any accrued or unpaid prepetition amounts due on the Stay Bonuses.

29.     The Debtors believe that all of these bonuses align eligible Employees' interests with the operational and financial viability of the Debtors' business and ensures that critical Employees' remain with the Debtors. Furthermore, the Debtors believe that disallowance of resumption any of these bonuses would negatively affect Employee morale and Employee commitment to the Debtors during the pendency of these Chapter 11 Cases. The Debtors are not seeking payment of any payments to insider Employees under these bonuses and will make any such requests pursuant to an appropriate pleading, if necessary, under Section 503(c) of the Bankruptcy Code.

30.     The Debtors seek authority, but not direction, to pay all amounts earned under the corporate office bonus structure, if reestablished, and Stay Bonuses in the ordinary course of business on a postpetition basis and consistent with past practice.

## C.      Reimbursable Expenses

31.    Prior to the Petition Date, and in the ordinary course of business, the Debtors reimbursed certain Employees for certain business expenses incurred in the ordinary course of their employment. Reimbursable Expenses typically relate to, among other things, business travel, transportation, lodging, meals, cell phones, office supplies, dues and professional memberships, and other miscellaneous expenses (the "Reimbursable Expenses"). The average monthly amount of Reimbursable Expenses was approximately $30,000. As of the Petition Date, the Debtors estimate that the accrued and unpaid amounts of Reimbursable Expenses was approximately $5,000.00.

32.    All of the Reimbursable Expenses were incurred by Employees or Independent Contractors in connection with their employment by the Debtors and in reliance upon the understanding that such expenses would be reimbursed. The Debtors seek authority, but not direction, to pay and honor the prepetition Reimbursable Expenses and to continue to honor the Reimbursable Expense obligations incurred on a postpetition basis in the ordinary course of business.

**D.     Paid and Unpaid Leave**

33.    The Debtors provide eligible Employees paid time off ("PTO"), paid sick leave ("Sick Leave"), and other miscellaneous paid leave ("Other Paid Leave", and together with PTO and Sick Leave, "Paid Leave"). In addition to Paid Leave, the Debtors also provide other forms of unpaid leave, including leave under the Family Medical Leave Act (the "FMLA"), unpaid leaves of absence for family medical leaves, military leaves, and other forms of unpaid leave mandated by law or otherwise provided within the Debtors' discretion (collectively, the "Unpaid Leave"). These forms of Unpaid Leave do not involve incremental cash outlays beyond standard payroll obligations. The Debtors estimate that they do not owe any amount on accrued unpaid prepetition PTO, except for $28,000 owed to former employees as required by their state's labor laws (the "Prepetition PTO").

34.     The Debtors believe that continuation of the Paid Leave and Unpaid Leave policies in accordance with the Debtors' prior practice is necessary to retain Employees and maintain Employee morale. The Debtors do not anticipate that the Employees' use of Paid and Unpaid Leave in the ordinary course of business will create any material disruptions to cash flow beyond the Debtor's regular payroll obligations. The Debtors request authority, but not direction, to permit their Employees to use Unpaid Leave and accrued Paid Leave in the ordinary course.

**E.      Employee Benefits Programs**

35.     The Debtors maintain and/or offer various employee benefit plans, policies, and programs for health care, health savings, dental, vision, life, long and short-term disability, and critical illness, and provide eligible Employees access to a 401(k) plan (collectively, and as discussed in more detail below, the "Employee Benefits Programs").

36.     As described more fully below, failure to continue the Employee Benefits Programs could cause Employees to experience severe hardship. In light of the substantial benefits the Employees have provided and will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship. Accordingly, by this Motion, the Debtors seek authority to: (a) pay any accrued and unpaid prepetition amounts due with respect to the Employee Benefits Programs (collectively, the "Prepetition Employee Benefits Programs Expenses"); and (b) continue to provide Employee Benefits Programs in the ordinary course of business on a postpetition basis. The Employee Benefits Programs are described in greater detail below.

**i.      Medical Insurance**

37.     All corporate office and manager level Employees are eligible to receive medical insurance coverage, in the form of one of three plan options (the "Medical Coverage") through the Debtors' health plan (the "Medical Plan")administered by United Healthcare ("UHC"). In addition, all hourly Employees that average over 30 hours per week in a 52-week period are eligible for a basic level Affordable Care Act health plan.

38.     Until recently the Debtors provided such Medical Coverage to Employees through a self-funded health plan, but are now in the run out period with respect to claims during the self-funded period. The Debtors estimate such outstanding self-funded claims to be minimal.

