Jonathan W. Young
*Pro Hac Vice Forthcoming*
LOCKE LORD LLP
111 Huntington Ave.
Boston, MA 02199
(617) 239-0367 (Telephone)
(855) 595-1190 (Facsimile)
jonathan.young@lockelord.com

Stephen J. Humeniuk
Texas Bar No. 24087770
LOCKE LORD LLP
600 Congress Ave., Suite 2200
Austin, TX 78701
Telephone: (512) 305-4700
Facsimile: (512) 305-4800
stephen.humeniuk@lockelord.com

Michael B. Kind
*Pro Hac Vice Forthcoming*
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336
michael.kind@lockelord.com

**ATTORNEYS FOR CONTINENTAL CASUALTY COMPANY**

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>STUDIO MOVIE GRILL HOLDINGS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-32633-SGJ<br><br>Jointly Administered<br><br>**Related Docket No. 364** |

### LIMITED OBJECTION OF CONTINENTAL CASUALTY COMPANY
### (A) TO THE PROPOSED CURE
### AMOUNT SET FORTH IN THE DEBTORS' PLAN SUPPLEMENT
### AND (B) REQUEST FOR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

Continental Casualty Company and its North American insurance affiliates using the CNA service mark (collectively, "***CNA***") by and through undersigned counsel, hereby submit this limited objection to the Debtors' assumption of their executory contracts and the cure amounts proposed in the Debtors' *Amended Notice of Executory Contracts and Unexpired Leases which May be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially All of the Debtors' Assets and the Proposed Cure Amounts with Respect Thereto* dated December 21, 2020 [Dkt. No. 364] (the "***Cure Notice***"). In furtherance of this limited objection, CNA also requests adequate assurance of future performance in connection with the proposed assumption of any of the Debtors' executory contracts with CNA. In support of its limited objection (the "***Objection***"), CNA respectfully states as follows.

1

## **Introduction**

1.      Before and after the Petition Date, CNA provided insurance to the Debtors
pursuant to various agreements and policies.  CNA has continued to provide insurance to the
Debtors after the Petition Date, all subject to the terms, conditions, limitations and exclusions set
forth in such agreements and policies.  In the Cure Notice, the Debtors have indicated their intent
to assume certain insurance agreements between the Debtors and CNA with $0 in cure amount
payments for each of these agreements.  *See* Cure Notice, p. 18.  CNA does not object to the
assumption of its unexpired agreements, but does object to the proposed cure amount of $0, and
is still in the process of reviewing and reconciling the relevant insurance policies, unpaid
invoices, contracts and applicable parties and counter-parties to such contracts for the purposes
of more specifically identifying the appropriate cure amounts for each of the insurance
agreements between the Debtors and CNA.  Because this investigation and reconciliation is still
ongoing, CNA files this Objection to reserve its rights with respect to a proper determination of
the cure amounts.  CNA further reserves the right to amend and/or supplement this Objection to
claim any additional amounts it discovers owing to it under the insurance agreements and to
which CNA is entitled in order to cure the Debtors' default.  More specifically, CNA believes
that there is outstanding deductible reimbursement outstanding in an amount not less than
$59,843.35.  CNA likewise asserts that its unexpired policies and agreements cannot be assigned
without the express consent of the insurer.  CNA reserves any and all rights to challenge the
assignment of its policies and agreements, and to require adequate assurance of future
performance in connection with any such proposed assignment.

2.      Moreover, CNA believes that this matter is susceptible to resolution by consent
and/or through appropriate protections being incorporated into any proposed confirmation order

reserving CNA's rights to enforce additional obligations under the insurance agreements and policies as and when they accrue. Thus, CNA objects to the entry of any confirmation order to the extent it does not contain sufficient protections which confirm that any amounts owing by the Debtors that have accrued but are not yet payable obligations may be billed by CNA and/or any insurer in the ordinary course of business.

### Background

3.      On October 23, 2020 (the "**Petition Date**"), each of the above-captioned debtors (the "**Debtors**") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to act as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

4.      The Cure Notice lists several types of insurance policies between the Debtors and CNA, including, but not limited to, liability, auto, workers' compensation, liquor liability, and excess liability insurance policies (collectively, the "**Insurance Policies**"). *See* Cure Notice, p. 18. The Cure Notice proposes a total cure amount of $0 for each of the Debtors' Insurance Policies with CNA (the "**Proposed Cure Amounts**"). *See* Id. Thus, the Debtors propose that all contracts and Insurance Policies between CNA and the Debtors may be assumed pursuant to the Debtors' proposed sale but that no amounts are currently owing to CNA and thus no cure amount exists.

