

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 31, 2021**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 20-32633-SGJ** |
| | § | |
| **STUDIO MOVIE GRILL HOLDINGS, LLC,** | § | **Chapter 11** |
| *et al.,*[1] | § | |
| **DEBTOR.** | § | **Jointly Administered** |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER CONFIRMING THE DEBTORS' FOURTH
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***")

having:

a.   commenced these chapter 11 cases (the ("***Chapter 11 Cases***") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") on October 23, 2020 (the "***Petition Date***");

b.   continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.   obtained, on October 27, 2020, *the Interim Order (I) Authorizing Debtors to (A) Use Cash Collateral on a Limited Basis and (B) Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 52];

d.   caused, on October 30, 2020, the *Notice of Chapter 11 Bankruptcy Case* (the "***General Bar Date Notice***") to be distributed through DRC (defined below), as evidenced by the *Affidavit of Service* [Docket No. 120] (the "***General Bar Date Affidavit***");

e.   obtained, on December 1, 2020*, Final Order (I) Authorizing Debtors to (A) Use Cash Collateral on a Limited Basis and (B) Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Granting Adequate Protection, and (III) Granting Related Relief* [Docket No. 280] (the "***Final DIP Order***");

f.   filed, on January 5, 2021, (i) the *Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 394]; and (ii) the *Joint Disclosure Statement for Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 395];

g.   obtained, on January 14, 2021, the *Stipulation and Agreed Order by and Among the Debtors, the Agent, and the Committee of Unsecured Creditors Extending the Challenge Deadline as to Preserved Claims* [Docket No. 498];

h.   caused, on January 28, 2021, (i) the General Bar Date Notice and (ii) *Notice of Interim Administrative Bar Date* (the "***Interim Administrative Bar Date Notice***" and together with the General Bar Date Notice, the ***Claims Bar Date Notices***") to be distributed through DRC, as evidenced by the *Affidavit of Service* [Docket No. 667] (the "***Claims Bar Date Affidavit***");

i.   filed, on February 11, 2021, (i) the *Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 619] (the "***Solicited Plan***"); and (ii) the solicited version of the *Amended Joint Disclosure Statement for Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 616] (the "***Disclosure Statement***");

j.   obtained, on February 12, 2021, the *Order Granting Motion for Entry of Order (A) Approving Disclosure Statement in Support of Debtors' Joint Plan of Reorganization, (B) Scheduling a Hearing to Consider Confirmation of the Joint Plan of Reorganization, (C) Establishing Voting and Objection Deadlines, and (D) Approving Balloting, Solicitation, Notice, and Voting Procedures* (the "***Disclosure Statement Order***") [Docket No. 630];

k.   filed, on February 14, 2021, the *Notice of Hearing and Deadline to Object to the Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* (the "***Confirmation Hearing Notice***") [Docket No. 633];

l.   posted, on February 17, 2021, the notice, setting forth, among other things, the date and time set for the hearing to consider Confirmation of the Plan (the "***Confirmation Hearing***"), and the deadlines for filing objections to the Plan and the Disclosure Statement and for voting to accept or reject the Plan (the "***Combined Hearing Notice***"), on DRC's public website for these Chapter 11 Cases;

m.   caused solicitation materials and notice of the deadlines for voting on the Plan (as defined below) and objecting to confirmation of the Plan to be distributed through Donlin, Recano, & Company, Inc. (the "***Noticing Agent***" or "***DRC***"), commencing on February 17, 2021, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "***Local Rules***"), and the Disclosure Statement Order, which Disclosure Statement Order also approved, among other things, voting and tabulation procedures (the "***Voting Procedures***") and related notices, forms, and Ballots, as evidenced by the *Affidavit of Donlin Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to Amended Joint Disclosure Statement for Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 690] (the "***Solicitation Affidavit***");

n.   obtained, on February 23, 2021, the *Second Stipulation and Agreed Order By and Among the Debtors, the Agent, and the Committee of Unsecured Creditors Extending the Challenge Deadline as to Preserved Claims* [Docket No. 670];

o.   obtained, on February 23, 2021, the *Order Granting Emergency Motion to Supplement Disclosure Statement* ("***Disclosure Statement Supplement Order***") [Docket No. 671];

p. filed, on March 5, 2021, the *Second Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 700] (the "**Second Amended Plan**");

q. filed, on March 5, 2021, the *Notice of Filings Redline of Second Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 701];

r. filed, on March 5, 2021, the *Notice of Filing of Supplement to the Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 702] (the "**First Plan Supplement**");

s. caused additional solicitation materials and notice of the deadlines for voting on the Plan and objecting to confirmation of the Plan to be distributed through DRC, commencing on March 5, 2021, consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, and the Disclosure Statement Order, which Disclosure Statement Order also approved, the Voting Procedures and related notices, forms, and Ballots, as evidenced by the *Supplemental Affidavit of Donlin Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to Amended Joint Disclosure Statement for Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 709] (the "**Supplemental Solicitation Affidavit**");

t. caused, on March 5, 2021 the *Notice of (I) Amendment to the Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors and (II) Supplement to Disclosure Statement* to be distributed through DRC (defined below), as evidenced by the *Affidavit of Service* [Docket No. 744];

u. filed, on March 8, 2021, the *Notice of Filing of Second Supplement to the Second Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 705] (the "**Second Plan Supplement**");

v. filed, on March 12, 2021, *Declaration of John Burlacu of Donlin, Recano & Company, Inc. Regarding the Solicitation and Tabulation of Votes Cast on the Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization* [Docket No. 770] (the "**Voting Declaration**"), which detailed the results of the Plan solicitation and voting process; and

w. filed, on March 25, 2021, the *Third Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 834] and the proposed form of this Confirmation Order with the Bankruptcy Court on March 25, 2021 [Docket No. 838-1];

x. filed, on March 25, 2021, the *Notice of Filing of Third Supplement to the Second Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 843] (the "**Third Plan Supplement**");

US 7768510

4

y. filed, on March 31, 2021, the *Notice of Filing of Fourth Supplement to the Second Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 870] (collectively with the First Plan Supplement, the Second Plan Supplement, and the Third Plan Supplement, and as may be further modified, amended, or supplemented from time to time, the "***Plan Supplement***"); and

z. filed, on March 31, 2021, the *Fourth Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 869] (as same has been or may be further modified, amended, or supplemented from time to time, the "***Plan***")², a copy of which is annexed hereto as **Exhibit A**.

The Court having:

a. set February 21, 2021 as the deadline for filing proofs of claim [Docket No. 89] (the "***General Claims Bar Date***")

b. entered the *Order Establishing an Administrative Claim Bar Date and Approving the Form and Manner of Notice Thereof* [Docket No. 532] (the "***Interim Administrative Claim Bar Date Order***";

c. set February 15, 2021 as the deadline for filing any administrative claims arising on or before January 31, 2021 (the "***Interim Administrative Claim Bar Date***", together with the General Claims Bar Date, the "***Claims Bar Dates***");

d. the *Order Granting Motion for Entry of Order (A) Approving Disclosure Statement in Support of Debtors' Joint Plan of Reorganization, (B) Scheduling a Hearing to Consider Confirmation of the Joint Plan of Reorganization, (C) Establishing Voting and Objection Deadlines, and (D) Approving Balloting, Solicitation, Notice, and Voting Procedures* (the "***Disclosure Statement Order***") [Docket No. 630];

e. set February 21, 2021 as the voting record date (the "***Voting Record Date***");

f. set February 18, 2021 as the date by which the Debtors must commence solicitation;

g. set February 18, 2021 as the date by which Debtors must serve Non-Voting Classes the Opt Out Form;

h. set March 10, 2021, at 4:00 p.m. (Prevailing Central Time) as the date and time by which Holders of Claims may file with the Bankruptcy Court a motion pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing a Claim in a different amount or classification for purposes of voting to accept or reject the Plan;

---

² Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan. The rules of interpretation set forth in Article I.B of the Plan shall apply.

i.    set March 5, 2021 as the date and time by which any Plan Supplement must be filed with the Bankruptcy Court;

j.    set March 10, 2021, at 4:00 p.m. (Prevailing Central Time) as the deadline by which Ballots and duly executed Opt Out Forms must be received by the Debtors' Noticing Agent (the "***Voting Deadline***");

k.    set March 10, 2021, at 4:00 p.m. (Prevailing Central Time) as the deadline by which objections to the adequacy of the Disclosure Statement and/or Confirmation of the Plan must be filed (the "***Confirmation Objection Deadline***");

l.    set March 12, 2021 as the deadline by which the Debtors shall file the Voting Declaration;

m.    reviewed the Plan, the Plan Supplement, the Voting Declaration, the Confirmation Declarations, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any and all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

n.    held the Confirmation Hearing;

o.    heard the statements, arguments, and objections, if any, made by counsel in respect of Confirmation;

p.    considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

q.    taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases; and

r.    overruled any and all objections to the Plan and to Confirmation and all statements and reservations of right not consensually resolved or withdrawn unless otherwise indicated herein.

**NOW**, **THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation, and the record established at the Confirmation Hearing, as well as the entire record of the Chapter 11 Cases, establish just cause for the relief granted herein; and after due

6

deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact and Conclusions of Law, and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.    Findings and Conclusions.**

1.    The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  The findings and conclusions of the Bankruptcy Court pursuant to Bankruptcy Rule 7052 set forth in the record at the Confirmation Hearing, if any, are incorporated as if set forth herein. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue, and Core Proceeding.**

2.    The Court has jurisdiction over the Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code, and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

**C.    Eligibility for Relief.**

3.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, each Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By prior order of the Bankruptcy Court, the Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 48].  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors has been appointed in these Chapter 11 Cases (the "***Committee***").  No trustee or examiner has been appointed in the Chapter 11 Cases.

**E.      Judicial Notice.**

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

**F.      Notice.**

6.      Due, timely, proper, and adequate notice of the Plan, the Claims Bar Dates, and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Plan or opting out of the Third Party Releases (as defined below), has been provided substantially in accordance with the Disclosure Statement Order and the applicable Bar Date Order as set forth in the Solicitation Affidavit and the Claims Bar Date Notice Affidavit, respectively.

7.      Such notice was appropriate and satisfactory based upon the facts and circumstances of the Chapter 11 Cases and pursuant to sections 1125 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and other applicable law and rules.  Because

US 7768510

8

such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required, and due, proper, timely and adequate notice of the Confirmation Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law.

**G.      Solicitation.**

8.      The Solicited Plan, the Plan Supplement, the Disclosure Statement, the Ballots, the Notice of Non-Voting Status, the Confirmation Hearing Notice, and the other materials distributed by the Debtors in connection with solicitation of the Solicited Plan (collectively, the "***Solicitation Package***"), as well as the Second Amended Plan and the Plan Supplement, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Rules, and with the Voting Procedures approved by the Disclosure Statement Order, and the Disclosure Statement Supplement Order, as applicable.

9.      As set forth in the Solicitation Affidavit, on February 17, 2021, the Solicitation Package was transmitted to and served on the eligible Holders of Claims in the Classes of Claims entitled to vote to accept or reject the Plan (the "***Voting Classes***").  Each Holder of a Claim in the Voting Classes received a Ballot.  The form of the Ballots adequately addressed the particular needs of the Chapter 11 Cases and was appropriate for the Holders of Claims in each Voting Class. The instructions on each Ballot advised that for the Ballot to be counted, the Ballot must be properly executed, completed, and delivered to the Noticing Agent so that it was actually received by the Noticing Agent on or before the Voting Deadline.  The period during which the Debtors solicited acceptance of the Plan was a reasonable period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.  Additionally, the Debtors provided a reasonable period of time for Holders of Claims in the Voting Classes and Holders of

Claims and Interests in the Non-Voting Classes to make an informed decision to opt out of the proposed Third Party Releases.

10.     The Debtors were not required to solicit votes from the Holders of Claims in Class 1 (Other Priority Claims) (the "*Unimpaired Class*"), as such Class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

11.     The Debtors were not required to solicit votes from the Holders of Claims or Interests in Class 7 (Intercompany Claims) and Class 10 (Other Debtor Interests) (the "*Unimpaired or Impaired Classes*"), as the Holders of Claims or Interests in such Classes are either Unimpaired and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or Impaired and deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and, in either case, are not entitled to vote to accept or reject the Plan.

12.     The Debtors were not required to solicit votes from the Holders of Claims or Interests in Class 8 (Subordinated Claims) and Class 9 (SMG Holdings Interests) (the "*Deemed Rejecting Classes*"), as the Holders of Claims or Interests in such Classes are and not entitled to receive distributions on account of their Claims or Interests under the Plan and, thus, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

13.     As described in and as evidenced by the Voting Declaration and the Solicitation Affidavit, the transmittal and service of the Solicitation Package (all of the foregoing, the "*Solicitation*") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Voting Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, the Disclosure Statement Order, and any other applicable rules, laws, and regulations.

**H.      Voting.**

14.      On March 12, 2021, the Voting Declaration was filed with the Bankruptcy Court, certifying the method and results of the Ballots tabulated for the Voting Classes.  The results of the Voting Declaration are adopted as findings of the Bankruptcy Court and are incorporated by reference herein.  As evidenced by the Voting Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Voting Procedures, and the Local Rules.

**I.      Plan Supplement.**

15.      The Debtors filed the Plan Supplement consisting of, *inter alia*:  the New Organizational Documents, the Assumed Executory Contract and Unexpired Lease List, the Rejected Executory Contract and Unexpired Lease List, the Schedule of Retained Causes of Action, the identity of the members of the SMG Parent Board and management of the Reorganized Debtors, the GUC Trust Agreement, the Exit Facility Credit Agreement, the Schedules of Non-Reorganized Debtors, the Restructuring Transactions Exhibit, the list of Insurance Policies, the list identifying any Non-Vesting Assets, the list of retained studio contracts, and the SMG Parent A&R LLCA.

16.      All such materials comply with the terms of the Plan, and the filing and notice of the Plan Supplement was proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all applicable law and no other or further notice is or shall

be required. Subject to the terms of the Plan, the Debtors may alter, amend, update, or modify the Plan Supplement before the Effective Date with the consent and at the direction of the Agent.[3]

## J.    Modifications of the Plan.

17.    Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Solicited Plan as reflected herein, in the Plan Supplement, and/or in the revised Plan filed with the Bankruptcy Court prior to entry of this Confirmation Order (collectively, the "***Plan Modifications***"). In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Solicited Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially and adversely change the treatment of any Claims, (d) require re-solicitation of any Holders of any Claims or Interests, or (e) require that Holders of Claims in the Voting Classes be afforded an opportunity to change their previously cast acceptances of the Solicited Plan. Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Solicited Plan or who are conclusively presumed to have accepted the Solicited Plan are deemed to have accepted the Plan as modified by the Plan Modifications. The Holders of

---

[3] Except as otherwise expressly provided herein, no determination, agreement, decision, consent, election, approval, acceptance, waiver, designation, authorization, or other similar circumstance or matter of or by the Agent hereunder or related hereto (including any determination as to whether any particular document is acceptable to the Agent) (the "***Agent Consent***") or requested of the Agent by the Debtors shall be inferred from any action, inaction, or acquiescence of the Agent, and shall not be given other than by a writing acceptable to the Agent that is signed by the Agent or its authorized representative or attorney and expressly states such Agent Consent, without limitation. Any act committed or action taken by the Agent hereunder shall be deemed to be made for itself and for and on behalf of the Prepetition Lenders and/or the DIP Lenders, as applicable. Any authority or other right, benefit, or interest granted to the Agent hereunder is deemed to be granted to the Agent for itself and for and on behalf of the DIP Lenders and/or the Prepetition Lenders, as applicable. Any Agent Consent hereunder or in any Plan Document shall be in the Agent's sole and absolute discretion but shall require the approval of the Requisite Lenders (as defined in the DIP Facility Loan Agreement).

Claims in the Voting Classes are not permitted to change their respective acceptances to rejections as a consequence of the Plan Modifications.

**K.      Bankruptcy Rule 3016.**

18.      In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents within the meaning of section 1129 of the Bankruptcy Code. The Debtors appropriately filed the Disclosure Statement with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**L.      Burden of Proof: Confirmation of the Plan.**

19.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**M.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

20.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

(i)      <u>Proper Classification—Sections 1122 and 1123(a)(1)</u>.

21.      Article III of the Plan provides for the separate classification of Claims and Interests against Debtors that will become Reorganized Debtors into ten Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or

Interests that are substantially similar to other Claims or Interests within that Class. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    Specified Unimpaired Classes—Section 1123(a)(2).

22.    Article III of the Plan specifies that Claims against and Interests in Debtors that will become Reorganized Debtors in the following Classes are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code:

| Class | Claim or Interest |
|---|---|
| 1 | Other Priority Claims. |
| 7 | Intercompany Claims[4] |
| 10 | Other Debtor Interests[5] |

(iii)    Specified Treatment of Impaired Classes—Section 1123(a)(3).

23.    Article III of the Plan specifies that the Claims against or Interests in Debtors that will become Reorganized Debtors in the following Classes are Impaired under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:

| Class | Claim or Interest |
|---|---|
| 2 | Prepetition Lenders' Claims |
| 3 | Secured Tax Claims |
| 4 | Other Secured Claims |
| 5 | GUC Claims |
| 6 | Convenience Class Claims |
| 7 | Intercompany Claims[6] |
| 8 | Subordinated Claims |
| 9 | SMG Holdings Interests |
| 10 | Other Debtor Interests[7] |

---

[4] Class 7 is comprised of Claims which are either Unimpaired or Impaired.

[5] Class 10 is comprised of Interests which are either Unimpaired or Impaired.

[6] Class 7 is comprised of Claims which are either Unimpaired or Impaired.

[7] Class 10 is comprised of Interests which are either Unimpaired or Impaired.

(iv)     No Discrimination—Section 1123(a)(4).

24.     Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest in accordance with the Plan, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     Adequate Means for Plan Implementation—Section 1123(a)(5).

25.     The Plan, including the various documents and agreements in the Plan Supplement and Plan Documents, provides adequate and proper means for implementation of the Plan, including, without limitation:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and this Confirmation Order that satisfy the requirements of applicable law and any other terms to which the Agent may consent; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the Agent may consent; (c) the execution of the GUC Trust Agreement; (d) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; (e) the execution and delivery of the New Organizational Documents; (f) the issuance of the New Units as set forth in the Plan; and (g) all other actions that the Debtors with the Agent's consent or the Reorganized Debtors, as applicable, determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

26. This Confirmation Order, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorizes, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

(vi) Voting Power of Equity Securities—Section 1123(a)(6).

27. The New Organizational Documents of each Debtor that becomes a Reorganized Debtor have been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities. As such, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii) Designation of Directors and Officers—Section 1123(a)(7).

28. The Reorganized Debtors' initial directors and officers, to the extent known, have been disclosed in the Plan Supplement. To the extent that any director or officer has not yet been determined prior to the Effective Date, such determination will be made in accordance with the New Organizational Documents. Based on the foregoing, the Reorganized Debtors' initial directors and officers will be deemed to have been selected and appointed in accordance with the interests of creditors and equity holders and with public policy, and, therefore, satisfy section 1123(a)(7) of the Bankruptcy Code.

(viii) Impairment / Unimpairment of Classes—Section 1123(b)(1).

29. The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

       (ix)    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases—Section 1123(b)(2).</u>

30.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V.A of the Plan provides for the assumption of certain of the Debtors' Executory Contracts and Unexpired Leases on the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code. In particular, Article V.A of the Plan provides that all Executory Contracts or Unexpired Leases (other than those Executory Contracts or Unexpired Leases that previously were assumed or assumed and assigned by the Debtors) that, as of the Confirmation Date (or such later date as the Debtors, with the Agent's consent, and the applicable counterparty to such Executory Contract or Unexpired Lease agree in writing): (a) are identified on the Rejected Executory Contract and Unexpired Lease List, (b) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending, (c) are not listed on the Assumed Executory Contract and Unexpired Lease List, or (d) are not subject to a motion to assume such Executory Contracts or Unexpired Leases that is pending, shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

       (x)    <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).</u>

31.    The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise

and settlement of such Claims and Interests embodied in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

32.     Article VIII.C of the Plan describes certain releases granted by the Debtors and their Estates (the "***Debtor Releases***").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases.  For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered, admitted, or adduced at the Confirmation Hearing, such releases are a necessary and integral part of the Plan, and are fair and equitable and in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests.  The Debtor Releases are "fair and equitable" and "in the best interests of the estate" considering (a) the probability of success in litigation of the released Claims and Causes of Action given uncertainty in fact and law with respect to the Claims and Causes of Action; (b) the complexity and likely duration and expense of litigating the released Claims and Causes of Action; (c) the arm's-length negotiations which produced the settlement embodied in the Plan; (d) the identity of interest between the Released Parties and the indemnity obligations to be assumed by the Reorganized Debtors; and (e) the overwhelming creditor support for the Debtor Releases, as evidenced by the Voting Declaration.  Additionally, the Debtor Releases are:  (x) a good-faith settlement and compromise of the Claims and Causes of Action released by Article VIII.C of the Plan; (y) given and made, after due notice and opportunity for hearing; and (z) a bar to any of the Debtors or the Reorganized Debtors asserting any Claim or Cause of Action released by Article VIII.C of the Plan.

33.     Article VIII.D of the Plan describes certain releases granted by the Releasing Parties (the "***Third Party Releases***").  The Third Party Releases provide finality for the Debtors,

the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors. The Ballots sent to all Holders of Claims entitled to vote on the Plan unambiguously stated that the Plan contains the Third Party Releases and set forth the terms of the Third Party Releases, and provided the option for such Holders to opt-out of granting the Third Party Releases if such Holders made the Opt Out Election by submission of an Opt Out Form. The Notice of Non-Voting Status sent to all Holders of Claims or Interests not entitled to vote on the Plan similarly unambiguously included information regarding the Third Party Releases and detailed the process by which Holders of Claims or Interests in the Non-Voting Classes could opt-out of the Third Party Releases, including by providing a form Holders could use to indicate that they wished to opt-out of giving the Third Party Releases. The Confirmation Hearing Notice sent to Holders of Claims and Interests as modified for publication purposes, referenced, and/or included the terms of the Third Party Releases and an explanation of how to object to the Plan and/or opt-out of the Third Party Releases set forth therein. In addition, the Confirmation Hearing Notice advised careful review of the release, exculpation, and injunction provisions and emphasized in bold and capitalized typeface that any party should opt-out of the Third Party Releases if it did not wish to grant such releases.

34. The Third Party Releases are (a) consensual; (b) specific in language; (c) integral to the Plan; (d) a condition of the settlements embodied in the Plan; and (e) not violative of the Bankruptcy Code. The Third Party Releases are fully consensual because all parties in interest, including all Releasing Parties, were provided with extensive and sufficient notice of the Chapter 11 Cases, the Plan, the deadline to object to confirmation of the Plan, and the process for opting-out of giving the Third Party Releases, and all such parties were properly informed that the Plan contained release provisions that could affect such parties' rights.

35.     The Third Party Releases are sufficiently specific as to put the Releasing Parties on notice of the nature of the released Claims and Causes of Action, and they are appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The Third Party Releases are conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Notice of Non-Voting Status.

36.     The Third Party Releases are integral to the Plan because they, *inter alia*, facilitated participation in both the formation of the Plan and the chapter 11 process generally and were critical in incentivizing the parties to support the Plan. As such, the Third Party Releases offer certain protections to parties that participated constructively in the Debtors' restructuring process by, among other things, supporting the Plan and the Restructuring.

37.     The Third Party Releases are consistent with established practice in this jurisdiction and others because they are, *inter alia*: (a) fully consensual; (b) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Releases.

38.     Article VIII.E of the Plan describes certain mutual releases granted by the Agent Released Parties and Schultz Parties (the "***Mutual Releases***"). Upon the occurrence of the Effective Date and execution of a mutual release in form and substance acceptable to the Agent, each Schultz Party will have satisfied the Schultz Release Conditions and thereafter each Schultz Party will constitute a Released Party.

39.     Article VIII.F of the Plan describes certain releases granted by the Schultz Parties (the "***Schultz Releases***"). The Schultz Parties acknowledge, agree, and consent to the terms of the Schultz Releases set forth in Article VIII.F of the Plan.

40.      The exculpation, described in Article VIII.G of the Plan (the "***Exculpation***"), is appropriate under applicable law because it was proposed in good faith and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party is appropriately released and exculpated from Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Exculpated Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the negotiation, terms, or execution of any settlement agreements effectuated pursuant to Federal Rule of Bankruptcy Procedure 9019 in the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement in connection with the Plan, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence.  The Exculpation, including its carve-out for actual fraud, willful misconduct, and gross negligence, is consistent with established practice in this jurisdiction and others.

41.      The injunction provision set forth in Article VIII.H of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third Party Releases, the Mutual Releases, and the Exculpation and by extension the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose.

42.      Article IV.N of the Plan appropriately provides that in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the

Reorganized Debtors or the GUC Trust, as applicable, will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and any other actions specifically enumerated in the Schedule of Retained Causes of Action. The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

43.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates as described in Article VIII.B of the Plan (the "***Lien Release***") is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

(xi)     Modification of Rights—Section 1123(b)(5).

44.     The Plan modifies the rights of Holders of Claims or Interests, as applicable, in Class 2 (Prepetition Lenders' Claims), Class 3 (Secured Tax Claims), Class 4 (Other Secured Claims), Class 5 (GUC Claims), Class 6 (Convenience Class Claims), Class 7 (Intercompany Claims),[8] Class 8 (Subordinated Claims), Class 9 (SMG Holdings Interests), and Class 10 (Other Debtor Interests),[9] and leaves Unimpaired or Impaired the rights of Holders of Claims in Class 1 (Other Priority Claims), Class 7 (Intercompany Claims),[10] and Class 10 (Other Debtor Interests),[11] as permitted by section 1123(b)(5) of the Bankruptcy Code.

---

[8] Class 7 is comprised of Impaired and Unimpaired Claims.

[9] Class 7 is comprised of Impaired and Unimpaired Claims.

[10] Class 10 is comprised of Impaired and Unimpaired Claims.

[11] Class 10 is comprised of Impaired and Unimpaired Claims.

(xii)    Additional Plan Provisions—Section 1123(b)(6).

45.    The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Claims and Interests, (b) resolution of disputed Claims, (c) allowance of certain Claims, and (d) retention of Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.    The failure to address any provisions of the Bankruptcy Code specifically in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

(xiii)    Cure of Defaults—Section 1123(d).

46.    Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.    Any Cure Claims under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the Debtors or Reorganized Debtors (as applicable) (with the consent of the Agent) and the other parties to such Executory Contracts or Unexpired Leases may otherwise agree.    Any disputed Cure Claims will be determined in accordance with the procedures set forth in Article V.C of the Plan, prior orders of the Bankruptcy Court providing for the same, and applicable bankruptcy and non-bankruptcy law. As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts or Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code.    Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**N.**      **Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

47.      The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

     a.    is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

     b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

     c.    complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Package and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**O.**      **Plan Proposed in Good Faith—Section 1129(a)(3).**

48.      The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement, Plan Documents, and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In so determining, the Bankruptcy Court has considered the facts and record of the Chapter 11 Cases, the Disclosure Statement, and evidence proffered, admitted, or adduced at the Confirmation Hearing, and examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, and the process leading to Confirmation. The Debtors' Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from chapter 11 with a financially deleveraged capital structure. The Plan (including all documents necessary to effectuate the Plan), Plan Documents, and the Plan Supplement were negotiated in good faith and at arm's length among the Debtors and their key stakeholders. Additionally, the compromises and settlements embodied in the Plan (including all documents necessary to effectuate the Plan), Plan

Documents, and the Plan Supplement reflects the best possible compromise and settlement that could be reached given the facts and circumstances surrounding the Debtors and these Chapter 11 Cases. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with the Bankruptcy Code, and are each integral to the Plan, and necessary for the Debtors' successful reorganization.

**P.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

49.      The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code. Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable. All such costs and expenses of the Debtors' professionals shall be paid in accordance with the Plan, and all other estimated costs and expenses of the Debtors' professionals shall be escrowed in the Professional Fee Escrow Account no later than the Effective Date.

**Q.      Directors, Officers, and Insiders—Section 1129(a)(5).**

50.      The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code. The Plan Supplement discloses the identity and affiliations of the individuals proposed to serve as the initial directors and officers of the Reorganized Debtors. The proposed directors and officers for the Reorganized Debtors are qualified, and the appointment to such offices of the proposed directors and officers is consistent with the interests of the Holders of Claims and Interests and with public policy.

**R.     No Rate Changes—Section 1129(a)(6).**

51.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**S.     Best Interest of Creditors—Section 1129(a)(7).**

52.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Disclosure Statement as **<u>Exhibit D</u>** and the other evidence related thereto in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if such Debtors were liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date.

**T.     Acceptance by Certain Classes—Section 1129(a)(8).**

53.     The Unimpaired Classes are Unimpaired by the Plan and, accordingly, Holders of Claims in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As to each Debtor, the Voting Classes are Impaired each has voted to accept the Plan, except for Class 5, as established by the Voting Declaration.

54.     The Deemed Rejecting Classes are Impaired and deemed to reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.  Holders of Claims in the Deemed Rejecting Classes will not receive or retain any

property on account of their Claims or Interests. Additionally, the Unimpaired or Impaired Classes are not entitled to vote to accept or reject the Plan. Therefore, the Plan does not satisfy the requirements of section 1129(a)(8), with respect to the Deemed Rejecting Classes, Class 5, and the Unimpaired or Impaired Classes (to the extent such Classes are Impaired under the Plan). Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and, with respect to the Deemed Rejecting Classes, Class 5, and the Unimpaired or Impaired Classes (to the extent such Classes are Impaired under the Plan), 1129(b) of the Bankruptcy Code.

**U.     Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

55.     The treatment of Allowed General Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed DIP Facility Claims and statutory fees imposed by 28 U.S.C. § 1930 under Article I of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**V.     Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

56.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Declaration, Classes 2, 3, 4, and 6 each of which is Impaired, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**W.     Feasibility—Section 1129(a)(11).**

57.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting Confirmation of the Plan proffered, admitted, or adduced by the Debtors at or prior to the Confirmation Hearing:  (a) is reasonable, persuasive, credible, and accurate as of

the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**X.     Payment of Fees—Section 1129(a)(12).**

58.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.D of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**Y.     Continuation of Employee Benefits—Section 1129(a)(13).**

59.     The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. Article IV.C.9 of the Plan provides that, on and after the Effective Date, all retiree benefits, as defined in section 1114 of the Bankruptcy Code, shall continue to be paid in accordance with applicable law.

**Z.     Non-Applicability of Certain Sections—1129(a)(14), (15), and (16).**

60.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each a moneyed, business, or commercial corporation.

**AA.     "Cram Down" Requirements—Section 1129(b).**

61.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Class 5 and certain of the Unimpaired or Impaired Classes have rejected or may be deemed to reject the Plan, the Plan may be confirmed pursuant to

section 1129(b) of the Bankruptcy Code. The evidence in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing is reasonable, persuasive, credible, and accurate, has not been controverted by other evidence, and establishes that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to such Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. *Third*, the Plan does not discriminate unfairly with respect to such Classes because similarly situated Holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. Accordingly, the Plan satisfies the requirement of section 1129(b)(1) and (2) of the Bankruptcy Code. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**BB.    Only One Plan—Section 1129(c).**

62.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed with respect to each Debtor in each of the Chapter 11 Cases.

**CC.    Principal Purpose of the Plan—Section 1129(d).**

63.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**DD.    Not Small Business Cases—Section 1129(e).**

64.    The Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**EE.    Good Faith Solicitation—Section 1125(e).**

65.    Based on the record before the Bankruptcy Court in these Chapter 11 Cases, including evidence proffered, admitted, or adduced at or prior to the Confirmation Hearing, the Debtors and the other Exculpated Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, the Voting Procedures, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the development of the Plan, all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation set forth in Article VIII.G of the Plan.