39.     The Employee-funded portion of the cost of the Medical Plan is deducted each payroll period from the Employee's total pay and constitutes a Deduction. Depending on the level of health plan selected the Debtors pay up to 46% of the health plan premiums. Each month, the Debtors also pay a monthly administration fee to UHC for administering the Medical Plan (the "Medical Plan Administration Fees").

40.     Enrollment and elections under the Medical Plan and certain other Employees Benefits Programs are managed using programs provided by the Debtors' broker, Marsh & McLennan Agency, LLC ("MMA"). MMA is paid certain fees for their brokerage services.

41.     The Debtors' Employees rely on the Medical Coverage provided through the Medical Plan and it would be extremely disruptive to Employees' personal lives and Employee morale if the Debtors did not honor prepetition obligations relating to the Medical Coverage, including the related costs and expenses associated with providing the Medical Coverage and administering the Medical Plan.

42.     The Debtors seek authority, but not direction, to pay any prepetition amounts due and outstanding relating to the Medical Coverage, including prepetition claims that have accrued under the Medical Plan, any administration fees, and other associated prepetition obligations (collectively, the "Prepetition Medical Coverage Expenses"), and to continue to pay all such costs and expenses (the "Medical Coverage Expenses") in the ordinary course of business on a postpetition basis.

ii.     **FSA Plans.**

43.     In addition to providing Medical Coverage, certain of the Debtors' Employees also have flexible spending accounts for dependent and/or health care (the "Medical Savings Accounts").

44.     The Debtors' Employees covered under the Medical Plan are eligible to establish a Medical Savings Account. Employees with Medical Savings Accounts may choose to deduct a portion of their gross earnings for placement in an eligible Medical Savings Account. Deductions for Medical Savings Accounts are included in the Deductions.

45.     The Debtors do not fund any portion of the Medical Savings Accounts. Some administrations fees may apply to the Medical Savings Accounts (collectively, the "Prepetition Medical Savings Account Expenses").

46.     The Debtors seek authority, but not direction, to pay Prepetition Medical Savings Account Expenses and to otherwise manage the Medical Savings Accounts in the ordinary course on a postpetition basis.

iii.    **Supplemental Benefits**

47.     In addition to coverage under the Medical Plan, the Debtors also provide eligible Employees the option to enroll in dental and vision insurance, life insurance, long and short-term disability insurance, critical illness insurance (collectively, and as more fully described below, the "Supplemental Benefits"). All corporate office and manager level Employees are eligible to receive the Supplemental Benefits.

48.     **Dental & Vision Coverage.** Eligible Employees may participate in dental and vision insurance plans. The Debtors make no contributions to such insurance plans. Employees may have their monthly premiums deducted from their gross earnings. Likewise, there are no accrued and unpaid prepetition amounts due from Debtors on these insurance plans.

49.     **Life, Disability, & Critical Illness Coverage.** The Debtors provide all corporate office and manager level Employees coverage under life insurance, short and long term disability,

and critical illness. The Debtors cover the full cost of the premiums on these insurance plans. The monthly premiums for the Life and ADD Plan total approximately $18,900. There are no accrued and unpaid prepetition Company Life and ADD Plan premiums.

      **iv.**      **401(k) Plan**

50.     The Debtors offer eligible Employees the opportunity to participate in a 401(k) plan (the "<u>401(k) Plan</u>") managed by Voya. The Debtors pay Voya approximately $1,100 per quarter to administer the 401(k) Plan and to provide investment management advice (the "<u>401(k) Administration Expenses</u>").

51.     Corporate office and manager level Employees that are at least 21 years old are eligible to participate in the 401(k) Plan following a requisite period of employment with the Debtors. For participating Employees, the Employees' 401(k) contributions are a component of the Deductions deducted from the Employees' gross payroll and those funds are deposited in the 401(k) Plan. The Debtors make no contributions or matching with respect to the Employees' 401(k) Plan. Likewise, there are no accrued and unpaid prepetition amounts due from Debtors on 401(k) Plan.

52.     The Debtors' believe that the 401(k) Plan is important benefits to the Debtors' Employees and that for many Employees the 401(k) Plan may be their only source of personal retirement funds. The Debtors believe it would be extremely detrimental to Employee morale if there are disruptions to the administration of the 401(k) Plan were discontinued.