### Objection

5.      CNA hereby objects to the Proposed Cure Amounts listed in Cure Notice. The amount presently required to cure the Debtors' default under each of the Insurance Policies is not less than $59,843.35, plus unliquidated amounts and reasonable attorneys' fees and costs to the extent permitted by the Insurance Policies and applicable law, and to the extent such obligations

91145851v.3

have accrued but not yet been liquidated and billed (the "***True Cure Amounts***").  CNA is still investigating the amounts owing to it under the Insurance Policies and related agreements, however, and because this reconciliation is still ongoing, CNA reserves the right to amend and/or supplement this Objection to claim any additional amounts it discovers owing to it under the Insurance Policies and related agreements and to which CNA is entitled in order to cure the Debtors' default.  In this regard, CNA notes that the Debtors have provided less than one month's notice to arrive at a final reconciliation of this account.

6.       Additionally, CNA objects to the assumption and assignment of its agreements with the Debtors absent CNA's express consent to such assignment.  CNA reserves the right to require that any proposed assignee provide adequate assurance of future performance in connection with such assignment.

7.       While CNA continues its investigation and continues to provide postpetition insurance, CNA objects to the entry of any sale approval order or plan confirmation order to the extent it does not contain sufficient protections which confirm that any amounts owing by the Debtors that have accrued but are not yet payable obligations may be billed by CNA and/or any insurer in the ordinary course of business.

**Basis for Objection**

8.       Section 365(b) allows a debtor to assume and assign a lease or other executory contract only if "at the time of assumption of such contract or lease, the [debtor] . . . compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default." 11 U.S.C. § 365(b)(1)(B).  Therefore, CNA is entitled to receive the True Cure Amounts if the Insurance Policies and related agreements are to be assumed and

4

assigned.

9.      Prior to the Petition Date, CNA issued Insurance Policies to the Debtors and continues to provide the Debtors with insurance coverage in the post-Petition Date period.

10.     The Proposed Cure Amounts do not accurately reflect the amounts outstanding under the Insurance Policies and related agreements between CNA and the Debtors and also do not take into account the potential for amounts owing by the Debtors that have accrued but are not yet payable obligations and which may be billed by CNA and/or any insurer in the ordinary course of business as the claims reconciliation process continues.

11.     Additionally, CNA is entitled to its reasonable attorneys' fees and costs in connection with its efforts to protect its rights under the Insurance Policies and related agreements to the extent that such fees and costs are permitted by such policies, agreements, and applicable law.  *See In re Crown Books Corp.*, 269 B.R. 12, 15 (Bankr. D. Del. 2001) ("The obligation to cure defaults [under section 365(b)] includes the payment of any late or similar charges that are due under the contract or lease.") (allowing payment of attorneys' fees and expenses).

12.     In addition, CNA may be entitled to an administrative expense priority claim on account of its postpetition provision of insurance coverage.  By providing insurance and related services to the Debtors in the postpetition period, CNA has enabled the Debtors to continue to operate their business as debtors in possession.  Absent provision of this insurance and other services, the Debtors likely would have experienced interruption in their business, and would have been unable to complete the Plan solicitation and confirmation process.  Because CNA's continued relationship with the Debtors postpetition directly benefited the Debtors, CNA is entitled to an administrative expense claim in an unliquidated amount representing the insurance

5

and other services provided to the Debtors after the Petition Date.  Moreover, any insurance

claims that arise from postpetition incidents or occurrences are entitled to administrative expense

priority.  *See In re Eli Witt Co.*, 213 B.R. 396, 397-400 (Bankr. M.D. Fla. 1997); *see also Zurich*

*Am. Ins. Co. v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, 371 B.R. 210, 225-34 (Bankr.

E.D. Ky. 2007); *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 311 B.R.

862, 865-69 (Bankr. D. Ariz. 2004).  CNA reserves its rights to file a separate administrative

expense priority claim.

13.     Therefore, the True Cure Amounts that CNA is entitled to receive is not less than

$59,843.35, plus unliquidated amounts and attorneys' fees and costs to the extent permitted by

the Insurance Policies, related agreements, and applicable law.  As stated above, CNA is still

investigating the amounts owing to it under the Insurance Policies and related agreements,

however, and because this reconciliation is still ongoing, CNA reserves the right to amend and/or

supplement this Objection to claim any additional amounts it discovers owing to it under the

Insurance Policies and related agreements to which CNA is entitled in order to cure the Debtors'

default.

**Request for Adequate Assurance of Future Performance**

14.     In order to assume or assume and assign the Insurance Policies and related

agreements, the Debtors are required to obtain the express consent of CNA, and to provide CNA

with adequate assurance of its future performance and/or the future performance on the part of

any proposed assignee.  *See* 11 U.S.C. § 365(f)(2).