**FF.    Satisfaction of Confirmation Requirements.**

66.    Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, admitted, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**GG.    Implementation.**

67.    The terms of the Plan, including the Plan Supplement, and all documents, forms, lists, schedules, addendums, and agreements contemplated under the Plan (including, but not limited to the Plan and the Plan Supplement), each in form and substance acceptable to the Agent, (collectively, the "***Plan Documents***") are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order.  Consummation of each such Plan Document is in the best interests of the Debtors, the Debtors' Estates, and Holders of Claims and Interests, and such Plan Documents are hereby approved.  The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

68.    The Exit Facility and Exit Facility Loan Documents are an essential element of the Plan, are necessary for Confirmation and Consummation of the Plan, and are critical to the overall success and feasibility of the Plan. Entry into the Exit Facility and the Exit Facility Loan Documents on the same or better terms as set forth in the Plan Supplement is in the best interests of the Debtors, their Estates, and all Holders of Claims or Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the Exit Facility Loan Documents and have provided sufficient and adequate notice of the material terms thereof, which were Filed as part of the Plan, Plan Supplement, and other related Filings.  The terms and conditions of the Exit Facility are fair and reasonable, and were negotiated in good faith and at arm's length, and any credit extended, letters of credit issued, and loans made pursuant to the Exit Facility shall be deemed to have been extended, assumed, and assigned, issued, or made in good faith.  All fees due

and payable under the Exit Facility are hereby approved and the Debtors and Reorganized Debtors, as applicable, are authorized and directed to pay such fees in accordance with, and to the extent they become payable, under the terms of the Fee Letter in respect of the Exit Facility and Exit Facility Loan Documents.

**HH.    Binding and Enforceable.**

69.    The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**II.    New Organizational Documents.**

70.    The New Organizational Documents are necessary for Confirmation and Consummation of the Plan and are critical to the overall success and feasibility of the Plan.  Entry into the New Organizational Documents is in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the New Organizational Documents (which shall include, for the avoidance of doubt, their otherwise becoming effective) and have provided sufficient and adequate notice of the material terms of the New Organizational Documents, which material terms were filed in the Plan Supplement.  The terms and conditions of the New Organizational Documents are fair and reasonable and were negotiated in good faith and at arm's-length.

**JJ.** **Issuance of New Units.**

71.     Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution under the Plan of the New Units, whether on the Effective Date or any other date of a distribution thereafter, pursuant to the terms of the Plan and/or in accordance with this Confirmation Order, comply with section 1145 of the Bankruptcy Code and shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.  The issuances of the New Units was are or were in exchange for a portion of an Allowed Claim.

72.     In addition, under section 1145 of the Bankruptcy Code, any securities issued or distributed as contemplated by the Plan, including the New Units, shall be freely tradable by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

**KK.** **Executory Contracts and Unexpired Leases.**

73.     The Debtors have exercised sound business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, and Article VI of the Plan.  Each assumption of an Executory Contract or Unexpired Lease pursuant to Article V of the Plan, including any amendments to each such Executory Contract or Unexpired Lease, shall be legal, valid, and

binding upon the Debtors or Reorganized Debtors and their successors and assigns and all non-Debtor parties and their successors and assigns to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order. The Debtors or the Reorganized Debtors, as applicable, have cured, or provided adequate assurance that the Debtors, the Reorganized Debtors, or their successors and assigns, as applicable, will cure defaults (if any) under or relating to each of the Executory Contracts and Unexpired Leases that are being assumed by the Debtors pursuant to the Plan.

74.     The Debtors gave notice of the proposed cure amounts to each non-Debtor counterparty to an Executory Contract or Unexpired Lease that the Debtors seek to assume under the Plan. The Assumed Executory Contract and Unexpired Lease List was good, sufficient, and appropriate under the circumstances, and no further notice need be given to any party in respect of establishing a Cure Claim for the respective Executory Contract or Unexpired Lease. Non-Debtor counterparties to the applicable Executory Contracts and Unexpired Leases have had a sufficient, reasonable, and appropriate opportunity to object to the proposed cure amounts.

**LL.     Debtors' PPP Loan**

75.     On April 22, 2020, SMG Holdings applied for a SBA Paycheck Protection Program ("*PPP*") loan in the amount of $10 million through Regions Bank (the "*PPP Loan*"). SMG Holdings met all eligibility requirements for the PPP Loan.

76.     The PPP Loan was approved and disbursed on April 28, 2020. The SMG Holdings' "covered period" for forgiveness started on April 28, 2020 and ended on October 12, 2020.

77.     On October 21, 2020, SMG Holdings applied for forgiveness for $7,303,720.91 in eligible costs incurred during the covered period with respect to the PPP Loan.

78.     The costs eligible for forgiveness under the PPP Loan were: (a) $4,703,298.65 in payroll costs and (b) $2,855,738.38 non-payroll costs. These costs totaled $7,559,037.03 and were eligible for forgiveness under the regulations applicable to the PPP.

79.     SMG Holdings reduced its total eligible expenses by subtracting $255,316.12 due to salary/wage reductions during the covered period, in accordance with the regulations applicable to the PPP. After taking this required reduction, SMG Holdings requested forgiveness for the amount of $7,303,720.91. The costs attributable to payroll were equal to at least 60% of the total amount requested in forgiveness.

80.     SMG Holdings was exempt from a reduction in PPP loan forgiveness based on a reduction in full-time equivalent ("**FTE**") employees during the covered period because SMG Holdings qualified for a "FTE Reduction Safe Harbor." Specifically, SMG Holdings was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

81.     With its application for PPP loan forgiveness, SMG Holdings submitted to Regions Bank the documentation required under the applicable regulations to verify payroll costs and payments during the covered period (or alternative payroll covered period); the existence of obligations for rent, lease and utility services prior to February 15, 2020; and the payments for

business rent, lease, and utilities during the covered period or by the next regular billing date (even if outside the covered period).

82.     On October 22, 2020, SMG Holdings made a payment of principal in the amount of $2,696,279.09 on its PPP Loan. This amount was the difference between its original PPP Loan amount ($10 million) and the amount requested in forgiveness.

83.     On February 19, 2021, Regions Bank filed a proof of claim in the unsecured amount of $7,303,720.91.

84.     SMG Holdings' PPP forgiveness application is under review by Regions Bank and/or the SBA. When the review is complete, and the SBA remits the requested forgiveness amount to Regions Bank, SMG Holdings' PPP Loan will fully satisfied.

**MM.     The Challenge Deadline**

85.     The Challenge Deadline (as defined in the Final DIP Order) expired (a) as to all parties in interest, including without limitation any chapter 7 trustee of any Non-Reorganized Debtor, other than the Committee on January 11, 2021 and (b) as to the Committee on the Effective Date.

**NN.     Good Faith.**

86.     The Debtors, the other Released Parties, and the Exculpated Parties acted in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan; and (b) take the actions authorized and directed by this Confirmation Order.

**OO.     Retention of Jurisdiction.**

87.     The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.      **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.      **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including, without limitation, the Plan Documents, are hereby authorized and approved.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

3.      **Objections**.  All objections to Confirmation of the Plan and other responses, comments, statements, or reservation of rights, if any, in opposition to the Plan that have not been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order are overruled on the merits.

4.      **Plan Classification Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classification set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject

the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

5.     **Confirmation Hearing Notice**.  The Confirmation Hearing Notice complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

6.     **Solicitation**.  The solicitation of votes on the Plan complied with the Voting Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and applicable nonbankruptcy law.

7.     **Plan Modifications**.  The modifications, amendments, and supplements made to the Solicited Plan following the solicitation of votes thereon constitute technical changes and do not materially adversely affect or change the proposed treatment of any Claims or Interests.  After giving effect to such modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The filing of the *Debtors' Fourth Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No. 869], which contains such modifications, and the disclosure of such modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.  Accordingly, such modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126, or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that the

Holders of Claims in the Voting Classes be afforded an opportunity to change their previously cast votes on the Solicited Plan. The Holders of Claims in the Voting Classes who voted to accept the solicitation version of the Solicited Plan are deemed to accept the Plan as modified. The Plan, as modified, is, therefore, properly before this Court and all votes cast with respect to the Solicited Plan prior to such modification shall be binding and shall apply with respect to the Plan.

8. **No Action Required.** No action of the respective directors, equity holders, managers, or members of the Debtors or the Reorganized Debtors is required to authorize the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the New Organizational Documents, the other Plan Documents, and the appointment and election of the members of the SMG Parent Board.

9. **Binding Effect**. On the date of and after entry of this Confirmation Order, subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(d), 6004(h), or otherwise, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective (and/or adopted, where applicable) and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests and such Holder's respective successors and assigns (regardless of whether or not (a) the Holders of such Claims or Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the Holders of such Claims or Interests are entitled to a distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases (including the releases set forth in Article VIII of the Plan), waivers, discharges, exculpations, and injunctions

provided for in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, all owners of Interests in any Debtor, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

10. **Only One Plan.** The Plan is a joint plan of reorganization of the Reorganized Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Reorganized Debtor. The Plan is not premised upon substantive consolidation of any of the Reorganized Debtors with respect to the Classes of Claims or Interests set forth in the Plan. The Debtors did not disregard separateness of their respective corporate entities prior to or after the Petition Date; the Debtors have separate identities; creditors have not treated the Debtors as a single legal entity or a single economic unit; each of the Debtors' assets, liabilities, and business affairs were treated separately on a post-petition basis and were not commingled; and consolidating the Debtors yields no benefit or avoids any harm. Prior to and after the Petition Date, no Debtor was organized or operated as a mere tool or business conduit of another or inadequately capitalized with the effect of creating an injustice, and the corporate form of each Debtor was not used (a) as a sham to perpetuate a fraud; (b) to evade an existing legal obligation; (c) to achieve or perpetuate a monopoly; (d) to circumvent a statute; or (e) to protect against the discovery of a crime or to justify a wrong. After the Effective Date, any chapter 7

trustee appointed in any Debtor's case shall be prohibited from asserting the doctrine of alter ego, the remedy of piercing the corporate veil, reverse veil-piercing, or any similar such doctrine, remedy, Cause of Action, or theory of liability against any Reorganized Debtor or its officers, directors, members, or managers based on any act, omission, occurrence, circumstance, transaction, or other event occurring on or before the Effective Date.

11.      **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated herein, on the Effective Date, other than with respect to all Non-Vesting Assets, property of any Non-Reorganized Debtor, and the GUC Trust Assets, all property in each Estate, all Causes of Action (including the Retained Causes of Action), and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor or such other Entity as determined by the Agent, free and clear of all Liens, Claims, charges, interests, or other encumbrances; provided, however, that (a) any and all DIP Liens shall be retained by the DIP Agent and assigned to the Exit Agent to secure the obligations under the Exit Facility and (b) any and all Liens securing the Prepetition Lenders' Claim shall be retained by the Prepetition Agent and assigned to the Exit Agent to secure the obligations under the Exit Facility, in each case of (a) and (b) to secure any and all obligations of the Reorganized Debtors under the Exit Facility.  Except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated herein, on and after the Effective Date, each of the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Notwithstanding anything herein to the contrary, at any time prior to the Effective Date, the Agent may elect for

any Interest in any Debtor that will become a Reorganized Debtor to be issued and assigned to any Entity on the Effective Date, including without limitation any third party by filing a notice on the docket of the Bankruptcy Court.

12. This Confirmation Order shall constitute (a) an authorization of the Bankruptcy Court to abandon the Non-Vesting Assets under section 554 of the Bankruptcy Code and (b) an order of abandonment of the Non-Vesting Assets as of the Effective Date. The Non-Vesting Assets shall not vest in any of the Reorganized Debtors, and the Reorganized Debtors shall have no ownership interest in the Non-Vesting Assets. All property of a Non-Reorganized Debtor that is not otherwise a Non-Vesting Asset being abandoned under the Plan shall remain property of such Non-Reorganized Debtor on the Effective Date. For the avoidance of doubt, Interests in Debtors listed on the Schedule of Abandoned Debtors shall not revest in or be owned by the Reorganized Debtors.

13. **Effectiveness of All Actions**. All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

14. **Plan Implementation**.

(a) In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law and limited liability company law of any applicable jurisdiction (collectively, the "***Reorganization Effectuation Statutes***"), without further action by the Court or

the equity holders, members, managers, officers, or directors of any of the Debtors or Reorganized Debtors, the Debtors and the Reorganized Debtors, as well as the managers and officers of the Debtors or Reorganized Debtors are authorized to: (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, the Plan Supplement, the Plan Documents, this Confirmation Order, and the transactions contemplated thereby or hereby, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan, the Plan Supplement, and the Plan Documents, including those contracts, instruments, releases, agreements, and documents identified in Article V of the Plan.

(b)     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Supplement, and the Plan Documents including, (i) the rejection or assumption, as appropriate, of any Executory Contracts and Unexpired Leases, (ii) issuances and distributions of the New Units, and (iii) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further notice, application to, or order of this Court, or further action by the respective managers, officers, directors, members, or equity holders of the Debtors or Reorganized Debtors.

(c)     To the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers, or directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by

unanimous action of the directors, managers, members, and equity holders of the appropriate Debtors or Reorganized Debtors, as applicable.

(d)    All such transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

15.    **Cancellation of Existing Securities and Agreements**.    Except as otherwise provided in the Plan, and (a) excluding the DIP Facility Claims, the Prepetition Lenders' Claims, the DIP Facility Documents, and the Prepetition Loan Documents as they relate to Non-Reorganized Debtors, and (b) excluding (i) all DIP Liens and Liens securing the Prepetition Lenders' Claims on the property and assets of the Reorganized Debtors, which Liens shall be assigned to the Exit Agent under the Plan and the Exit Facility Loan Documents to secure the obligations under the Exit Facility, and (ii) the DIP Facility Documents and Prepetition Loan Documents evidencing DIP Liens and Liens securing the Prepetition Lenders' Claims, as applicable, being assigned to the Exit Agent under the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing any Claims against any of the Debtors, and any Interests in SMG Holdings shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other Person and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the counterparties to any such documents or agreements shall be released from all duties thereunder; *provided* that notwithstanding Confirmation or

Consummation, any such document or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (a) allowing Holders to receive distributions under the Plan; (b) allowing creditors to enforce their rights, Claims, and interests vis-à-vis any parties other than the Debtors; and (c) preserving any rights of any creditors to enforce any obligations owed to each of them under the Plan, and to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan.

16. **New Organizational Documents**. The New Organizational Documents are approved in all respects. The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Court, to make modifications, and, as may be modified, enter into the New Organizational Documents in accordance with the Plan, and to execute and deliver all agreements, documents, instruments, and certificates relating to the New Organizational Documents and take such other actions as deemed reasonably necessary and appropriate to perform their obligations thereunder.

17. **Resignation of Debtors' Existing Directors and Officers**. As of the Effective Date, the terms, employment, contract, and/or authorization of the current members of the boards of directors or managers, as applicable, of each of the Debtors, as well as each member, director, manager, and/or officer of each of the Debtors, shall expire, and each such member, director, manager, and/or officer, as applicable, shall be deemed to have resigned no longer be a member, director, manager, and/or officer of any of the Debtors effective as of the Effective Date.

18. **Directors and Officers of Reorganized Debtors**. The Reorganized Debtors' initial directors and officers, to the extent known, have been disclosed prior to the Confirmation Hearing, including the identity of any insider that will be employed or retained by the Reorganized

Debtors and the nature of any compensation of such insider. The appointment of the directors and officers of the Reorganized Debtors and the SMG Affiliates as indicated in the Plan Supplement is hereby approved and shall be effective as of the Effective Date, without any further corporate, limited liability company, or shareholder action at each of the Reorganized Debtors and SMG Affiliates effective as of the Effective Date. To the extent that any director or officer has not yet been determined prior to the Effective Date, such determination will be made in accordance with the New Organizational Documents and such appointment is hereby approved. Based on the foregoing, the appointment to, or continuance in, the applicable office by the applicable individual is consistent with the interests of the creditors and equity holders and with public policy, and, therefore, satisfy section 1123(a)(7) of the Bankruptcy Code.

19. **Exit Facility Loan Documents**. Notwithstanding anything to the contrary in this Confirmation Order, the entry into the Exit Facility and the Exit Facility Loan Documents (including, for the avoidance of doubt, that certain *Fee Letter* referred to in the Exit Facility Credit Agreement and admitted into the record under seal at the Confirmation Hearing), and all transactions contemplated thereby, including, without limitation, all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, costs, and expenses provided for therein, are hereby approved.

20. The Debtors and the Reorganized Debtors, as applicable, are authorized in all respects, without further notice to any party, or further order or other approval of the Court, or further act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization or approval of any Person except as otherwise required by the Exit Facility Loan Documents, to (a) execute and deliver, or cause to be executed and delivered, the Exit Facility

Loan Documents, and to perform their obligations thereunder, including, but not limited to, any documents related to the loans and other extensions of credit contemplated by the Exit Facility Loan Documents, any guarantees thereof and any other documents executed in connection therewith, except as otherwise required by the Exit Facility Loan Documents, (b) incur the indebtedness under the Exit Facility Loan Documents, (c) grant Liens to secure such indebtedness, and (d) perform all obligations under the Exit Facility Loan Documents and the payment of all fees, expenses, losses, damages, indemnities, and other amounts provided under the Exit Facility Loan Documents, in each case consistent with the terms of the Exit Facility Loan Documents.

21.     The obligations of the Reorganized Debtors under the Exit Facility Loan Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, and the Exit Facility Loan Documents and the indebtedness arising thereunder shall be enforceable in accordance with their terms. The Debtors' or the Reorganized Debtors', as applicable, entry on the Effective Date into the Exit Facility Loan Documents is approved in all respects by virtue of this Confirmation Order, in accordance with the Bankruptcy Code and applicable state law (including any analogous provision of the applicable business organizations law or code of each other state in which the Reorganized Debtors are incorporated or organized) and without the need for further corporate action or any further action by Holders of Claims or Interests in the Debtors or the Reorganized Debtors or stockholders, directors, members, or partners of the Debtors or the Reorganized Debtors, and with like effect as if such actions had been taken by unanimous actions thereof.

22.     Each of the Reorganized Debtors, without any further action by the Court or each respective Reorganized Debtors' officers, directors, or stockholders, is hereby authorized and directed to enter into, and take such actions as necessary to perform under, or otherwise effectuate,

the Exit Facility Loan Documents, as well as any notes, documents, or agreements in connection therewith, including, without limitation, any documents required in connection with the creation, continuation, or perfection of Liens or other security interests in connection therewith.

23. On the Effective Date, except as otherwise provided in this Confirmation Order, all of the Liens and security interests to be granted pursuant to the Plan and the Exit Facility Loan Documents, shall be (a) deemed approved, (b) legal, valid, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Loan Documents, and with the priorities established in respect thereof under applicable nonbankruptcy law, (c) deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Loan Documents, and (d) not deemed to constitute a fraudulent conveyance, fraudulent transfer, or preferential transfer under the Bankruptcy Code or any applicable nonbankruptcy law, and shall not otherwise be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purpose whatsoever under the Bankruptcy Code or appliable non-bankruptcy law. All of the Liens and security interests to be granted pursuant to the Plan and the Exit Facility Loan Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value, as an inducement to the lenders thereunder to extend credit thereunder. All rights and benefits of the Agent, the DIP Lenders, the Prepetition Lenders, and the Released Parties (as defined in the Final DIP Order), including, as applicable, the priorities in payment, liens, and security interests granted pursuant thereto and the DIP Facility Loan Documents (except to the extent modified by the Exit Facility Loan Documents), including the releases set forth in paragraph 101 of the Final DIP Order, shall survive the Effective Date and are preserved.

24.     The Reorganized Debtors, the Exit Agent, the Exit Facility Lenders, and any other secured parties (and their designees and agents) under the Exit Facility Loan Documents are hereby authorized to make all filings and recordings, and to obtain all governmental approvals and consents to evidence, establish, continue, and perfect such Liens and other security interests under the provisions of the applicable state, provincial, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that the perfection of the Liens and security interests granted under the Exit Facility Loan Documents shall occur automatically by virtue of the entry of this Confirmation Order and the consummation of the Exit Facility Loan Documents, and any such filings, recordings, approvals, and consents shall not be necessary or required as a matter of law to perfect or continue the perfection of such Liens and other security interests), and shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and other security interests to third parties.

25.     Neither the execution and delivery by the Reorganized Debtors of any of the Exit Facility Loan Documents nor the performance by the Reorganized Debtors of their respective obligations thereunder constitutes a violation of or a default under any contract or agreement to which any Reorganized Debtor is a party, including those contracts or agreements assigned to the Reorganized Debtors or reinstated under the Plan.

26.     Pursuant to Article VI.C.14 of the Plan, on the Effective Date, and effective as of the date of entry of the Final DIP Order, each Reorganized Debtor that is a lessee under an Unexpired Lease of nonresidential real property that is identified on the Assumed Executory Contract and Unexpired Lease List shall execute a leasehold mortgage with the Exit Agent, and, absent a timely objection and showing by the Confirmation Objection Deadline by the applicable

lessor counterparty that such leasehold mortgage is expressly prohibited under such lease and cannot be cured or resolved by consent or other process under such lease, or would cause a default under the landlord's financing agreement existing as of the date of entry of the Final DIP Order, each lessor counterparty to such Unexpired Lease of nonresidential real property shall be deemed to consent to the grant of such leasehold mortgage to the Exit Agent. The provisions of Article VI.C.14 of the Plan are conspicuous and emphasized with boldface type in the Plan, and due and sufficient notice of such provisions was provided to each applicable lessor counterparty.

27. Notwithstanding anything to the contrary in the Plan, the Plan Documents, or this Confirmation Order, the Court's retention of jurisdiction shall not govern the enforcement of the Exit Facility Loan Documents or any rights or remedies related thereto, other than the effectiveness of the Debtors' entry into the Exit Facility Loan Documents.

28. **Exemption from Transfer Taxes**. Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including: (a) the Restructuring Transactions; (b) the GUC Trust Agreement; (c) the issuance, reinstatement, distribution, transfer, or exchange of any debt, security, or other interest in the Debtors or the Reorganized Debtors, including the issuance of the New Units (including with regard to the Management Incentive Plan) pursuant to an Equitization Restructuring, (d) the transfer, if any, of the Debtors' assets to the Reorganized Debtors; (e) the making, assignment, recording, or surrender of any lease or sublease; (f) the grant of collateral as security for any or all of the Exit Facility, (g) the creation, modification, consolidation, termination, refinancing, delivery, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such other means, and (h) the making, delivery, or recording of any other instrument or transfer order, in furtherance of, or in

connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets or transaction arising out of, contemplated under, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers or property without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

29. **Exemption from Registration Requirements**. To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable nonbankruptcy law, the offering, issuance, and distribution under the Plan of the New Units, and to the extent they constitute securities under the Securities Act, whether on the Effective Date or any other date of distribution thereafter, pursuant to the terms of the Plan or the Confirmation Order, shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities. The issuances of the New Units was are or were in exchange for a portion of an Allowed Claim.

30.     Pursuant to section 1145 of the Bankruptcy Code, any issuance of securities contemplated by the Plan, including the New Units, shall be freely tradable by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

31.     **Sufficiency of the Plan and Confirmation Order**.  The Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the securities to be issued under the Plan under applicable securities laws or the validity of any other transaction contemplated by the Plan or Confirmation Order.  No entity or any stock transfer agent should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of shares of the New Units through any stock transfer agent, shall be entitled to any opinion of counsel regarding the validity of any transaction contemplated by the Plan, including as to the exemptions from the Securities Act pursuant to which any securities are being issued pursuant to the Plan or as to the eligibility for DTC book-entry delivery, settlement, and depository services.

32.     **Preservation of Causes of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Reorganized Debtors or the GUC Trust, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action belonging to the Debtors or their Estates that vest in the

Reorganized Debtors or are transferred and assigned to the GUC Trust pursuant to the Plan, as applicable, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' and the GUC Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than Causes of Action released by the Debtors pursuant to the releases and exculpations set forth in Article VIII of the Plan or otherwise under the Plan. For the avoidance of doubt, any Causes of Action against the Schultz Parties (including Avoidance Actions) of Debtors that become Reorganized Debtors shall not vest in the GUC Trust.

33. The Reorganized Debtors and the GUC Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors and the GUC Trust Beneficiaries. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Reorganized Debtors or GUC Trustee will not pursue any and all available Causes of Action of the Debtors or the Estates against it. The Reorganized Debtors and the GUC Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan or this Confirmation Order, including Article VIII of the Plan. Unless any Cause of Action of the Debtors or the Estates against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Reorganized Debtors and the GUC Trustee expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes

of Action upon, after, or as a consequence of Confirmation or Consummation. The GUC Trust shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters pertaining to the GUC Claims reconciliation process and the GUC Trust Assets, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court (including the Panterra Actions), in each case without the need or requirement for the GUC Trustee to file motions or substitutions of parties or counsel in each such matter.

34. The Reorganized Debtors and the GUC Trust, as applicable, reserve and shall retain such Causes of Action of the Debtors and their Estates notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor or its Estate may hold against any Entity shall vest in the Reorganized Debtors or the GUC Trust pursuant to the Plan, except as otherwise expressly provided in the Plan or this Confirmation Order, including Article VIII of the Plan. The Reorganized Debtors and the GUC Trust shall retain and may exclusively enforce any and all such Causes of Action, and through their authorized agents or representatives shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment, any such Causes of Action (except as otherwise expressly provided in the Plan), or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

35. On the Effective Date, the Debtors and the Estates shall irrevocably waive and release all Released Avoidance Actions and Released Avoidance Actions shall not be Retained Causes of Action.

36. **Non-Reorganized Debtors.** Immediately prior to the occurrence of the Effective Date: (a) *first*, the Non-Vesting Assets (including Interests in Debtors identified on the Schedule of Abandoned Debtors and/or the Schedule of Converted Cases (other than the Interests in OHAM) not previously abandoned by the Debtors, shall be abandoned pursuant to section 554 of the Bankruptcy Code and shall not vest in or be owned or held by the Reorganized Debtors; and (b) *second*, immediately following the occurrence of such abandonment, the Chapter 11 Cases of the Debtors identified on the Schedule of Converted Cases shall be converted to cases under chapter 7 of the Bankruptcy Code pursuant to section 1112(a) of the Bankruptcy Code without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the Non-Reorganized Debtors shall not be "Releasing Parties" under the Plan, and Claims against Non-Reorganized Debtors shall not be subject to the treatment set forth in Article III of the Plan. The Non-Reorganized Debtors are not being liquidated or reorganized pursuant to the Plan or this Confirmation Order.

37. **Professional Compensation**. The provisions governing compensation of Professionals set forth in Article II.A.2 and Article IX.A of the Plan are approved in their entirety. All final requests for Professional Fee Claims through and including the Effective Date shall be Filed no later than 45 days after the Effective Date. Any objections to Professional Fee Claims shall be served and filed no later than 21 days after the filing of such final applications for payment of Professional Fee Claims.

38. **Payment of Restructuring Expenses**. On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall indefeasibly pay in Cash in full all Restructuring Expenses accrued and to be paid on the Effective Date as provided in the Plan, including fees and

expenses estimated to be incurred through the Effective Date by the Agent and Crestline, without the need for any such Person to file a fee or retention application in the Chapter 11 Cases.

39. Reserved.

40. **Release of Liens.** Except as otherwise specifically provided in the Plan, and excluding all DIP Liens and Liens securing the Prepetition Lenders' Claims on the property and assets of the Reorganized Debtors, which Liens shall be assigned to the Exit Agent under the Plan and the Exit Facility Loan Documents to secure the obligations under the Exit Facility, or as provided in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, and except with regard to Secured Claims that the Debtors, with the Agent's consent, elect to Reinstate in accordance with Article III.B of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns (including Reorganized SMG, if applicable), in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as applicable. The Reorganized Debtors are authorized to execute any document or make any filing necessary to further document the release of any lien, security interest or similar encumbrance.

41. **Assumption of Contracts and Leases.** Pursuant to Article V of the Plan, and except as otherwise provided in the Plan or the Plan Supplement, as of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors listed on the Assumed Executory Contract and Unexpired Lease List or that were previously

assumed or assumed and assigned by the Debtors are deemed to be Assumed Executory Contracts or Unexpired Leases, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. All Executory Contracts or Unexpired Leases (other than those Executory Contracts or Unexpired Leases that previously were assumed or assumed and assigned by the Debtors) that, as of the Confirmation Date (or such later date as the Debtors, with the Agent's consent, and the applicable counterparty to such Executory Contract or Unexpired Lease agree in writing): (a) are identified on the Rejected Executory Contract and Unexpired Lease List, (b) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending, (c) are not listed on the Assumed Executory Contract and Unexpired Lease List, or (d) are not subject to a motion to assume such Executory Contracts or Unexpired Leases that is pending, shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

42.     Each Executory Contract and Unexpired Lease assumed pursuant to the immediately preceding paragraph and Article V.A of the Plan or by any order of the Bankruptcy Court, and which has not been assigned to a third party before the Effective Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms (including as may be amended or modified by agreement with the applicable counterparty and acceptable to the Agent), except as such terms are modified by the Plan or any order of the Court authorizing and providing for its assumption or rejection under applicable federal law. All amendments and modifications to Executory Contracts and Unexpired Leases that are being assumed by the Debtors (including the amount, terms, and timing of payment of Cure Claims), as such amendments and modifications are acceptable to the Agent, are approved, and such Executory Contracts and Unexpired Leases, as amended and modified, shall be binding on the Reorganized

Debtors and the applicable counterparties to such Executory Contracts and Unexpired Leases as of the Effective Date. All Cure Claims arising under any Executory Contracts and Unexpired Leases that are being assumed by the Debtors, as such Cure Claims are listed in the Plan Supplement or set forth in any amendment or modification to an Executory Contract or Unexpired Lease acceptable to the Agent (including the amount, terms, and timing of payment of Cure Claims), are hereby approved and shall be binding on and enforceable against each counterparty to such assumed Executory Contract and Unexpired Lease as of the Effective Date. Other than with respect to any Cure Claims, no counterparty to an Executory Contract or Unexpired Lease being assumed under the Plan shall have any Claim (including any Administrative Claims) against the Debtors or the Reorganized Debtors.

43. Notwithstanding anything to the contrary in the Plan, the Plan Supplement (as may be amended from time to time pursuant to the terms of the Plan) or this Confirmation Order, EOP Lewisville, Ltd.'s asserted Cure Claim remains subject to agreement between the Debtors or the Reorganized Debtors, as applicable (with the consent of the Agent), and EOP Lewisville, Ltd., or subsequent order of the Court, and all rights and defenses of the Debtors, the Reorganized Debtors, and the Agent are reserved and preserved with respect to EOP Lewisville, Ltd.'s asserted Cure Claim. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors or the Reorganized Debtors may, subject to the consent of the Agent, until the date that is thirty (30) days after the Effective Date (or such later date as may be agreed to by the Reorganized Debtors, the Agent, and EOP Lewisville, Ltd., add or remove the amended Unexpired Lease between the Debtors and EOP Lewisville, Ltd. (as amended, and as may be further modified on terms acceptable to the Agent) to the Assumed Executory Contract and Unexpired Lease List and/or the Rejected Executory Contract and Unexpired Lease List, as applicable, to assume or

reject such amended Unexpired Lease as of the Effective Date or, with the consent of the Agent, to modify any Cure Claims with respect to such Unexpired Lease listed (or to be listed) on the Assumed Executory Contract and Unexpired Lease List. EOP Lewisville, Ltd. acknowledges and consents to the terms of this paragraph and the extension of the Debtors' deadline to assume or reject such Unexpired Lease beyond the Confirmation Date.