53.     The Debtors seek authority, but not direction, to pay any accrued and unpaid prepetition 401(k) Expenses (the "<u>Prepetition 401(k) Expenses</u>") and to otherwise continue to maintain the 401(k) Plan and continue to pay the 401(k) Expenses in the ordinary course on a postpetition basis.

**F.    Certain of the Employee Obligations are Entitled to Priority Treatment**

54.     Pursuant to Sections 507(a)(4) and (5) of the Bankruptcy Code, certain of the unpaid prepetition Employee Obligations — including Prepetition Wage Obligations and certain

Prepetition Employee Benefits Programs Expenses— are entitled to priority treatment in an amount up to $13,650 for each individual Employee. To the extent such claims are afforded priority status, the Debtors will be required to pay these claims in full to confirm a Chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries or commissions, including vacation, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan). As such, these claims would be entitled to payment in full under any plan. Therefore, authorizing the Debtors to make these payments at this time will affect only the timing of such payments.

## G. Payment of Certain of the Employee Obligations and Benefits Is Required by Law

55.     The Debtors also seek authority to pay amounts for Deductions and Payroll Taxes to be provided to the appropriate entities. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks. Indeed, certain Deductions, including Employee contributions to Medical Benefit Plans and the 401(k) Plan, are not property of the Debtors' estates because they will be withheld from Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541(b). Further, federal and state laws require the Debtors and their officers to remit certain tax payments that have been withheld from Employees' paychecks. *See* 26 U.S.C. § 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich. (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Deductions and Payroll Taxes are not property of the Debtors' estates, the Debtors request that this Court authorize them to remit all amounts relating to Deductions and Payroll Taxes.

**H.      Ample Authority Exists to Authorize the Debtors to Honor Employee Obligations**

56.      Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 179 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). Courts have relied on several legal theories, including legal theories based on Sections 1107(a), 1108, 363(b), and 105(a), to authorize payments of certain prepetition obligations.

57.      Pursuant to Sections 1107(a) and 1108, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.*

58.      Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under Section 363(b) where a sound business purpose exists for doing so. *See e.g., In re Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to Section 363(b); relief appropriate where payment was needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); *see also Armstrong*, 29 B.R. at 397 (relying on Section 363 to

allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

59. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to Section 105(a). Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under Section 105(a), courts may permit preplan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. *See In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *In re Ionosphere Clubs*, 98 B.R. at 177 (finding that Section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor); *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing payment of pre-petition amounts due, inter alia, for wages, benefits, health insurance premiums and per diem expenses under the "necessity of payment doctrine," without regard to statutory priorities of Section 507).

60. Many bankruptcy courts have recognized the importance of employees to a debtor's reorganization and the severe harm to employees that can arise if courts do not grant motions such as this one. *In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (approving payment of prepetition employee wage claims due to the vital role the employees play to the debtor's reorganization). Similar relief to that requested herein has been granted by bankruptcy courts in the Northern District of Texas. *See, e.g., In re Erickson Inc.*, Case No. 1634393 (Bankr. N.D. Tex. Nov. 10, 2016) [Docket No. 47]; *In re Forest Park Med. Ctr. at Southlake, LLC*, Case No. 16-40273 (Bankr. N.D.

Tex. Jan. 25, 2016) [Docket No. 38]; *In re CHC Group Ltd.*, Case No. 16-31854 (Bankr. N.D. Tex. June 8, 2016) [Docket No. 289]; *In re ALCO Stores*, Case No. 14-34941 (Bankr. N.D. Tex. Oct. 16, 2014) [Docket No. 68].

61.     In order to maintain the continuity of their business and to preserve the morale of their vital labor force, it is essential that the Debtors be permitted to pay the funds requested through this Motion. The Debtors seek the relief requested in this Motion on an emergency basis because any delay or disruption in providing employee compensation will destroy the Debtors' relationship with the Employees and irreparably impair workforce morale at the very time when the dedication, confidence, and cooperation of these individuals is most critical. The Debtors face the risk that their operations may be severely impaired if authority is not granted for the Debtors to make the payments described above.

62.     Because the amounts represented by Wage Obligations are needed to enable the Employees to meet their own personal obligations, absent the relief requested herein, they will suffer undue hardship and, in many instances, serious financial difficulties. Moreover, without the requested relief, the stability of the Debtors would be undermined by the potential threat that otherwise loyal Employees would seek other employment.