15.     The Debtors, however, have only recently filed documents and other disclosures

related to the proposed sale.  CNA reserves the right to review these materials and to request

adequate assurance of future performance.  The Debtors must provide interested parties and the

Court with sufficient information to evaluate whether the Debtors and/or any assignees have demonstrated adequate assurance of future performance. *See Ill. Investment Trust No. 92-7163 v. Allied Waste Indus. (In re Resource Technology Corp.)*, 624 F.3d 376 (7th Cir. 2010) (identifying several relevant factors to the determination of whether a party has provided adequate assurance of future performance pursuant to section 365, including "the financial ability to perform the contract; the general economic climate; the existence of a guarantee; the reputation of the party seeking to assume responsibility for the contract; and past dealings between the parties") (citations omitted); *see also In re Colo. Sun Oil Processing LLC*, 2011 Bankr. LEXIS 3109, at *32 (Bankr. D. Colo. Aug. 12, 2011) (finding that adequate assurance of future performance had been provided where the assignee "has demonstrated the financial capability and organizational willingness to perform" under the relevant agreements). Indeed, either the Debtors or any potential assignees must demonstrate adequate assurance of future performance. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of success).

16.     Thus, CNA reserves the right to review and request additional financial or other evidence that the Debtors or any proposed assignees have the ability to perform under the Insurance Policies and related agreements. In the absence of consent from CNA and additional sufficient information on this issue, the Debtors should be precluded from assuming or assuming and assigning the Insurance Policies and related agreements in connection with any sale or proposed plan, and the Debtors should remain obligated under the Insurance Policies and related agreements notwithstanding the terms of any proposed sale or chapter 11 plan.

91145851v.3

**Conclusion**

17.     CNA reserves the right to amend and/or supplement this Objection and to raise

other and further objections with respect to the proposed sale and/or Plan.  CNA further reserves

the right to take discovery with respect to these issues, to the extent that the Debtors move

forward with the assumption or assumption and assignment of the Insurance Policies and related

agreements.

18.     More specifically, and as stated above, CNA is still investigating the amounts

owing to it under the Insurance Policies and related agreements, and because this reconciliation

is still ongoing, CNA reserves the right to amend and/or supplement this Objection to claim any

additional amounts it discovers owing to it under the Insurance Policies and related agreements

and to which CNA is entitled in order to cure the Debtors' default.

19.     Moreover, CNA objects to the entry of any confirmation order to the extent it

does not contain sufficient protections which confirm that any amounts owing by the Debtors

that have accrued but are not yet payable obligations may be billed by CNA and/or any insurer in

the ordinary course of business.

WHEREFORE, CNA respectfully requests that any order authorizing the assumption or

assumption and assignment of the Insurance Policies and related agreements, and/or approving

any proposed sale and/or confirming any plan, (i) correctly reflects the cure amount due and

payable to CNA as not less than $59,843.35, plus unliquidated amounts, attorneys' fees and costs

to the extent permitted by the Insurance Policies, related agreements, and applicable law, and any

additional amounts that CNA may discover in its investigation are owed to it pursuant to the

Insurance Policies and related agreements, (ii) preserves CNA's right to consent to any

assignment of its Insurance Policies, and obligates any potential assignees to satisfy the

8

91145851v.3

obligations of the Debtors under the Insurance Policies and related agreements, as set forth in

this Objection, regardless of when those obligations accrued or arose, (iii) contains sufficient

protections which confirm that any amounts owing by the Debtors that have accrued but are not

yet payable obligations may be billed by CNA and/or any insurer in the ordinary course of

business, (iv) preserves CNA's entitlement to adequate assurance of future performance in

connection with any proposed assumption and assignment, and (v) grants CNA such other and

further relief as the Court may deem just and proper.

91145851v.3

Dated: January 13, 2021                    Respectfully submitted,


                                           By:  _/s/ Stephen J. Humeniuk_____

                                           **LOCKE LORD LLP**
                                           Stephen J. Humeniuk
                                           Texas Bar No. 24087770
                                           600 Congress Ave., Suite 2200
                                           Austin, TX 78701
                                           Telephone: (512) 305-4700
                                           Facsimile: (512) 305-4800
                                           stephen.humeniuk@lockelord.com

                                           and

                                           Jonathan W. Young
                                           111 Huntington Avenue
                                           Boston, MA 02199
                                           Telephone: 617-239-0367
                                           Facsimile: 855-595-1190
                                           jonathan.young@lockelord.com

                                           and

                                           Michael B. Kind
                                           111 South Wacker Drive
                                           Chicago, IL 60606
                                           Telephone: (312) 443-0700
                                           Facsimile: (855) 595-1192
                                           michael.kind@lockelord.com

                                           *Attorneys for Continental Casualty Company and its*
                                           *North American insurance affiliates using the CNA*
                                           *service mark (collectively, "**CNA**")*


                                           10

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 13, 2021, true and correct copies of the foregoing were forwarded to all parties receiving electronic notification in this case from the Court's electronic case filing (ECF) system.

*/s/ Stephen J. Humeniuk*
Stephen J. Humeniuk

91145851v.3