44. Reserved.

45. Subject to resolution of any dispute regarding any Cure Claims and except as otherwise provided herein, all Cure Claims shall be satisfied by the Debtors or the Reorganized Debtors, as the case may be, upon assumption or assignment, as applicable, of the underlying contracts and unexpired leases. Except as otherwise provided herein, assumption or assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults that may be cured by assumption of such Executory Contract or Unexpired Lease, subject to satisfaction of the Cure Claims, if any, whether monetary or nonmonetary, arising under any assumed Executory Contract or Unexpired Lease at any time on or before the effective date of the assumption or assumption and assignment, as applicable. Subject to satisfaction of any Cure Claim, all liabilities reflected in the Schedules and any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court or any other entity, upon the deemed assumption of such contract or unexpired lease.

46. **Rejection of Contracts and Leases.** As of and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, the Plan Supplement, or this Confirmation Order, all Executory Contracts and Unexpired Leases listed on the Rejected

Executory Contracts and Unexpired Lease List shall be deemed rejected; *provided* that the Debtors may add or remove Executory Contracts or Unexpired Leases to/from the Schedule of Rejected Executory Contracts and Unexpired Leases until the Confirmation Date (or such later date as the Debtors, with the Agent's consent, and the applicable counterparty to such Executory Contract or Unexpired Lease agree in writing) or as otherwise provided in the Plan or this Confirmation Order. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Court within thirty (30) days after the later of: (a) the Effective Date; and (b) the date of such rejection as established by a Final Order or pursuant to the Plan if later than the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, the GUC Trust, the Agent Trust (if applicable), or their property without the need for any objection by the Debtors or the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. Claims arising from or related to the rejection of an Executory Contract or Unexpired Lease shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

47. **Insurance**. As of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all Insurance Policies pursuant to section 365(a) of the Bankruptcy Code, to the extent they are Executory Contracts. Entry of this Confirmation Order constitutes the approval of

60

the Reorganized Debtors' assumption of each of the Insurance Policies, to the extent they are Executory Contracts.

48. **Distributions**. All distributions pursuant to the Plan shall be made in accordance with Article VI of the Plan, and such methods of distribution are approved.

49. **Issuance of New Units**. On the Effective Date, SMG Parent shall be authorized to and shall issue the New Units in accordance with the terms of the Plan and without the need for any further corporate or shareholder action. All of the New Units when so issued, shall be duly authorized, validly issued, enforceable, and fully paid and non-assessable.

50. **Compromise and Settlement of Claims, Interests, and Controversies**. Pursuant to section 1123(b)(3)(a) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order constitutes approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding that such compromise or settlement was negotiated at arms'-length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of such Claims and Interests, and is fair, equitable, and reasonable.

51. **Release, Exculpation, Discharge, and Injunction Provisions**. All discharge, injunction, release, and exculpation provisions set forth in the Plan, including but not limited to those contained in Articles VIII.B, VIII.C, VIII.D, VIII.[E], VIII.F, and VIII.G of the Plan, are

approved and shall be effective and binding on all persons and entities to the extent provided

therein.

52.    **Discharge of Claims and Termination of Interests**.  Pursuant to section 1141(d)

of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the

Confirmation Order, or in any contract, instrument, or other agreement or document created

pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be

in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims

(including any Intercompany Claims resolved or compromised after the Effective Date by the

Reorganized Debtors, if applicable), Interests, and Causes of Action of any nature whatsoever,

including any interest accrued on Claims or Interests from and after the Petition Date, whether

known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in,

the Debtors or any of their assets or properties, regardless of whether any property shall have been

distributed or retained pursuant to the Plan on account of such Claims and Interests, including

demands, liabilities, and Causes of Action that arose before the Effective Date, any liability

(including withdrawal liability) to the extent such Claims or Interests relate to services performed

by employees of the Debtors before the Effective Date and that arise from a termination of

employment, any contingent or non-contingent liability on account of representations or warranties

issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h),

or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon

such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a

Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the

Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The entry

of the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

53. **Tax Withholding**. Pursuant to the Plan, including Article VI.F thereof, to the extent applicable, the Debtors, the Reorganized Debtors, or the GUC Trustee as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. The distributing party may require a Holder of an Allowed Claim or Interest to complete and return an Internal Revenue Service Form W-8 or W-9, as applicable, to each such Holder, and any other applicable tax forms.

54. **Payment of Statutory Fees**. All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code that are due and

payable by Debtors who will be Reorganized Debtors as of the Effective Date will be paid by the Debtors on the Effective Date.

55. All such fees due and payable after the Effective Date shall be paid by the Reorganized Debtors to the extent a Debtor's Chapter 11 Case remains open for purposes other than with respect to administering the GUC Trust Assets and shall be paid by the GUC Trust to the extent such Debtor's Chapter 11 Case remains open for purposes of administering the GUC Trust Assets. The GUC Trustee shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the Chapter 11 Cases are converted, dismissed, or closed. The Bankruptcy Court retains jurisdiction to consider and address any concerns raised by any GUC Trust Beneficiary as to the reasonableness of the fees and expenses disclosed therein.

56. **Documents, Mortgages and Instruments**. Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

57. **Return of Deposits**. All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "***Deposits***"), whether pursuant to the *Final Order Granting Motion for Interim and Final Order Providing Adequate Assurance of Utility Payments* [Docket No. 235] (the "***Utilities Order***") are directed to return such Deposits to the Reorganized Debtors within 15 days following the Effective Date. Additionally, the Debtors or Reorganized Debtors, as applicable, are hereby authorized to close adequate assurance accounts, if any, upon entry of the Confirmation Order.

58. **Termination of Consulting Agreement**. Except as otherwise agreed to by the Agent in writing, on the Effective Date, the Blackbox Consulting Agreement shall terminate pursuant to Section 3 thereof. The Blackbox Survival Obligations shall survive such termination pursuant and subject to the terms of the Blackbox Consulting Agreement. Effective as of the Effective Date, any rights of the "CRO" (as defined in the Blackbox Consulting Agreement) pursuant to any Blackbox Survival Obligations shall be exercisable by the chief executive officer of SMG Parent. Any person that, as of the date of entry of this Confirmation Order, is currently employed by the Debtors but is involuntarily terminated from employment with the written approval of the Debtors' chief restructuring officer (or, if after the Effective Date, the written approval of the Reorganized Debtors' chief executive officer), or any contractor of the Debtors as of the date of entry of this Confirmation Order that is terminated with the written approval of the Debtors' chief restructuring officer (or, if after the Effective Date, the written approval of the Reorganized Debtors' chief executive officer), shall not be considered a "Protected Employee or Contractor" under the Blackbox Consulting Agreement.

59. **PPP Loan**. The Debtors used the proceeds of the PPP Loan received by the Debtors pursuant to the PPP created by the Cornoavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "***CARES Act***") and funded by Regions Bank to pay "forgivable expenses" as that term is defined under the PPP and the CARES Act. As such, it is anticipated that the full amount of the PPP Loan will be forgiven in accordance with the terms of the PPP and the CARES Act. To the extent any portion of the PPP Loan is not forgiven in accordance with the terms of the PPP and CARES Act, such portion of the PPP Loan (if any) shall constitute a Class 5 GUC Claim and, if Allowed, be subject to the treatment for Class 5 under the Plan.

60. **Schultz Party Releases**. Upon the Effective Date and the execution of a release in form and substance acceptable to the Agent, each Schultz Party has agreed to become a "Releasing Party" under the Plan and to be subject to the release set forth in Article VIII.E of the Plan. Accordingly, upon the occurrence of the Effective Date, the Schultz Parties and each of their Related Persons will be "Releasing Parties" under the Plan, and the release set forth in Article VIII.E of the Plan shall then become effective.

61. **Liquor Licenses and Related Approvals**. No Governmental Unit, including any state, city or county liquor agency, board, authority or commission, may deny, revoke, suspend, or refuse to renew a license, permit, or other similar grant (collectively "***Grant***"), to condition such Grant, or discriminate with respect to such Grant as to any of the Debtors solely because any such Debtor is or has been a debtor under this title, has been insolvent before the commencement of these Chapter 11 Cases, or during such Chapter 11 Cases, or has not paid any debt discharged under the Plan including, without limitation, taxes owed to any state, city, county or other Governmental Unit.

62. **SEC CTR & MCP, LP.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order, SEC CTR & MCP, LP Proof of Claim No. 57 on the SMG Holdings' Claims Register is and shall be deemed timely for all purposes; *provided however*, that all parties reserve all rights with regard to any other objections, if any, that may arise with respect to such Proof of Claim.

63. **CSI Leasing, Inc. and Regions Bank** On June 1, 2012, CSI Leasing, Inc. ("***CSI***") and SMG Holdings entered into the Master Lease Agreement No. 273517 (the "***Master Lease Agreement***"). Subsequently, CSI and SMG Holdings have entered into 14 separate amendments to the Master Lease Agreement (the "***Master Lease Agreement Amendments***"). The Master Lease

Agreement Amendments, among other things, incorporated the Equipment Debtors (as defined below) as parties to the Master Lease Agreement. On February 18, 2019, in connection with the Master Lease Agreement, SMG Holdings and its authorized users Movie Grill Concepts VI, Ltd., Movie Grill Concepts III, Ltd., and Movie Grill Concepts IX, LLC (collectively, the "*Equipment Debtors*") entered into Smarttrack Schedule No. 23, Equipment Schedule No. 24, and Equipment Schedule 25, each as amended, respectively (collectively, the "*Equipment Schedules*"). On March 5, 2021 the Debtors filed the Supplement to the Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors, which identified the Equipment Schedules as Unexpired Leases to be rejected under the Plan upon the Effective Date. SMG Holdings, the Equipment Debtors and CSI and Regions Bank, the lien holder on the equipment subject of the Equipment Schedules, have reached an agreement providing that, subsequent to the Effective Date, the equipment subject of the Equipment Schedules will be sold to the Reorganized Debtors for a cash purchase price of $381,069.10. The Reorganized Debtors and CSI and Regions Bank intend to document this sale in a separate agreement and effectuate the sale following the Effective Date.

64. **Regions Bank.** The Reorganized Debtors agree to continue to seek forgiveness of the PPP Loan and shall use commercially reasonable efforts to provide Regions Bank with all documentation necessary to seek forgiveness of any amounts outstanding under the PPP Loan, provided that the Reorganized Debtors shall have no obligation under this paragraph to incur any out-of-pocket expenses in connection with such commercially reasonable efforts. The Reorganized Debtors shall reasonably cooperate with Regions Bank and the SBA, as applicable, in pursuing any application requirements under the CARES Act for such forgiveness, provided that the Reorganized Debtors shall have no obligations under this paragraph to incur any additional

operating expenses in connection with such reasonable cooperation. The Reorganized Debtors' obligations under this paragraph shall terminate nine (9) months after the Effective Date. Neither the Debtors nor the Reorganized Debtors shall incur any liability with respect to or be liable for any act, omission, or other event or matter with respect to any matter in this paragraph, including in connection with any request of Regions Bank hereunder; provided that the foregoing shall not preclude Regions Bank seeking relief from the Court with respect to the matters set forth in this paragraph. In the event the PPP Loan is not forgiven for any reason Regions Bank shall retain is claim evidenced by its Proof of Claim identified as Claim Number 51-1.

65. **United States Trustee.** Nothing in this Confirmation Order or the Plan shall be construed as deeming the United States Government as a "Releasing Party" under Article VIII.D of the Plan or finding that the United States Government grants a Third Party Release under Article VIII.D of the Plan.

66. **State of Texas**. Notwithstanding anything to the contrary in the Plan, Plan Supplement, or this Confirmation Order, nothing in this Confirmation Order authorizes the Debtors to sell or abandon any personal property containing or constituting "Personally Identifiable Information," ("*PII*") as that term is defined in Bankruptcy Code section 101(41A).

67. The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors' hardware, software, computers or cash registers or similar equipment which are to be sold, donated, transferred, abandoned or otherwise disposed of so as to render the PII unreadable or undecipherable.

68. **Veritex Community Bank**. Notwithstanding anything to the contrary in the Plan, Plan Supplement, or this Confirmation Order, Veritex Community Bank affirmatively elects to

Opt Out of the Third Party Release and therefore will not be deemed a "Releasing Party" nor a "Released Party" under Article VIII.D of the Plan.

69. **Walt Disney & 20th Century Fox**. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, this Confirmation Order, or any other document, the *Theatrical Exhibition License Agreement* between Debtors and Walt Disney Studio Motion Pictures ("*Disney*") and the *Master Theatrical Exhibition Contract* between Debtors and Twentieth Century Fox Film Corporation ("**TCF**") (collectively, the "**Exhibition Agreements**") are not being treated, and shall not in any manner deemed to be treated, as executory contracts under the Plan or applicable bankruptcy law (including with respect to section 365 thereof). Rather, the Exhibition Agreements shall revest in the Reorganized Debtors pursuant to the Plan on the Effective Date. All rights provided to Disney and TCF under the Exhibition Agreements (and all limitations applicable under those agreements to all parties) are expressly preserved following the revesting of those agreements in the Reorganized Debtors.

70. Disney and TCF have been deemed critical to the future operations of Reorganized Debtors. On February 26, 2021, Disney and Debtors entered into a letter agreement which set forth terms for the payment of outstanding film rental amounts due by Debtors to Disney on an installment-payment basis ("*Disney Settlement*").

71. On March 12, 2021, TCF and Debtors agreed to payment terms of certain audit amounts due by Debtors to TCF (the "*TCF Settlement*"). Pursuant to the TCF Settlement, TCF and Debtors agree that beginning April 1, 2022, Reorganized Debtors shall pay TCF twenty-four (24) equal monthly installments of $17,000.00, for a total amount of $408,000.00. TCF shall retain all enforcement, reimbursement, and collection rights in its Master Theatrical Exhibition Contract

69

should Reorganized Debtors fail to perform under the TCF Settlement, including if TCF has not received payment in full by March 1, 2024.

72. The Disney Settlement and the TCF Settlement are expressly authorized hereunder. The Debtors or Reorganized Debtors are hereby authorized and directed, without further order from this Court, to pay Disney and TCF in accordance with the terms of the Disney Settlement and TCF Settlement, and the same shall be valid, binding, and enforceable agreements. To the extent not paid in accordance with the terms of the Disney Settlement or the TCF Settlement, all amounts payable thereunder shall be deemed administrative expenses of the Debtors.

73. **Certain Taxing Entities.** Notwithstanding any other provision in the Plan or this Confirmation Order, any Allowed prepetition Claims of Dallas County, Harris County, Smith County, Tarrant County, Cypress-Fairbanks ISD, Lewisville ISD, the County of Denton, Texas, Plano Independent School District, Arlington Independent School District, Spring Branch Independent School District, Richardson Independent School District, Grapevine-Colleyville Independent School District, the City of Houston, Harris County Water Control and Improvement District #145, the City of Colleyville, and Maricopa County, Arizona (jointly the "***Taxing Entities***") shall, at the option of the Reorganized Debtors with the consent of the Agent, be paid (a) in full in Cash no later than ten Business Days after the Effective Date (or ten Business Days after such Claim becomes an Allowed Claim if not Allowed as of the Effective Date) or (b) over a term of months, calculated to pay such Allowed tax Claims in full by no later than the fifth anniversary of the Petition Date; with payments commencing no later than the first day of the first month following the Effective Date of the Plan. Any Taxing Entities' Administrative Claims for year 2021 ad valorem property taxes shall be paid in the ordinary course of business prior to the state law delinquency date without the necessity of filing Administrative Claims and requests for

payment as set forth in 11 U.S.C. § 503(b)(1)(D). The prepetition and post-petition tax liens, including statutory liens and privileges, if any, of the Taxing Entities, that secure any amounts ultimately owed shall be expressly retained and shall not be primed by any Liens created in any exit financing, other agreement, order, or the Plan. To the extent such Claim is an Allowed Secured Tax Claim, payment of Allowed Claims constituting ad valorem property taxes for tax years 2020 and any prior years, regardless of whether it is in connection with an Equitization Reorganization or a sale of personal property pursuant to the Court's *Order Authorizing Sale Procedures for Sale of Personal Property Assets Free and Clear of All Liens, Claims and Encumbrances and Interests* [Doc. No. 615] (the "***Sale Procedures Order***") shall include all accrued interest from the Petition Date through the Effective Date and from the Effective Date through the date of payment in full at the state statutory rate of interest to the extent set forth in 11 U.S.C. §§ 506(b), 507, 511 and 1129, which shall accrue and be fully collectible for the time frame during which the Claim remains unpaid regardless of whether or not the Claim is Disputed. In the event of a sale pursuant to the Sale Procedures Order or other sale of assets that secure the Taxing Entities' Claims, the Taxing Entities shall receive payment in full of all Allowed Claims for (a) amounts owed for tax year 2021 and (b) all prior years at closing (or, if any such Claims are Disputed, an amount of sale proceeds equal to the amount of the Claim plus interest shall be set aside pending resolution). In the event that assets subject to the Taxing Entities' liens are surrendered or otherwise transferred to a junior secured creditor, including pursuant to Class 4(b)(ii) of the Plan, the Taxing Entities shall receive payment in full of all Allowed Claims on the location prior to the surrender or transfer of the property to the junior creditor. The provisions in Article VI. Section F. disallowing and forever expunging the claim of any creditor that does not provide a W-9 or other tax information within 45 days of a written request do not apply to the Taxing Entities. Likewise, the following

provisions do not apply to the Taxing Entities: Article VI. Section C, Article VI. Section G, Article VII Section K, and Article VIII Section B. In the event of an Equitization Reorganization or an asset sale pursuant to the Sale Procedures Order, each of the Taxing Entities shall receive the treatment applicable to their specific Claims and the disposition of their taxable assets as stated above. All rights with regard to the Taxing Entity's Claims are preserved. All rights and defenses of the Debtors, the Reorganized Debtors, the Exit Agent, and the Exit Facility Lenders under bankruptcy or non-bankruptcy law, if any, are reserved and preserved with respect to the Taxing Entities' asserted Claims and liens, including such parties' rights to dispute or object to any such claim, lien, interest, penalty, or any other amounts asserted to be part of the Taxing Entities' Claims and to seek subordination of any Claims arising from tax penalties, if applicable. In the event the Reorganized Debtors fail to make a payment to the Taxing Entities pursuant to the terms of the Plan with respect to Allowed Claims of the Taxing Entities, counsel for the Taxing Entities shall provide notice to counsel for the Reorganized Debtors of same via electronic mail. The Reorganized Debtors shall have twenty-one (21) days from the date of the notice to cure such default. If the Reorganized Debtors fail to timely cure such default within such twenty-one-day period, the Taxing Entities shall be entitled to pursue collection of all amounts owed pursuant to state law outside the Bankruptcy Court without further notice.

74. **Texas Comptroller.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order, all rights and defenses of the Debtors, the Reorganized Debtors, the Exit Agent, the Exit Facility Lenders, and any other interested party under bankruptcy or non-bankruptcy law are reserved and preserved with respect to the Claims (the "***Comptroller Tax Claims***") filed by the Texas Comptroller of Public Accounts, Revenue Accounting Division (the "***Comptroller***") and any prepetition and/or postpetition tax lien (including statutory liens and

72

privileges, if any), of the Comptroller (the "***Comptroller Tax Liens***") with respect to the Comptroller Tax Claims. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Administrative Claims Bar Date shall not apply to the Comptroller and the Comptroller shall not be required to File a request for allowance of any asserted Administrative Claim as a condition to its being an Allowed Administrative Claim. To the extent post-petition taxes are due to the Comptroller on or before the Effective Date, they shall be paid in full on the Effective Date pursuant to § 1129(a)(9)(A). To the extent post-petition taxes come due subsequent to the Effective Date, they shall be timely reported and remitted under and in accordance with state law. To the extent that the Comptroller is provided on account of any Allowed Comptroller Tax Claim that constitutes an Allowed Priority Tax Claim or an Allowed Secured Tax Claim the treatment specified in section 1129(a)(9) of the Bankruptcy Code, such deferred cash payments shall be made on a monthly basis beginning on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter. Monthly payments to the Comptroller shall be complete within five years of the Petition Date. The following provisions of the Plan shall not apply to the Comptroller: Article VI.G and Article VII.K. The Comptroller may amend any Comptroller Tax Claim without prior authorization. Notwithstanding anything to the contrary in the Plan, Plan Supplement, or this Confirmation Order, the Texas Comptroller affirmatively elects to Opt Out of the Third Party Release and therefore will not be deemed a "Releasing Party" nor a "Released Party" under the Plan, and nothing provided in the Plan or this Confirmation Order shall affect or impair any statutory or common law setoff rights of the Comptroller in accordance with section 553 of the Bankruptcy Code. A failure by the Reorganized Debtors to make a payment to the Comptroller pursuant to the terms of the Plan or the Confirmation Order with respect to Allowed Comptroller Tax Claims shall constitute an "***Event***

*of Default*." If the Reorganized Debtors fail to cure an Event of Default within twenty-one (21) calendar days after service by the Comptroller of written notice of such Event of Default, the Comptroller may (a) enforce the entire amount of the Allowed Comptroller Tax Claims, (b) exercise all rights and remedies under applicable nonbankruptcy law with respect to such Allowed Comptroller Tax Claims, and (c) seek such relief as may be appropriate in this Court. Notice of an Event of Default shall be served on:

Debtors/Reorganized Debtors:
Studio Movie Grill Holdings, LLC
ATTN: Ted Croft
13933 N. Central Expressway
Dallas, Texas 75243
Email: tcroft@studiomoviegrill.com

75. **Brixmor Operating Partnership 2, LLC**. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, solely with respect to the Unexpired Lease between Debtor Movie Grill Concepts XIV, LLC and Brixmor Operating Partnership 2, LLC ("***Brixmor***") (as amended, the "***Duluth Lease***"), Reorganized Debtor Movie Grill Concepts XIV, LLC ("***Tenant***") shall remain liable for all obligations arising under the Duluth Lease that were not otherwise required to be asserted as a Cure Claim, including: (1) for amounts owed or accruing under the Duluth Lease that are unbilled or not yet due as of the Effective Date regardless of when such amounts or obligations accrued, on account of common area maintenance, insurance, taxes, and similar charges; (2) any regular or periodic adjustment or reconciliation of charges accrued or accruing under the Duluth Lease that are not yet due or have not been determined or billed as of the Effective Date; (3) any percentage rent that comes due under the Duluth Lease; (4) post-assumption obligations under the Duluth Lease; and (5) any obligations to indemnify Brixmor under the Duluth Lease for any claims of third parties arising from such Tenant's use and occupancy of the premises pursuant to the terms of the Duluth Lease, which are not known or

liquidated by the time of the Effective Date (and therefore not payable as a Cure Claim pursuant to Bankruptcy Code § 365(b)(1)(a)). Other than with respect to Cure Claims fixed in connection with the Plan, subject to resolution of any related dispute, all rights of Brixmor under the Duluth Lease to dispute amounts due thereunder are preserved. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to Brixmor, all rights of setoff, subrogation, or recoupment that Brixmor may possess pursuant to the Duluth Lease, or under applicable bankruptcy or non-bankruptcy law are fully preserved and shall not be enjoined by the Plan or this Confirmation Order. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Reorganized Debtors may only grant liens or a leasehold mortgage to the Exit Agent with respect to the premises governed by the Duluth Lease pursuant to the terms and conditions of the Duluth Lease. The Duluth Lease shall not be modified by the terms of the Plan.

76. **STORE Master Funding III, LLC**. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, solely with respect to the Unexpired Lease between Debtor Movie Grill Concepts XXIII, LLC and STORE Master Funding III, LLC ("***STORE***") (as amended, the "***Northpoint / Pearland Lease***"), Reorganized Debtor Movie Grill Concepts XXIII, LLC ("***STORE Tenant***") shall remain liable for all obligations arising under the Northpoint / Pearland Lease that were not otherwise required to be asserted as a Cure Claim, including: (1) for amounts owed or accruing under the Northpoint / Pearland Lease that are unbilled or not yet due as of the Effective Date regardless of when such amounts or obligations accrued, on account of common area maintenance, insurance, taxes, and similar charges; (2) any regular or periodic adjustment or reconciliation of charges accrued or accruing under the Northpoint / Pearland Lease that are not yet due or have not been determined or billed as of the Effective Date; (3) any percentage rent that comes due under the Northpoint / Pearland Lease; (4) post-assumption obligations under the

75

Northpoint / Pearland Lease; and (5) any obligations to indemnify STORE under the Northpoint / Pearland Lease for any claims of third parties arising from STORE Tenant's use and occupancy of the premises pursuant to the terms of the Northpoint / Pearland Lease, which are not known or liquidated by the time of the Effective Date (and therefore not payable as a Cure Claim pursuant to Bankruptcy Code § 365(b)(1)(a)). Other than with respect to Cure Claims fixed in connection with the Plan, subject to resolution of any related dispute, all rights of STORE under the Northpoint / Pearland Lease to dispute amounts due thereunder are preserved. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to STORE, all rights of setoff, subrogation, or recoupment that STORE may possess pursuant to the Northpoint / Pearland Lease, or under applicable bankruptcy or non-bankruptcy law are fully preserved and shall not be enjoined by the Plan or this Confirmation Order. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Reorganized Debtors may only grant liens or a leasehold mortgage to the Exit Agent with respect to the premises governed by the Northpoint / Pearland Lease pursuant to the terms and conditions of the Northpoint / Pearland Lease. The STORE Lease shall not be modified by the terms of the Plan.

77. **Administrative Claims Bar Date**. Requests for allowance and payment of General Administrative Claims that were (a) not incurred in the ordinary course of the Debtors' business and (b) are not subject to the Interim Administrative Claims Bar Date Order or other order of the Court must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, and the Agent, no later than thirty (30) days after the Effective Date (the "***Administrative Claims Bar Date***") unless an earlier date was set by the Bankruptcy Court with respect to such General Administrative Claim. HOLDERS OF GENERAL ADMINISTRATIVE CLAIMS THAT ARE (A) NOT SUBJECT TO THE INTERIM ADMINISTRATIVE CLAIMS BAR DATE ORDER

AND ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH GENERAL ADMINISTRATIVE CLAIMS BY THE APPLICABLE ADMINISTRATIVE CLAIMS BAR DATE AND DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE CLAIMS BAR DATE SPECIFIED IN THIS CONFIRMATION ORDER OR (B) ARE SUBJECT TO THE INTERIM ADMINISTRATIVE CLAIMS BAR DATE ORDER BUT DID NOT TIMELY FILE AND SERVE SUCH A REQUEST IN ACCORDANCE WITH THE INTERIM ADMINISTRATIVE CLAIMS BAR DATE ORDER, SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH GENERAL ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS OR REORGANIZED DEBTORS, AS APPLICABLE, OR THEIR RESPECTIVE PROPERTY, AND SUCH GENERAL ADMINISTRATIVE CLAIMS SHALL BE DEEMED FOREVER DISCHARGED AND RELEASED AS OF THE EFFECTIVE DATE. ANY REQUESTS FOR ALLOWANCE AND PAYMENT OF GENERAL ADMINISTRATIVE CLAIMS THAT ARE NOT PROPERLY FILED AND SERVED BY THE ADMINISTRATIVE CLAIMS BAR DATE (INCLUDING THOSE THAT ARE SUBJECT TO THE INTERIM ADMINISTRATIVE CLAIMS BAR DATE ORDER) SHALL NOT APPEAR ON THE CLAIMS REGISTER AND SHALL BE DISALLOWED AUTOMATICALLY WITHOUT THE NEED FOR FURTHER ACTION BY THE DEBTORS OR THE REORGANIZED DEBTORS, AS APPLICABLE, OR FURTHER ORDER OF THE BANKRUPTCY COURT. Notwithstanding the foregoing (a) no request for payment of a General Administrative Claim need be Filed with respect to a General Administrative Claim previously Allowed by Final Order, and (b) neither the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, nor any Governmental Unit shall be required to File a

request for allowance of any Administrative Claim, and the Administrative Claims Bar Date shall not apply to any such Entity.

78. **Professional Fee Claims**. All final requests for compensation or reimbursement of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date (other than substantial contribution claims under section 503(b)(4) of the Bankruptcy Code), must be Filed and served on the Reorganized Debtors, the Agent, and their counsel no later than forty-five (45) days after the Effective Date or as may otherwise be directed by the Bankruptcy Court. All such final requests will be subject to approval by the Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be paid as soon as reasonably practicable solely from the Professional Fee Escrow Account up to the full Allowed amount.

79. **Bar Date for Rejection Damages Claims.** Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases as a result of or pursuant to the Plan or the Confirmation Order (a "***Rejection Damages Claim***"), if any, must be Filed within thirty (30) days after the later of: (a) the Effective Date; and (b) the date of such rejection as established by a Final Order or pursuant to the Plan if later than the Effective Date (such date, the "***Rejection Damages Claims Bar Date***"). ALL REJECTION DAMAGES CLAIM NOT FILED BY THE REJECTION DAMAGES CLAIMS BAR DATE WILL BE AUTOMATICALLY DISALLOWED, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, THE GUC TRUST, OR THEIR

PROPERTY WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTORS OR THE REORGANIZED DEBTORS OR FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF THE COURT OR ANY OTHER ENTITY, AND ALL SUCH REJECTION DAMAGES CLAIMS SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND DISCHARGED, NOTWITHSTANDING ANYTHING IN THE SCHEDULES OR A PROOF OF CLAIM TO THE CONTRARY. All Rejection Damages Claims that become Allowed Claims shall be classified as GUC Claims and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

80. **Filing and Recording**. This Confirmation Order is binding upon and shall govern the acts of all persons or entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

81. **Continued Effect of Stays and Injunctions**. Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the

Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

82. **Debtors' Actions Post-Confirmation Through the Effective Date**. During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

83. **Authorization to Consummate**. The Debtors are authorized to consummate the Plan and the Restructuring at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Article X.B of the Plan, of the conditions precedent to the Effective Date set forth in Article X of the Plan.

84. **Conditions to the Effective Date**. The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

85. **Nonseverability of Plan Provisions Upon Confirmation**. Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent (and subject to the Agent's consent and other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

86. **Post-Confirmation Modifications**. Subject to the limitations contained in the Plan, and on prior notice to and with the consent of the Agent, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth

in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights, subject to the consent of the Agent, to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, subject to the consent of the Agent, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.

87. **Reversal/Stay/Modification/Vacatur of Confirmation Order**. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

88. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

89. **Governmental Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

90. **Notice of Entry of the Confirmation Order and Effective Date**. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and notice of the Effective Date, substantially in the form annexed hereto as **Exhibit B** to all parties who hold a Claim or Interest in these Chapter 11 Cases, the U.S. Trustee, and other parties in interest. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

91. **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

92. **References to Particular Plan Provisions**. References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order.

93. **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

94. **Effect of Conflict**. This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is

any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

95.    **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

96.    **Waiver of Stay.**  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062, or otherwise.