**I.     Payment of the Independent Contractor Obligations Would Facilitate the Debtors' Successful Reorganization**

63.     The Debtors also believe that the uninterrupted performance by the Independent Contractors is essential to conducting services that are critical to the Debtors' operations and to the Debtors' efforts to maintain a steady cash flow from its business throughout the Chapter 11 Cases. Requiring the Debtors to seek to replace the Independent Contractors would significantly disrupt its operations and hamper its reorganization efforts.

**J.     Request for Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

64.     Given the nature of the relief requested, the Debtors respectfully request a waiver of

(i) the notice requirements under Bankruptcy Rule 6004(a); and (ii) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable hereto.

## K.    Reservation of Rights

65.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code Section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## V.
## NOTICE

66.    Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed DIP Agent;[3] (vi) counsel for any official committees appointed by this Court; (vii) the consolidated list of the 30 largest unsecured creditors of the Debtors; and (viii) all governmental agencies having a regulatory or statutory interest in these cases (collectively, the "Notice Parties"). Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) granting the relief requested in this Motion authorizing Debtors to pay the described wage obligations and benefits; and (ii) granting such other relief as the Court deems just and proper.

---

[3] "DIP Agent" means Goldman Sachs Special Lending Group, L.P., in its capacity as administrative agent under that certain [*Senior Secured Superpriority Debtor-in-Possession Financing Amendment*] dated as of [October __], 2020, by and among, among others, the Debtors, the DIP Agent, and the lenders party thereto.

DATED:  October 23, 2020

Respectfully submitted,

**LAW OFFICES OF FRANK J. WRIGHT, PLLC**


By:   */s/ Jeffery M. Veteto*
          Frank J. Wright
          Texas Bar No. 22028800
          Jeffery M. Veteto
          Texas Bar No. 24098548
          Jay A. Ferguson
          Texas Bar No. 24094648

2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone:    (214) 935-9100
Emails:        frank@fjwright.law
                jeff@fjwright.law
                jay@fjwright.law

**PROPOSED COUNSEL TO DEBTORS
AND DEBTORS-IN-POSSESSION**


## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served on the parties listed below, on all parties consenting to electronic service of this case *via* the Court's *ECF system* for the Northern District of Texas and *via* United States Mail, first class postage prepaid, on October 24, 2020 on the Debtor's Top Thirty (30) Largest Unsecured Creditors.

U.S. Trustee
1100 Commerce St.
Room 976
Dallas, Texas 75242


                  */s/ Frank J. Wright*
                  Frank J. Wright

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-32633-SGJ-11 |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, | § | Chapter 11 |
| *et al.*,[1] | § | |
| DEBTOR. | § | Joint Administration Requested |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

---

EXHIBIT

A

tabbies

**ORDER GRANTING MOTION FOR AUTHORIZATION TO (A) PAY
CERTAIN PREPETITION EMPLOYEE WAGES, OTHER
COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES;
(B) PAY CERTAIN PREPETITION INDEPENDENT CONTRACTORS;
AND (C) CONTINUE EMPLOYEE BENEFIT PROGRAMS**

Came on to be considered the Debtors' *Emergency Motion for an Order (I) Authorizing the Debtors
to (A) Pay Certain Prepetition Employee Wages, Other Compensation, and Reimbursable Employee Expenses; (B)
Pay Certain Prepetition Independent Contractor and Temporary Staff Obligations, and (C) Continue Employee Benefits
Programs* (the "Motion") (the "Motion"[2]). Based on the specific facts and circumstances of this case
and for the reasons stated on the record, which are incorporated herein, the Court finds that: (i) it has
jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a
core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent
with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§
1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors' estates,
their creditors and other parties in interest; (v) notice of the Motion and the hearing were appropriate
under the circumstances and no other notice need be provided; and (vi) upon review of the record
before the Court, including the legal and factual bases set forth in the Motion and the statements made
by counsel at the hearing, and after due deliberation thereon, there being found good and sufficient
cause exists it is hereby

**ORDERED** that:

1.      The Motion is granted;

2.      Subject to the requirements of Bankruptcy Code §§ 507(a)(4) and (a)(5), the
        Debtors are authorized, but not directed, to pay and remit in accordance with
        the Debtors' prepetition policies and programs, the Prepetition Employee
        Obligations and all costs incident to the fore-going in accordance with the
        Debtors' customary policies and in the ordinary course of business, including

---

[2]     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

all specific categories identified in the Motion; *provided*, that, for the avoidance of doubt, the Debtors shall not make payments to or on behalf of any individual in respect of Prepetition Employee Obligations collectively in an amount that exceeds $13,650 per individual;