97.    **Retention of Jurisdiction**.  Except as set forth in the Plan or this Confirmation Order, the Court may properly, and, upon the Effective Date, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

**<u>Exhibit A</u>**

**Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-32633-SGJ |
| | § | |
| STUDIO MOVIE GRILL HOLDINGS, LLC, *et al.*,[1] | § | Chapter 11 |
| | § | |
| DEBTOR. | § | Jointly Administered |

## FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR STUDIO MOVIE GRILL HOLDINGS, LLC AND JOINTLY ADMINISTERED DEBTORS

### Dated: March 31, 2021

FRANK J. WRIGHT
JEFFERY M. VETETO
JAY A. FERGUSON
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Ave. | Suite 730
Dallas, Texas 75201
Telephone: (214) 935.9100
Emails: frank@fjwright.law
jeff@fjwright.law
jay@fjwright.law

**ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club 4, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW .......................................1

    A.       Defined Terms. ...............................................................................1

    B.       Rules of Interpretation.................................................................24

    C.       Computation of Time ...................................................................24

    D.       Governing Law. ............................................................................24

    E.       Reference to Monetary Figures ...................................................25

    F.       Conflicts.......................................................................................25

    G.       Reference to Debtors or Reorganized Debtors ...........................25

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND
DIP LOAN CLAIMS...............................................................................................25

    A.       Administrative Claims..................................................................25

    B.       Priority Tax Claims......................................................................28

    C.       DIP Facility Claims. ....................................................................28

    D.       Statutory Fees...............................................................................29

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS
AND INTERESTS....................................................................................................29

    A.       Classification of Claims and Interests.........................................29

    B.       Treatment of Claims and Interests...............................................30

    C.       Special Provision Governing Unimpaired Claims. .....................35

    D.       Elimination of Vacant Classes. ...................................................35

    E.       Confirmation Pursuant to Sections 1129(a)(10) and 1129(b)
               of the Bankruptcy Code................................................................35

    F.       Voting Classes; Presumed Acceptance by Non-Voting Classes ...................35

    G.       Presumed Acceptance and Rejection of the Plan ........................35

    H.       Interests........................................................................................35

    I.       Controversy Concerning Impairment. .........................................36

    J.       Subordinated Claims and Interests ..............................................36

i

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ...............................36

    A.    Restructuring Transactions ................................................................36

    B.    GUC Trust ..........................................................................................37

    C.    The Equitization Restructuring. ........................................................40

    D.    The Asset Sale Restructuring ............................................................46

    E.    Settlement and Compromise ..............................................................52

    F.    Settlement of Claims After the Effective Date .................................53

    G.    Cancellation of Certain Existing Securities.......................................53

    H.    Section 1146 Exemption ....................................................................53

    I.    Corporate Existence ..........................................................................54

    J.    Restructuring Expenses .....................................................................54

    K.    Document Retention ..........................................................................55

    L.    Closing of Chapter 11 Case ...............................................................55

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..............................................................................55

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases..............55

    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.................56

    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.............56

    D.    Effect of Rejection of Executory Contracts and Unexpired Leases...........................58

    E.    Insurance Policies..............................................................................58

    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements...58

    G.    Reservation of Rights.........................................................................58

    H.    Nonoccurrence of Effective Date ......................................................59

    I.    Contracts and Leases Entered Into After the Petition Date. .............59

    J.    Non-Reorganized Debtors .................................................................59

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS**....................................59

    A.    Timing and Calculation of Amounts to Be Distributed. ...................59

    B.    Delivery of Distributions and Undeliverable or Unclaimed Distributions................60

    C.    Special Rules for Distributions to Holders of Disputed Claims. ......60

    D.    Manner of Payment...........................................................................61

    E.    Exemption from Securities Act Registration Requirements.......................................61

    F.    Compliance with Tax Requirements .................................................61

G.  No Postpetition or Default Interest on Claims. ................................................. 62

H.  Setoffs and Recoupment. .................................................................................... 62

I.  No Double Payment of Claims. ........................................................................... 62

J.  Claims Paid or Payable by Third Parties. ........................................................... 63

K.  Allocation of Distributions Between Principal and Interest. .............................. 64

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ................................................................... 64**

A.  Allowance of Claims. ......................................................................................... 64

B.  Claims Administration Responsibilities. ............................................................ 64

C.  Adjustment to Claims Without Objection ........................................................... 65

D.  Time to File Objections to Claims or Interests. .................................................. 65

E.  Estimation of Claims. .......................................................................................... 65

F.  Disputed and Contingent Claims Reserve. .......................................................... 65

G.  Disallowance of Claims. ..................................................................................... 66

H.  Amendments to Proofs of Claim ......................................................................... 66

I.  Reimbursement or Contribution. ......................................................................... 66

J.  No Distributions Pending Allowance. ................................................................. 66

K.  Distributions After Allowance ............................................................................ 66

**ARTICLE VIII. RELEASE, INJUNCTION, EXCULPATION, AND RELATED PROVISIONS ........................................................................................................................ 67**

A.  Discharge of Claims and Termination of Interests. ............................................ 67

B.  Release of Liens .................................................................................................. 67

C.  Releases by the Debtors. ..................................................................................... 68

D.  Releases by Holders of Claims and Interests. .................................................... 69

E.  Mutual Releases by Agent Released Parties and Schultz Parties ....................... 70

F.  Releases by the Schultz Parties. .......................................................................... 71

G.  Exculpation. ........................................................................................................ 72

H.  Injunction. ........................................................................................................... 72

I.  Protections Against Discriminatory Treatment ................................................... 73

J.  Recoupment ......................................................................................................... 73

K.  Binding Effect ..................................................................................................... 73

**ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .................74

    A.    Conditions Precedent to the Effective Date ..............................................74

    B.    Waiver of Conditions..................................................................................74

    C.    Substantial Consummation .........................................................................75

    D.    Effect of Failure Conditions .......................................................................75

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF
THE PLAN** ....................................................................................................................75

    A.    Modification and Amendments ...................................................................75

    B.    Effect of Confirmation on Modifications. .................................................75

    C.    Revocation or Withdrawal of Plan .............................................................75

**ARTICLE XI. RETENTION OF JURISDICTION** ...........................................................76

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ...........................................................78

    A.    Immediate Binding Effect...........................................................................78

    B.    Additional Documents. ...............................................................................78

    C.    Dissolution of the Committee.....................................................................78

    D.    Payment of Statutory Fees. .........................................................................79

    E.    Reservation of Rights..................................................................................79

    F.    Successors and Assigns...............................................................................79

    G.    Notices........................................................................................................79

    H.    Term of Injunctions or Stays ......................................................................80

    I.    Entire Agreement ........................................................................................81

    J.    Exhibits.......................................................................................................82

    K.    Nonseverability of Plan Provisions ............................................................82

    L.    Votes Solicited in Good Faith.....................................................................82

## INTRODUCTION

Studio Movie Grill Holdings, LLC and its jointly administered Debtors, as debtors and debtors in possession propose this *Fourth Amended Joint Plan of Reorganization* for the resolution of the outstanding Claims against, and Interests in, certain of the Debtors as set forth herein. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
## OF TIME, AND GOVERNING LAW

*A.    Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth in the Introduction above or in the definitions below.

1.    "**341 Notice**" means the notice of chapter 11 bankruptcy case filed in the Chapter 11 Cases at ECF No. 89, which, *inter alia*, specified the Bar Date.

2.    "**503(b)(9) Claim**" means a Claim or any portion thereof entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

3.    "**Administrative Claim**" means a Claim for costs and expenses of administration of the Estates or the Chapter 11 Cases of a Reorganized Debtor under sections 503(b) (including 503(b)(9) Claims), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930, and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

4.    "**Administrative Claims Bar Date**" means the applicable deadline for Filing requests for allowance and payment of Administrative Claims, which: (a) if subject to the Administrative Claims Bar Date Order, was February 15, 2021, (b) if subject to a separate order of the Court, is as set forth in such order, and (c) if not subject to the Administrative Claims Bar Date Order or another order of the Court, (i) with respect to General Administrative Claims other than those that were accrued in the ordinary course of business, shall be 30 days after the Effective Date unless an earlier date was set by the Bankruptcy Court with respect to such General Administrative Claim; and (ii) with respect to

Professional Fee Claims, shall be forty-five (45) days after the Effective Date; *provided* that neither the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, nor any Governmental Unit shall be required to File a request for allowance of any Administrative Claim.

5. "**Administrative Claims Bar Date Order**" means the order of the Bankruptcy Court, dated January 21, 2021 (ECF No. 532), setting forth the final date for Filing requests for allowance and payment of Administrative Claims arising or incurred on or before January 31, 2021, subject to certain exceptions as set forth therein.

6. "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code when used in reference to a Debtor, and when used in reference to an Entity other than a Debtor, means another Entity that directly or indirectly owns, controls, or holds Securities of such Entity other than a Debtor.

7. "**Agent**" means, collectively, the DIP Agent and the Prepetition Agent; *provided* that any reference to the Agent on a post-Effective Date basis shall, if an Equitization Restructuring occurs, mean the Exit Agent.[2]

8. "**Agent Credit Bid**" means a credit bid submitted by Agent pursuant to the Credit Bid Right.

9. "**Agent Panterra Assets**" means 50% of net proceeds of the Panterra Claims recovered by the GUC Trust in excess of $4,000,000.00.

10. "**Agent Purchaser**" means, in the event an Asset Sale Restructuring occurs where the prevailing purchaser of all or substantially all of the Debtors' assets is the Agent or its designated Entity, the Agent or its designated Entity in the capacity of such prevailing purchaser.

11. "**Agent Released Parties**" means (a) the Prepetition Lenders; (b) the Prepetition Agent; (c) the DIP Agent; (d) the DIP Lenders; (e) the Exit Agent; (f) the Exit Facility Lenders; (g) the Agent Purchaser, if any; (h) Goldman Sachs & Co. LLC; (i) Crestline; (j) American National Insurance Company; (k) with respect to each of the foregoing (a) through (j), each of such Entity and its current and former Affiliates, and (l) with respect to each of the foregoing (a) through (k), each of such Entity and its Related Persons.

12. "**Agent Trust**" means, in the event an Asset Sale Restructuring occurs, the trust to be established on the Effective Date pursuant to this Plan and pursuant to the Agent Trust Agreement, or such other Entity designated by the Agent to receive the Agent Trust Assets and established in the Agent's discretion.

---

[2] Except as otherwise expressly provided herein, no determination, agreement, decision, consent, election, approval, acceptance, waiver, designation, authorization, or other similar circumstance or matter of or by the Agent hereunder or related hereto (including any determination as to whether any particular document is acceptable to the Agent) (the "**Agent Consent**") or requested of the Agent by the Debtors shall be inferred from any action, inaction, or acquiescence of the Agent, and shall not be given other than by a writing acceptable to the Agent that is signed by the Agent or its authorized representative or attorney and expressly states such Agent Consent, without limitation. Any act committed or action taken by the Agent hereunder shall be deemed to be made for itself and for and on behalf of the Prepetition Lenders and/or the DIP Lenders, as applicable. Any authority or other right, benefit, or interest granted to the Agent hereunder is deemed to be granted to the Agent for itself and for and on behalf of the DIP Lenders and/or the Prepetition Lenders, as applicable. Any Agent Consent hereunder or in any Plan Document shall be in the Agent's sole and absolute discretion but shall require the approval of the Requisite Lenders (as defined in the DIP Facility Loan Agreement).

13. "**Agent Trust Agreement**" means, in the event an Asset Sale Restructuring occurs, the trust agreement substantially in the form included in the Plan Supplement to be entered into on or before the Effective Date between the Debtors and the Agent Trustee, in form and substance acceptable to the Agent.

14. "**Agent Trust Beneficiary**" means a Holder of an Allowed Claim entitled to receive a Distribution from the Agent Trust pursuant to the Plan, in its capacity as such.

15. "**Agent Trust Interest**" means, in the event an Asset Sale Restructuring occurs, a non-certificated beneficial interest in the Agent Trust that, subject to the terms of the Plan and the Agent Trust Agreement, shall be granted to each Holder of an Allowed Class 2 Claim, which shall entitle such holder to a Pro Rata share in the Agent Trust Assets.

16. "**Agent Trustee**" means, in the event an Asset Sale Restructuring occurs, the Person selected by the Agent to serve as the trustee of the Agent Trust, and any successor thereto, in accordance with the Plan and the Agent Trust Agreement.

17. "**Agent Trust Assets**" means in the event an Asset Sale Restructuring occurs, all property and assets of the Debtors (including the Agent Panterra Assets) other than (a) the GUC Trust Assets and (b) any property and assets of the Debtors listed on the Schedule of Abandoned Debtors, the Schedule of Converted Cases, or the Schedule of Non-Applicable Debtors to be transferred to the Agent Trust. The Agent Trust Assets shall be subject to the Liens of the Agent as they exist on the Effective Date.

18. "**Allowed**" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or Administrative Claims Bar Date, as applicable, or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither Disputed, contingent, nor unliquidated, and for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; (c) a Claim or Interest that is upheld or otherwise Allowed: (i) pursuant to the Plan, including but not limited to the Prepetition Lenders' Claims; (ii) in any stipulation that is approved by the Bankruptcy Court by a Final Order; (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; (iv) by Final Order (including any such Claim to which the Debtors or the Reorganized Debtors with the consent of the Agent, or GUC Trustee, as applicable, had objected or which the Bankruptcy Court had Disallowed prior to such Final Order); or (v) in the judgment of the Debtors or the Reorganized Debtors with the consent of the Agent or the GUC Trustee, as applicable, prior to the expiration of the Claims Objection Deadline; provided that with respect to a Claim or Interest described in clauses (a) through (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been or, in the Debtors', Reorganized Debtors' reasonable good faith judgment, may be interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order; provided, further, that no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt, a Proof of Claim or Interest Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow," "Allowing," and "Allowance" shall have correlative meanings.  Any Claim against a Debtor that is not a Reorganized Debtor shall not be "Allowed."

19.  "**Asset Purchase Agreement**" means one or more asset purchase agreements from a Third Party Purchaser acceptable to the Agent pursuant to which an Asset Sale is consummated.

20.  "**Asset Sale**" means the sale or sales of substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code or under this Plan pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, the terms of which shall be acceptable to the Agent.

21.  "**Asset Sale Restructuring**" means a restructuring pursuant to which the Asset Sale is consummated, which shall occur if (a) an Asset Sale is consummated with (i) a Third Party Purchaser or (ii) an Agent Purchaser following the Agent's election via the Plan Toggle Right to implement an Asset Sale pursuant to section 363 of the Bankruptcy Code, or (b) the Agent elects via the Plan Toggle Right to implement an Asset Sale pursuant to section 1123(a)(5)(D) of the Bankruptcy Code rather than to implement an Equitization Restructuring.  For the avoidance of doubt, an Asset Sale Restructuring may, subject to the consent of the Agent, be consummated with a Third Party Purchaser after the Agent's exercise of the Plan Toggle Right pursuant to terms and sale procedures acceptable to the Agent, including through the Plan.

22.  "**Assumed Executory Contract and Unexpired Lease List**" means the list of Executory Contracts and Unexpired Leases (with proposed Cure Claims) which shall be (a) in the event an Equitization Restructuring occurs, assumed by the Reorganized Debtors under section 365 of the Bankruptcy Code or (b) in the event the Asset Sale Restructuring occurs, assumed and assigned to the Purchaser under section 365 of the Bankruptcy Code, which list shall be in form and substance acceptable to the Agent (and, in the event an Asset Sale Restructuring to a Third Party Purchaser occurs, reasonably acceptable to such Third Party Purchaser) and included in the Plan Supplement.

23.  "**Assumed Executory Contracts and Unexpired Leases**" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors under section 365 of the Bankruptcy Code or to be assumed by the Debtors and assigned to the Purchaser under section 365 of the Bankruptcy Code, including as set forth on the Assumed Executory Contract and Unexpired Lease List.

24.  "**Avoidance Actions**" means any and all actual or potential avoidance, recovery, subordination, or other related Cause of Action that may be asserted by or on behalf of the Debtors or their Estates that may arise under Chapter 5 of the Bankruptcy Code, including but not limited to sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or applicable non-bankruptcy law.

25.  "**Ballot**" means the ballot applicable to the relevant Holder of a Claim, substantially in the form approved by the Disclosure Statement Order.

26.      "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

27.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Northern District of Texas.

28.      "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and Official Bankruptcy Forms promulgated under section 2075 of the Judicial Code, as amended, the Federal Rules of Civil Procedure, as amended, as made applicable to the Chapter 11 Cases or proceedings therein, and the general, local, and chambers rules of the Bankruptcy Court, as amended, including the Local Bankruptcy Rules.

29.      "**Bar Date**" means the applicable date established by which Proofs of Claims and Interests must be Filed in these Chapter 11 Cases pursuant to the 341 Notice, which date is February 21, 2020, except with respect to Proofs of Claims filed by Governmental Units, which is May 22, 2021, and certain other exceptions including as set forth in the 341 Notice, the Administrative Claims Bar Date Order, and/or the DIP Order.

30.      "**Bid Procedures**" means those certain bid procedures approved by the Bankruptcy Court pursuant to the Bid Procedures Order, as may be amended from time to time.

31.      "**Bid Procedures Order**" means the *Order Approving (A) Bid Procedures; (B) the Form and Manner of Notice; (C) the Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* of the Bankruptcy Court, dated December 11, 2020 (ECF No. 335), setting forth the procedures for competitive bidding for the sale of the Debtors' assets, as may be amended from time to time.

32.      "**Blackbox Consulting Agreement**" means that certain *Consulting Agreement* between OHAM, SMG Holdings, and their subsidiaries, Brian Schultz, and Blackbox Management Group, LLC as approved by the Bankruptcy Court pursuant to the *Order Granting Debtors' Application to Authorize Retention of Blackbox Management Group, LLC as Management Consultant* (ECF No. 325).

33.      "**Blackbox Survival Obligations**" means solely those certain post-termination date obligations of the Debtors, Reorganized Debtors, Brian Schultz, and Blackbox Management Group, LLC, as applicable, that shall, subject and to the extent set forth in the terms of the Blackbox Consulting Agreement, survive termination of the Blackbox Consulting Agreement.

34.      "**Business Day**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Dallas, Texas.

35.      "**Cash**" means the legal tender of the U.S. and equivalents thereof, including bank deposits, checks, and other similar items.

36.      "**Cash Management Order**" means the *Order Granting Motion for Authorization on (I) Maintenance of Existing Bank Accounts; (II) Continuance of Existing Cash Management System, Bank Accounts, Checks and Related Forms; (III) Continued Performance of Intercompany Transactions; (IV) Limited Waiver of*

*Section 354(b) Deposit and Investment Requirements; and (V) Granting Related Relief* dated October 29, 2020, authorizing the Debtors to, *inter alia*, continue to use their existing cash management system and maintain existing bank accounts (ECF No. 96), as may be further amended.

37. "**Causes of Action**" means all actions, including Avoidance Actions, Claims, interests, damages, judgments, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, contribution claims, third-party claims, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, choate or inchoate, suspected or unsuspected, in contract, tort, law, equity, or otherwise based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the Chapter 11 Cases, including through the Effective Date. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 551, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

38. "**Chapter 11 Cases**" means, collectively: (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to multiple or all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for such Debtors in the Bankruptcy Court.

39. "**Claim**" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors, whether or not asserted or Allowed.

40. "**Claims Objection Deadline**" means the later of: (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of such deadline.

41. "**Claims Register**" means the official register of Claims maintained by the Bankruptcy Court.

42. "**Class**" means a category of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

43. "**Class A Common Units**" means, if an Equitization Restructuring occurs, the new voting Class A-1 Common Units and the new Class A-2 Common Units.

44. "**Class A-1 Common Units**" means, if an Equitization Restructuring occurs, new voting Class A-1 Common Units in SMG Parent and distributed to the Crestline Designees on the Effective Date pursuant to the terms of the Plan.

45. "**Class A-2 Common Units**" means, if an Equitization Restructuring occurs, new Class A-2 Common Units in SMG Parent authorized and reserved for issuance upon exercise of the GS Warrant.

6

46. "**Class B Common Units**" means, if an Equitization Restructuring occurs, new Class B Common Units in SMG Parent in an aggregate amount of 10% of the Common Units outstanding as of the Effective Date (including the Class A-2 Common Units to be issued upon exercise of the GS Warrant), which will be authorized and reserved on the Effective Date for issuance as profits interests to management and other service providers pursuant to the terms of the Management Incentive Plan set forth in the SMG Parent A&R LLCA.

47. "**CM/ECF**" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

48. "**Committee**" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on November 16, 2020 (ECF No. 173), the membership of which may be reconstituted from time to time.

49. "**Common Units**" means, collectively, the Class A Common Units and the Class B Common Units.

50. "**Confirmation**" means the occurrence of the Confirmation Date.

51. "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021 and the Plan is confirmed.

52. "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

53. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Agent.

54. "**Confirmation Objection Deadline**" means the date established in the Disclosure Statement Order for parties in interest to object to Confirmation of the Plan, which is March 10, 2021 at 4:00 p.m. (prevailing Central Time) (unless extended in accordance with the terms of the Disclosure Statement Order).

55. "**Consummation**" means the occurrence of the Effective Date.

56. "**Convenience Class**" means Class 6 under the Plan consisting of Convenience Class Claims.

57. "**Convenience Class Claim**" means a GUC Claim where (a) each such Holder's GUC Claims against all Debtors that are subject to the treatment under the Plan are in an Allowed aggregate amount of $2,500.00 or less, or (b) such Holder has elected on its Ballot to opt in to the Convenience Class.

58.    "**Credit Bid Allocation**" means, in the event of an Asset Sale Restructuring with an Agent Purchaser, the document to be included in the Plan Supplement in form and substance acceptable to the Agent specifying the allocation of the amount of DIP Facility Claims and/or Prepetition Lenders' Claims comprising the Agent Credit Bid and the allocation of assets with respect thereto.

59.    "**Credit Bid Right**" has the meaning set forth in the Bid Procedures.

60.    "**Crestline**" means Crestline Specialty Lending II, L.P.

61.    "**Crestline Designees**" means Crestline or one or more of such Person's designees.

62.    "**Cure Claim**" means a monetary Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors or Reorganized Debtors, as applicable, pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

63.    "**Debtors**" means, collectively, each debtor and debtor-in-possession whose cases are being jointly administered under the Chapter 11 Case of SMG Holdings, including: Studio Movie Grill Holdings, LLC (6546); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club IV, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224.)

8

64.     "**Debtor Related Persons**" means each Debtor's officers, directors, advisory board members, employees, managers, financial advisors, attorneys, accountants, investment bankers, consultants, and professionals acting in such capacity after the Petition Date, each solely in its capacity as such.

65.     "**DIP Agent**" means Goldman Sachs Specialty Lending Group, L.P. in its capacity as administrative agent and collateral agent under the DIP Facility Loan Agreement.

66.     "**DIP Facility Claim**" means a Claim held by the DIP Lenders for the DIP Loans and all other debts, indebtedness, obligations, covenants, and duties of payment and performance arising under or relating to the DIP Facility Loan Documents or the DIP Orders, including any and all accrued but unpaid interest and any unpaid fees or charges arising under the DIP Facility Loan Documents or the DIP Orders.

67.     "**DIP Facility Loan Agreement**" means the Prepetition Credit Agreement, as amended by that certain *Senior Secured Superpriority Debtor-in-Possession Financing Amendment to Second Amended and Restated Credit and Guaranty Agreement* dated as of October 27, 2020 by and among the DIP Agent (in its capacity as administrative agent and collateral agent thereunder), the DIP Lenders, OHAM, SMG Holdings, and the other parties signatory thereto as DIP Borrowers (as defined therein), as may be amended in accordance with its terms.

68.     "**DIP Facility Loan Documents**" means the DIP Facility Loan Agreement and the other DIP Facility Documents (as defined in the DIP Facility Loan Agreement).

69.     "**DIP Lenders**" means Goldman Sachs Bank USA, Crestline, American National Insurance Company, and their successors and assigns, in each case only in its capacity as a Secured Party (as defined in the DIP Facility Loan Agreement) to the DIP Facility Loan Agreement.

70.     "**DIP Loan**" has the meaning set forth in the DIP Orders.

71.     "**DIP Liens**" has the meaning set forth in the DIP Orders.

72.     "**DIP Order(s)**" means, collectively, the Interim DIP Order and the Final DIP Order, and individually, the Interim DIP Order or the Final DIP Order then in effect or as the context requires, together with any amendments, modifications, or supplements thereto.

73.     "**Disallowed**" means, with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor or Reorganized Debtor, as applicable, and the Holder thereof, or (e) has been waived or withdrawn by the Holder thereof.

74.    "**Disclosure Statement**" means the *Amended Joint Disclosure Statement for the Amended Joint Plan of Reorganization of Studio Movie Grill Holdings, LLC and the Jointly Administered Debtors* dated as of February 11, 2021 (ECF No. 616), as may be amended, including all exhibits and schedules thereto, as approved pursuant to the Disclosure Statement Order.

75.    "**Disclosure Statement Order**" means, collectively, the *Order Granting Motion for Entry of Order (A) Approving the Disclosure Statement In Support of Debtors' Joint Plan of Reorganization, (B) Scheduling A Hearing to Consider Confirmation of the Joint Plan of Reorganization, (C) Establishing the Voting and Objection Deadlines, and (D) Approving Balloting, Solicitation, Notice, and Voting Procedures* (ECF No. 630) and the *Order Granting Emergency Motion to Supplement Disclosure Statement* (ECF No. 671).

76.    "**Disputed**" means with regard to any Claim or Interest, a Claim or Interest that is not yet Disallowed or Allowed.

77.    "**Distribution**" means the payment or distribution under the Plan of Cash, assets, securities, or instruments evidencing an obligation under the Plan or other consideration or property of any nature to any Holder of an Allowed Claim or Allowed Interest.

78.    "**Distribution Date**" means the date or dates upon which Distributions are made pursuant to the terms of the Plan to Holders of Allowed Administrative Claims and other Allowed Claims, which shall be on or as soon as reasonably practicable following the Effective Date, and, in the case of the DIP Facility Claims and the Prepetition Lenders' Claims, on the Effective Date.

79.    "**Distribution Record Date**" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims and Allowed Interests, which shall be the Effective Date.

80.    "**Effective Date**" means, with respect to the Plan and any such applicable Debtor(s), the date that is the first Business Day upon which all conditions precedent specified in Article IX.A and Article IX.B have been satisfied or waived (in accordance with Article IX.C).

81.    "**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

82.    "**Equitization**" means the issuance of New Units in exchange for all or any portion of any Claims.

83.    "**Equitization Restructuring**" means the transactions and reorganization contemplated by and pursuant to the Plan under which, among other things, the New Units are distributed, which shall occur if the Agent exercises the Plan Toggle Right in accordance with the Bid Procedures and elects to implement an Equitization rather than an Asset Sale Restructuring and, subsequent to the Agent's exercise of the Plan Toggle Right the Agent does not elect for the Debtors to pursue an alternative bid.

84.    "**Estate**" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

85.    "**Exchange Act**" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*, as now in effect or hereafter amended, any rules and regulations promulgated thereunder, and any similar federal, state or local law.

86. "**Exculpated Parties**" means, collectively, and in each case only in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Agent; (f) the Prepetition Lenders; (g) the Agent Purchaser, if any; (h) the Debtor Related Persons; (i) the Committee and its members; (j) with respect to each of the foregoing (a) through (i), such Entity and its current and former Affiliates; and (k) with respect to each of the foregoing (b) through (j), such Entity and its Related Persons.

87. "**Executory Contract**" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

88. "**Exit Agent**" means Goldman Sachs Specialty Lending Group, L.P. in its capacity as administrative agent and collateral agent under the Exit Facility Credit Agreement and its successors, assigns, or any replacement agent appointed pursuant to the terms of the Exit Facility Credit Agreement.

89. "**Exit Facility**" means, in the event of an Equitization Restructuring, a new $50,000,000.00 first priority senior secured term loan credit facility as set forth in and consistent with and subject to the terms and conditions of the Plan, the Exit Facility Credit Agreement, and the other Exit Facility Loan Documents and acceptable to the Agent. The Exit Facility will be comprised of (a) the Exit Facility Refinancing Loans in an aggregate principal amount equal to $25,000,000.00 (or such other amount as may be determined by the Agent (with, for the avoidance of doubt, the consent of Crestline) on or prior to the Effective Date), which will be deemed funded by the Exit Facility Lenders on the Effective Date, and (b) multiple draw term loans to be funded on a delayed-draw basis in accordance with an agreed upon budget and funding conditions acceptable to the Agent and in an aggregate principal amount not to exceed $25,000,000.00 (or such other amount as may be determined by the Agent (with, for the avoidance of doubt, the consent of Crestline) on or prior to the Effective Date).

90. "**Exit Facility Credit Agreement**" means that certain loan agreement memorializing the Exit Facility, which shall be entered into on the Effective Date among one or more of the Reorganized Debtors, the SMG Affiliates, the Exit Agent, and the Exit Facility Lenders, which shall be in form and substance acceptable to the Agent.

91. "**Exit Facility Lenders**" means those lenders party to the Exit Facility Credit Agreement.

92. "**Exit Facility Loan Documents**" means the Exit Facility Credit Agreement and all other agreements or documents memorializing the Exit Facility, including any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, intercreditor agreements, security agreements, mortgages, deeds of trust, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the Exit Facility, each in form and substance acceptable to the Agent.

93. "**Exit Facility Refinancing Loans**" means loans deemed funded by the Exit Facility Lenders under the Exit Facility on the Effective Date, the proceeds of which shall be deemed

to refinance Allowed DIP Facility Claims and/or Allowed Prepetition Lenders' Claims of the Exit Facility Lenders in an aggregate principal amount equal to $25,000,000.00 (or such other amount as may be determined by the Agent (with, for the avoidance of doubt, the consent of Crestline).

94.    "**Federal Judgment Rate**" means the federal judgment rate in effect as of the Petition Date, compounded annually, as set forth in 28 U.S.C. § 1961.

95.    "**File," "Filed," or "Filing**" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

96.    "**Final DIP Order**" means the *Final Order (I) Authorizing Debtors to (A) Use Cash Collateral on a Limited Basis and (B) Obtain Post-Petition Financing on a Secured, Superpriority Basis, (II) Granting Adequate Protection, and (III) Granting Related Relief* (ECF No. 280), as may be amended.

97.    "**Final Order**" means an order or judgment of any court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

98.    "**General Administrative Claim**" means any Administrative Claim, other than a Professional Fee Claim.

99.    "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

100.    "**GS Designees**" means Goldman Sachs Bank USA or one or more of such Person's designees.

101.    "**GS Warrant**" means the warrant issued to the GS Designees and exercisable into a number of Class A-2 Common Units equal to 63.94% of the total number of Class A Common Units outstanding as of the time of exercise (assuming exercise of the GS Warrant) for an aggregate exercise price equal to $0.01, which shall have a maturity of ten (10) years and will be immediately exercisable upon the Effective Date.

102.    "**GUC Claim**" means any Claim as of the Petition Date that is neither Secured by a Lien nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court; *provided* that a GUC Claim does not include any Intercompany Claims, Subordinated Claims, TowerBrook

Claims, Prepetition Lenders' Claims, DIP Facility Claims, or Other Secured Claims; *provided further* that Convenience Class Claims shall not be classified as Class 5 GUC Claims, and each GUC Claim whose Holder irrevocably elects on its Ballot to have such Claim irrevocably treated as a Convenience Class Claim shall be treated as a Convenience Class Claim for purposes of the Plan rather than a GUC Claim.

103. "**GUC Trust**" means the trust established pursuant to this Plan in favor of the GUC Trust Beneficiaries pursuant to the GUC Trust Agreement.

104. "**GUC Trust Agreement**" means the trust agreement substantially in the form included in the Plan Supplement to be entered into on or before the Effective Date between the Debtors and the GUC Trustee consistent with the terms of the Plan and in form and substance acceptable to the Committee.

105. "**GUC Trust Assets**" means (a) the Trust Reserve; (b) the Panterra Claims; (c) 100% of net proceeds of the Panterra Claims recovered by the GUC Trust up to $4,000,000.00; and (d) 50% of net proceeds of the Panterra Claims recovered by the GUC Trust in excess of $4,000,000.00.

106. "**GUC Trust Beneficiary**" means a Holder of an Allowed Claim entitled to receive a distribution from the GUC Trust pursuant to the Plan, in its capacity as such.

107. "**GUC Trust Expenses**" means the reasonable expenses (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets and professional fees) incurred by the GUC Trust and any professionals retained by the GUC Trust (including any costs associated with the Panterra Claims) and any additional amount determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust, which shall be satisfied from the GUC Trust Assets.

108. "**GUC Trust Interest**" means a non-certificated beneficial interest in the GUC Trust that, subject to the Terms of the Plan and the GUC Trust Agreement, may be granted to each Holder of an Allowed Class 5 GUC Claim, which shall entitle such holder to a Pro Rata share in the GUC Trust Assets.

109. "**GUC Trust Reserve**" means an amount of Cash equal to $1,000,000.00 which shall be transferred to the GUC Trust on the Effective Date to fund the GUC Trustee's pursuit of the Panterra Claims, the Claims reconciliation process, payment of the Convenience Class Claims, and other expenses of the GUC Trust.