3. The Debtors are authorized, but not directed, to pay and remit in accordance with the Debtors' prepetition policies and programs, the Employee Obligations that accrue after the Petition Date and all costs incident to the foregoing in accordance with the Debtors' customary policies and in the ordinary course of business including all specific categories identified in the Motion;

4. The Debtors are authorized, but not required, to maintain and continue to honor on a postpetition basis their practices, programs, and policies in place for the benefit of their Employees as were in effect as of the Petition Date, as such may be modified, amended, or supplemented from time to time in the ordinary course of business;

5. The Debtors are authorized, but not directed, to pay all post-petition costs and expenses incidental to payment of the costs, expenses, and programs described in paragraphs 2 through 4 herein, including all administrative and processing costs;

6. Nothing contained herein is intended or should be construed to create an administrative priority claim on account of any Employee Obligations or any obligations owed pursuant to the practices, policies, or programs described in paragraphs 2 through 5 herein;

7. Nothing in the Motion or this Order shall be deemed to (a) authorize the payment of any amounts that are subject to section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code) or (b) violate or permit a violation of section 503(c) of the Bankruptcy Code.

8. All employees who have accrued Prepetition PTO are authorized to utilize such Paid Time Off on a go-forward basis and the Debtors are authorized to honor their obligations related to the use of such Prepetition PTO, *provided*, *however*, that, for the avoidance of doubt, this Order does not authorize the Debtors, upon the postpetition termination of any employee, to pay the cash value of any Prepetition PTO that such employee had accrued as of the Petition Date.

9. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim

on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or ad-mission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to Bankruptcy Code § 365; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim;

10.     The banks and financial institutions on which checks were drawn (or were to be drawn) or electronic payment requests were made (or were to be made) in payment of the pre- petition obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order;

11.     Notwithstanding anything to the contrary herein, nothing in this Order authorizes the use of cash collateral or debtor-in-possession financing. Any payments authorized to be made pursuant to the Motion shall be made only to the extent authorized under the cash collateral and debtor-in-possession financing order approved by the Court in effect as of the time such payment is to be made (together with any approved budgets in connection therewith, the "DIP Order"), and such payments shall be subject to the terms, conditions, limitations, and requirements of the DIP Order in all respects. Any Agent Consent (as defined in the DIP Order) or other consent or approval of the DIP Agent given or requested in respect of any matters relating to this Order shall require approval of the Requisite Lenders (as defined in the DIP Order);

12.     Notwithstanding anything else in this Order to the contrary, any payments authorized to be made by this Order shall be subject to the terms, conditions, limitations, and restrictions set forth in that certain Order Granting Debtors' Emergency Motion Pursuant to Sections 105, 345, 364, 363, 503, 1107 and 1108, Authorizing (i) Maintenance of Existing Bank Accounts; (ii) Continuance of Existing Cash Management System, Bank Accounts and Checks and Related Forms; (iii) Continued Performance of Intercompany Transactions; (iv) Limited Waiver of Section 345(b) Deposit and Investment Requirements; and (v) Granting Related Relief;

13.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived;

14.     The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Order in accordance with the Motion;

15. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof;

16. Any objection to this Order must be filed within twenty-one (21) days after the date of the entry of this Order. If an objection is timely received from the U.S. Trustee, any creditor or party-in-interest, the Debtors shall request a hearing before the Court. If no objection is filed, the Order automatically becomes final; and

17. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

**IT IS SO ORDERED**.

### # # # End of Order # # #

<u>**SUBMITTED BY**</u>:

Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTOR
AND DEBTOR-IN-POSSESION**

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-32633-SGJ-11 |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, | § | Chapter 11 |
| *et al.*,[1] | § | |
| DEBTOR. | § | Joint Administration Requested |

---

1   The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546) ("SMG Holdings"); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

---

## ORDER GRANTING MOTION FOR AUTHORIZATION TO (A) PAY CERTAIN PREPETITION EMPLOYEE WAGES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES; (B) PAY CERTAIN PREPETITION INDEPENDENT CONTRACTORS; AND (C) CONTINUE EMPLOYEE BENEFIT PROGRAMS

Came on to be considered the Debtors' *Emergency Motion for an Order (I) Authorizing the Debtors to (A) Pay Certain Prepetition Employee Wages, Other Compensation, and Reimbursable Employee Expenses; (B) Pay Certain Prepetition Independent Contractor and Temporary Staff Obligations, and (C) Continue Employee Benefits Programs* (the "Motion") (the "Motion"[2]). Based on the specific facts and circumstances of this case and for the reasons stated on the record, which are incorporated herein, the Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the hearing, and after due deliberation thereon, there being found good and sufficient cause exists it is hereby