110. "**GUC Trustee**" means the Person or Entity selected by the Committee to serve as the trustee of the GUC Trust, and any successor thereto, in accordance with the Plan and the GUC Trust Agreement.

111. "**Holder**" means an Entity that is the beneficial holder of a Claim or an Interest, as applicable. "Hold" and "Held" shall have the correlative meanings.

112. "**Impaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

113.    "**Insurance Policies**" means the policies of insurance listed in the Plan Supplement.

114.    "**Insurers**" means the insurance companies providing insurance coverage under the Insurance Policies.

115.    "**Intercompany Claim**" means any Claim held by any Reorganized Debtor against any other Reorganized Debtor.

116.    "**Interest**" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Entity, including any Debtor, and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Entity.

117.    "**Interim DIP Order**" means the *Interim Order (I) Authorizing Debtors to (A) Use Cash Collateral on a Limited Basis and (B) Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (ECF No. 52).

118.    "**Interim Compensation Order**" means the various orders employing Chapter 11 Professionals that contain provisions for interim compensation.

119.    "**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

120.    "**IRS**" means the Internal Revenue Service.

121.    "**Judicial Code**" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

122.    "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind.

123.    "**Liquor License**" means a license for the on-premise sale and/or consumption of beer, wine, distilled spirits, or other alcoholic beverage.

124.    "**Local Bankruptcy Rules**" means the local rules of bankruptcy procedure promulgated in this district in accordance with Bankruptcy Rule 9029 that are applicable to all cases and proceedings arising in, under, or related to cases pending under the Bankruptcy Code in the Bankruptcy Court.

125.    "**Management Incentive Plan**" means, in the event an Equitization Restructuring occurs, a post-Effective Date management incentive plan acceptable to the Agent for the issuance of Class B Common Units to management and other service providers to be set forth in the SMG Parent A&R LLCA, with a portion of such authorized Class B Common Units reserved for issuance after the Effective Date.

126.    "**New Units**" means, in the event an Equitization Restructuring occurs, the new Interests in SMG Parent whether issued or unissued on the Effective Date to be distributed under

14

and in accordance with the Plan, including the Preferred Units, the Common Units, and the GS Warrant.

127. "**New Organizational Documents**" means, in the event an Equitization Restructuring occurs, such certificates or articles of incorporation, by-laws, limited liability company operating agreements, stockholders' agreements, or other applicable formation and governance documents of each of the Debtors that will become Reorganized Debtors, as applicable, the form of which shall be included in the Plan Supplement or otherwise disclosed prior to the Effective Date and in form and substance acceptable to the Agent.

128. "**Non-Reorganized Debtor**" means any Debtor that is identified (or whose Chapter 11 Case is identified) on any Schedule of Non-Reorganized Debtors, including OHAM, which shall be identified on the Schedule of Converted Cases.

129. "**Non-Vesting Asset**" means, in the event an Equitization Restructuring occurs, (a) property of any Debtor's Estate that is abandoned under section 554 of the Bankruptcy Code prior to the Effective Date with the consent of the Agent, (b) all of the Interests in the Debtors identified on the Schedule of Abandoned Debtors and/or the Schedule of Converted Cases (other than the Interests in OHAM), which shall be abandoned under section 554 of the Bankruptcy Code on the Effective Date, and (c) any other asset, right, arrangement, non-executory contract, or other property that is listed in the Plan Supplement as a Non-Vesting Asset (including amendments to clauses (a) and (b) of this definition) with the consent of the Agent.

130. "**Noticing Agent**" means Donlin Recano, the noticing, balloting and administrative agent employed by the Debtors by Final Order entered December 10, 2020 (ECF No. 330).

131. "**OHAM**" means OHAM Holdings, LLC, the pre-petition Holder of the Interests in SMG Holdings.

132. "**Opt Out Election**" means the election of a Holder of a Claim or Interest properly and timely made on a form approved by the Bankruptcy Court (including as set forth in a Ballot or an Opt Out Form, as applicable), to opt out of the Third Party Release.

133. "**Opt Out Form**" means a form, substantially in the form approved by the Disclosure Statement Order, by which a Holder of a Claim or Interest who is not entitled to vote on a Ballot to accept or reject the Plan may indicate its intent to opt out of the releases contained in Article VIII.D of the Plan by submitting such form in accordance with the Disclosure Statement Order.

134. "**Other Debtors**" means all Debtors excluding (a) SMG Holdings and (b) any Non-Reorganized Debtor.

135. "**Other Debtor Interest**" means an Interest in an Other Debtor.

136. "**Other Priority Claim**" means any Claim against a Reorganized Debtor, other than an Administrative Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code including Priority Tax Claims and Priority Wage Claims.

137. "**Other Secured Claim**" means any Secured Claim against a Debtor, other than Prepetition Lenders' Claims, DIP Facility Claims, or Secured Tax Claims.

138. "**Panterra**" means Panterra Development Ltd., LLC, Panterra GP, Inc., and each of their Affiliates, subsidiaries, equity owners, officers, directors, advisory board members, employees, managers, financial advisors, attorneys, accountants, investment bankers, consultants, and professionals.

139. "**Panterra Actions**" means (a) *Movie Grill Concepts XX, LLC v. Panterra Development Ltd., LLC*, Case No. BCV-18-102668 pending in the Kern County, California Superior Court and (b) *Panterra GP, Inc. v. Rosedale Bakersfield Retail VI, LLC*, Case No. BCV-18-102528 pending in the Kern County, California Superior Court.

140. "**Panterra Claims**" means any claims or Causes of Action of or asserted by the Debtors against Panterra, including all claims asserted by the Debtors against Panterra in the Panterra Actions.

141. "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

142. "**Petition Date**" means October 23, 2020, the date on which the Debtors commenced the Chapter 11 Cases.

143. "**Plan**" means this Third Amended Joint Plan of Reorganization collectively with all other Plan Documents.

144. "**Plan Documents**" means all documents, forms, lists, schedules, addendums, and agreements contemplated under this Plan (including, but not limited to the Plan and the Plan Supplement), each in form and substance acceptable to the Agent, to effectuate the terms and conditions hereof.

145. "**Plan Rate**" means the rate of interest determined at Confirmation based on the Wall Street Journal prime rate plus one percent.

146. "**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, in each case in form and substance acceptable to the Agent, to be Filed by the Debtors at least ten (10) days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement, as each of the foregoing may be altered, amended, modified, or supplemented from time to time prior to the Confirmation Hearing and through the Effective Date, in each case in form and substance acceptable to the Agent. In the event of an Equitization Restructuring, the Plan Supplement shall be comprised of, among other documents, the following: (a) the New Organizational Documents; (b) the Assumed Executory Contract and Unexpired Lease List; (c) the Rejected Executory Contract and Unexpired Lease List; (d) the Schedule of Retained Causes of Action; (e) the identity of the members of the SMG Parent Board and management for the Reorganized Debtors; (f) the GUC Trust Agreement; (g) the Exit Facility Credit Agreement, (h) the Schedules of Non-Reorganized Debtors, (i) the Restructuring Transactions Exhibit, (j) the list of Insurance Policies, (k) the list identifying any Non-Vesting Assets as provided in subsection (c) of the definition of "Non-Vesting Assets," (l) the list of retained studio contracts, and (m) the SMG Parent A&R LLCA, all of which shall be in form and substance acceptable to the Agent. In the event of an Asset Sale Restructuring, the Plan Supplement shall be comprised of, among other documents, the

following: (a) the Assumed Executory Contract and Unexpired Lease List; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Schedule of Retained Causes of Action; (d) the GUC Trust Agreement; (e) the Agent Trust Agreement (if applicable), and (f) the Credit Bid Allocation, all of which shall be in form and substance acceptable to the Agent. Any reference to the Plan Supplement in the Plan shall include each of the documents identified above and all exhibits thereto. Notwithstanding the foregoing, the Debtors may amend the Plan Supplement with the consent of the Agent prior to the Confirmation Hearing and through the Effective Date or as otherwise provided herein.

147. "**Plan Toggle Right**" has the meaning set forth in the Bid Procedures and includes the Agent's exercise of the same on January 27, 2021 as set forth in the *Notice of Agent's Exercise of Plan Toggle Right and Adjournment of Sale Hearing Pursuant to Bid Procedures Order* (ECF No. 557).

148. "**Preferred Units**" means, if an Equitization Restructuring occurs, the new preferred units in SMG Parent with a face value of $45 million in the aggregate and which will be issued at a face value of $1.00 per unit and distributed pursuant to the terms of the Plan. The Preferred Units shall rank senior in all respects to the Common Units.

149. "**Prepetition Agent**" means Goldman Sachs Specialty Lending Group, L.P., in its capacity as Administrative Agent and Collateral Agent (each as defined in the Prepetition Credit Agreement) under the Prepetition Credit Agreement.

150. "**Prepetition Credit Agreement**" means that certain *Second Amended and Restated Credit and Guaranty Agreement* dated as of March 29, 2019, among the Prepetition Agent, the Prepetition Lenders, and certain of the Debtors, as Borrowers (as defined therein), as amended prior to the Petition Date.

151. "**Prepetition Credit Facility**" means the Debtors' prepetition credit facility memorialized by the Prepetition Loan Documents.

152. "**Prepetition Lenders**" means Goldman Sachs Bank USA, Crestline, American National Insurance Company, and their successors and assigns, each in its capacity as a Lender (as defined in the Prepetition Credit Agreement) under the Prepetition Credit Facility.

153. "**Prepetition Lenders' Claim**" means the Claims held by any of the Prepetition Lenders arising under or relating to the Prepetition Loan Documents, including any and all fees, interest (both pre and post-Petition Date), and reimbursement of expenses, and any other amounts owed or arising under the Prepetition Loan Documents.

154. "**Prepetition Loan Documents**" means Prepetition Credit Agreement and all other agreements or documents memorializing the Prepetition Credit Facility, including any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, intercreditor agreements, security agreements, mortgages, deeds of trust, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the Prepetition Credit Facility.

155. "**Priority Claims**" means, collectively, the (a) Administrative Claims, (b) Priority Tax Claims, (c) Priority Wage Claims, and (d) Other Priority Claims.

156.    "**Priority Tax Claim**" means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code and shall include interest solely to the extent that the Holder of such Claim is entitled to such interest under section 507(a)(8) of the Bankruptcy Code.

157.    "**Priority Wage Claim**" means the Claims of employees of the Debtors of the type specified in section 507(a)(4) of the Bankruptcy Code.

158.    "**Pro Rata**" means, unless indicated otherwise, (a) the proportion that the amount of an Allowed Claim or Allowed Interest bears (i) to the aggregate amount of the Allowed Claims or Allowed Interests in that Class or (ii) to the aggregate amount of the Allowed Claims or Allowed Interests otherwise specified, as the context requires, or (b) the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes, respectively, entitled to share in the same recovery as such Claim or Interest under the Plan.

159.    "**Professional**" means an Entity, excluding those Entities entitled to compensation pursuant to the Ordinary Course Professional Order: (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered through and including the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

160.    "**Professional Fee Claims**" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

161.    "**Professional Fee Escrow Account**" means an account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date, pursuant to Article II.A.2(b) of the Plan.

162.    "**Professional Fee Reserve Amount**" means the total amount of Professional Fee Claims estimated in accordance with Article II.A.2(c) of the Plan.

163.    "**Proof of Claim**" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

164.    "**Proof of Interest**" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

165.    "**Purchase Price**" means, in the event an Asset Sale Restructuring occurs with a Third Party Purchaser, the amount of Cash set forth in an Asset Purchase Agreement.

166. "**Purchaser**" means, in the event an Asset Sale Restructuring occurs, the prevailing purchaser of all or substantially all of the Debtors' assets, which may be a Third Party Purchaser or an Agent Purchaser.

167. "**Reinstate**," "**Reinstated**," or "**Reinstatement**" means with respect to Claims and Interests, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder thereof so as to leave such Claim or Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

168. "**Rejected Executory Contract and Unexpired Lease List**" means the list in form and substance acceptable to the Agent, compiled by the Debtors, of Executory Contracts and Unexpired Leases that will be rejected by the Debtors pursuant to the Plan, which list shall be included in the Plan Supplement.

169. "**Related Person**" means, with respect to any Entity, such Entity's (only in its capacity as such): predecessors, successors, participants, assigns (whether by operation of law or otherwise) and present and former Affiliates and subsidiaries, and each of their respective current and former officers, directors, principals, employees, direct and indirect shareholders, direct and indirect members (including *ex officio* members), managers, managed accounts or funds, management companies, fund advisors, portfolio companies, advisory board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, independent contractors, representatives, and other professionals, including such Related Persons' respective heirs, executors, estates, servants, and nominees; *provided, however*, that no insurer of any Debtor shall constitute a Related Person.

170. "**Released Avoidance Actions**" means all Avoidance Actions *except* (a) any Avoidance Actions against Panterra and (b) unless each of the Schultz Release Conditions is satisfied in the Agent's discretion, any Avoidance Actions against the Schultz Parties.

171. "**Released Parties**" means, collectively, and in each case only in its capacity as such: (a) the Agent Released Parties, (b) the Debtor Related Persons serving in such capacity as of the Effective Date; (c) the Committee and its members; (d) the Schultz Parties; and (e) with respect to each of the foregoing (a) through (d), such Entity and its Related Persons; *provided*, that, for avoidance of doubt, any Holder of a Claim or Interest that timely votes to reject the Plan, timely objects to Confirmation of the Plan, or validly opts out of the Third Party Release by making the Opt Out Election, shall not be a "Released Party"; *provided, further*, that Panterra shall not be a "Released Party"; *provided, further*, that notwithstanding the foregoing, the Schultz Parties shall not be "Released Parties" unless each of the Schultz Release Conditions is satisfied in the Agent's discretion.

172. "**Releasing Parties**" means, collectively, and in each case only in its capacity as such: (a) each of the Debtors (excluding any Non-Reorganized Debtor); (b) the Reorganized Debtors;

19

(c) the Debtor Related Persons; (d) the Committee; (e) the individual members of the Committee (both in their capacity as such and as individual creditors); (f) the GUC Trustee; (g) the GUC Trust; (h) the Agent Trustee; (i) the Agent Trust; (j) the Schultz Parties; and (k) all Holders of Claims or Interests who (1) are deemed to, or timely vote to accept the Plan, (2) abstain from voting to accept or reject the Plan **and** who do not make the Opt Out Election, (3) are not entitled to vote to accept or reject the Plan **and** who do not make the Opt Out Election, or (4) are deemed to, or timely vote to reject, the Plan **and** who do not make the Opt Out Election; and (l) with respect to each of the foregoing (a) through (k), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' Related Persons, each in their capacity as such; *provided*, that any Holder of a Claim or Interest that (x) validly makes the Opt Out Election or (y) Files an objection or otherwise objects to the releases in Article VIII of the Plan and such objection is not otherwise resolved shall not be a "Releasing Party"; *provided, further*, that notwithstanding the foregoing, the Schultz Parties and each of their Related Persons shall not constitute "Releasing Parties" unless each of the Schultz Release Conditions is satisfied in the Agent's discretion.

173. "**Reorganized**" means, as to any Debtor or Debtors, such Debtor(s) as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, taxable disposition, or otherwise, on or after the Effective Date.

174. "**Reorganized Debtors**" means, collectively, and each in its capacity as such, the Debtors, as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, and from and after the Effective Date, and shall include (without limitation) Reorganized SMG, but shall exclude the Debtors listed on any Schedule of Non-Reorganized Debtors.

175. "**Reorganized SMG**" means SMG Holdings, as reorganized pursuant to and under the Plan or any successor thereto, as set forth in the Plan and the New Organizational Documents.

176. "**Restructuring Transactions**" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, sales, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that are necessary or desirable to implement the Plan with respect to the Debtors, including, without limitation, the transactions contemplated by the Asset Sale Restructuring or the Equitization Restructuring (including the transactions set forth on the Restructuring Transactions Exhibit), as applicable, and the execution, delivery and funding of the GUC Trust Agreement and, if applicable, the Agent Trust Agreement.

177. "**Restructuring Transactions Exhibit**" means the exhibit setting forth certain Restructuring Transactions to be taken in the event of an Equitization Restructuring by certain Debtors, Reorganized Debtors, and the SMG Affiliates, as applicable, which shall be in form and substance acceptable to the Agent and included in the Plan Supplement.

178. "**Restructuring Expenses**" means the fees and expenses accrued since the inception of their respective engagements related to the implementation of the Restructuring Transactions and not previously paid by, or on behalf of, the Debtors of (a) (i) Vinson & Elkins LLP, as counsel to the Agent, (ii) FTI Consulting, Inc., as financial advisor to Vinson & Elkins LLP in connection with its representation of the Agent, and (iii) any consultants, advisors, or other professionals retained by Vinson & Elkins LLP or the Agent in connection with the Debtors or the Restructuring Transactions, and (b) Jones Day, as counsel to Crestline in its capacity as a DIP Lender and a Prepetition Lender,

in each case of (a) and (b), without further order of, or application to, the Bankruptcy Court by such consultant or professionals, including to the extent provided in the DIP Orders.

179. "**Retained Causes of Action**" means any Causes of Action that are set forth on the Schedule of Retained Causes of Action to be retained by the Reorganized Debtors or transferred to the GUC Trust or the Agent Trust, as applicable, and prosecuted on behalf of the Debtors or the Reorganized Debtors, as applicable, and which shall not be released pursuant to the Plan; *provided that* notwithstanding the foregoing, any Cause of Action that is released pursuant to Article VIII of the Plan shall not be a Retained Cause of Action; *provided, further*, that any and all Causes of Action against the Schultz Parties (including Avoidance Actions against the Schultz Parties) shall constitute Retained Causes of Action unless each of the Schultz Release Conditions is satisfied in the Agent's discretion and such Cause of Action is subject to the release set forth in this Plan.

180. "**Sale Proceeds Account**" means, in the event an Asset Sale Restructuring to a Third Party Purchaser occurs, a bank account established by the Debtors on or before the Effective Date into which the Third Party Purchaser shall deposit the Sale Proceeds.

181. "**Sale Proceeds**" means the Cash and non-Cash consideration provided by a Third Party Purchaser in connection with an Asset Sale, net of expenses arising from the Asset Sale.

182. "**Schedule of Abandoned Debtors**" means the schedule of certain Debtors, if any, that will not become Reorganized Debtors and whose Interests will, with the consent of the Agent, be abandoned on the Effective Date pursuant to section 554 of the Bankruptcy Code, which schedule shall be in form and substance acceptable to the Agent and included in the Plan Supplement.

183. "**Schedule of Converted Cases**" means the schedule of certain Debtors' Chapter 11 Cases that will be converted to cases under chapter 7 of the Bankruptcy Code on the Effective Date as determined by the Agent, which schedule shall be in form and substance acceptable to the Agent and included in the Plan Supplement.

184. "**Schedule of Non-Applicable Debtors**" means the schedule of certain Debtors, if any, that will not become Reorganized Debtors and whose treatment will be subject to a separate plan of reorganization or liquidation acceptable to the Agent, which schedule shall be in form and substance acceptable to the Agent and included in the Plan Supplement.

185. "**Schedule of Retained Causes of Action**" means the schedule of the Retained Causes of Action, as the same may be amended, modified, or supplemented from time to time by the Debtors through the Effective Date with the consent of the Agent, which shall be included in the Plan Supplement, provided that such schedule shall not include any Causes of Action against any Released Party, and any such inclusion will be deemed void *ab initio*.

186. "**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts or Unexpired Leases, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be altered, amended, modified, or supplemented from time to time.

187. "**Schedules of Non-Reorganized Debtors**" means, collectively, the Schedule of Abandoned Debtors, the Schedule of Converted Cases, and the Schedule of Non-Applicable Debtors.

188.     "**Schultz Parties**" means (a) Brian Schultz, both individually and in his capacity as a current or former (i) member of any Debtor's board of managers or directors, (ii) officer of any Debtor, (iii) manager of any Debtor, (iv) employee of any Debtor, (v) consultant of any Debtor, or (vi) Interest Holder of any Debtor, (b) TNTF, LLC, SMG Team Equity Holdings, LLC, and Blackbox Management Group, LLC, and (c) with respect to each of the foregoing (a) through (b), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' Related Persons.

189.     "**Schultz Release Conditions**" means the terms and conditions that each of the Schultz Parties must satisfy prior to the Effective Date for the Schultz Parties and their Related Persons to become "Releasing Parties" under the Plan: (a) each Schultz Party executes a mutual release in form and substance acceptable to the Agent, (b)  each Schultz Party agrees to become a "Releasing Party" under the Plan and to be subject to the releases set forth in Article VIII of the Plan, and (c) such other terms and conditions as the Schultz Parties and Agent may mutually agree in writing.  The Agent may waive any Schultz Release Condition in its discretion via a writing acceptable to the Agent that is signed by the Agent or its authorized representative or attorney.

190.     "**SEC**" means the Securities and Exchange Commission.

191.     "**Section 510(b) Claim**" means any Claim against a Debtor arising from (a) rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, (b) purchase or sale of such a security, or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

192.     "**Secured**" means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan or separate order of the Bankruptcy Court as a Secured Claim.

193.     "**Secured Tax Claim**" means Secured Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code and shall include interest solely to the extent that the Holder of such Claim is entitled to such interest under section 507(a)(8) of the Bankruptcy Code.

194.     "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77–77a, as amended, together with the rules and regulations promulgated thereunder, or any similar federal, state or local law.

195.     "**Security**" or "**Securities**" has the meaning set forth in section 2(a)(1) of the Securities Act.

196.     "**SMG Affiliates**" means, collectively, SMG Parent, SMG Intermediate.

197.     "**SMG Holdings**" means Studio Movie Grill Holdings, LLC.

198.     "**SMG Holdings Interest**" means an Interest in SMG Holdings.

199.     "**SMG Intermediate**" means an Entity to be formed on or prior to the Effective Date that shall, pursuant to the Plan, the Equitization Restructuring, and Restructuring Transactions, become the ultimate direct holder of one hundred percent (100%) of the Interests in Reorganized SMG under the Plan.

200.     "**SMG Parent**" means an Entity to be formed on or prior to the Effective Date that shall, pursuant to the Plan, the Equitization Restructuring, and Restructuring Transactions, become the ultimate direct holder of one hundred percent (100%) of the Interests in SMG Intermediate under the Plan, and the issuer of the New Units under the Plan.

201.     "**SMG Parent A&R LLCA**" means, if an Equitization Restructuring occurs, the amended and restated limited liability company agreement for SMG Parent, which shall include, among other terms, (a) the terms of the Management Incentive Plan, (b) the composition and terms of the SMG Parent Board, and (c) the distribution waterfall for distributions on account of the New Units, the form of which shall be included in the Plan Supplement and which shall be in form and substance acceptable to the Agent.

202.     "**SMG Parent Board**" means, if an Equitization Restructuring occurs, the board of managers of SMG Parent on and after the Effective Date.

203.     "**Subclass**" means a separate Class of Claims for each respective Debtor underneath a major classification.

204.     "**Subordinated Claim**" means a Claim that is subordinated to GUC Claims pursuant to (a) a contract or agreement, (b) a Final Order declaring that such Claim is subordinated in right or payment, or (c) any applicable provision of the Bankruptcy Code, including Bankruptcy Code section 510, or other applicable law.

205.     "**Third Party Purchaser**" means, in the event an Asset Sale Restructuring occurs, a Purchaser other than the Agent Purchaser.

206.     "**Third Party Release**" means the release provided by the Releasing Parties in favor of the Released Parties as set forth in Article VIII.D of the Plan.

207.     "**TowerBrook Claims**" means the Claims against OHAM arising out of that certain *Securities Purchase Agreement*, dated March 29, 2019 by and among OHAM, as issuer, TSO SMG Note Investment Aggregator L.P. and Michael Lambert Trust u/d/t 3/1/93, as note purchasers, and TSO SMG Warrant Investment Aggregator L.P. and Michael Lambert Trust u/d/t 3/1/93, as warrant purchasers.

208.     "**U.S.**" means the United States of America.

209.     "**U.S. Trustee**" means the Office of the U.S. Trustee for Northern District of Texas.

210.     "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

211.     "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

B.      *Rules of Interpretation.*

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, or similar formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted by the Debtors or Reorganized Debtors but subject to the Agent's consent, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and

24

implementation of the Plan, any agreements, documents, instruments, leases, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in such documents, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States, unless otherwise expressly provided.

F.      *Conflicts.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

G.      *Reference to Debtors or Reorganized Debtors.*

Unless specifically provided otherwise in the Plan, references to the Debtors or Reorganized Debtors shall mean the Debtors (or a Debtor) and/or Reorganized Debtors (or a Reorganized Debtor), as the context may require; *provided* that references to Reorganized Debtors shall not be to the Debtors who are Non-Reorganized Debtors.

# ARTICLE II.
# ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP FACILITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and DIP Facility Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests. Notwithstanding anything to the contrary herein, Claims and Interests against Debtors that are identified on the Schedule of Abandoned Debtors, the Schedule of Converted Cases, or the Schedule of Non-Applicable Debtors shall not be subject to this Article II and shall not be paid by the Reorganized Debtors.

A.      *Administrative Claims.*

1. General Administrative Claims.

Except as otherwise provided for in the Plan, unless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment acceptable to the Agent, each Holder of an Allowed General Administrative Claim (other than Holders of Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code), will receive, in full satisfaction release, settlement, and discharge of such General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim: (a) to the extent such Allowed General Administrative Claim is due and owing on the Effective Date, on the Distribution Date; (b) to the extent such Allowed General Administrative Claim is not due and owing on the Effective Date, (i) in accordance with the terms of any agreement between the Debtors and such Holder as of the Effective Date, or when such

Claim becomes due and payable under applicable non-bankruptcy law, or (ii) in the ordinary course of business; or (c) to the extent the General Administrative Claim is not Allowed as of the Effective Date, sixty (60) days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable, in each case of (a) through (c) without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.

Requests for allowance and payment of General Administrative Claims that were (a) not incurred in the ordinary course of the Debtors' business and (b) are not subject to the Administrative Claims Bar Date Order or other order of the Court must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, and the Agent, no later than the Administrative Claims Bar Date applicable to such General Administrative Claims pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date. Holders of General Administrative Claims that are (a) not subject to the Administrative Claims Bar Date Order and are required to File and serve a request for payment of such General Administrative Claims by the applicable Administrative Claims Bar Date and do not File and serve such a request by the Administrative Claims Bar Date specified in the Confirmation Order or (b) are subject to the Administrative Claims Bar Date Order but did not timely File and serve such a request in accordance with the Administrative Claims Bar Date Order, shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors or Reorganized Debtors, as applicable, or their respective property, and such General Administrative Claims shall be deemed forever discharged and released as of the Effective Date. Any requests for allowance and payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date (including those that are subject to the Administrative Claims Bar Date Order) shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtors or the Reorganized Debtors, as applicable, or further order of the Bankruptcy Court. To the extent this Article II.A.1 conflicts with Article XII.D of the Plan with respect to fees and expenses payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, Article XII.D of the Plan shall govern. Notwithstanding the foregoing (a) no request for payment of a General Administrative Claim need be Filed with respect to a General Administrative Claim previously Allowed by Final Order, and (b) neither the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, nor any Governmental Unit shall be required to File a request for allowance of any Administrative Claim, and the Administrative Claims Bar Date shall not apply to any such Entity.

The Reorganized Debtors, with the consent of the Agent, may settle General Administrative Claims without further Bankruptcy Court approval; *provided, however*, that the Reorganized Debtors shall provide notice prior to seeking the reclassification of any General Administrative Claim to a GUC Claim and the GUC Trustee shall have standing to object to such reclassification. The Reorganized Debtors may also choose to object to any Administrative Claim no later than sixty (60) days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or Reorganized Debtors (or other party with standing), as applicable, object to a timely filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. In the event that the Debtors or Reorganized Debtors, as applicable, object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

2.  Professional Fee Claims.

      (a)      <u>Final Fee Applications</u>.

All final requests for compensation or reimbursement of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date (other than substantial contribution claims under section 503(b)(4) of the Bankruptcy Code), must be Filed and served on the Reorganized Debtors and their counsel no later than forty-five (45) days after the Effective Date or as may otherwise be directed by the Bankruptcy Court. All such final requests will be subject to approval by the Bankruptcy Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be paid as soon as reasonably practicable from the Professional Fee Escrow Account up to the full Allowed amount.

Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors and their counsel and the requesting Professional or other entity by no later than twenty-one (21) days (or such longer period as may be established by order of the Bankruptcy Court or by agreement of the objecting party, the applicable Professional, and the Reorganized Debtors) after the date on which the applicable application for compensation or reimbursement was served. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

      (b)      <u>Professional Fee Escrow Account</u>.

Prior to the Effective Date, the Debtors shall establish the Professional Fee Escrow Account which shall be funded on the Effective Date with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors, as applicable. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be delivered to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

      (c)      <u>Professional Fee Reserve Amount</u>.

Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than five business days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide such an estimate, the Debtors may estimate the unpaid and unbilled

27

fees and expenses of such Professional. The aggregate amount for all Professionals estimated pursuant to this section shall comprise the Professional Fee Reserve Amount.

**B.**     *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment acceptable to the Agent, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Reorganized Debtors with the consent of the Agent: (a) payment in full of such Allowed Priority Tax Claim on the Distribution Date, (b) treatment in accordance with the provisions of sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be, or (c) treatment pursuant to the terms of a payment agreement, payment plan, or installment agreement entered into between a Debtor and such Holder and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**C.**     *DIP Facility Claims.*

All DIP Facility Claims shall be deemed to be Allowed Secured Claims and Allowed superpriority Administrative Claims in the full amount due and owing under the DIP Facility Loan Documents and the DIP Orders as of the Effective Date.

If an Equitization Restructuring occurs, on the Effective Date, except to the extent that a Holder of an Allowed DIP Facility Claim agrees to a less favorable treatment, each Holder thereof or such Holder's designees shall receive:

a.     Its Pro Rata share (*i.e.*, the proportion that such Allowed DIP Facility Claim bears to the aggregate amount of all Allowed DIP Facility Claims participating in the Exit Facility Refinancing Loans (if any, and as determined by the Agent with, for the avoidance of doubt, the consent of Crestline) plus all Allowed Prepetition Lenders' Claims (if any, and as determined by the Agent with, for the avoidance of doubt, the consent of Crestline) participating in the Exit Facility Refinancing Loans) of the Exit Facility Refinancing Loans on a dollar-for-dollar basis; *plus*

b.     Thereafter, the applicable New Units designated to be distributed to such Holder or its designees (as more fully set forth in Article III.B – Class 2 of the Plan).

If an Equitization Restructuring occurs, the Agent (with, for the avoidance of doubt, the consent of Crestline) may at any time prior to the Effective Date determine the amount of Allowed DIP Facility Claims and Allowed Prepetition Lenders' Claims that shall be refinanced with Exit Facility Refinancing Loans; *provided, however*, that (a) the allocation of any Allowed DIP Facility Claim to be refinanced with Exit Facility Refinancing Loans shall be Pro Rata with all Allowed DIP Facility Claims, and (b) the allocation of any Allowed Prepetition Lenders' Claim to be refinanced with Exit Facility Refinancing Loans shall be Pro Rata with all Allowed Prepetition Lenders' Claims.

If an Asset Sale Restructuring occurs, on the Effective Date, except to the extent that a Holder of an Allowed DIP Facility Claim agrees to a less favorable treatment, each Holder thereof shall receive indefeasible payment in full in Cash.