**ORDERED** that:

1.      The Motion is granted;

2.      Subject to the requirements of Bankruptcy Code §§ 507(a)(4) and (a)(5), the Debtors are authorized, but not directed, to pay and remit in accordance with the Debtors' prepetition policies and programs, the Prepetition Employee Obligations and all costs incident to the fore-going in accordance with the Debtors' customary policies and in the ordinary course of business, including

---

[2]      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

all specific categories identified in the Motion; *provided*, that, for the avoidance of doubt, the Debtors shall not make payments to or on behalf of any individual in respect of Prepetition Employee Obligations collectively in an amount that exceeds $13,650 per individual;

3.    The Debtors are authorized, but not directed, to pay and remit in accordance with the Debtors' prepetition policies and programs, the Employee Obligations that accrue after the Petition Date and all costs incident to the foregoing in accordance with the Debtors' customary policies and in the ordinary course of business including all specific categories identified in the Motion;

4.    The Debtors are authorized, but not required, to maintain and continue to honor on a postpetition basis their practices, programs, and policies in place for the benefit of their Employees as were in effect as of the Petition Date, as such may be modified, amended, or supplemented from time to time in the ordinary course of business;

5.    The Debtors are authorized, but not directed, to pay all post-petition costs and expenses incidental to payment of the costs, expenses, and programs described in paragraphs 2 through 4 herein, including all administrative and processing costs;

6.    Nothing contained herein is intended or should be construed to create an administrative priority claim on account of any Employee Obligations or any obligations owed pursuant to the practices, policies, or programs described in paragraphs 2 through 5 herein;

7.    Nothing in the Motion or this Order shall be deemed to (a) authorize the payment of any amounts that are subject to section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code) or (b) violate or permit a violation of section 503(c) of the Bankruptcy Code.

8.    All employees who have accrued Prepetition PTO are authorized to utilize such Paid Time Off on a go-forward basis and the Debtors are authorized to honor their obligations related to the use of such Prepetition PTO, *provided, however*, that, for the avoidance of doubt, this Order does not authorize the Debtors, upon the postpetition termination of any employee, to pay the cash value of any Prepetition PTO that such employee had accrued as of the Petition Date.

9.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim

on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or ad-mission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to Bankruptcy Code § 365; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim;

10.     The banks and financial institutions on which checks were drawn (or were to be drawn) or electronic payment requests were made (or were to be made) in payment of the pre- petition obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order;

11.     Notwithstanding anything to the contrary herein, nothing in this Order authorizes the use of cash collateral or debtor-in-possession financing. Any payments authorized to be made pursuant to the Motion shall be made only to the extent authorized under the cash collateral and debtor-in-possession financing order approved by the Court in effect as of the time such payment is to be made (together with any approved budgets in connection therewith, the "DIP Order"), and such payments shall be subject to the terms, conditions, limitations, and requirements of the DIP Order in all respects. Any Agent Consent (as defined in the DIP Order) or other consent or approval of the DIP Agent given or requested in respect of any matters relating to this Order shall require approval of the Requisite Lenders (as defined in the DIP Order);

12.     Notwithstanding anything else in this Order to the contrary, any payments authorized to be made by this Order shall be subject to the terms, conditions, limitations, and restrictions set forth in that certain Order Granting Debtors' Emergency Motion Pursuant to Sections 105, 345, 364, 363, 503, 1107 and 1108, Authorizing (i) Maintenance of Existing Bank Accounts; (ii) Continuance of Existing Cash Management System, Bank Accounts and Checks and Related Forms; (iii) Continued Performance of Intercompany Transactions; (iv) Limited Waiver of Section 345(b) Deposit and Investment Requirements; and (v) Granting Related Relief;

13.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived;

14.     The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Order in accordance with the Motion;

15.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof;

16.    Any objection to this Order must be filed within twenty-one (21) days after the date of the entry of this Order. If an objection is timely received from the U.S. Trustee, any creditor or party-in-interest, the Debtors shall request a hearing before the Court. If no objection is filed, the Order automatically becomes final; and

17.    This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

**IT IS SO ORDERED.**

**# # # End of Order # # #**

**SUBMITTED BY:**

Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-9100

**PROPOSED COUNSEL TO DEBTOR
AND DEBTOR-IN-POSSESION**