Subject to the provisions of Article III.B Class 2 below, unless and until Holders of Allowed DIP Facility Claims receive (a) in an Equitization Restructuring, their Pro Rata share of the Exit

Facility Refinancing Loans (if any) and their applicable share of the New Units, or (b) in an Asset Sale Restructuring, indefeasible payment in full in Cash (or such other treatment consented to by such Holder), then notwithstanding entry of the Confirmation Order and anything to the contrary in this Plan or the Confirmation Order, (1) none of the DIP Facility Claims shall be discharged, satisfied or released or otherwise affected in whole or in part, and each of the DIP Facility Claims shall remain outstanding, (2) none of the DIP Liens shall be (or deemed to have been) waived, released, satisfied or discharged, in whole or in part, and (3) none of the DIP Facility Loan Documents shall be (or deemed to have been) terminated, discharged, satisfied or released or otherwise affected in whole or in part, and each such DIP Facility Loan Document shall remain in effect.

Holders of DIP Facility Claims expressly reserve the right to seek recovery against any Non-Reorganized Debtor on any grounds, including, without limitation, the entire unpaid cash amount of the DIP Facility Claims, and all DIP Liens against property and assets of any Non-Reorganized Debtor shall continue to attach to such property and assets with the same effect and in the same order of priority as such DIP Liens exist on the Effective Date. For the avoidance of doubt, Allowed DIP Facility Claims (net of any such Allowed DIP Facility Claims that will be substituted and exchanged for a share of the Exit Facility) and Allowed Prepetition Lenders' Claims shall remain outstanding and due and owing by any Debtor that is not a Reorganized Debtor.

**D.**     *Statutory Fees.*

On or before the Effective Date, the Debtors who will be Reorganized Debtors shall have paid in full in Cash all fees due and payable pursuant to section 1930 of Title 28 of the United States Code. On and after the Effective Date, the payment of such fees shall be made in accordance with Article X.D.

# ARTICLE III.
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.**     *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, Priority Tax Claims, DIP Facility Claims, and Claims for fees due and payable pursuant to section 1930 of Title 28 of the United States Code, are classified in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code in the Classes set forth in this Article III. A Claim or Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date. The Debtors reserve the right to assert that the treatment provided to Holders of Claims and Interests pursuant to Article III.B of the Plan renders such Holders Unimpaired.

1.     Class Identification for the Debtors.

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor with Claims against and Interests in each respective Debtor participating in the respective Subclass in such Class; *provided, however*, that notwithstanding anything to the contrary herein, Claims and Interests against Debtors that are identified on the Schedule of Abandoned Debtors, the Schedule of Converted Cases,

or the Schedule of Non-Applicable Debtors shall not be subject to this Article III or the treatment set forth herein. Where there are no Subclasses listed, all Claims of such Class are being treated the same.

B.      *Treatment of Claims and Interests.*

To the extent that a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the treatment of Allowed Claims and Allowed Interests in such Class is specified below.

### Class 1 – Other Priority Claims.

(a)   *Classification*: Class 1 consists of Other Priority Claims. For purposes of classification and treatment under the Plan, all Other Priority Claims of all Debtors are being treated as one Class.

(b)   *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim acceptable to the Agent, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the applicable Debtor(s) with the consent of the Agent, either:

(i)      payment in full in Cash; or

(ii)     other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code.

(c)   *Voting*: Class 1 is Unimpaired under the Plan. Each Holder of a Class 1 Other Priority Claim is conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

### Class 2 – Prepetition Lenders' Claims.

(a)   *Classification*: Class 2 consists of the Prepetition Lenders' Claims held by the Prepetition Lenders. For purposes of classification and treatment under the Plan, there shall be a separate Subclass for Class 2 for each Debtor.

(b)   *Allowance*: On the Effective Date, the Prepetition Lenders' Claims shall be Allowed in the aggregate principal amount of at least $104,123,984.28, *plus* accrued and unpaid interest on such principal amount through the Petition Date and any other amounts due and owing pursuant to, arising under or, relating to the Prepetition Loan Documents through and including the Effective Date, *less* any amount repaid or rolled up pursuant to the DIP Facility and the DIP Orders as of the Effective Date.

(c)   *Treatment:* On the Effective Date, each Holder of a Class 2 Claim shall receive:

(i)      if an Equitization Restructuring occurs, (a)(1) its Pro Rata share (*i.e.*, the proportion that such Allowed Prepetition Lenders' Claim bears to the aggregate amount of all Allowed Prepetition Lenders' Claims

participating in the Exit Facility Refinancing Loans (if any, and as determined by the Agent with, for the avoidance of doubt, the consent of Crestline) plus all Allowed DIP Facility Claims (if any, and as determined by the Agent with, for the avoidance of doubt, the consent of Crestline) participating in the Exit Facility Refinancing Loans) of the Exit Facility Refinancing Loans on a dollar-for-dollar basis, and (2) thereafter, the applicable New Units designated to be distributed to such Holder as set forth below (which may be distributed to the GS Designees or the Crestline Designees as determined by such Holder); *plus* (b) its Pro Rata share of the Agent Panterra Assets; or

(ii)    if an Asset Sale Restructuring occurs, (a) all Cash of the Debtors (including, if the Asset Sale Restructuring is to a Third Party Purchaser, the Sale Proceeds) other than the GUC Trust Assets and (b) its Pro Rata Share of the Agent Trust Assets and the Agent Trust Interests.

If an Equitization Restructuring occurs, the distribution of New Units to the Holders of Class 2 Claims and DIP Facility Claims shall be as follows: (a) if to the GS Designees, (i) 63.94% of the Preferred Units and (ii) the GS Warrant; and (b) if to the Crestline Designees, (i) 36.06% of the Preferred Units and (ii) 100% of the Class A-1 Common Units. Notwithstanding the foregoing, the Agent, with the consent of Crestline, may at any time redetermine the allocation and type of New Units to be distributed the Holders of Class 2 Claims and DIP Facility Claims.

If an Equitization Restructuring occurs, (a) all DIP Liens shall be retained by the DIP Agent and assigned to the Exit Agent to secure the obligations under the Exit Facility and (b) any and all Liens securing the Prepetition Lenders' Claim shall be retained by the Prepetition Agent and assigned to the Exit Agent to secure the obligations under the Exit Facility. If an Asset Sale Restructuring occurs, after the Effective Date, each of the DIP Liens and the Liens securing the Prepetition Lenders' Claims shall remain in effect to the same extent and in the same priority such Liens exist on the Effective Date, and no such Lien shall be (or deemed to have been) waived, released, satisfied or discharged, in whole or in part.

Beginning on the first calendar quarter following the Effective Date, and continuing on at least a quarterly basis thereafter (or such other time as agreed by the Agent and the GUC Trustee), the GUC Trustee shall pay the Pro Rata Share of Cash on hand resulting from the Agent Panterra Assets, if any: (i) in the event of an Asset Sale Restructuring, to the Agent Trustee or (ii) in the event of an Equitization Restructuring, to the Agent.

Holders of Prepetition Lenders' Claims expressly reserve the right to seek recovery against any Non-Reorganized Debtor on any grounds, including, without limitation, the entire unpaid cash amount of the Prepetition Lenders' Claims, and all Liens securing the Prepetition Lenders' Claim against property and assets of any Non-Reorganized Debtor shall continue to attach to such property and assets with the same effect and in the same order of priority as such Liens exist on the Effective Date. For the avoidance of doubt, Allowed

31

Prepetition Lenders' Claims shall remain outstanding and due and owing by any Debtor that is not a Reorganized Debtor.

(d) *Voting:* Class 2 is Impaired under the Plan. Holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.

## Class 3 – Secured Tax Claims.

(a) *Classification*: Class 3 consists of Secured Tax Claims. For purposes of classification and treatment under the Plan, there shall be a separate Subclass for Class 3 for each Debtor.

(b) *Treatment*: Except to the extent that the Holder of an Allowed Class 3 Secured Claim agrees to a less favorable treatment of its Allowed Class 3 Secured Claim acceptable to the Agent, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Class 3 Secured Claim, each such Holder shall receive (i) payment in accordance with section 1129 of the Bankruptcy Code or (ii) treatment pursuant to the terms of a payment agreement, payment plan, or installment agreement entered into between a Debtor and such Holder.

(c) *Voting:* Class 3 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

## Class 4 – Other Secured Claims.

(a) *Classification*: Class 4 consists of Other Secured Claims. For purposes of classification and treatment under the Plan, there shall be a separate Subclass for each Debtor.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Other Secured Claim acceptable to the Agent, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s) with the consent of the Agent, either:

    (i)      payment in full in Cash;

    (ii)     the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

    (iii)    Reinstatement of such Claim; or

    (iv)    A new note with a principal amount equal to the amount of the Allowed Other Secured Claim with a term of five years, interest at the Plan Rate, payable monthly in equal payments of principal and interest, and secured by the same collateral that secured such Allowed Other Secured Claim.

(c) *Voting:* Class 4 is Impaired under the Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

.

**Class 5 – GUC (General Unsecured) Claims.**

   (a)     *Classification*: Class 5 consists of GUC Claims (which, for avoidance of doubt, do not include TowerBrook Claims or Convenience Class Claims). For purposes of classification and treatment under the Plan, there shall be a separate Subclass for each Debtor.

   (b)     *Treatment*: Except to the extent that a Holder of an Allowed GUC Claim agrees to less favorable treatment of its Allowed Claim acceptable to the Agent, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed GUC Claim, each such Holder of an Allowed GUC Claim in Class 5 shall receive its Pro Rata share of the GUC Trust Interests. Each Holder of GUC Claims in an aggregate Allowed amount greater than $2,500.00 may irrevocably elect on its Ballot to have such Claim irrevocably reduced to $2,500.00 and treated as a Convenience Class Claim for the purposes of the Plan rather than as a GUC Claim. For avoidance of doubt, Holders of Prepetition Lenders' Claims shall not be entitled to any recovery from the GUC Trust Interests or the GUC Trust Assets (solely excepting the Agent Panterra Assets).

   (c)     *Voting:* Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

**Class 6 – Convenience Class Claims.**

   (a)     *Classification*: Class 6 consists of Convenience Class Claims. For purposes of classification and treatment under the Plan, there shall be a separate Subclass for each Debtor.

   (b)     *Treatment*: Except to the extent that a Holder of an Allowed Convenience Class Claim agrees to a less favorable treatment of its Allowed Claim acceptable to the Agent, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Convenience Class Claim, each such Holder shall receive within thirty (30) days after the date such Claim is Allowed payment in Cash in an amount equal to 10% of such Holder's Allowed Convenience Class Claim, which shall be payable from the GUC Trust Reserve.

   (c)     *Voting:* Class 6 is Impaired under the Plan. Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan.

**Class 7 – Intercompany Claims.**

   (a)     *Classification*: Class 7 consists of all Intercompany Claims. For purposes of classification and treatment under the Plan, all Class 7 Claims of all Debtors are being treated as one Class.

   (b)     *Treatment*: Intercompany Claims shall, at the Agent's election, either be (i) Reinstated as of the Effective Date or (ii) canceled, discharged, released, and extinguished in full as of the Effective Date.

33

(c) *Voting:* Class 7 is either Unimpaired, in which case the Holders of such Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and not receiving any distribution under the Plan, in which case the Holders of such Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of a Class 7 Intercompany Claim is not entitled to vote to accept or reject the Plan.

**Class 8 – Subordinated Claims.**

(a) *Classification:* Class 8 consists of all Subordinated Claims. For purposes of classification and treatment under the Plan, all Class 8 Claims of all Debtors are being treated as one Class.

(b) Treatment: Allowed Claims in Class 8 shall receive no payment under the Plan.

(c) *Voting:* Class 8 is Impaired, and such Holders of Class 8 Claims are conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

**Class 9 – SMG Holdings Interests**

(a) *Classification:* Class 9 consists of any Interests in SMG Holdings. For purposes of classification and treatment under the Plan, all Class 9 Interests are being treated as one Class.

(b) *Treatment:* On the Effective Date, all Interests in SMG Holdings shall be canceled, discharged, released, and extinguished in full as of the Effective Date in accordance with the Restructuring Transactions and the Restructuring Transactions Exhibit.

(c) *Voting:* Class 9 is Impaired, and the Holders of Class 9 Interests are conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

**Class 10 – Other Debtor Interests**

(a) *Classification:* Class 10 consists of Other Debtor Interests. For purposes of classification and treatment under the Plan, all Class 10 Interests are being treated as one Class. For the avoidance of doubt, Other Debtor Interests are Interests only in Reorganized Debtors (excluding SMG Holdings).

(b) *Treatment:* On the Effective Date, Interests in the Other Debtors shall, at the Agent's election, either be (i) Reinstated as of the Effective Date or (ii) canceled, discharged, released, and extinguished in full as of the Effective Date.

(c) *Voting:* Class 10 is either Unimpaired, in which case the Holders of such Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and not receiving any distribution under the Plan, in which case the Holders of such Interests are

34

deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of a Class 10 Interest is not entitled to vote to accept or reject the Plan.

**C.** *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**D.** *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of voting on the Plan.

**E.** *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. Subject to the Agent's consent, the Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or, subject to the consent of the Agent, to withdraw the Plan as to such Debtor.

**F.** *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

**G.** *Presumed Acceptance and Rejection of the Plan.*

To the extent that Claims or Interests of any Class receive no Distribution under the Plan, each Holder of a Claim or Interest in such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**H.** *Interests.*

Holders of SMG Holdings Interests are not receiving any distribution under the Plan on account of such Interests. Subject to the Agent's consent, Interests in Other Debtors will be (i) Reinstated as of the Effective Date or (ii) canceled, discharged, released, and extinguished in full as of the Effective Date.

*I.      Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

*J.      Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable or contractual subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors (or the GUC Trust, solely with respect to GUC Claims and Convenience Class Claims) reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.      Restructuring Transactions.*

On the Effective Date, the Debtors, the Reorganized Debtors, and the SMG Affiliates, as applicable, with the consent of the Agent, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including the Asset Sale Restructuring or the Equitization Restructuring, as applicable, and will take any actions as may be necessary or advisable to effect a corporate restructuring of their respective businesses in accordance with the terms of the Plan. The actions to implement the Restructuring Transactions may include, as applicable, and without limitation: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the Agent may consent, including, if applicable, the formation of any entity or entities that will constitute, in whole or in part, the Reorganized Debtors or the SMG Affiliates; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the Agent may consent, including the execution and delivery of the Agent Trust Agreement; (3) the execution of the GUC Trust Agreement; (4) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; (5) the execution and delivery of the New Organizational Documents; (6) the issuance of the New Units as set forth in the Plan; and (7) all other actions that the Debtors with the Agent's consent or the Reorganized Debtors, as applicable, determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

B.     *GUC Trust.*

    1.     Creation and Governance of the GUC Trust

    The GUC Trust shall be established for the administration of the GUC Trust Assets as set forth in the Plan and GUC Trust Agreement.

    The GUC Trust shall be created whether an Equitization Restructuring occurs or an Asset Sale Restructuring occurs. The GUC Trust shall be established for the distribution of GUC Trust Assets, net of any GUC Trust Expenses, to Holders of Allowed GUC Claims and Allowed Convenience Class Claims as set forth in the Plan and for the reconciliation by the GUC Trustee of Claims and Interests.

    On the Effective Date, the Debtors, the Reorganized Debtors, and GUC Trustee, as applicable, shall be authorized to take all actions necessary to establish the GUC Trust in accordance with the Plan and the GUC Trust Agreement. Additionally, on the Effective Date, the Debtors shall transfer and shall be deemed to transfer to the GUC Trust all of their rights, title and interest in and to all of the GUC Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the GUC Trust Assets shall automatically vest in the GUC Trust free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code. The GUC Trustee shall be the exclusive administrator of the GUC Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely with respect to the GUC Trust Assets and for purposes of carrying out the GUC Trustee's duties. The GUC Trust shall be administered by the GUC Trustee. The powers, rights, and responsibilities of the GUC Trustee shall include the authority and responsibility to, among other things, take the actions set forth in the Plan and shall be set forth in the GUC Trust Agreement. The GUC Trustee shall hold and distribute the GUC Trust Assets in accordance with the provisions of the Plan and the GUC Trust Agreement. After the Effective Date, the Debtors and the Reorganized Debtors, if applicable, shall have no interest in the GUC Trust Assets.

    2.     GUC Trustee and GUC Trust Agreement

    The GUC Trustee will, among other things, administer the GUC Trust Assets and will be the Estates' representative with respect to the settlement, release, allowance, disallowance, or compromise of applicable GUC Claims or Convenience Class Claims subject to and in accordance with the Plan and the Bankruptcy Code. The GUC Trust Agreement generally will provide for, among other things: (a) the transfer of the GUC Trust Assets to the GUC Trust; (b) the payment of certain reasonable expenses of the GUC Trust from the GUC Trust Assets; and (c) distributions to GUC Trust Beneficiaries, as provided herein and in the GUC Trust Agreement. On and after the Effective Date, and subject to any consent provisions set forth in the GUC Trust Agreement or the Plan, the GUC Trustee shall be responsible for all decisions and duties with respect to the GUC Trust and the GUC Trust Assets, except as otherwise provided in the GUC Trust Agreement or the Plan. The GUC Trustee shall make distributions to GUC Trust Beneficiaries on account of GUC Trust Interests.

    3.     Tax Treatment

    In furtherance of the GUC Trust, (a) the GUC Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with

Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code to the applicable Holders of Claims, consistent with the terms of the Plan; (b) the sole purpose of the GUC Trust shall be the liquidation and distribution of the GUC Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of applicable Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (c) all parties (including, without limitation, the Debtors, the Reorganized Debtors, applicable Holders of Allowed Class 5 Claims receiving GUC Trust Interests, and the GUC Trustee) shall report consistently with such treatment; (d) all parties (including the Debtors, the Reorganized Debtors, applicable Holders of Allowed Class 5 Claims receiving GUC Trust Interests, and the GUC Trustee) shall report consistently with the valuation of the GUC Trust Assets transferred to the GUC Trust as determined by the GUC Trustee (or its designee); (e) the GUC Trustee shall be responsible for filing all applicable tax returns for the GUC Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (f) the GUC Trustee shall annually send to each holder of a GUC Trust Interest a separate statement regarding the receipts and expenditures of the GUC Trust as relevant for U.S. federal income tax purposes. In conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the GUC Trustee and GUC Trust Beneficiaries) will be required to treat the transfer of the GUC Trust Assets to the GUC Trust, for all purposes of the Internal Revenue Code, as (a) a transfer of the GUC Trust Assets (subject to any obligations relating to those assets) directly to the GUC Trust Beneficiaries (other than to the extent any GUC Trust Assets are allocable to Disputed Claims), followed by (b) the transfer by such beneficiaries to the GUC Trust of GUC Trust Assets in exchange for GUC Trust Interests. For all U.S. federal income tax purposes, all parties must treat the GUC Trust as a grantor trust of which holders of Allowed Class 5 Claims who become GUC Trust Beneficiaries (as determined for U.S. federal income tax purposes) are the owners and grantors. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the GUC Trustee of a private letter ruling if the GUC Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the GUC Trustee), the GUC Trustee may timely elect to (a) treat any portion of the GUC Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections), which "disputed ownership fund" will be taxable as a "qualified settlement fund" if such portion of the GUC Trust allocable to Disputed Claims consists of passive assets for tax purposes, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Debtors, the Reorganized Debtors, applicable Holders of Allowed Class 5 Claims receiving GUC Trust Interests, and the GUC Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. The GUC Trustee may request an expedited determination of taxes of the GUC Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the GUC Trust for all taxable periods through the dissolution of the GUC Trust.

4.     Non-Transferability of GUC Trust Interests

Any and all GUC Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law. In addition, any and all GUC Trust Interests will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law. However, if it should be determined that any such GUC Trust Interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance and distribution under the Plan of the GUC Trust Interests will be exempt from registration under the Securities Act and all applicable state and local securities laws and regulations.

5. Dissolution of the GUC Trust

The GUC Trustee and GUC Trust shall be discharged or dissolved, as the case may be, at such time as all distributions required to be made by the GUC Trustee under the Plan have been made.

6. Indemnification and Limitation of Liability

The GUC Trustee and each of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional Persons, representatives, affiliate, employer and successors (each solely in its capacity as such, a "GUC Indemnified Party") shall be indemnified for, and defended and held harmless against, by the GUC Trust and solely from the GUC Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred other than with respect to gross negligence, willful misconduct, or fraud on the part of the applicable GUC Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the GUC Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the GUC Trust Agreement, as applicable if the applicable GUC Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the GUC Trust or its beneficiaries. The amounts necessary for the indemnification provided in this section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this section) shall be paid out of the GUC Trust Assets. The GUC Trustee shall not be personally liable for the payment of any GUC Trust expense or claim or other liability of the GUC Trust, and no Person shall look to the GUC Trustee personally for the payment of any such expense or liability. The indemnification provided in this section shall survive the death, dissolution, incapacity, resignation or removal of the GUC Trustee, GUC Indemnified Party or the termination of the GUC Trust, and shall inure to the benefit of each GUC Indemnified Party's heirs and assigns.

7. Preservation of Privilege

The Debtors or Reorganized Debtors, as applicable, and the GUC Trust shall be deemed to be working in common interest whereby the Debtors or Reorganized Debtors, as applicable, will be able to share documents, information or communications (whether written or oral) relating to GUC Claims, subject to a common interest privilege. The GUC Trust shall seek to preserve and protect all applicable privileges attaching to any such documents, information, or communications. The GUC Trustee's receipt of such documents, information or communications shall not constitute a waiver of any privilege. All privileges shall remain in the control of the Debtors or Reorganized Debtors, as applicable, and the Debtors or Reorganized Debtors, as applicable, retain the exclusive right to waive their own privileges.

8. Administration of the GUC Trust

On and after the Effective Date, the GUC Trustee shall: (a) resolve Disputed Claims that are GUC Claims and Convenience Class Claims as expeditiously as possible, (b) make distributions on account of GUC Trust Interests as provided hereunder, (c) to the extent transferred to the GUC Trust, enforce and prosecute claims, interests, rights, and privileges under the Panterra Claims in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are

reasonably believed to outweigh the costs associated therewith, (d) file appropriate tax returns, and (e) administer the GUC Trust in an efficacious manner. The GUC Trustee shall liquidate the Agent Panterra Assets as expeditiously as reasonably possible and, subject to the consent of the Agent, make Cash distributions to the Agent, Reorganized SMG, holders of New Units, or holders of Agent Trust Interests (if applicable), as set forth in the Plan and the GUC Trust Agreement. The GUC Trust shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters pertaining to the GUC Claims reconciliation process and the GUC Trust Assets, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court (including the Panterra Actions), in each case without the need or requirement for the GUC Trustee to file motions or substitutions of parties or counsel in each such matter.

9.        GUC Trust Fees and Expenses

From and after the Effective Date, the GUC Trustee, on behalf of the GUC Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay using the GUC Trust Assets the reasonable expenses (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets and professional fees) incurred by the GUC Trust and any professionals retained by the GUC Trust or the GUC Trustee and any additional amounts determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust from the GUC Trust Assets. The GUC Trustee is authorized to allocate such expenses to, and pay them from, the GUC Trust Assets, as the GUC Trustee may determine in good faith is fair (such as based upon the GUC Trustee's good faith determination of the nature or purpose of the fee or expense, the relative amount of GUC Claims, or such other matters as the GUC Trustee deems relevant) and in accordance with the GUC Trust Agreement. No GUC Trust Expenses shall be payable from the Agent Panterra Assets.

C.      *The Equitization Restructuring*

If the Equitization Restructuring occurs, the following provisions shall govern.

1.        Reorganized Debtors and SMG Affiliates

On the Effective Date, the SMG Parent Board shall be established, and each Reorganized Debtor shall adopt its New Organizational Documents. The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan, including any Restructuring Transactions.

2.        Sources of Consideration for Plan Distributions

(a)      Exit Facility

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Loan Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Loan Documents, (c) shall be deemed to be automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Loan Documents, and (d) shall not be subject to recharacterization or equitable

subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. On the Effective Date, (a) any and all DIP Liens shall be retained by the DIP Agent and assigned to the Exit Agent to secure the obligations under the Exit Facility and (b) any and all Liens securing the Prepetition Lenders' Claim shall be retained by the Prepetition Agent and assigned to the Exit Agent to secure the obligations under the Exit Facility. The SMG Affiliates, the Reorganized Debtors, and the Exit Agent and all other Persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

On the Effective Date, the applicable Reorganized Debtors and SMG Affiliates shall enter into the Exit Facility (and such other Reorganized Debtors and SMG Affiliates may enter into the Exit Facility after the Effective Date as set forth in the Exit Facility Loan Documents and the Plan), the terms of which will be set forth in the Exit Facility Loan Documents. Confirmation of the Plan shall be deemed approval by the Bankruptcy Court of the Exit Facility, including the Exit Facility Loan Documents and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors and SMG Affiliates in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the applicable Reorganized Debtors and SMG Affiliates to enter into and execute the Exit Facility Loan Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility.

(b)     New Units

SMG Parent shall be authorized to issue New Units pursuant to the SMG Parent A&R LLCA and the Restructuring Transactions. On the Effective Date, the Debtors, the Reorganized Debtors, and the SMG Affiliates, as applicable, shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan. The New Units, as well as the terms, amount, structure, and allocation thereof, may be modified with the consent of the Agent (with, for the avoidance of doubt, the consent of Crestline) at any time prior to the Effective Date.

All of the New Units issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of New Units shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

3.     Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, on the Effective Date, other than with respect to all Non-Vesting Assets, property of any Non-Reorganized Debtor (other than Causes of Action of any Non-Reorganized Debtor being transferred to the Reorganized Debtors), and the GUC Trust Assets, all property in each Estate, all Causes of Action (including the Retained Causes of Action), and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor or such other Entity as determined by the Agent, free and clear of all Liens,

Claims, charges, interests, or other encumbrances; *provided, however,* that (a) any and all DIP Liens shall be retained by the DIP Agent and assigned to the Exit Agent and (b) any and all Liens securing the Prepetition Lenders' Claim shall be retained by the Prepetition Agent and assigned to the Exit Agent, in each case of (a) and (b) to secure any and all obligations of the Reorganized Debtors under the Exit Facility. Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, on and after the Effective Date, each of the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Notwithstanding anything herein to the contrary, at any time prior to the Effective Date, the Agent may elect for any Interest in any Debtor that will become a Reorganized Debtor or a Non-Reorganized Debtor to be issued and assigned to any Entity on the Effective Date, including without limitation any third party by filing a notice on the docket of the Bankruptcy Court.

The Plan shall constitute a motion to abandon the Non-Vesting Assets. The Confirmation Order shall constitute (a) an authorization of the Bankruptcy Court to abandon the Non-Vesting Assets under section 554 of the Bankruptcy Code and (b) an order of abandonment of the Non-Vesting Assets as of the Effective Date. The Non-Vesting Assets shall not vest in any of the Reorganized Debtors, and the Reorganized Debtors shall have no ownership interest in the Non-Vesting Assets. Except with respect to any Causes of Action being transferred to the Reorganized Debtors, all property of a Non-Reorganized Debtor that is not otherwise a Non-Vesting Asset being abandoned under the Plan shall remain property of such Non-Reorganized Debtor on the Effective Date.

    4.      Corporate Action

On the Effective Date, all actions contemplated under the Plan with respect to the Debtors, the Reorganized Debtors, and the SMG Affiliates, as applicable, shall be deemed authorized and approved in all respects, including, as applicable: (1) implementation of the Restructuring Transactions; (2) formation by the Debtors or such other party as contemplated in the Plan, Plan Supplement, or Confirmation Order, of any Reorganized Debtors or the SMG Affiliates, and any transactions related thereto; (3) selection of, and the election or appointment (as applicable) of, the directors and officers for the Reorganized Debtors and the SMG Affiliates; (4) adoption of and entry into any employment agreements; (5) approval and adoption of (and, as applicable, the execution, delivery, and filing of) the New Organizational Documents; (6) issuance and distribution of New Units as set forth in the Plan; (7) execution of the GUC Trust Agreement and transfer of the GUC Trust Assets to the GUC Trust; (8) entry into the Exit Facility Loan Documents; (9) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (10) the establishment of the SMG Parent Board and the appointment of each manager thereof; and (11) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for herein involving the corporate structure of the Debtors, the Reorganized Debtors, or the SMG Affiliates, as applicable, and any corporate action, authorization, or approval that would otherwise be required by the Debtors, the Reorganized Debtors, or the SMG Affiliates, as applicable, in connection with the Plan shall be deemed to have occurred or to have been obtained and shall be in effect as of the Effective Date, without any requirement of further action, authorization, or approval by the Bankruptcy Court, security holders, directors, managers, or officers of the Debtors, the Reorganized Debtors, the SMG Affiliates, or any other Person.

On or before the Effective Date, the appropriate officers of the Debtors, the Reorganized Debtors, or the SMG Affiliates, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments, and take such actions, contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors and the SMG Affiliates, as applicable, including, as applicable, the GUC Trust Agreement, the New Organizational Documents, the New Units, the Exit Facility, the Exit Facility Loan Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing, and all such documents shall be deemed ratified. The authorizations and approvals contemplated by this subsection shall be effective notwithstanding any requirements under non-bankruptcy law.

5.      New Organizational Documents

On or immediately prior to the Effective Date, the New Organizational Documents shall be amended in a manner acceptable to the Agent as may be necessary to effectuate the transactions contemplated by the Plan. On the Effective Date, to the extent provided in the Plan and/or Plan Supplement, each of the Reorganized Debtors will file its New Organizational Documents with the applicable secretaries of state and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective. Pursuant to and to the extent provided in section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and their respective New Organizational Documents and other constituent documents of the Reorganized Debtors.

6.      Directors and Officers of the Reorganized Debtors and the SMG Affiliates

As of the Effective Date, the terms of the current members of the boards of directors or managers, as applicable, of each of the Debtors shall expire, and the initial SMG Parent Board and the boards of directors or managers of each of the other Reorganized Debtors and the other SMG Affiliates will include those directors and officers set forth in the lists of directors and officers of the Reorganized Debtors and the SMG Affiliates included in the Plan Supplement.

After the Effective Date, the officers of each of the Reorganized Debtors and the SMG Affiliates shall be appointed in accordance with the respective New Organizational Documents or other formation documents, as applicable. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of each Person proposed to be an officer or to serve on the initial board of directors of any of the Reorganized Debtors and the SMG Affiliates. To the extent any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer. Each such director or officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents.

7.      Effectuating Documents; Further Transactions

On and after the Effective Date, the Debtors, the Reorganized Debtors, or the SMG Affiliates, as applicable, and the officers, directors, agents and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other

agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

8.      Management Incentive Plan

The SMG Parent A&R LLCA shall provide for a Management Incentive Plan for the issuance of Class B Common Units to management and other service providers. The participants in the Management Incentive Plan, the timing and allocations of the awards to participants, and the other terms and conditions of such awards (including, but limited to, vesting, exercise prices, base values, hurdles, forfeiture, repurchase rights, and transferability) shall be set forth in the SMG Parent A&R LLCA and award agreements with participants, to the extent applicable.

9.      Employee Matters

Pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

10.      Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtors or the GUC Trust, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action belonging to the Debtors or their Estates that vest in the Reorganized Debtors, are transferred to the Reorganized Debtors, or are transferred and assigned to the GUC Trust pursuant to the Plan, as applicable, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' and the GUC Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than Causes of Action released by the Debtors pursuant to the releases and exculpations set forth in Article VIII of the Plan or otherwise under this Plan; *provided, however*, that notwithstanding anything to the contrary herein, on the Effective Date (a) all Causes of Action against the Schultz Parties (including Avoidance Actions against the Schultz Parties) of Debtors that become Reorganized Debtors shall vest in the Reorganized Debtors and (b) all Causes of Action against the Schultz Parties (including Avoidance Actions against the Schultz Parties) of Debtors that become Non-Reorganized Debtors shall be transferred and assigned to the Reorganized Debtors, unless each of the Schultz Release Conditions is satisfied in the Agent's discretion and such Cause of Action is released in accordance with the terms of this Plan.

The Reorganized Debtors and the GUC Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors and the GUC Trust Beneficiaries. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Reorganized Debtors or GUC Trustee will not pursue any and all available Causes of Action of the Debtors or the Estates against it. The Reorganized Debtors and the GUC Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Cause of Action of the Debtors or the Estates against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Reorganized Debtors and the

44

GUC Trustee expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Reorganized Debtors and the GUC Trust, as applicable, reserve and shall retain such Causes of Action of the Debtors and their Estates notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor or its Estate may hold against any Entity shall vest in the Reorganized Debtors or be transferred to the Reorganized Debtors or the GUC Trust, as applicable, pursuant to the Plan, except as otherwise expressly provided in the Plan, including Article VIII of the Plan. The Reorganized Debtors and the GUC Trust shall retain and may exclusively enforce any and all such Causes of Action, and through their authorized agents or representatives shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment, any such Causes of Action (except as otherwise expressly provided in the Plan), or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

On the Effective Date, the Debtors and the Estates shall irrevocably waive and release all Released Avoidance Actions and Released Avoidance Actions shall not be Retained Causes of Action.

11.     Non-Reorganized Debtors

On the Effective Date, the Non-Vesting Assets (including Interests in Debtors identified on the Schedule of Abandoned Debtors) shall be abandoned pursuant to section 554 of the Bankruptcy Code.

On the Effective Date, the Chapter 11 Cases of the Debtors identified on the Schedule of Converted Cases shall be converted to cases under chapter 7 of the Bankruptcy Code pursuant to section 1112(a) of the Bankruptcy Code without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. The Confirmation Order shall provide that such Chapter 11 Cases shall be converted to cases under chapter 7 pursuant to section 1112(a) of the Bankruptcy Code.

The treatment of Claims against and Interests in Debtors identified on the Schedule of Non-Applicable Debtors shall be subject to a separate plan or reorganization or liquidation acceptable to the Agent.

12.     Cooperation of Reorganized Debtors

In either an Equitization Restructuring or an Asset Sale Restructuring, the Reorganized Debtors shall reasonably cooperate with the GUC Trust and the GUC Trustee regarding information pertaining to the GUC Trust Assets; *provided* that the Reorganized Debtors shall have no obligation to incur out-of-pocket expenses in connection with such reasonable cooperation.

13.     Administrative Consolidation for Procedural Purposes Only

In either an Equitization Restructuring or an Asset Sale Restructuring , on the Effective Date, and solely for administrative purposes to facilitate Distributions, each and every GUC Claim or

Convenience Class Claim against a Debtor that is not listed on the Schedule of Abandoned Debtors, the Schedule of Non-Applicable Debtors, or the Schedule of Converted Cases shall (a) be deemed merged or treated as liabilities of the GUC Trust to the extent Allowed and (b) shall be treated as filed against the consolidated Debtors and shall be treated as one GUC Claim or one Convenience Class Claim, as applicable, as an obligation of the GUC Trust. Each and every GUC Claim or Convenience Class Claim against a Debtor that is not listed on the Schedule of Abandoned Debtors, the Schedule of Non-Applicable Debtors, or the Schedule of Converted Cases and which constitutes a guaranty by a Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any such GUC Claim or Convenience Class Claim, as applicable, against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several GUC Claim or Convenience Class Claim against any of the Debtors shall be deemed to be a single obligation of the GUC Trust.

For the avoidance of doubt, for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as separate entities so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may not be set off against the liabilities of any of the other Debtors. Such administrative consolidation is solely for the purpose of facilitating distributions to Holders of GUC Claims under this Plan and shall not affect the legal and corporate structures of the Reorganized Debtors. Moreover, such administrative consolidation shall not affect any subordination provisions set forth in any agreement relating to any GUC Claim or the ability of the GUC Trustee to seek to have any GUC Claim subordinated in accordance with any contractual rights or equitable principles.

14.     Leasehold Mortgages

**On the Effective Date, and effective as of the date of entry of the Final DIP Order, each Reorganized Debtor that is a lessee under an Unexpired Lease of nonresidential real property shall execute a leasehold mortgage with the Exit Agent, and, absent a timely objection and showing by the Confirmation Objection Deadline by the applicable lessor counterparty that such leasehold mortgage is expressly prohibited under such lease and cannot be cured or resolved by consent or other process under such lease, or would cause a default under the landlord's financing agreement existing as of the date of entry of the Final DIP Order, each lessor counterparty to such Unexpired Lease of nonresidential real property shall be deemed to consent to the grant of such leasehold mortgage to the Exit Agent.**

D.     *The Asset Sale Restructuring*

If the Asset Sale Restructuring occurs, the following provisions shall govern.

1.     Vesting of Assets in the GUC Trust

On the Effective Date, the GUC Trust Assets shall vest in the GUC Trust free and clear of all Liens, Claims, charges, or other encumbrances.

2.     Sources of Consideration for Plan Distributions

Distributions under the Plan will be funded with Cash on hand on the Effective Date and the revenues and proceeds of all remaining assets of the Debtors recovered by the GUC Trust or Agent Trust, as applicable, including proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date.

Notwithstanding anything to the contrary in the Plan or in the Asset Purchase Agreement, on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Effective Date shall vest in the Agent Trust (except the Panterra Claims, which shall vest in the GUC Trust); *provided, however*, that the Debtors and the Estates shall irrevocably waive and release all Released Avoidance Actions and Released Avoidance Actions shall not be Retained Causes of Action.

3. Dissolution and Governing Bodies of the Debtors

As of the Effective Date, the Debtors' board(s) of managers shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, members, or similar governing bodies, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, managers, or similar governing body, as applicable, of the Debtors, or the members of any Debtor. Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

The filing by the Agent Trustee of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the equity holders, members, board of directors, managers, or board of managers or any of its affiliates.

4. Release of Liens

Except as otherwise expressly provided herein or in the Confirmation Order, on the Effective Date, all Liens on any property of any Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors shall be automatically discharged and released; *provided* that notwithstanding anything to the contrary set forth in this Plan, subject to the funding of the Professional Fee Escrow Account and except with respect to the GUC Trust Assets, (a) all Liens of the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders, on any property of any Debtors shall remain valid, binding, and in full effect on and after the Effective Date, (b) all property of the Debtors (including any Sale Proceeds) shall remain subject to the Liens and Claims of the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders, as such Liens and Claims exist on the Effective Date, and shall continue to secure all of the DIP Facility Claims and the Prepetition Lenders' Claims, (c) all guarantees of any Debtors in favor of the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders shall be reaffirmed and remain in full force and effect, and (d) the proceeds of sales of any collateral of the Debtors securing the DIP Facility Claims and the Prepetition Lenders' Claims shall remain subject to the Liens and Claims of the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders, as applicable, to the same extent as such Liens and Claims were enforceable against the Debtors and the Debtors' assets on the Effective Date, in each case of (a)-(d) until the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders are indefeasibly paid in full in Cash.

5. Corporate Action

On the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (a) consummation of the Asset Sale; and (b) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors, the Reorganized Debtors, or the SMG Affiliates, and any corporate action required by the Debtors, the Reorganized Debtors, or the SMG Affiliates in connection with the Plan or corporate structure of the Debtors, Reorganized Debtors, or SMG Affiliates shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors, the Reorganized Debtors, or the SMG Affiliates. Before, on, or after the Effective Date, the appropriate officers of the Debtors, the Reorganized Debtors, or the SMG Affiliates, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors and the SMG Affiliates. The authorizations and approvals contemplated by this subsection shall be effective notwithstanding any requirements under non-bankruptcy law.

6. Effectuating Documents; Further Transactions

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the GUC Trustee and the Agent Trustee are, authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

7. Preservation of Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the Agent Trust all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action other than the Panterra Claims, whether arising before or after the Petition Date, which shall vest in the Agent Trust pursuant to the terms of the Plan. The Agent Trustee may enforce all rights to commence, prosecute, or settle, as appropriate, any and all such Causes of Action, whether arising before or after the Petition Date, and the Agent Trustee's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Agent Trustee may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Agent Trustee deems appropriate, including on a contingency fee basis. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Agent Trustee will not pursue any and all available Causes of Action against them. The Debtors and the Agent Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the**

**Plan, including Article VIII of the Plan**. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Agent Trustee expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Subject to the consent of the Agent, the Agent Trustee may initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any other third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

For avoidance of doubt, on the Effective Date, the Debtors and the Estates shall irrevocably waive and release all Released Avoidance Actions and Released Avoidance Actions shall not be Retained Causes of Action.

8. Agent Trust

In the event an Asset Sale Restructuring occurs, the Agent Trust Assets will be transferred to the Agent Trust on the Effective Date.

Except as otherwise provided in the Plan, the Confirmation Order, the Asset Purchase Agreement, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the Agent Trust Assets shall vest in the Agent Trust free and clear of all Liens, Claims, charges, or other encumbrances; *provided* that the Agent Trust Assets shall remain subject to the Liens and Claims of the DIP Agent and the Prepetition Agent, as applicable, to the same extent as such Liens and Claims were enforceable against the Debtors and the Debtors' assets on the Effective Date until such DIP Facility Claims and Prepetition Lenders' Claims are indefeasibly paid in full in Cash.

The Agent Trust shall be established for the administration of the Agent Trust as set forth in the Plan and Agent Trust Agreement.

On the Effective Date, the Debtors, the Agent, and the Agent Trustee, as applicable, shall be authorized to take all actions necessary to establish the Agent Trust in accordance with the Plan and the Agent Trust Agreement. Additionally, on the Effective Date, the Debtors shall transfer and shall be deemed to transfer to the Agent Trust all of their rights, title and interest in and to all of the Agent Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, other than with respect to the Liens of the Agent, which shall encumber the Agent Trust Assets, the GUC Trust Assets shall automatically vest in the Agent Trust free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code. The Agent Trustee shall be the exclusive administrator of the Agent Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the Agent Trustee's duties. The Agent Trust shall be administered by the Agent Trustee. The powers, rights, and responsibilities of the Agent Trustee shall include the authority and responsibility to, among other things, take the actions set forth in the Plan and shall be set forth in the Agent Trust Agreement. The Agent Trustee shall hold and distribute the Agent Trust Assets in accordance with the provisions of the Plan and the Agent Trust

Agreement. After the Effective Date, the Debtors and the Reorganized Debtors, if applicable, shall have no interest in the Agent Trust Assets.

On and after the Effective Date, the Agent Trustee shall: (a) wind down the Debtors' businesses and affairs as expeditiously as reasonably possible, (b) make distributions on account of Agent Trust Interests as provided hereunder, (c) enforce and prosecute claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (d) file appropriate tax returns, and (e) administer the Plan in an efficacious manner. The Agent Trustee shall liquidate all Agent Trust Assets as expeditiously as reasonably possible and make Cash distributions to holders of Agent Trust Interests. The Agent Trust shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Agent Trustee to file motions or substitutions of parties or counsel in each such matter.

9.    Agent Trustee and Agent Trust Agreement

The Agent Trustee will, among other things, administer the Agent Trust Assets. The Agent Trust Agreement generally will provide for, among other things: (a) the transfer of the Agent Trust Assets to the Agent Trust; (b) the payment of certain reasonable expenses of the Agent Trust from the Agent Trust Assets; and (c) distributions to Agent Trust Beneficiaries, as provided herein and in the Agent Trust Agreement. On and after the Effective Date, and subject to any consent provisions set forth in the Agent Trust Agreement or the Plan, the Agent Trustee shall be responsible for all decisions and duties with respect to the Agent Trust and the Agent Trust Assets, except as otherwise provided in the Agent Trust Agreement or the Plan. The Agent Trustee shall make distributions to the Agent Trust Beneficiaries.

10.    Tax Treatment

Provided the Agent Trust is structured as a trust, (a) the Agent Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code to the applicable Holders of Claims, consistent with the terms of the Plan; (b) the sole purpose of the Agent Trust shall be the liquidation and distribution of the Agent Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of applicable Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (c) all parties (including, without limitation, the Debtors, the Reorganized Debtors, applicable Holders of Allowed Claims receiving Agent Trust Interests, and the Agent Trustee) shall report consistently with such treatment; (d) all parties (including the Debtors, the Reorganized Debtors, applicable Holders of Allowed Claims receiving Agent Trust Interests, and the Agent Trustee) shall report consistently with the valuation of the Agent Trust Assets transferred to the Agent Trust as determined by the Agent Trustee (or its designee); (e) the Agent Trustee shall be responsible for filing all applicable tax returns for the Agent Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (f) the Agent Trustee shall annually send to each holder of an Agent Trust Interest a separate statement regarding the receipts and expenditures of the Agent Trust as relevant for U.S. federal income tax purposes. In conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the Agent Trustee and the Agent Trust Beneficiaries) will be required to treat the transfer of the Agent

Trust Assets to the Agent Trust, for all purposes of the Internal Revenue Code, as (a) a transfer of the Agent Trust Assets (subject to any obligations relating to those assets) directly to the Agent Trust Beneficiaries (other than to the extent any Agent Trust Assets are allocable to Disputed Claims), followed by (b) the transfer by such beneficiaries to the Agent Trust of Agent Trust Assets in exchange for Agent Trust Interests. For all U.S. federal income tax purposes, all parties must treat the Agent Trust as a grantor trust of which holders of Claims who become Agent Trust Beneficiaries (as determined for U.S. federal income tax purposes) are the owners and grantors. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Agent Trustee of a private letter ruling if the Agent Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Agent Trustee), the Agent Trustee may timely elect to (a) treat any portion of the Agent Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections), which "disputed ownership fund" will be taxable as a "qualified settlement fund" if such portion of the Agent Trust allocable to Disputed Claims consists of passive assets for tax purposes, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Debtors, the Reorganized Debtors, applicable Holders of Allowed Claims receiving Agent Trust Interests, and the Agent Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. The Agent Trustee may request an expedited determination of taxes of the Agent Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Agent Trust for all taxable periods through the dissolution of the Agent Trust.

11.     Non-Transferability of Agent Trust Interests

Any and all Agent Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law. In addition, any and all Agent Trust Interests will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law. However, if it should be determined that any such Agent Trust Interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance and distribution under the Plan of the Agent Trust Interests will be exempt from registration under the Securities Act and all applicable state and local securities laws and regulations.

12.     Dissolution of the Agent Trust

The Agent Trustee and Agent Trust shall be discharged or dissolved, as the case may be, at such time as all distributions required to be made by the Agent Trustee under the Plan have been made.

13.     Indemnification and Limitation of Liability

The Agent Trustee and each of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional Persons, representatives, affiliate, employer and successors (each solely in its capacity as such, an "Agent Trustee Indemnified Party") shall be indemnified for, and defended and held harmless against, by the Agent Trust and solely from the Agent Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred other

51

than with respect to gross negligence, willful misconduct, or fraud on the part of the applicable Agent Trustee Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Agent Trustee Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Agent Trust Agreement, as applicable if the applicable Agent Trustee Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Agent Trust or its beneficiaries. The amounts necessary for the indemnification provided in this section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this section) shall be paid out of the Agent Trust Assets. The Agent Trustee shall not be personally liable for the payment of any Agent Trust expense or claim or other liability of the Agent Trust, and no Person shall look to the Agent Trustee personally for the payment of any such expense or liability. The indemnification provided in this section shall survive the death, dissolution, incapacity, resignation or removal of the Agent Trustee, Agent Trustee Indemnified Party or the termination of the Agent Trust, and shall inure to the benefit of each Agent Trustee Indemnified Party's heirs and assigns.

E.      *Settlement and Compromise.*

The Plan shall be deemed a motion to approve the good-faith compromise and settlement set forth in the Plan pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, including (a) to the extent not previously released, any challenge to the amount, validity, perfection, enforceability, priority, or extent of the DIP Facility Claims or the Prepetition Lenders' Claims and (b) to the extent not previously released, any claim to avoid, subordinate, or disallow any DIP Facility Claims or Prepetition Lenders' Claims, whether under any provision of chapter 5 of the Bankruptcy Code, on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise. The Plan shall be deemed to be a motion to approve the good-faith compromise and settlement of all such Claims and Interests and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise, settlement, and releases set forth in the Plan, as well as a finding by the Bankruptcy Court that such settlement and compromise, and the releases and indemnities provided to effectuate such settlement and compromise, are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests. The compromises, settlements, and releases described herein shall be deemed non-severable from each other and from all other terms of the Plan.

In order to implement the good-faith compromise and settlement set forth herein, the Plan groups the Debtors together solely for the purpose of describing treatment of Claims and Interests under the Plan and confirmation of the Plan. The Plan treatment applies to all of the Debtors that will become Reorganized Debtors. To the extent there are no Allowed Claims or Interests with respect to a particular Debtor, such Class is deemed to be omitted with respect to such Debtor. Except as otherwise provided herein, to the extent a Holder has a Claim that may be asserted against more than one Debtor, the vote of such Holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor against which such Holder has a Claim. The grouping of the Debtors in this manner shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal Entities, or cause the transfer of any Assets, and,

52

except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities.

F.     *Settlement of Claims After the Effective Date.*

In accordance with the provisions of the Plan and except as otherwise set forth in the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date: (a) in the event of an Equitization Restructuring, (i) the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates, and Causes of Action against other Entities (in each case other than with respect to GUC Claims, Convenience Class Claims, and the Panterra Claims), and (ii) the GUC Trustee may compromise and settle GUC Claims, Convenience Class Claims, and the Panterra Claims; and (b) in the event of an Asset Sale Restructuring, (i) the Agent Trustee may compromise and settle Claims against, and Interests in, the Debtors and their Estates, and Causes of Action against other Entities (in each case other than with respect to GUC Claims, Convenience Class Claims, and the Panterra Claims), and (ii) the GUC Trustee may compromise and settle GUC Claims, Convenience Class Claims, and the Panterra Claims.

G.     *Cancellation of Certain Existing Securities.*

Except as otherwise provided in the Plan, and (a) excluding the DIP Facility Claims, the Prepetition Lenders' Claims, the DIP Facility Documents, and the Prepetition Loan Documents as they relate to Non-Reorganized Debtors, and (b) excluding (i) all DIP Liens and Liens securing the Prepetition Lenders' Claims on the property and assets of the Reorganized Debtors, which Liens shall be assigned to the Exit Agent under the Plan and the Exit Facility Loan Documents to secure the obligations under the Exit Facility, and (ii) the DIP Facility Documents and Prepetition Loan Documents evidencing DIP Liens and Liens securing the Prepetition Lenders' Claims, as applicable, being assigned to the Exit Agent under the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing any Claims against any of the Debtors, and any Interests in SMG Holdings shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other Person and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the counterparties to any such documents or agreements shall be released from all duties thereunder; *provided* that notwithstanding Confirmation or Consummation, any such document or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (a) allowing Holders to receive distributions under the Plan; (b) allowing creditors to enforce their rights, Claims, and interests vis-à-vis any parties other than the Debtors; and (c) preserving any rights of any creditors to enforce any obligations owed to each of them under the Plan, and to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan.

H.     *Section 1146 Exemption.*

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including: (a) the Restructuring Transactions; (b) the GUC Trust Agreement and, if applicable, the Agent Trust Agreement; (c) the transfer of property pursuant to an Asset Sale Restructuring, if applicable, (d) the issuance, reinstatement, distribution, transfer, or exchange of any debt, security, or other interest in the Debtors, the Reorganized Debtors, or the SMG Affiliates, including the issuance of the New Units (including with regard to the Management Incentive Plan) pursuant to an Equitization

Restructuring, if applicable, (e) the transfer, if any, of the Debtors' assets to the Reorganized Debtors; (f) the making, assignment, recording, or surrender of any lease or sublease; (g) the grant of collateral as security for any or all of the Exit Facility, (h) the creation, modification, consolidation, termination, refinancing, delivery, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such other means, and (i) the making, delivery, or recording of any other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets or transaction arising out of, contemplated under, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers or property without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

I.     *Corporate Existence.*

Except as otherwise provided in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan, the Plan Supplement, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan or Plan Supplement and require no further action or approval (other than any requisite filings required under applicable state or federal law).

J.     *Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, or without any requirement for Bankruptcy Court review or approval. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided, however,* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. On the Effective Date or as soon as reasonably practicable thereafter, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors. In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay pre- and post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses related to implementation, consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date.

*K.*     *Document Retention.*

On and after the Effective Date, and in the event of an Asset Sale Restructuring after prior consultation with the GUC Trustee, the Reorganized Debtors may maintain or dispose of documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

*L.*     *Closing of Chapter 11 Cases.*

If an Equitization Restructuring occurs, upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all but one of their Chapter 11 Cases.  The Reorganized Debtors may designate one Chapter 11 Case to remain open, and all contested matters and adversary proceedings relating to each of the Debtors subject to the treatment under the Plan, including objections to Claims, shall be administered and heard in such Chapter 11 Case; *provided* that for purposes of sections 546 and 550 of the Bankruptcy Code, the Chapter 11 Cases of the Debtors subject to the treatment under the Plan shall be deemed to remain open until such Chapter 11 Case has been closed. When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the GUC Trustee, with the consent of the Agent, shall seek authority from the Bankruptcy Court to close any Chapter 11 Case that remains open as of such time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

If an Asset Sale Restructuring occurs, upon the occurrence of the Effective Date, the Agent Trustee shall be permitted to close all but one of the Chapter 11 Cases of Debtors subject to treatment under the Plan.  The Agent Trustee may designate one such Chapter 11 Case to remain open, and all contested matters and adversary proceedings relating to each of the Debtors subject to the treatment under the Plan, including objections to Claims, shall be administered and heard in such Chapter 11 Case; *provided* that for purposes of sections 546 and 550 of the Bankruptcy Code, the Chapter 11 Cases of the Debtors subject to the treatment under the Plan shall be deemed to remain open until such Chapter 11 Case has been closed. When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the GUC Trustee, with the consent of the Agent Trustee, shall seek authority from the Bankruptcy Court to close any Chapter 11 Case that remains open as of such time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.*     *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts and Unexpired Leases of the Debtors listed on the Assumed Executory Contract and Unexpired Lease List or that were previously assumed or assumed and assigned by the Debtors are deemed to be Assumed Executory Contracts or Unexpired Leases, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.  All Executory Contracts or Unexpired Leases (other than those Executory Contracts or Unexpired Leases that previously were assumed or assumed and assigned by the Debtors) that, as of the Confirmation Date (or such later date as the Debtors, with the Agent's consent, and the applicable counterparty to such Executory

Contract or Unexpired Lease agree in writing): (a) are identified on the Rejected Executory Contract and Unexpired Lease List, (b) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending, (c) are not listed on the Assumed Executory Contract and Unexpired Lease List, or (d) are not subject to a motion to assume such Executory Contracts or Unexpired Leases that is pending, shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases, as applicable, as set forth in the Plan, the Rejected Executory Contract and Unexpired Lease List, or the Assumed Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to approval by the Bankruptcy Court on or after the Confirmation Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, and which has not been assigned to a third party before the Effective Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms (including as may be amended or modified prior to the Effective Date by agreement with the applicable counterparty and acceptable to the Agent), except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or rejection under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors may, subject to the consent of the Agent, alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List and the Assumed Executory Contract and Unexpired Lease List at any time through and including the Confirmation Date (or such later date as the Debtors, with the Agent's consent, and the applicable counterparty to such Executory Contract or Unexpired Lease agree in writing).

B.     *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed within thirty (30) days after the later of: (a) the Effective Date; and (b) the date of such rejection as established by a Final Order or pursuant to the Plan if later than the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, Reorganized Debtors, the Estates, the GUC Trust, the Agent Trust (if applicable), or their property without the need for any objection by the Debtors or the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as GUC Claims and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

C.     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any Cure Claims under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the Debtors or Reorganized Debtors (as

applicable) (with the consent of the Agent) and the other parties to such Executory Contracts or Unexpired Leases, and if applicable, the Purchaser, may otherwise agree. If an Equitization Restructuring or an Asset Sale Restructuring to an Agent Purchaser occurs, the Debtors shall pay the Cure Claims associated with each Assumed Executory Contract or Unexpired Lease. If an Asset Sale Restructuring to a Third Party Purchaser occurs, such Third Party Purchaser shall pay the Cure Claims associated with each Assumed Executory Contract or Unexpired Lease. In the event of a dispute regarding (a) the amount of any Cure Claim, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, payment of the Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

Any objection by a counterparty of an Executory Contract or Unexpired Lease to a proposed assumption (including, for purposes of the Plan, assumption and assignment) of an Executory Contract or Unexpired Lease or the related Cure Claims (including as set forth on the Assumed Executory Contract or Unexpired Lease List) must be Filed, served, and actually received by the Debtors in accordance with the Disclosure Statement Order or other applicable Final Order of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim will be deemed to have consented to such assumption and the proposed Cure Claim. For the avoidance of doubt, to the extent an Executory Contract or Unexpired Lease proposed to be assumed is not listed as having a related Cure Claim, any counterparty to such Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have consented to such assumption and deemed to release any Claim or Cause of Action for any monetary defaults, including any Cure Claim, under such Executory Contract or Unexpired Lease.

For the avoidance of doubt, the Debtors or the Reorganized Debtors, as applicable, may, with the consent of the Agent, add any Executory Contract or Unexpired Lease initially proposed to be assumed to the Rejected Executory Contracts and Unexpired Lease List through and including the Confirmation Date (or such later date as the Debtors, with the Agent's consent, and the applicable counterparty to such Executory Contract or Unexpired Lease agree in writing) for any reason, including if the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable cure notice, Assumed Executory Contract and Unexpired Lease List, or the Plan, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as the Effective Date; *provided, however*, that for the avoidance of doubt, the Debtors may not add any Executory Contract or Unexpired Lease initially proposed to be assumed to the Rejected Executory Contract and Unexpired Lease List after the Confirmation Date (unless the Debtors, with the Agent's consent, and the applicable counterparty to such Executory Contract or Unexpired Lease agree in writing to a later date).

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full satisfaction of any applicable Cure Claim shall result in the full release and satisfaction of any Claims, Cure Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed and expunged as of the Effective Date, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Effect of Rejection of Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed by the Executory Contract or Unexpired Lease counterparty or counterparties to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

E.      *Insurance Policies.*

Each of the Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, and in the event of an Equitization Restructuring, on the Effective Date, (a) the Debtors shall be deemed to have assumed all Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such Insurance Policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Unless otherwise provided herein or in the applicable Executory Contract or Unexpired Lease (as may have been amended, modified, supplemented, or restated), modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contract and Unexpired Lease List or the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Reorganized Debtors under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease (absent express consent by the Debtors or Reorganized Debtors (as applicable) in writing, subject to the consent of the Agent).

**H.** *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur with respect to a Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases with respect to such Debtor pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

**I.** *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Assumed Executory Contracts or Unexpired Leases, will be performed by the applicable Debtor or the applicable Reorganized Debtor that is party thereto in the ordinary course of their business. Accordingly, any such contracts and leases (including any Assumed Executory Contracts or Unexpired Leases) that have not been rejected as of the date the Confirmation Order becomes a Final Order shall survive and remain unaffected by entry of the Confirmation Order.

**J.** *Non-Reorganized Debtors.*

Notwithstanding anything to the contrary herein, this Article V shall not apply to Claims against Debtors that are identified on the Schedule of Abandoned Debtors, the Schedule of Converted Cases, or the Schedule of Non-Applicable Debtors.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.** *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Distribution Date (or if a Claim is not an Allowed Claim on the Distribution Date, on the date that such Claim or Interest becomes an Allowed Claim), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for such Allowed Claim in accordance with its priority and Allowed amount. No Holder of a Claim shall recover as a distribution under the Plan more than 100 percent of the Allowed amount of such Claim.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.

To the extent any distributions made in accordance with the Plan are subject to disgorgement to the Reorganized Debtors or the GUC Trustee, as applicable, the Reorganized Debtors or the GUC Trustee, as applicable, shall effectuate the distribution of such disgorged distribution to the Holders of Allowed Claims entitled to such distributions in accordance with the Plan as soon as reasonably practicable. For the avoidance of doubt, to the extent disgorgement of a distribution made to a Holder of a Claim pursuant to the Plan is required, such Holder shall be required to disgorge any distribution but shall not be required to remit interest on such distribution.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

B.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on such Distribution Record Date.

2.      Delivery of Distributions.

Except as otherwise provided herein, the Reorganized Debtors or the GUC Trustee, as applicable, shall be authorized to make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date. The manner of such distributions shall be determined at the discretion of the Reorganized Debtors and/or the GUC Trustee, as applicable, and the address for each Holder of an Allowed Claim or Allowed Interest shall be (a) the address set forth in the most recent Proof of Claim or Interest Filed by that Holder or (b) the address for such Holder as indicated on the Debtors' records as of the date of any such distribution.

3.      Minimum Distribution.

No Cash payment of less than $50 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

4.      Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtors or the GUC Trustee, as applicable, have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety days from the date such distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor(s) or the GUC Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and any claim of any Holder to such property shall be fully discharged, released, and forever barred.

For the avoidance of doubt, neither the Reorganized Debtor nor the GUC Trustee, as applicable, and their respective agents and attorneys are under any duty to take any action to attempt to locate any Claim Holder.

C.      *Special Rules for Distributions to Holders of Disputed Claims.*

Except as otherwise provided in the Plan, agreed to by the Reorganized Debtors or the GUC Trustee, as applicable, or set forth in an order of the Bankruptcy Court: (a) no partial payments and

no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; *provided* that if a portion of a Claim is not Disputed, the Reorganized Debtors or the GUC Trustee, as applicable, may make a partial distribution based on such portion of such Claim that is not Disputed; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or Disallowed. Any distributions arising from property distributed to Holders of Allowed Claims, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim, as applicable, in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

D.      *Manner of Payment.*

Unless otherwise set forth herein, in the event an Equitization Restructuring occurs, all distributions of New Units under the Plan shall be made by the Debtors, the Reorganized Debtors, or the SMG Affiliates, as applicable. At the option of the Reorganized Debtors or the GUC Trustee, as applicable, any Cash payment to be made under the Plan may be made by check, ACH, or wire transfer or as otherwise required or provided in applicable agreements. If an Equitization Restructuring or an Asset Sale Restructuring to an Agent Purchaser occurs, the Debtors shall pay the Cure Claims associated with each Assumed Executory Contract or Unexpired Lease. If an Asset Sale Restructuring to a Third Party Purchaser occurs, such Third Party Purchaser shall pay the Cure Claims associated with each Assumed Executory Contract or Unexpired Lease.

E.      *Exemption from Securities Act Registration Requirements.*

The offering, issuance, and distribution of the New Units shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities in accordance with, and pursuant to, section 1145 of the Bankruptcy Code. Such New Units will be freely tradable in the United States by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities laws and any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the New Organizational Documents or other formation documents.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, the Debtors, the Reorganized Debtors, and the GUC Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit with respect to distributions pursuant to the Plan. Notwithstanding any provision herein to the contrary, the Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, and establishing any other mechanisms they believe are reasonable and appropriate to comply with such requirements. The Debtors, the Reorganized Debtors, and the GUC Trustee, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

The Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable may require a Holder of an Allowed Claim to complete and return an Internal Service Form W-8 or W-9, as applicable, and any other tax documentation. The GUC Trustee shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all tax documentation that in the GUC Trustee's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim. Other than with respect to the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders, to the extent such documentation is not provided within forty-five (45) days of written request, the distribution on such Allowed Claim shall be deemed disallowed and expunged in their entirety and the funds shall become GUC Trust Assets or property of the Reorganized Debtors, as applicable, and redistributed to the other holders of Allowed Claims in accordance with the terms of this Plan.

G.      *No Postpetition or Default Interest on Claims.*

Notwithstanding any documents that govern the Debtors' prepetition funded indebtedness or Proofs of Claim to the contrary, and other than with respect to the DIP Facility Claims, the DIP Facility Loan Documents, the DIP Agent, the DIP Lenders, the Prepetition Lenders' Claims, the Prepetition Loan Documents, the Prepetition Agent, and the Prepetition Lenders, (a) postpetition and/or default interest shall not accrue or be paid on any Claims and (b) no Holder of a Claim shall be entitled to: (i) interest accruing on or after the Petition Date on any such Claim; or (ii) interest at the contract default rate; *provided* that, except as otherwise set forth herein, the amount of any Secured Claim for purposes of this Plan shall be determined in accordance with the Bankruptcy Code, including without limitation sections 502(b)(6), 503(b), and 506. For the avoidance of doubt, other than with respect to the DIP Facility Claims, the DIP Facility Loan Documents, the DIP Agent, the DIP Lenders, the Prepetition Lenders' Claims, the Prepetition Loan Documents, the Prepetition Agent, and the Prepetition Lenders, no interest shall accrue or be paid as a result of a delay, if any, between the Confirmation Date and the date a Holder of an Allowed Claim receives a distribution pursuant to the Plan. Additionally, and without limiting the foregoing, but other than with respect to the DIP Facility Claims, the DIP Facility Loan Documents, the DIP Agent, the DIP Lenders, the Prepetition Lenders' Claims, the Prepetition Loan Documents, the Prepetition Agent, and the Prepetition Lenders, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

H.      *Setoffs and Recoupment.*

The Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors may have against the Holder of such Claim unless waived pursuant to the terms of this Plan, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or the GUC Trustee, applicable, of any such right it may have against the Holder of such Claim or such Holder's successors or designees.

I.      *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim (other than GUC Claims) against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive as a distribution under the Plan more than payment in

full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

**J.**     *Claims Paid or Payable by Third Parties.*

      1.  Claims Paid by Third Parties.

Any Claim will be deemed reduced and/or Disallowed, as applicable, without a Claim objection having to be Filed by the Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim (a) receives payment in part or in full (as applicable) on account of such Claim from a Person or Entity that is not a Debtor or Reorganized Debtor and (b) receives a written notice of such proposed reduction or disallowance from the Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, in accordance with the provisions of this paragraph, and does not object in writing to the proposed reduction or disallowance set forth in such notice within twenty (21) days from service of such notice. To the extent a Holder of a Claim receives, on account of such Claim, both a distribution under the Plan and a payment from a Person or Entity that is not a Debtor or Reorganized Debtor on account of such Claim, the Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, may serve a notice of such duplicative payment and such Holder must, within 21 days of receipt thereof, either (a) repay or return the distribution received under the Plan to the Reorganized Debtors or GUC Trust, as applicable, but only to the extent that the Holder of such Claim received payment on account of such Claim in an amount greater than the total amount that the holder of such Claim was owed on account of such Claim (for purposes of this provision, the total amount owed on account of such Claim shall be without regard to any limitations in the Bankruptcy Code and/or statutory cap, such as, for example, the cap provided for under section 502(b)(6) of the Bankruptcy Code), or (b) file and serve on the Reorganized Debtors or the GUC Trustee, as applicable an objection setting forth the basis upon which the Holder of such Claim should not be required to return the amounts set forth in the notice received by such Holder. The failure of such Holder of a Claim to either timely object or to timely repay or return such distribution received under the Plan shall result in the Holder owing the applicable Reorganized Debtor or GUC Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 21-day period specified above until the amount is repaid (or in the case of an objection to such notice, after 21-days from the date that the objection is resolved by agreement or final order). Notwithstanding anything herein to the contrary, this Section J.1 shall not limit, reduce, alter or otherwise modify in any way any obligations of any non-Debtor guarantor, including, without limitation, with respect to any guarantees or payment assurances arising under or relating to Executory Contracts and Unexpired Leases, whether or not rejected prior to the Effective Date.

      2.  Claims Payable by Third Parties.

Except as otherwise provided for in the Plan, no distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such a Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.

Except as otherwise provided in the Plan, any distributions of insurance proceeds to Holders of Allowed Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Except as otherwise provided in the Plan, the Plan shall not otherwise constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Policies, nor shall anything contained herein (a) constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any Insurer.

K.      *Allocation of Distributions Between Principal and Interest.*

Other than with respect to the DIP Facility Claims and the Prepetition Lenders' Claims, for distributions in respect of Allowed Claims, to the extent that any such Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims.*

Except as otherwise set forth in the Plan, after the Effective Date, the Reorganized Debtors, and/or the GUC Trust, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as specifically provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with the Plan.

B.      *Claims Administration Responsibilities.*

After the Effective Date, (a) if an Equitization Restructuring occurs, the Reorganized Debtors, subject to the consent of the Agent, shall have the sole authority to File, withdraw, or litigate to judgment, objections to all Claims other than GUC Claims, Convenience Class Claims, and the Panterra Claims, and the GUC Trustee shall have the sole authority to File, withdraw, or litigate to judgment, objections to all GUC Claims, Convenience Class Claims, and the Panterra Claims; and (b) if an Asset Sale Restructuring occurs, the Agent Trust, subject to the consent of the Agent, shall have the sole authority to File, withdraw, or litigate to judgment, objections to all Claims other than GUC Claims, Convenience Class Claims, and the Panterra Claims, and the GUC Trustee shall have the sole authority to File, withdraw, or litigate to judgment, objections to all GUC Claims, Convenience Class Claims, and the Panterra Claims. The applicable Reorganized Debtor(s), with the Agent's consent, and the GUC Trustee, as applicable, shall have the authority to settle or compromise any applicable Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and the applicable Reorganized Debtor(s) and/or the GUC Trustee shall have the authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Adjustment to Claims Without Objection.*

Any Claim or Interest that has been paid, or satisfied, or any Claim or Interest that has been amended, or superseded, cancelled, or otherwise expunged (including pursuant to the Plan) may be adjusted or expunged on the Claims Register at the direction of the Reorganized Debtors or the GUC Trustee, as applicable, without the Reorganized Debtors or the GUC Trustee having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court. Additionally, any Claim or Interest that is duplicative or redundant with another Claim or Interest against the same Debtor may be adjusted or expunged on the Claims Register at the direction of the Reorganized Debtors or the GUC Trustee, as applicable, without the Reorganized Debtors or the GUC Trustee, as applicable, having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest  having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Time to File Objections to Claims or Interests.*

Any objections or challenges to Claims or Interests shall be Filed on or before the applicable Claims Objection Deadline.

E.      *Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. § 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been Disallowed or expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor or GUC Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

F.      *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Debtors, the Reorganized Debtors, and the GUC Trustee, as applicable, may establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the applicable Debtors, Reorganized Debtors, or, the GUC Trustee, as applicable, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim.

Any assets held in any such reserve shall be subject to the tax rules that apply to a "disputed ownership fund" under Treasury Regulation section 1.468B-9 (which will be taxable as a "qualified settlement fund" if all of the assets of such reserve consist of passive assets for tax purposes). As such, such assets will be subject to entity-level taxation, and the Debtors and Reorganized Debtors shall be required to comply with the relevant rules.

G. *Disallowance of Claims.*

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 547, 548, 549, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full.

Except as provided herein or otherwise agreed to by the Reorganized Debtors or the GUC Trust, as applicable, in their sole discretion, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

H. *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors with the consent of the Agent or the GUC Trust, as applicable, and any such new or amended Proof of Claim or Interest Filed that is not so authorized before it is Filed shall be deemed Disallowed in full without any further action.

I. *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

J. *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VII.D of the Plan, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

K. *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date a Disputed Claim becomes Allowed, the Reorganized Debtors or the GUC Trustee, as applicable, shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan, as of the Effective Date,

without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

## ARTICLE VIII.
## RELEASE, INJUNCTION, EXCULPATION, AND RELATED PROVISIONS

A.    *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors, if applicable), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The entry of the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.    **Release of Liens.**

**Except as otherwise specifically provided in the Plan, and excluding all DIP Liens and Liens securing the Prepetition Lenders' Claims on the property and assets of the Reorganized Debtors, which Liens shall be assigned to the Exit Agent under the Plan and the Exit Facility Loan Documents to secure the obligations under the Exit Facility, or as provided in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, and except with regard to Secured Claims that the Debtors, with the Agent's consent, elect to Reinstate in accordance with Article III.B of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns (including Reorganized SMG, if applicable), in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as applicable. The Reorganized Debtors are authorized to execute any document or make any filing necessary to further document the release of any lien, security interest or similar encumbrance.**

C.    *Releases by the Debtors.*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates, from any and all claims and Causes of Action whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), the Reorganized Debtors (including the formation thereof, if applicable), the Debtors' prepetition activities (including any intercompany transactions), the DIP Order (and any payments or transfers in connection therewith), the New Organizational Documents, the Exit Facility, any preference or avoidance claims pursuant to sections 544, 547, 548, or 549 of the Bankruptcy Code, the settlements and/or treatment of Claims and Interests contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Released Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Asset Sale Restructuring, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan (including the Exit Facility Loan Documents).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the releases described herein are: (1) in exchange for the good and valuable consideration provided by or on behalf of the Released Parties; (2) a good faith settlement and compromise of the Claims and Interests released herein; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the releases described herein or asserting (directly or indirectly) or trading any claim or Cause of Action released pursuant to the releases described herein against any Released Party at any time.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Article VIII.C: (i) do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (ii) do not release any claims related to any act or omission that constitutes actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the

advice of counsel with respect to their duties and responsibilities pursuant to the Plan; (iii) do not release any Panterra Claims; and (iv) do not release the Blackbox Survival Obligations.

D.     *Releases by Holders of Claims and Interests.*

As of the Effective Date, except to enforce distributions under the Plan, each Releasing Party is deemed to have released and discharged each Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), Reorganized SMG, and the other Reorganized Debtors (including the formation thereof), the Debtors' prepetition operations and activities, the New Organizational Documents, the DIP Order (and any payments or transfers in connection therewith), the Exit Facility, the Asset Sale Restructuring, the settlements contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Released Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan (including the Exit Facility Loan Documents).

In order to avoid being deemed a Releasing Party and/or a Released Party, as applicable, and thereby granting and receiving the releases set forth in Article VIII of the Plan, a creditor casting a Ballot for acceptance or rejection of the Plan must indicate its intent to make the Opt Out Election by checking the "OPT OUT" box on its Ballot.  Except as otherwise set forth herein, a party that is entitled to vote on the Plan and who votes to accept the Plan will be deemed to be a Releasing Party notwithstanding the making of an Opt Out Election.  Parties that are not entitled to vote may make the Opt Out Election by submission of an Opt Out Form in advance of the deadline for voting on the Plan, provided that any such Holder of a Claim or Interest that makes the Opt Out Election shall not be a Released Party. Creditors and other parties in interest who fail to take such action shall be deemed to have consented to the Third Party Release contained in Article VIII.D of the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that each release described herein is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise as set forth in the Plan; (5) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for

hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the releases described herein.

Notwithstanding anything to the contrary in the foregoing, the Releases set forth in this Article VIII.D (i) do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) do not release any claims related to any act or omission that constitutes actual fraud or willful misconduct but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan, and (iii) do not release the Blackbox Survival Obligations.

### E.    *Mutual Releases by Agent Released Parties and Schultz Parties.*

Notwithstanding anything to the contrary herein, it shall be a condition to the effectiveness of this Article VIII.E that, prior to the Effective Date, each of the Schultz Release Conditions is satisfied in the Agent's discretion, and this Article VIII.E shall have no force or effect unless each Schultz Release Condition is satisfied or waived by the Agent prior to the Effective Date.

Subject to the satisfaction or waiver of the conditions set forth above, as of the Effective Date, except to enforce distributions under the Plan, (a) each Agent Released Party (excluding the Reorganized Debtors, if and as applicable) is deemed to have released and discharged each Schultz Party, and (b) each Schultz Party is deemed to have released and discharged each Agent Released Party (excluding the Reorganized Debtors, if and as applicable), from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), the Debtors' prepetition operations and activities, the New Organizational Documents, the DIP Order (and any payments or transfers in connection therewith), the Exit Facility, the Asset Sale Restructuring, the settlements contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Agent Released Party or Schultz Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan (including the Exit Facility Loan Documents).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained herein, and, further, shall

constitute the Bankruptcy Court's finding that each release described herein is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Agent Released Parties and the Schultz Parties; (4) a good faith settlement and compromise as set forth in the Plan; (5) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Agent Released Parties or the Schultz Parties asserting any claim or Cause of Action released pursuant to the releases described herein.

### F. *Releases by the Schultz Parties*

As of the Effective Date, except to enforce distributions under the Plan, each Schultz Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and the Debtor Related Persons (but excluding any Non-Reorganized Debtor) from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that each Schultz Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the day-to-day management of the Debtors, any decisions made or not made by the Debtors' board members, and/or the ownership or operation of the Debtors), Reorganized SMG, and the other Reorganized Debtors (including the formation thereof), the Debtors' prepetition operations and activities, the New Organizational Documents, the DIP Order (and any payments or transfers in connection therewith), the Exit Facility, the Asset Sale Restructuring, the settlements contemplated by the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Schultz Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan (including the Exit Facility Loan Documents).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that each release described herein is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Debtors, Reorganized Debtors, and the Debtor Related Persons (but excluding any Non-Reorganized Debtor); (4) a good faith settlement and compromise as set forth in the Plan; (5) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Schultz Parties asserting any claim or Cause of Action released pursuant to the releases described herein.

Notwithstanding anything to the contrary in the foregoing, the Releases set forth in this Article VIII.F (i) do not release any post-Effective Date obligations of any party or Entity

under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) do not release any claims related to any act or omission that constitutes actual fraud or willful misconduct but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan, and (iii) do not release the Blackbox Survival Obligations.

G.      *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including the reliance by any Exculpated Party on the Plan or the Confirmation Order) created or entered into in connection with the Disclosure Statement, the Plan, the Asset Sale Restructuring, the Filing of the Chapter 11 Cases, the negotiation, terms, or execution of any settlement agreements effectuated pursuant to Federal Rule of Bankruptcy Procedure 9019 in the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement in connection with the Plan, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan (including the Exit Facility Loan Documents).

H.      *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, Liens or Causes of Action that have been released pursuant to Article VIII.B, Article VIII.C, Article VIII.D, or Article VIII.E of the Plan (if applicable), or are discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.F of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the GUC Trust, the Agent Trust (if applicable), the GUC Trust Assets, the Agent Trust Assets (if applicable), the GUC Trustee, the Agent Trustee (if applicable), or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Liens or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such

Entities on account of or in connection with or with respect to any such Claims, Interests, Liens or Causes of Action; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Liens or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Liens or Causes of Action unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; (5) asserting any claim relating to or arising from the Asset Sale Restructuring; and (6) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Liens or Causes of Action released or settled pursuant to the Plan.

I.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew or grant (or authorize the transfer of) a license, permit, charter, franchise, Liquor License, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases. No Entity, including Governmental Units, shall deny, suspend, condition, or refuse to permit a Reorganized Debtor from operating notwithstanding that a Claim has not been paid.

J.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Binding Effect.*

On the Effective Date, except as otherwise provided herein to the contrary, and effective as of the Effective Date, the Plan will bind, and will be deemed binding upon, all Holders of Claims against and Interests in the Debtors, and such Holder's respective successors and assigns, to the maximum extent permissible by law, notwithstanding whether or not such Holder (1) will receive any property or interest in property under the Plan, or (2) has filed a Proof of Claim or Interest in the Chapter 11 Cases, or (3) failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B of the Plan; *provided, however*, that a Debtor's Plan may, at the Agent's direction, become effective prior to another Debtor's Plan upon satisfaction or waiver of the following conditions with respect to such Plan:

1.      the Confirmation Order shall have become a Final Order;

2.      the Plan and the applicable documents included in the Plan Supplement, including any exhibits, schedules, documents, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall have been filed and be in form and substance acceptable to the Agent;

3.      each Debtor identified by the Agent as being required to hold a valid Liquor License upon effectiveness of the Plan shall have obtained a valid Liquor License;

4.      the New Organizational Documents with respect to the Reorganized Debtors shall be in full force and effect (with all conditions precedent thereto having been satisfied or waived), subject to any post-closing execution and delivery requirements provided for therein, and shall be in form and substance acceptable to the Agent;

5.      if applicable, the Purchaser shall have deposited the Purchase Price into the Sale Proceeds Account;

6.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the Restructuring Transactions, and shall have executed and delivered all documents related thereto;

7.      the GUC Trust Agreement shall have been fully executed, and the GUC Trust Assets shall have been transferred to the GUC Trust;

8.      the Agent Trust Agreement shall have been fully executed (if applicable), and the Agent Trust Assets shall have been transferred to the Agent Trust;

9.      all Restructuring Expenses accrued and to be paid on the Effective Date as provided in this Plan shall have been indefeasibly paid in Cash in full; and

10.      all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court.

B.      *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the Agent or the Debtors and/or Reorganized Debtors with the prior written consent of the Agent,

without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.     *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

D.     *Effect of Failure of Conditions.*

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.     *Modification and Amendments.*

Subject to the limitations contained in the Plan, and on prior notice to and with the consent of the Agent, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights, subject to the consent of the Agent, to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, subject to the consent of the Agent, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.     *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of Plan.*

Subject to the consent of the Agent, the Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the

Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or Allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, the Rejected Executory Contracts and Unexpired Lease List, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5. adjudicate, decide, or resolve any and all matters related to the Causes of Action enumerated in the Schedule of Retained Causes of Action;

6. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary to execute, implement, or consummate the Plan, Confirmation Order, any other order or ruling of the Bankruptcy Court, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation, implementation, or enforcement of the Plan;

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions or the Plan;

10. resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action relating to the distribution or the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1 of the Plan;

13. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by or assess damages against any Entity with regard to Consummation or enforcement of the Plan or the Restructuring Transactions;

14. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15. enter an order or decree concluding or closing any of the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan or any of the transactions contemplated therein;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

20. hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred before or after the Effective Date;

21. hear and determine all disputes involving the obligations or terms of the GUC Trust Agreement and the Agent Trust Agreement;

22. except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located

23. enforce all orders previously entered by the Bankruptcy Court and resolve any issues not enumerated above related to any matters adjudicated in the Chapter 11 Cases; and

24. hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the foregoing, the Bankruptcy Court shall retain non-exclusive jurisdiction to adjudicate, decide, or resolve any and all matters related to objections to Claims.

As of the Effective Date, notwithstanding anything in this Article XII to the contrary, the Exit Facility shall be governed by the jurisdictional provisions set forth in the Exit Facility Loan Documents and the Bankruptcy Court shall not retain any jurisdiction with respect thereto.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Subject to Article I.B of the Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon, as applicable, the Debtors, the Reorganized Debtors, the Purchaser, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents.*

On or before the Effective Date, subject to the consent of the Agent, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Reorganized Debtors, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Dissolution of the Committee.*

On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided* that the Committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, applications filed by the Professionals pursuant to sections 330 and 331 of the Bankruptcy Code. From and after the Effective Date, neither the Debtors, nor the Reorganized Debtors, nor their respective estates shall be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Committee; *provided*, that notwithstanding the foregoing, the Debtors or Reorganized Debtors, as applicable, shall pay any

Allowed fees and expenses incurred by the Committee's Professionals in preparing and prosecuting their final application for approval of Professional Fee Claims in accordance with the procedures set forth in Article II.A.2 as soon as reasonably practicable after such fees and expenses are Allowed.

D.  *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code that are due and payable by Debtors who will be Reorganized Debtors as of the Effective Date will be paid by the Debtors on the Effective Date.

In the event an Equitization Restructuring occurs, all such fees due and payable after the Effective Date shall be paid by the Reorganized Debtors to the extent a Debtor's Chapter 11 Case remains open for purposes other than with respect to administering the GUC Trust Assets and shall be paid by the GUC Trust to the extent such Debtor's Chapter 11 Case remains open for purposes of administering the GUC Trust Assets. The GUC Trustee shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the Chapter 11 Cases are converted, dismissed, or closed.

In the event an Asset Sale Restructuring occurs, all such fees due and payable after the Effective Date shall be paid by the Agent Trustee to the extent a Debtor's Chapter 11 Case remains open for purposes relating to administering the Agent Trust Assets and shall be paid by the GUC Trust to the extent such a Debtor's Chapter 11 Case remains open for purposes relating to administering the GUC Trust Assets. The GUC Trustee and/or Agent Trustee, as applicable, shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the applicable Chapter 11 Cases are converted, dismissed, or closed.

E.  *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, or any other Entity with respect to the Holders of Claims or Interests prior to the Effective Date.

F.  *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.  *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtors, to:
Studio Movie Grill Holdings, LLC
13933 N. Central Expy
Dallas, Texas 75243
Attention: William Snyder, CRO

with copies (which shall not constitute notice) to:

Law Offices of Frank J. Wright, PLLC
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Attention: Frank J. Wright
Email: frank@fjwright.law

if to the Agent, to:

Goldman Sachs Specialty Lending Group, L.P.
GOLDMAN SACHS SPECIALTY LENDING GROUP, L.P., as Agent
2001 Ross Avenue, Suite 1800
Dallas, Texas 75201
Attention: Studio Movie Grill Holdings, LLC Account Manager


With a copy to (which shall not constitute notice):
William L. Wallander, Esq. and Bradley R. Foxman, Esq.
Vinson & Elkins LLP,
2001 Ross Ave., Suite 3900
Dallas, TX 75201

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that request to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

      All exhibits and documents included in the Plan Supplement and the other Plan Documents are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at www.donlinrecano.com/Clients/smgh.

K.      *Nonseverability of Plan Provisions.*

      If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then, subject to the consent of the Agent, be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall, subject to the consent of the Agent, remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as applicable, as it may have been, subject to the consent of the Agent, altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and/or the Reorganized Debtors (subject to the consent of the Agent); and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

      Upon entry of the Confirmation Order, the Debtors shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the DIP Lenders, the DIP Agent, the Prepetition Lenders, the Prepetition Agent, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors shall have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

[*Remainder of page intentionally left blank.*]

Submitted on this 31st day of March 2021.

STUDIO MOVIE GRILL HOLDINGS, LLC
OHAM HOLDINGS, LLC
MOVIE GRILL CONCEPTS VII, LLC
MOVIE GRILL CONCEPTS IX, LLC
MOVIE GRILL CONCEPTS X, LLC
MOVIE GRILL CONCEPTS XI, LLC
MOVIE GRILL CONCEPTS XII, LLC
MOVIE GRILL CONCEPTS XIII, LLC
MOVIE GRILL CONCEPTS XIV, LLC
MOVIE GRILL CONCEPTS XV, LLC
MOVIE GRILL CONCEPTS XVI, LLC
MOVIE GRILL CONCEPTS XVII, LLC
MOVIE GRILL CONCEPTS XVIII, LLC
MOVIE GRILL CONCEPTS XIX, LLC
MOVIE GRILL CONCEPTS XX, LLC
MOVIE GRILL CONCEPTS XXI, LLC
MOVIE GRILL CONCEPTS XXII, LLC
MOVIE GRILL CONCEPTS XXIII, LLC
MOVIE GRILL CONCEPTS XXIV, LLC
MOVIE GRILL CONCEPTS XXV, LLC
MOVIE GRILL CONCEPTS XXVI, LLC
MOVIE GRILL CONCEPTS XXVII, LLC
MOVIE GRILL CONCEPTS XXVIII, LLC
MOVIE GRILL CONCEPTS XXIX, LLC
MOVIE GRILL CONCEPTS XXX, LLC
MOVIE GRILL CONCEPTS XXXI, LLC
MOVIE GRILL CONCEPTS XXXII, LLC
MOVIE GRILL CONCEPTS XXXIII, LLC
MOVIE GRILL CONCEPTS XXXIV, LLC

MOVIE GRILL CONCEPTS XXXV, LLC
MOVIE GRILL CONCEPTS XXXVI, LLC
MOVIE GRILL CONCEPTS XXXVII, LLC
MOVIE GRILL CONCEPTS XXXVIII, LLC
MOVIE GRILL CONCEPTS XXXIX, LLC
MOVIE GRILL CONCEPTS XL, LLC
MOVIE GRILL CONCEPTS XLI, LLC
MOVIE GRILL CONCEPTS XLII, LLC
MOVIE GRILL CONCEPTS XLIII, LLC
MOVIE GRILL CONCEPTS XLIV, LLC
MOVIE GRILL CONCEPTS XLV, LLC
MOVIE GRILL CONCEPTS XLVI, LLC
MOVIE GRILL CONCEPTS XLVII, LLC
MOVIE GRILL CONCEPTS XLVIII, LLC
MOVIE GRILL CONCEPTS XLIX, LLC
MOVIE GRILL CONCEPTS L, LLC
MOVIE GRILL CONCEPTS LI, LLC
MOVIE GRILL CONCEPTS LII, LLC
MOVIE GRILL CONCEPTS LIII, LLC
MOVIE GRILL CONCEPTS LIV, LLC
MOVIE GRILL CONCEPTS LV, LLC
MOVIE GRILL CONCEPTS TRADEMARK
    HOLDINGS, LLC
MOVIE GRILL PARTNERS 3, LLC
MOVIE GRILL PARTNERS 4, LLC
MOVIE GRILL PARTNERS 6, LLC
MGC MANAGEMENT I, LLC

By: _/s/ William Snyder_____
Name: William Snyder
Title: CRO

By: _/s/ William Snyder_____
Name: William Snyder
Title: CRO

82

MOVIE GRILL CONCEPTS I, LTD.

By: MGC MANAGEMENT I, LLC, its general partner


By: _/s/ William Snyder_
Name: William Snyder
Title: CRO

MOVIE GRILL CONCEPTS III, LTD.

By: Movie Grill Partners 3, LLC, its general partner


By: _/s/ William Snyder_
Name: William Snyder
Title: CRO

MOVIE GRILL CONCEPTS IV, LTD.

By: Movie Grill Partners 4, LLC, its general partner


By: _/s/ William Snyder_
Name: William Snyder
Title: CRO

MOVIE GRILL CONCEPTS VI, LTD.

By: Movie Grill Partners 6, LLC, its general partner


By: _/s/ William Snyder_
Name: William Snyder
Title: CRO

US 7590289

STUDIO CLUB, LLC


By:   */s/ William Snyder*
Name: William Snyder
Title: CRO


STUDIO CLUB 4, LLC


By:   */s/ William Snyder*
Name: William Snyder
Title: CRO


**LAW OFFICES OF FRANK J. WRIGHT, PLLC**


By:   */s/ Frank J. Wright*
Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648

2323 Ross Ave. | Suite 730
Dallas, Texas 75201
Telephone:     (214) 935-9100
Emails:          frank@fjwright.law
                     jeff@fjwright.law
                     jay@fjwright.law

**ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**

US 7590289

**<u>Exhibit B</u>**

**Proposed Confirmation Order Notice**

Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
Jay A. Ferguson
Texas Bar No. 24094648
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
2323 Ross Avenue, Suite 730
Dallas, Texas 75201
Telephone: (214) 935-910

**ATTORNEYS FOR THE DEBTORS,**
**STUDIO MOVIE GRILL HOLDINGS, LLC,** *et al.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 20-32633-SGJ** |
| | § | |
| **STUDIO MOVIE GRILL HOLDINGS, LLC,** | § | **Chapter 11** |
| *et al.*,[1] | § | |
| **DEBTOR.** | § | **Jointly Administered** |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Studio Movie Grill Holdings, LLC (6546); OHAM Holdings, LLC (0966); Movie Grill Concepts Trademark Holdings, LLC (3096); Movie Grill Concepts I, Ltd. (6645); Movie Grill Concepts III, Ltd. (2793); Movie Grill Concepts IV, Ltd. (1454); Movie Grill Concepts IX, LLC (3736); Movie Grill Concepts VI, Ltd. (6895); Movie Grill Concepts VII, LLC (2291); Movie Grill Concepts X, LLC (6906); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XII, LLC (6040); Movie Grill Concepts XIII, LLC (5299); Movie Grill Concepts XIV, LLC (4709); Movie Grill Concepts XIX, LLC (9646); Movie Grill Concepts XL, LLC (4454); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLII, LLC (2309); Movie Grill Concepts XLIII, LLC (9721); Movie Grill Concepts XLIV, LLC (8783); Movie Grill Concepts XLV, LLC (2570); Movie Grill Concepts XV, LLC (4939); Movie Grill Concepts XVI, LLC (1033); Movie Grill Concepts XVII, LLC (1733); Movie Grill Concepts XVIII, LLC (8322); Movie Grill Concepts XX, LLC (7300); Movie Grill Concepts XXI, LLC (1508); Movie Grill Concepts XXII, LLC (6748); Movie Grill Concepts XXIV, LLC (5114); Movie Grill Concepts XXIX, LLC (5857); Movie Grill Concepts XXV, LLC (4985); Movie Grill Concepts XXVI, LLC (5233); Movie Grill Concepts XXVII, LLC (4427); Movie Grill Concepts XXVIII, LLC (1554); Movie Grill Concepts XXX, LLC (1431); Movie Grill Concepts XXXI, LLC (3223); Movie Grill Concepts XXXII, LLC (0196); Movie Grill Concepts XXXIII, LLC (1505); Movie Grill Concepts XXXIV, LLC (9770); Movie Grill Concepts XXXIX, LLC (3605); Movie Grill Concepts XXXV, LLC (0571); Movie Grill Concepts XXXVI, LLC (6927); Movie Grill Concepts XXXVII, LLC (6401); Movie Grill Concepts XXXVIII, LLC (9657); Movie Grill Concepts XXIII, LLC (7893); Studio Club, LLC (3023); Studio Club 4, LLC (9440); Movie Grill Concepts XI, LLC (2837); Movie Grill Concepts XLI, LLC (4624); Movie Grill Concepts XLVI, LLC (2344); Movie Grill Concepts XLVII, LLC (5866); Movie Grill Concepts XLVIII, LLC (8601); Movie Grill Concepts XLIX, LLC (0537); Movie Grill Concepts L, LLC (5940); Movie Grill Concepts LI, LLC (7754); Movie Grill Concepts LII, LLC (8624); Movie Grill Concepts LIII, LLC (3066); Movie Grill Concepts LIV, LLC (2018); Movie Grill Concepts LV, LLC (4699); Movie Grill Partners 3, LLC (4200); Movie Grill Partners 4, LLC (1363); Movie Grill Partners 6, LLC (3334); and MGC Management I, LLC (3224).

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING
THE DEBTORS' [SECOND] AMENDED JOINT
CHAPTER 11 PLAN OF REORGANIZATION AND
(II) OCCURRENCE OF THE EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that on March [•], 2021, the Honorable Judge Stacey G.C. Jernigan, Chief United States Bankruptcy Judge for the United States Bankruptcy Court for the Northern District of Texas (the "***Court***"), entered the order [Docket No. [●]] (the "***Confirmation Order***") confirming the [*Second Amended Joint Plan of Reorganization for Studio Movie Grill Holdings, LLC and Jointly Administered Debtors* [Docket No.[●]] (as amended, modified, or supplemented, the "***Plan***").[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **[●], 2020**.

**PLEASE TAKE FURTHER NOTICE** that copies of Confirmation Order and the Plan, as well as other documents filed in the Chapter 11 Cases can be found on the docket of the Chapter 11 Cases and can also be downloaded free of charge from the website of the Debtors' noticing and claims agent, Donlin, Recano, & Company, at https://www.donlinrecano.com/Clients/smgh/Index.

**PLEASE TAKE FURTHER NOTICE** that the Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order, and the provisions thereof, are binding on the Debtors, the Reorganized Debtors, any Holder of a Claim against or Interest in the Debtors and such Holder's respective successors, assigns, and designees, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, the deadline for filing requests for payment of Administrative Expense Claims shall be [●],[3] the deadline for filing requests for payment of Professional Fee Claims shall be [●],[4] and the deadline for filings requests for payment of Rejection Damages Claims shall be [●].[5]

**PLEASE TAKE FURTHER NOTICE** that from and after this date, if you wish to receive notice of filings in this case, you must request such notice with the clerk of the Court and serve a

---

[2]   Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

[3]   [NTD: To be the date that is 30 days after the Effective Date].

[4]   [NTD: To be the date that is 45 days after the Effective Date].

[5]   [NTD: To be the date that is [30] days after the Effective Date].

copy of such request for notice on counsel to the Reorganized Debtors.  You must do this even if you filed such a notice prior to the Effective Date.

       **PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.